# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-4729 |
| | ) | |
| COLONY RIDGE DEVELOPMENT, LLC, d/b/a Terrenos Houston, Terrenos Santa Fe, and Lotes y Ranchos; | ) | **JURY DEMAND** |
| | ) | |
| COLONY RIDGE BV, LLC; | ) | |
| | ) | |
| COLONY RIDGE LAND, LLC, formerly d/b/a Terrenos Houston and Lotes y Ranchos; and | ) | |
| | ) | |
| LOAN ORIGINATOR SERVICES, LLC, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, the Consumer Financial Protection Bureau (Bureau) and the United States of America (the United States), bring this action against Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, and Loan Originator Services, LLC (collectively, Defendants) to stop Defendants' discriminatory targeting of Hispanic consumers with predatory financing and other unlawful conduct, obtain redress for consumers harmed by Defendants' unlawful conduct, and secure penalties against Defendants, in accordance with the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; the Fair Housing Act, 42 U.S.C. §§ 3601-3619; the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; and the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720.

1

## **INTRODUCTION**

1.      Since at least 2016, land development companies Colony Ridge Development, LLC, Colony Ridge BV, LLC, and affiliate mortgage company Colony Ridge Land, LLC (collectively, Colony Ridge) have lured tens of thousands of Hispanic consumers into using predatory seller financing to purchase land, promising they would "Logra el sueño Americano aquí!!" ("Achieve the American dream here!!"). Instead, Colony Ridge sets consumers up to fail.

2.      Colony Ridge has developed more than 40,000 lots spread across six residential subdivisions (the Terrenos Houston Subdivisions) in Liberty County, Texas. Colony Ridge offers vacant lots for purchase and seller-financing to fund consumers' purchases.

3.      To attract Hispanic consumers, Colony Ridge advertises and markets the Terrenos Houston Subdivisions under the aliases Terrenos Houston and Terrenos Santa Fe. In Spanish, "terrenos" translates to "lands" or "lots." Colony Ridge advertises almost exclusively in Spanish, often featuring cultural markers associated with Latin America, such as regional music and the national flags of Colombia, Honduras, Mexico, and Venezuela, among others.

4.      Colony Ridge falsely represents through advertisements that lots in the Terrenos Houston Subdivisions are all sold with the infrastructure to connect water, sewer, and electrical services, which Colony Ridge agents have then echoed during in-person sales pitches. In fact, many of the lots in the Terrenos Houston Subdivisions lack costly infrastructure to connect utilities. Moreover, parts of the Terrenos Houston Subdivisions have experienced significant flooding during rains, increasing the cost to build dwellings, which Colony Ridge's marketing and the representations of its agents further obscure.

5.      Since at least 2011, Colony Ridge has offered seller-financed loans to consumers seeking to purchase a lot in the Terrenos Houston Subdivisions through

Colony Ridge Land. The purchasing process consists of a Property Visit, during which Colony Ridge shows consumers the lots for sale in person; a Pre-Closing, during which Colony Ridge initiates the extension of the seller-financed mortgage; and the Closing, during which Colony Ridge completes the credit transaction.

6.     Despite extending loans that total in the tens of thousands of dollars, Colony Ridge fails to assess borrowers' ability to repay, requiring self-reported (but unverified) gross income, and a nominal down payment.

7.     Since at least 2016, Loan Originator Services, LLC (Loan Originator Services) has originated all of Colony Ridge's seller-financed mortgages. Under this arrangement, Colony Ridge Land is still recorded as the lender on filings with the Liberty County Clerk and services the seller-financed loans, in addition to retaining the notes and the right to foreclose on the properties. Like Colony Ridge, Loan Originator Services fails to assess borrowers' ability to repay and does not request proof of income or liabilities from borrowers.

8.     Colony Ridge directs consumers towards its predatory loan product by only presenting consumers with its in-house options, creating the impression that its mortgages are the exclusive means of financing lots in the Terrenos Houston Subdivisions. Colony Ridge then closes on its own loans with effectively no oversight from the mortgage originator, with no title company or outside attorneys present, while retaining all servicing rights.

9.     Colony Ridge advertises its lack of rigor in qualifying consumers for these seller-financed mortgages, which has attracted financially vulnerable consumers with limited credit options and consumers who lacked or believe they lacked a credit history. Colony Ridge's interest rates routinely exceed typical prevailing rates.

10.     Colony Ridge's targeting of Hispanic consumers has proven tremendously effective. Between September 2017 and September 2022, Colony

3

Ridge recorded at least 28,482 unique transactions (*i.e.*, consumers who purchased one or more properties on the same day) in the Terrenos Houston Subdivisions. Approximately 91 percent of those transactions involved at least one Hispanic consumer, even though the Houston Metropolitan Statistical Area is around 38 percent Hispanic.

11.     Because Defendants fail to analyze consumers' ability to pay, Colony Ridge's seller-financed mortgages fail at an extraordinary rate. Foreclosures and property deeds recorded in Liberty County between September 2019 through September 2022 show that Colony Ridge initiated foreclosures in at least 30 percent of all Colony Ridge seller-financed lots within three years of the consumer's purchase date, with most occurring much sooner. Nationally, 2.1 percent of all home loans originated in 2019 became delinquent by 60 days or more within three years of origination.

12.     Foreclosure records confirm that Colony Ridge accounted for more than 92 percent of all foreclosures recorded in Liberty County between 2017 and 2022. And Colony Ridge shows no sign of slowing down: Between January 2022 and June 2023, Colony Ridge's lending arm initiated an average of 298 foreclosures in Liberty County monthly. From 2021 to 2022, Liberty County had more foreclosures (6,495) than Dallas County (4,038), or Bexar County (5,016), even though Liberty County's population is approximately 5 percent of those counties. And, even though neighboring Harris County's population is 51 times larger than Liberty County's population, the latter counted almost half as many foreclosures as Harris County (14,089) during the same period.

13.     Despite the alarming default rate of its seller-financed loans, Colony Ridge has not changed its business practices: it continuously fails to assess borrowers' ability to repay the credit; charges interest rates far above prevailing market rates; exploits language barriers during the sales process; uses high-

pressure sales tactics to push borrowers to obtain its credit product quickly; and affirmatively misrepresents or omits material facts relating to the lots and transactions, causing borrowers to incur substantial unanticipated expenses after closing.

14.     Colony Ridge benefits from these seller-financed mortgage failures through the high interest rates it charges, the late fees it assesses as consumers fall behind on their payments, and the down payments, mortgage payments, and other fees it collects for land that is often unusable to consumers. Colony Ridge also generally does not work with consumers to create a remedial payment plan or discuss refinancing, instead assessing monthly late fees that compound borrowers' inability to repay their loans. The loan failures also free up properties for Colony Ridge to "flip"—a practice where Colony Ridge consistently repurchases the properties in foreclosure, then resells them, often at higher prices, which translates to more down payments, fees, and mortgage payments on even larger debts for new consumers.

15.     Foreclosure and property deed records show that Colony Ridge flipped at least 40 percent of all the properties it sold between September 2019 and June 2023, selling approximately 8,237 properties twice, 3,267 properties three times, and 2,067 properties four or more times.

16.     The Bureau and the United States bring this action to secure injunctive relief to stop Defendants' unlawful conduct, obtain redress for harmed consumers, and obtain penalties against Defendants for their violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and its implementing regulation (Regulation B), 12 C.F.R. Part 1002; the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536; the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, and its implementing regulation, 24 C.F.R. Part 100; and the Interstate Land Sales Full Disclosure Act (ILSA), 15

U.S.C. §§ 1701-1720, and its implementing regulations (Regulations J and K), 12 C.F.R. Parts 1010 and 1011.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, 12 U.S.C. § 5565(a)(1), 15 U.S.C. § 1691e(h), and 42 U.S.C. § 3614(a), because the action arises under the laws of the United States, and the United States and an agency of the United States bring this case as plaintiffs.

18.     Venue is proper in this district under 12 U.S.C. § 5564(f) because Defendants are located, reside, or do business in this District, and 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

19.     The Bureau is an independent federal agency of the United States charged with enforcing federal consumer financial laws, including ECOA, 15 U.S.C. §§ 1691-1691f; Regulation B, 12 C.F.R. Part 1002; the CFPA, 12 U.S.C. §§ 5531, 5536; ILSA, 15 U.S.C. §§ 1701-1720; Regulation J, 12 C.F.R. Part 1010; and Regulation K, 12 C.F.R. Part 1011. 12 U.S.C. § 5491(a); 12 U.S.C. §§ 5511, 5564.

20.     The Bureau is authorized to bring civil actions in federal district court proceedings in its own name and through its own attorneys to address violations of federal consumer financial laws, and to "seek all appropriate legal and equitable relief," including injunctive relief, refund of monies paid, damages, restitution, disgorgement, and civil money penalties. 12 U.S.C. §§ 5564(a)-(b), 5565(a)(2).

21.     The United States brings this action to enforce the FHA and ECOA. The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever the Attorney General has reason to believe that an

entity is engaged in a pattern or practice in violation of the FHA or ECOA. 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h). The FHA further authorizes the Attorney General to bring suit where the defendant has denied rights to a group of persons and that denial raises an issue of general public importance. 42 U.S.C. § 3614(a).

22.     Defendant Colony Ridge Development is a Texas domestic limited-liability company registered at PO Box 9799, Huntsville, TX 77340, and located at 23938 FM 1485, New Caney, TX 77357. Colony Ridge Development also accepts or has accepted mail at PO Box 279, Fresno, TX 77545.

23.     Colony Ridge Development has been wholly owned by Colony Ridge, Inc. since at least 2018.

24.     Since at least March 31, 2017, Colony Ridge Development has done business as "Terrenos Houston" and "Lotes y Ranchos;" and since at least April 14, 2017, Colony Ridge Development has done business as "Terrenos Santa Fe."

25.     Defendant Colony Ridge BV is a Texas domestic limited-liability company registered at PO Box 9799, Huntsville, TX 77340, and located at 23938 FM 1485, New Caney, TX 77357. Colony Ridge BV also accepts or has accepted mail at PO Box 279, Fresno, TX 77545.

26.     Defendant Colony Ridge Land is a Texas domestic limited-liability company registered at PO Box 9799, Huntsville, TX 77340, and located at 23938 FM 1485, New Caney, TX 77357. Colony Ridge Land also accepts or has accepted mail at PO Box 279, Fresno, TX 77545.

27.     Colony Ridge Land has been wholly owned by Colony Ridge, Inc. since at least 2018.

28.     Between February 2014 and March 2017, Colony Ridge Land did business as "Terrenos Houston." From August 2016 to March 2017, Colony Ridge Land also did business as "Lotes y Ranchos."

29.    Since May 2016, Colony Ridge Land has been licensed to originate loans in the State of Texas as a non-depository mortgage company.

30.    Defendant Loan Originator Services is a Texas domestic limited-liability company registered at 211 W. Jefferson Ave. Ste 7, Harlingen, TX 78550, and located at 121 W. Tyler Ave., Harlingen, TX 78550.

31.    Since January 2014, Loan Originator Services has been licensed to originate loans in the State of Texas as a non-depository mortgage company.

## DEFENDANTS' BUSINESS PRACTICES

### *Advertising and Marketing Targeted at Hispanic Consumers*

32.    Starting in 2011, Colony Ridge Development and Colony Ridge BV broke ground on land that eventually became the residential subdivisions known as and marketed under the common names Montebello, Bella Vista, Rancho San Vicente, Grand San Jacinto, Camino Real, and Santa Fe (collectively, the Terrenos Houston Subdivisions). Each residential subdivision contains more than 100 lots.

33.    Colony Ridge advertises and markets seller-financed lots in the Terrenos Houston Subdivisions using direct-to-consumer advertising and marketing, including through telemarketing phone calls with consumers.

34.    Colony Ridge also advertises and markets lots in the Terrenos Houston Subdivisions extensively on the internet, through the social media platforms or websites TikTok, Instagram, Facebook, and YouTube, and using different corporate social media accounts, including at least the following:

    a.  "Terrenos Houston" (Facebook);

    b.  "Terrenos Santa Fe" (Facebook);

    c.  "Terrenos Parkway 99" (Facebook);

    d.  @terrenoshoustontx (Instagram);

    e.  @terrenossantafe (Instagram);

    f.  @parkway99 (Instagram);

g. @terrenoshouston2034 (YouTube);

h. @yosoyterrenoshouston (TikTok);

i. @terrenossantafeusa (TikTok); and

j. @parkway99 (TikTok)

(together "the Terrenos Houston Social Media Accounts").

35.     Colony Ridge primarily uses Spanish to advertise the Terrenos Houston Subdivisions on the Terrenos Houston Social Media Accounts. For instance, in October 2022, Colony Ridge posted a total of 123 advertising videos on TikTok using its @yosoyterrenoshouston account. All 123 advertisements were entirely in Spanish. During the same month, 91 percent of the 57 video advertisements that Colony Ridge posted on TikTok using its @terrenossantafe account were also entirely in Spanish. The remaining 9 percent were spoken in either English or a mix of English and Spanish, and were all subtitled in Spanish.

36.     Colony Ridge also advertises and markets lots in the Terrenos Houston Subdivisions on at least four websites: colonyridge.com, terrenoshouston.com, terrenossantafe.com, and terrenosparkway99.com (together "Terrenos Houston Websites").

37.     By default, terrenoshouston.com and terrenossantafe.com advertise and market the Terrenos Houston Subdivisions in Spanish, and the two websites can be read in English only by clicking on a tab at the top right of the screen labeled "Español" and then selecting "English" from the drop-down menu. Before mid-2023, their websites could only be read in Spanish.

38.     Colonyridge.com advertises and markets the Terrenos Houston Subdivisions in English but can be read in Spanish by clicking on a tab at the top right of the screen labeled "English" and then selecting "Spanish" from the drop-down menu.

9

39.     Terrenosparkway99.com can be read in English by clicking on a flag of the United States at the top of the page, or in Spanish by clicking on a flag of Mexico in the same location.

40.     In advertising and marketing across the Terrenos Houston Social Media Accounts and Terrenos Houston Websites, Colony Ridge repeatedly draws a connection between purchasing property in the Terrenos Houston Subdivisions, obtaining easy owner-to-owner financing, and attaining the American Dream of homeownership.

41.     For example, Colony Ridge's Facebook pages featured an advertisement video titled "Logra el sueño Americano aquí!!" ("Achieve the American dream here!!"), while another advertisement video contained the following description: "Mi gente, logren su sueño Americano acá con TERRENOS SANTAFE" ("My people, achieve your American dream here with TERRENOS SANTAFE").

42.     On Instagram, Colony Ridge encouraged consumers to "CUMPLE EL SUEÑO DE SER PROPIETARIO" ("FULFILL THE DREAM OF BEING AN OWNER"), sometimes with an image of the United States flag placed on the graphic. Another Instagram advertisement stated, "Cumple el sueño de tener tu propio hogar" ("Achieve the dream of having your own home").

43.     On terrenoshouston.com, Colony Ridge told consumers: "¡Descubra la solución perfecta para convertirse en dueño de su propio terreno en Houston, Estados Unidos, y dejar de pagar renta!" ("Discover the perfect solution to become an owner of your own lot in Houston, United States, and stop paying rent!").

44.     In advertising and marketing across the Terrenos Houston Social Media Accounts and Terrenos Houston Websites, Colony Ridge informs consumers that Colony Ridge only required a small deposit and two forms of

identification to make a purchase, and that Colony Ridge does not check or review credit scores or histories, or social security numbers.

45.     In advertising and marketing across the Terrenos Houston Social Media Accounts and Terrenos Houston Websites, Colony Ridge featured images showing the inside of the Colony Ridge office in New Caney, Texas, with flags from several Latin American nations prominently displayed.

46.     In its advertising and marketing, Colony Ridge used at least one flyer that placed photos of Colony Ridge sales employees directly next to the flag of the Latin American country of their origin.

47.     On TikTok, Colony Ridge told consumers that it has the "propósito que es ayudar a la comunidad Hispana a que sean propietarios" ("purpose to help the Hispanic community become property owners").

### *Misrepresentations About the Infrastructure Pre-Installed on the Lots*

48.     In Spanish-language marketing and advertising, Colony Ridge repeatedly represents or implies that the lots in the Terrenos Houston Subdivisions are sold with the infrastructure to connect water, sewer, and electrical services pre-installed.

49.     For example, on terrenossantafe.com and on terrenoshouston.com, Colony Ridge described the lots in the Terrenos Houston Subdivisions as "Terrenos Con Servicios: Luz, agua, drenaje moderno" ("Lots With Services: power, water, and modern sewer") and as "Servicios de agua, luz y drenaje incluidos" ("Water, power and sewer services included"), respectively.

50.     And in one TikTok video, two individuals represented that "Terrenos Houston tiene todos los servicios de ciudad por cada terreno" ("Terrenos Houston has all city services for each lot"). When one individual in the video asked what services are included, the other responded: "Agua, luz y drenaje. Todos! Tiene tocho morocho" ("Water, power, and sewer. All of them! The whole thing."). The

first individual reiterated this point by saying: "Así que ya viene con todo …
Aproveche" ("They come with everything. Take advantage of this.").

51.     Numerous other Colony Ridge advertisements contain similar
misrepresentations about utilities while also promoting the availability of seller
financing. For example, on Instagram, Colony Ridge stated "PUEDES OBTENER
TU TERRENO ☑ SIN crédito ☑ Bajo down ☑ Con agua, luz y drenaje" ("YOU
CAN OBTAIN YOUR LOT ☑ WITHOUT credit ☑ Low down payment ☑ With
water, power and sewer").

52.     On terrenoshouston.com, Colony Ridge placed the following
statements in the same section of the website, side by side: "Compra tu terreno -
Deje de pagar renta y adquiera su propio terreno! Servicios de agua, luz y drenaje
incluidos. ¡Asegure su futuro hoy mismo!" ("Buy a lot - Stop paying rent and
acquire your own lot! Water, power, and sewer services included. Secure your
future today!") and "Fácil financiamiento - Financiamiento directo, bajo enganche
y cómodos pagos. ¡Todos califican, no se verifica el crédito!" ("Easy Financing -
Direct financing, low down payment, and easy payments. Everyone qualifies, we
don't check credit!").

53.     In fact, Colony Ridge sells many lots in the Terrenos Houston
Subdivisions without the existing infrastructure necessary to connect utilities.

54.     As Colony Ridge acknowledges in writing, including in documents
that it provides consumers *after* consumers pay a non-refundable option fee, lots in
the Terrenos Houston Subdivisions may be sold without the infrastructure
necessary to connect utilities. These documents include the Pre-Development
Disclosure Notice, the Intrastate Exemption Statement, and the Declaration of
Covenant, Conditions, and Restrictions, which are provided only in English.

55.     Colony Ridge knows or should know that its representations that the
lots in the Terrenos Houston Subdivisions are sold with the infrastructure to

connect water, sewer, and electrical services pre-installed are false. Colony Ridge develops, sells, and reacquires such lots after foreclosing on them. Colony Ridge also retains certain rights in the lots and subdivisions post-sale. As a result, Colony Ridge possesses extensive information about the true conditions of its own lots and subdivisions, yet repeatedly broadcasts false information to consumers in its advertisements.

### *Representations of the Lots as Homesites or Building Lots*

56.    In Spanish-language marketing and advertising, Colony Ridge repeatedly represents or implies, through images and videos posted online, that lots in the Terrenos Houston Subdivisions are homesites or building lots.

57.    For example, on TikTok, Colony Ridge told consumers: "Los tenemos … una zona que tiene crecimiento donde puedes tener propiedades de cualquier tipo. Puedes construir a tu gusto, mobile home también tiene la opción" ("We have … an area that is growing where you can have properties of any type. You can build however you'd like, you can even bring a mobile home").

58.    In another TikTok post, Colony Ridge told consumers: "Les quiero mostrar a ustedes uno de los proyectos más importantes acá en nuestros terrenos— esas constructoras de casas, tenemos lo que es ASGI HOMES, tenemos FIRST AMERICA HOMES, CASAS HOUSTON, y mucho más para que ustedes aprovechen para los que quieren casa con terreno" ("I want to show you one of the most important projects here on our land—those home builders, we have ASGI HOMES, we have FIRST AMERICA HOMES, CASAS HOUSTON, and much more for you to take advantage of for those who want a house with land").

59.    Likewise, on terrenoshouston.com, Colony Ridge stated: "Terrenos en venta: Listo para moverse - ¡Traiga su casa móvil o construya su hogar" ("Lots for sale: Ready to move in - Bring your mobile home or build your home").Promotional materials for Colony Ridge support this representation by

featuring images and videos of land that is clear and level, sometimes with homes either built or in the process of being built.

*Prize Offers to Induce Visits*

60.    To induce prospective buyers to visit the Terrenos Houston Subdivisions or to purchase a lot in the Terrenos Houston Subdivisions, Colony Ridge often offers gifts on social media.

61.    For example, on Facebook, Colony Ridge posted an image featuring a tractor. The image contained the words "¡Gana un tractor! Visítanos y gana un espectacular tractor" ("Win a tractor! Visit us and win a spectacular tractor"), while the image's description stated "¡¡Gente bonita, llamen ahora y programen una visita a los terrenos y participen por un espectacular TRACTOR GRATIS!!" ("Beautiful people, call now and schedule a tour of the lots and enter for a spectacular FREE TRACTOR!!").

62.    Similarly, on Instagram, Colony Ridge posted an image featuring a grill. The image contained the words "Visítanos y llévate PREMIOS AL INSTANTE – Las primeras 15 familias que lleguen a nuestra oficina antes de la 1pm se llevan una parrilla – 15 PARRILLAS" ("Visit us and get INSTANT PRIZES – The first 15 families that arrive at our office before 1pm get a grill – 15 GRILLS"). The image's description added "!!!!!!GANA UNA PARRILLA!!! Las primeras 15 familias que nos visitan ESTE FIN DE SEMANA se llevan un GRILL GRATIS ANTES DE LA 1 PM" (emojis omitted) ("WIN A GRILL!!! The first 15 families that visit us BEFORE 1 PM THIS WEEKEND get a FREE GRILL").

63.    And again on Instagram, Colony Ridge posted an image featuring the five members of La Fiera de Ojinaga, a Mexican regional music group. The image contained the words "¿QUIERES GANARTE BOLETOS? PARA IR A VER LA FIERA DE OJINAGA – VISÍTANOS Y PARTICIPA CON ENTRADAS AL CARNAVAL!" ("DO YOU WANT TO WIN TICKETS? TO GO SEE LA FIERA

DE OJINAGA – VISIT US AND PARTICIPATE WITH ENTRY TICKETS TO THE FAIR!").

### *Sales Practices and Seller-Financed Extensions of Credit*

64.     Since at least 2011, Colony Ridge has offered seller-financed loans to consumers who agree to purchase a lot in the Terrenos Houston Subdivisions through Colony Ridge Land.

65.     Since at least 2016, Colony Ridge has used the mortgage company Loan Originator Services to originate its seller-financed loans. Under this arrangement, Colony Ridge Land is still recorded as the lender on filings with the Liberty County Clerk and services the seller-financed loans, in addition to retaining the notes and the right to foreclose on the properties.

66.     The process of purchasing a lot in the Terrenos Houston Subdivisions consists of a Property Visit, during which Colony Ridge shows consumers the lots for sale in person; a Pre-Closing, during which Colony Ridge initiates the extension of the seller-financed mortgage; and the Closing, during which Colony Ridge completes the extension of the seller-financed mortgage.

67.     Colony Ridge does not restrict the sales of lots in the Terrenos Houston Subdivisions to residents of the State of Texas, previously stating on the terrenoshouston.com website that "[t]odos aplican" ("all apply"), and has sold lots to consumers who resided outside of Texas at the time of their lot purchase in the Terrenos Houston Subdivisions.

### A. Property Visit

68.     Most purchases of Terrenos Houston Subdivisions begin with a site visit conducted by a Colony Ridge salesperson who shows consumers one or more properties, presents consumers with between one and three financing options at significantly above market interest rates, and employs high-pressure sales tactics to obtain a purchase commitment and collect a deposit.

69.    Where Spanish is the consumer's primary language, Colony Ridge employees generally speak in Spanish with consumers during the Property Visit, Pre-Closing, and Closing. But, as noted herein, Colony Ridge provides key documents related to the transaction in English only.

70.    The Property Visit typically begins at the Colony Ridge office in New Caney, Texas, with an in-person appointment involving the consumer and a Colony Ridge sales assessor (the equivalent of a salesperson). Consumers then follow the Colony Ridge sales assessors out to the Terrenos Houston Subdivisions to see lots for sale.

71.    Colony Ridge sales assessors offer consumers a choice of loan repayment lengths, typically between 5 and 20 years.

72.    Colony Ridge sales assessors offer consumers a fixed interest rate of 10.9 percent, 11.9 percent, or 12.9 percent, depending on the down payment.

73.    Colony Ridge's interest rates are significantly higher than typical prevailing rates: standard 20-year fixed rate home loans averaged between 2.35 percent to 4.05 percent between 2017 to 2021. To illustrate the impact on consumers, the difference between a 4.05 percent and a 10.9 percent interest rate on a $45,000 loan with a 20-year repayment term is approximately $45,000 in additional interest over the life of the loan.

74.    Colony Ridge's high interest rates are not based on any individualized assessment of risk related to a consumer's actual likelihood of repaying the loan.

75.    Colony Ridge sales assessors engage in high-pressure tactics, such as encouraging consumers to act quickly because the parcel they are interested in will sell quickly.

76.    Once consumers agree to the proposed pricing and loan terms, Colony Ridge sales assessors complete a sales card for internal use, which includes an acknowledgement of a property walkthrough with the consumers.

77.     Colony Ridge sales assessors then collect a deposit from consumers to reserve the lot.

78.     Colony Ridge sales assessors input the consumer's name, address, identification numbers, and self-reported gross monthly income into an English-language form titled "Worksheet" or "Application."

79.     A section of this "Worksheet" or "Application" is titled "Price and Financing Information," and lists the sales price, discount, down payment, finance amount, monthly payment, the date of the first payment due, the name of the seller and creditor, the interest rate and term, the escrow and deposit amounts, and the amount due at closing.

80.     Colony Ridge sales assessors generally do not request, and do not collect from the consumer, any documentation substantiating the consumer's self-reported gross monthly income.

81.      Colony Ridge sales assessors do not request, and do not collect from the consumer, any documentation showing the consumer's debts, financial obligations, or other liabilities.

82.     Colony Ridge sales assessors do not provide consumers with a Property Report pursuant to Sections 1703 and 1707 of ILSA, either before any contract or agreement is signed, or at any other time.

### B. Pre-Closing

83.     The Pre-Closing begins after Colony Ridge sales assessors and their assigned consumers return to the Colony Ridge office in New Caney, Texas. There, Colony Ridge sales assessors transfer their consumers to Colony Ridge notaries, which Colony Ridge refer to as "notarios" or "notarias" in Spanish.

84.     Unlike notaries public in the United States, in Latin American countries, a "notario publico" (which translates to "notary public") is a trained professional or lawyer who can provide legal advice and draft legal documents.

85.     Colony Ridge notaries are not trained professionals licensed to provide legal advice and draft legal documents.

86.     The majority of Colony Ridge notaries are not licensed to originate loans in the State of Texas.

87.     Colony Ridge notaries review the consumer's two forms of identification and the sales card.

88.     Colony Ridge notaries do not request, and do not collect from the consumer, any documentation substantiating the consumer's self-reported gross monthly income.

89.     Colony Ridge notaries do not request, and do not collect from the consumer, any documentation showing the consumer's assets, debts, financial obligations, or other liabilities.

90.     Colony Ridge notaries enter the consumer's information into an origination software program that belongs to Loan Originator Services which, in turn, generates origination disclosures and documents (Pre-Closing documents), including an Application for Financing, an Intrastate Exemption Statement, a Pre-Development Disclosure Notice, a Mortgage and Loan Analysis, and a Land Purchase Agreement. These Pre-Closing documents are entirely in English.

91.     Colony Ridge notaries verbally review the Pre-Closing documents obtained from the Loan Originator Services software with the consumer, in Spanish if that is the consumer's primary language, and collect the consumer's signatures and initials, as applicable.

92.     This verbal review is not an exact translation of the Pre-Closing documents from English to Spanish and, therefore, does not adequately convey the terms and conditions of the loan to consumers.

93.     Colony Ridge notaries then submit the Pre-Closing documents to Loan Originator Services for review.

94.     During the Pre-Closing, a Colony Ridge employee obtains an earnest money fee and a nonrefundable option fee from consumers.

95.     Colony Ridge notaries set up a Closing appointment, which typically takes place approximately eight days after the Pre-Closing.

96.     Colony Ridge notaries provide consumers with copies of the Pre-Closing documents.

97.     Colony Ridge does not attach any translation to the Pre-Closing documents.

98.     Colony Ridge notaries do not furnish a Property Report pursuant to Sections 1703 and 1707 of ILSA to consumers, either before any contract or agreement is signed, or at any other time.

99.     Consumers later return to the Colony Ridge office in New Caney, Texas, for their Closing appointment.

## C. Closing

100.    During the Closing, Colony Ridge notaries present consumers with Closing documents—including a Deed of Trust, a Warranty Deed with Vendor's Lien, a Promissory Note, a final Closing Disclosure, and an Identity Affidavit—for the consumer to sign and initial, as applicable. These Closing documents are entirely in English.

101.    Colony Ridge does not attach any translation to the Closing documents.

102.    Colony Ridge notaries have represented to consumers who asked questions or expressed concerns about the terms of the agreement that their only alternative is to abandon the transaction and lose their initial deposit.

103.    Colony Ridge notaries have rushed consumers to sign and initial documents, while dismissing questions or requests for clarifications.

104.    Before the credit transaction is complete, Colony Ridge notaries obtain a document processing fee from consumers.

105.    Sometime before the credit transaction is complete, Colony Ridge notaries provide consumers with information about the Houston El Norte Property Owners Association, Inc. (POA), a master property owners association that oversees sections of the Terrenos Houston Subdivisions, and to whom consumers are required to pay a monthly fee.

106.    Lots in the Terrenos Houston Subdivisions are each subject to a POA Declaration of Covenant, Conditions, and Restrictions, pursuant to which Colony Ridge Development and Colony Ridge BV retain certain rights post-sale. The Declarations of Covenant, Conditions, and Restrictions are entirely in English.

107.    Among other things, the POA Declaration of Covenant, Conditions, and Restrictions requires owners of lots in the Terrenos Houston Subdivisions to secure utility permits before construction on any lot, and reserves for Colony Ridge Development or Colony Ridge BV "the right to request and verify that all necessary permits have been secured."

108.    Colony Ridge executive John Monroe Harris (Harris) historically has signed several sales documents for Colony Ridge Development and Colony Ridge BV, as the President of T-Rex Management, Inc. (T-Rex Management), a Texas corporation that has at times acted as a manager of Terrenos Houston. These documents typically include the Pre-Closing documents such as the Land Purchase Agreement, the Addendum to Land Purchase Agreements, the Third-Party Financing Addendum, and the Warranty Deed.

109.    After the Closing, Colony Ridge records the Deed of Trust and Warranty Deed with a Vendor's Lien with the Liberty County Clerk.

### *Loan Originator Services' Role in Extensions of Credit*

110.   Since at least August 2015, Loan Originator Services has been party to an agreement with Colony Ridge Land, pursuant to which it originates loans for Colony Ridge Land in exchange for a flat fee of $100.00 per origination for undeveloped residential lots and 1 percent of any home loan—but no less than $800.00—for lots that include a dwelling.

111.   Until at least April 2022, Gayle Campbell, the Managing Member of Loan Originator Services, had an office in the Terrenos Houston office, dedicated solely to her work for Colony Ridge Land.

112.   From 2014 until at least April 2022, Loan Originator Services provided Colony Ridge an updated spreadsheet each week, detailing the interest rate, loan term, and resulting monthly payment for each lot on sale in the Terrenos Houston Subdivisions.

113.   During each Pre-Closing, a Loan Originator Services processor receives the Pre-Closing documents submitted by the Colony Ridge notaries and enters information into the Pre-Closing documents; verifies fees, pricing, and the down payment amount; creates certain disclosure documents; and checks the consumers' identification.

114.   During each Pre-Closing, a Loan Originator Services licensed residential mortgage originator reviews the Pre-Closing documents and, if no changes are needed, signs the Application for Financing and the Texas Mortgage Company Disclosure.

115.   Loan Originator Services does not request, and does not collect from the consumer, any documentation substantiating the consumer's self-reported gross monthly income at any point during the Colony Ridge credit transactions.

116.   Loan Originator Services does not request, and does not collect from the consumer, any documentation showing the consumer's assets, debts, financial

obligations, or other liabilities at any point during the Colony Ridge credit transactions.

117.   In most Colony Ridge credit transactions, the consumer does not directly engage with any Loan Originator Services representative at any point.

### *Omissions of Total Estimated Costs of Constructing and Installing Infrastructure to Connect Utility Service on the Lots*

118.   Colony Ridge provides the Pre-Closing Documents to consumers in English only, including, as noted above, an Intrastate Exemption Statement, a Pre-Development Disclosure Notice, and a Land Purchase Agreement.

119.   The Intrastate Exemption Statement, Pre-Development Disclosure Notice, and Land Purchase Agreement do not provide estimated costs of constructing and installing the water system, such as, but not limited to, the costs of installation or construction of water mains, storage, any treatment facilities and other necessary equipment, or the costs of obtaining any required permits for this pre-service work.

120.   The Intrastate Exemption Statement, Pre-Development Disclosure Notice, and Land Purchase Agreement do not provide estimated costs of constructing and installing the sewer system, such as, but not limited to, the costs of obtaining required permits and of any construction or installation of sewer mains.

121.   The Intrastate Exemption Statement, Pre-Development Disclosure Notice, and Land Purchase Agreement do not provide estimated costs of constructing and installing the infrastructure necessary to connect electrical service, such as, but not limited to, the costs of obtaining any required permits and of any construction or installation of any lines or power poles.

122.   Colony Ridge Development and Colony Ridge BV knew or should have known their omissions of the estimated costs of constructing and installing

22

the infrastructure to connect water service, sewer service, and electrical service caused other representations about the cost of connecting utility services in the sale documents to be misleading. Colony Ridge Development and Colony Ridge BV develop, sell, and reacquire such lots post-foreclosure. Colony Ridge Development and Colony Ridge BV also retain certain rights in the subdivisions post-closing. As a result, Colony Ridge Development and Colony Ridge BV possess extensive information about the conditions of their own lots and subdivisions, including the fact that many lots lack the infrastructure to connect water service, sewer service, and electrical service.

### *Hidden Post-Sale Expenses, Foreclosures, and Property-Flipping*

123.    After the Closing, consumers in the Terrenos Houston Subdivisions have experienced financial strain from the significant hidden expenses required to ready the land for a dwelling, including to mitigate the effects of flooding on their properties.

124.    For example, parts of the Terrenos Houston Subdivisions have experienced significant flooding when it rains, which can cause various problems for consumers, such as impeding their ability to build a dwelling, causing raw sewage to run through or around their land, and damaging their personal property.

125.    During the Property Visit, consumers report that Colony Ridge sales assessors did not inform them about any flooding risk. To the contrary, consumers report that Colony Ridge employees represented to them that their lots did not or would not flood.

126.    After the Closing, consumers who purchased in the Terrenos Houston Subdivisions have spent hundreds, and sometimes thousands, of dollars toward installing the infrastructure necessary to connect water, sewer, and electrical services on their property.

127.   After the Closing, consumers in the Terrenos Houston Subdivisions have struggled to repay the high-interest, seller-financed mortgages that Colony Ridge and Loan Originator Services extended to them without first assessing what they could realistically afford.

128.   After the Closing, consumers in the Terrenos Houston Subdivisions have defaulted on their Colony Ridge seller-financed mortgages, often soon after entering the transactions, and lost their land before being able to build or install any dwelling.

129.   After consumers default, Colony Ridge initiates a non-judicial foreclosure process, which includes serving a notice of sale on the consumers.

130.   As part of the foreclosure process, Colony Ridge typically appoints a substitute trustee to represent Colony Ridge Land in the foreclosure sales.

131.   As part of the foreclosure process, Colony Ridge Land repurchases the properties "for the outstanding loan price" and "as is," including all equity and utility-related improvements that consumers made to the lots. In other words, Colony Ridge reimburses itself for the defaulted amount and pockets the value of any such improvements.

132.   As a result of the foreclosure process, consumers in the Terrenos Houston Subdivisions have lost equity in the property and improvements they made to their lots.

133.   After the foreclosure process is complete, Colony Ridge Land transfers the repurchased properties back to either Colony Ridge Development or Colony Ridge BV.

134.   After the foreclosure process is complete, Colony Ridge then relists the properties on the market, often at a higher price than the previous sale, without regard to whether the lot remains vacant.

135.   For example, Liberty County property deed records show that Colony Ridge sold the property located at 858 Road 5603, Cleveland, TX 77327 (Santa Fe Subdivision), to Borrower 1 in mid-May 2020, for around $29,580. *See* Table 1. By mid-December 2020, Colony Ridge had foreclosed on the property, repurchased it, and sold it to Borrower 2 for around $43,530, a 47 percent increase from the previous sales price. In August 2021, Colony Ridge foreclosed on Borrower 2 and flipped the property to Borrower 3 for around $64,050, another 47 percent increase from the previous sales price. Records from the Liberty County Central Appraisal District (CAD) show that the value of "improvements" to this parcel remained at $0 during this period.[1]

*Table 1*. Transaction History of "858 Road 5603."

| Date | Transaction | Amount of Note Principal |
|---|---|---|
| May 16, 2020 | Colony Ridge → Borrower 1 | $29,580 |
| **Dec. 1, 2020** | **Foreclosure Sale** | |
| Dec. 17, 2020 | Colony Ridge → Borrower 2 | $43,530 |
| **Aug. 3, 2021** | **Foreclosure Sale** | |
| Aug. 21, 2021 | Colony Ridge → Borrower 3 | $64,050 |
| **Aug. 2, 2022** | **Foreclosure Sale** | |

### *Common Enterprise*

136.   Colony Ridge Land has extended, owned, and serviced all the seller-financed mortgages that consumers used to purchase the lots in the Terrenos Houston Subdivisions from either Colony Ridge Development or Colony Ridge BV.

137.   Colony Ridge Development and Colony Ridge Land are each subsidiaries of, and fully owned by, Colony Ridge, Inc.

---

[1] The Liberty County CAD uses the term "improvement" as it is defined in the Texas Property Tax Code, to refer taxable structures or fixtures located on the property, including buildings, fences, and transportable structures designed for residential or business purposes. *See* Liberty County Central Appraisal District FAQs, *available at* https://libertycad.com/frequently-asked-questions/. (Last Accessed on December 19, 2023).

138. Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land are all controlled by at least one common executive, insofar as:

    a. Harris is or has been the President and Director of Colony Ridge, Inc.;

    b. Harris is or has been an officer of Colony Ridge Development;

    c. Harris is or has been an officer of Colony Ridge BV;

    d. Harris is or has been the President and Treasurer of Colony Ridge Land;

    e. Harris has been an indirect owner of Colony Ridge Development and Colony Ridge Land, through his ownership stake in Colony Ridge, Inc., since at least 2018;

    f. Harris is or has been the President and Director of T-Rex Management, which has acted as a manager of, and signatory for, Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land in certain business activities related to the sale, management, and foreclosure of Terrenos Houston properties; and

    g. Harris is or has been a Director of the master POA, which permits Terrenos Houston to retain some control over the Terrenos Houston Subdivisions post-sale.

139. Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land all are or have been registered at the same post office box in Huntsville, Texas.

140. Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land employees all conduct or have conducted business out of the Terrenos Houston office in New Caney, Texas.

141. Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land employees all accept or have accepted mail or payments at the same post office box in Fresno, Texas.

142.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land employees all are or have been paid through Colony Ridge Land.

143.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land all host or have hosted their employee email addresses on the domain "colonyridge.com."

144.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land share or have shared employees. For example, notaries in the Colony Ridge office in New Caney, Texas, have been involved in both the sales transactions on behalf of Colony Ridge Development or Colony Ridge BV, and in the Pre-Closing and Closing, on behalf of Colony Ridge Land.

145.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land have advertised and marketed the Terrenos Houston Subdivisions using the names "Colony Ridge" and "Terrenos Houston."

146.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land have advertised and marketed the Terrenos Houston Subdivisions jointly, as supported by the fact that:

    a.   Colonyridge.com has been copyrighted to Colony Ridge Land, and colonyridge.com's home page has prominently displayed Colony Ridge Land's Nationwide Multistate Licensing System & Registry (NMLS) number.

    b.   Colonyridge.com's "Subdivisions" page has advertised and marketed the Terrenos Houston Subdivisions exclusively.

    c.   Colonyridge.com's home page has contained an "ENCONTRE PROPIEDAD EN VENTA" / "FIND PROPERTY FOR SALE" page that, when viewed in English, opened to a page that stated, "Colony Ridge Development, LLC has residential subdivisions with half-acre residential lots and other properties available in many areas." Below

that statement was a button labeled "Terrenos Houston," which redirected the consumer to terrenoshouston.com.

    d.  Terrenoshouston.com has advertised and marketed the Terrenos Houston Subdivisions exclusively.

    e.  Terrenoshouston.com has been copyrighted to current Colony Ridge Development alias "Terrenos Houston," while terrenossantafe.com has been copyrighted to current Colony Ridge Development alias "Terrenos Santa Fe."

    f.  Terrenosparkway99.com has advertised and marketed the Terrenos Houston Subdivisions exclusively.

    g.  Terrenosparkway99.com has displayed the same physical address as Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land.

147.   Colony Ridge Land has offered collateral, consisting of promissory notes and liens payable to Colony Ridge Land and secured by consumer-owned properties in the Terrenos Houston Subdivisions, to support Colony Ridge Development's acquisition of one or more large bank loans.

148.   Because the three corporations that comprise Colony Ridge—Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land—operate as a common enterprise, each corporation is jointly and severally liable for the illegal acts committed by the other two corporations.

### *ILSA Registration with the Bureau*

149.   Colony Ridge Development and Colony Ridge BV have never filed an initial Statement of Record with the Bureau.

150.   Colony Ridge Development and Colony Ridge BV have never paid the fee required to file an initial Statement of Record with the Bureau.

151.   Colony Ridge Development and Colony Ridge BV have never filed Annual Reports of Activity with the Bureau.

152.   Colony Ridge Development and Colony Ridge BV have never paid the fees required to file Annual Reports of Activity with the Bureau.

## LEGAL BACKGROUND

### *ECOA and Regulation B*

153.   ECOA and Regulation B prohibit creditors from discriminating in any aspect of a credit transaction based on an applicant's race, national origin, and other characteristics. 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 1002.4(a).

154.   One form of discrimination prohibited under ECOA is discriminatory targeting (also called "reverse redlining" or "targeted predatory lending"). Discriminatory targeting is the unlawful act of targeting applicants on a prohibited basis, most commonly communities of color, for predatory credit products or practices. Discriminatory targeting may be proven through, *inter alia*, evidence of intentional targeting on a prohibited basis.

155.   ECOA defines a "creditor" to include any person who regularly extends, renews, or continues credit, or who regularly arranges for the extension, renewal, or continuation of credit. 15 U.S.C. § 1691a(e).

156.   Regulation B defines a "creditor" as any person who, in the ordinary course of business, regularly participates in a credit decision, including in setting the terms of the credit; or who regularly refers applicants or prospective applicants to creditors; or who selects or offers to select creditors to whom requests for credit may be made. 12 C.F.R. § 1002.2(l).

157.   Colony Ridge Development and Colony Ridge BV regularly arrange for the extension of credit to consumers and, in the ordinary course of business, regularly set the terms of the credit, regularly refer applicants to Colony Ridge Land, and exclusively select Colony Ridge Land as the creditor from whom

consumers can request credit to purchase lots in the Terrenos Houston Subdivisions.

158.   Colony Ridge Land extends or regularly arranges for the extension of seller-financed loans, regularly participates in credit decisions, and regularly refers applicants to Loan Originator Services.

159.   Loan Originator Services regularly participates in the decision of extending credit to consumers seeking to purchase lots in the Terrenos Houston Subdivisions.

160.   Defendants are therefore each "creditors" within the meaning of 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l).

### The FHA

161.   The FHA prohibits discrimination on the basis of race or national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, 42 U.S.C. § 3605(a); the making unavailable or denial of dwellings to persons because of race or national origin, 42 U.S.C. § 3604(a); and discrimination on the basis of race or national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings. 42 U.S.C. §§ 3604(a)-(b), 3605(a).

162.   Like ECOA, the FHA prohibits discriminatory targeting in residential loans and related services.

163.   Defendants engaged in "residential real estate-related transactions" under the FHA. 42 U.S.C. § 3605.

164.   "Dwellings," as defined by the FHA, includes vacant land offered for sale or lease for the construction or location thereon of any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families. 42 U.S.C. § 3602(b).

165.    The lots in the Terrenos Houston Subdivisions are "dwellings" under the FHA.

166.    Defendants are subject to the FHA and its implementing regulations. 24 C.F.R. Part 100.

### *The CFPA*

167.    The CFPA prohibits covered persons from engaging in unfair, deceptive, or abusive acts or practices. 12 U.S.C. §§ 5531, 5536(a)(1)(B).

168.    An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances.

169.    Any act or omission in violation of a federal consumer financial law also violates the CFPA. 12 U.S.C. §§ 5536(a)(1)(A), 5481(12), 5481(14).

170.    The CFPA defines a "covered person" to include any person that engages in offering or providing a consumer financial product or service, as well as any affiliate of such a covered person that also acts as a service provider to such a covered person. 12 U.S.C. § 5481(6)(A)-(B).

171.    The CFPA defines an "affiliate" to include any person that controls, is controlled by, or is under common control with another person. 12 U.S.C. § 5481(1).

172.    The CFPA defines a "service provider" to include any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service. 12 U.S.C. § 5481(26)(A).

173.    Colony Ridge Land and Loan Originator Services are "covered persons" under the CFPA because they each extend credit. 12 U.S.C. § 5481(15)(A)(i).

174.   Colony Ridge Development and Colony Ridge BV each provide a material service in connection with Colony Ridge Land's offering or provision of a consumer financial product.

175.   Colony Ridge Development and Colony Ridge BV are under common control with Colony Ridge Land. As such, they are affiliates of Colony Ridge Land.

176.   Colony Ridge Development and Colony Ridge BV are also "covered persons" because they are "affiliates" and "service providers" within the meaning of the CFPA. 12 U.S.C. § 5481(1), 5481(6)(B), 5481(26)(A).

### *ILSA, Regulation J, and Regulation K*

177.   ILSA protects consumers by prohibiting any developer or agent, directly or indirectly, from using any instruments of communication in interstate commerce to sell or offer to sell any lot by obtaining money using either an untrue statement of a material fact pertinent to the lot or subdivision, or an omission of a material fact, where the fact is both pertinent to the lot or subdivision and necessary to make the statements made not misleading in light of the circumstances in which they were made and within the context of the overall offer and sale. 15 U.S.C. § 1703(a)(2)(B).

178.   Regulation K implements Section 1703 of ILSA by prohibiting any developer or agent, directly or indirectly, from selling or offering to sell any lots in a subdivision, directly or indirectly, by representing a lot as a homesite or building lot unless the lot is "free from periodic flooding." 12 C.F.R. § 1011.20(i).

179.   Regulation K also prohibits any developer or agent, directly or indirectly, from selling or offering to sell any lots in a subdivision, directly or indirectly, by using a note, contract, deed, or other document prepared in a language other than that in which the sales campaign is conducted, unless an accurate translation is attached to the document. 12 C.F.R. § 1011.20(f).

180.   ILSA further protects consumers by prohibiting any developer or agent, directly or indirectly, from using any instruments of communication in interstate commerce to sell any lot, unless a Statement of Record is in effect with respect to such lot and a printed Property Report has been furnished to the purchaser in advance of the purchaser signing any contract or agreement. 15 U.S.C. § 1703(a)(1)(A)-(B). A fee of $800 or $1,000 applies to file an initial Statement of Record, depending on the number of unsold lots at the time of filing. 12 C.F.R. § 1010.35(b); 12 C.F.R. Appendix A to Part 1010.

181.   ILSA also protects consumers by prohibiting any developer or agent, directly or indirectly, from using any instruments of communication in interstate commerce to sell or offer to sell any lot by displaying or delivering to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report. 15 U.S.C. § 1703(a)(1)(D).

182.   Regulation J requires developers to file with the Director of the Bureau an Annual Report of Activity on any initial or consolidated registration not under suspension, within 30 days of the annual anniversary of the effective date of the initial Statement of Record. 12 C.F.R. § 1010.310(a)-(b). A fee of $800 applies to each filing of an Annual Report, unless the developer has 100 or fewer unsold lots included in the Statement of Record. 12 C.F.R. § 1010.35(d)(1).

183.   Each of the Terrenos Houston Subdivisions is, and at all times relevant to this proceeding has been, a "subdivision" as that term is defined under ILSA. 15 U.S.C. § 1701(3).

184.   Colony Ridge Development and Colony Ridge BV both are, and at all times relevant to this proceeding have been, a "developer" as that term is defined under ILSA because they each directly or indirectly sold, offered to sell, or advertised for sale lots in the Terrenos Houston Subdivisions. 15 U.S.C. § 1701(5).

185.   Colony Ridge Development and Colony Ridge BV have sold and offered for sale in the Terrenos Houston Subdivisions parcels that constituted a "lot" within the meaning of Regulation J, 12 C.F.R. § 1010.1(b), and that were not exempt under 15 U.S.C. § 1702.

186.   Colony Ridge Development and Colony Ridge BV, directly or indirectly, have used means or instruments of communication in interstate commerce with respect to the sale of non-exempt lots, by offering to sell lots in the Terrenos Houston Subdivisions on the internet and in telemarketing phone calls.

## COUNT I

**Violation of ECOA and Regulation B: Pattern or Practice of Discrimination**

**(By the Consumer Financial Protection Bureau**

**and the United States of America)**

**(Against All Defendants)**

187.   Plaintiffs incorporate by reference and restate the allegations in the paragraphs above.

188.   Defendants' acts and practices constitute unlawful discrimination against applicants, including by targeting Hispanic applicants on the basis of race or national origin with predatory seller financing, in violation of ECOA and Regulation B. 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 1002.4(a).

189.   Defendants' acts and practices constitute a pattern or practice of discrimination, in violation of ECOA. 15 U.S.C. § 1691(a)(1).

190.   Defendants' pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race or national origin.

191.   Persons who have been victims of Defendants' discriminatory acts and practices are "aggrieved" and may have suffered damages as a result of the

Defendants' conduct in violation of ECOA, as described above, for which Defendants are liable. 15 U.S.C. § 1691e(a).

## COUNT II

### Violations of the FHA

### (By the United States of America)

### (Against All Defendants)

192.    The United States incorporates by reference and restates the allegations in the paragraphs above.

193.    Defendants' acts and practices constitute unlawful discrimination, including by targeting Hispanic applicants on the basis of race or national origin with predatory seller financing and exploiting applicants' limited English proficiency, in violation of the FHA.

194.    Defendants' actions as alleged herein constitute:

   a. discrimination on the basis of race and national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation of the FHA, 42 U.S.C. § 3605(a), and its implementing regulation, 24 C.F.R. §§ 100.110(b), 100.120;

   b. the making unavailable or denial of dwellings to persons because of race and national origin, in violation of the FHA, 42 U.S.C. § 3604(a), and its implementing regulation, 24 C.F.R. § 100.50(b)(3); and

   c. discrimination on the basis of race and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the FHA, 42 U.S.C. § 3604(b), and its implementing regulation, 24 C.F.R. §§ 100.50(b)(2), 100.65.

195.   Defendants' policies and practices as alleged herein constitute, pursuant to 42 U.S.C. § 3614(a):

   a. a pattern or practice of resistance to the full enjoyment of rights secured by the FHA; and

   b. a denial of rights granted by the FHA to a group of persons that raises an issue of general public importance.

196.   Defendants' pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race and national origin.

197.   Persons who have been victims of Defendants' discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i) and may have suffered damages as a result of Defendants' conduct in violation of the FHA, as described above.

## COUNT III

### Violation of the CFPA: Deceptive Acts or Practices
### (By the Consumer Financial Protection Bureau)
### (Against Colony Ridge Development, Colony Ridge BV,
### and Colony Ridge Land)

198.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

199.   In advertising and offering seller financing to purchase lots in the Terrenos Houston Subdivisions, Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land have misrepresented, directly or indirectly, expressly or by implication, that these seller-financed lots are all sold with the infrastructure necessary to connect water, sewer, and electrical services pre-installed.

200.   The misrepresentations concerned a central characteristic of the only product consumers could purchase with the seller financing and were thus both

material to the consumers' understanding of the seller financing offered and likely to mislead consumers acting reasonably under the circumstances.

201.   Colony Ridge Development, Colony Ridge BV, and Colony Ridge Land therefore have engaged in deceptive acts or practices in violation of the CFPA. 12 U.S.C. §§ 5531, 5536.

<h3 align="center">COUNT IV</h3>

<strong>Violation of ILSA and Regulation J:</strong>

<strong>Unlawful Sale of Non-Exempt Lots Without Statement of Record</strong>

<strong>(By the Consumer Financial Protection Bureau)</strong>

<strong>(Against Colony Ridge Development and Colony Ridge BV)</strong>

202.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

203.   Colony Ridge Development and Colony Ridge BV have neither filed an initial Statement of Record with the Bureau nor paid the corresponding fee.

204.   Colony Ridge Development and Colony Ridge BV therefore have unlawfully sold non-exempt lots without a Statement of Record in effect, in violation of ILSA and Regulation J. 15 U.S.C. § 1703(a)(1)(A); 12 C.F.R. § 1010.3.

<h3 align="center">COUNT V</h3>

<strong>Violation of ILSA and Regulation J:</strong>

<strong>Unlawful Sale of Non-Exempt Lots Without Property Reports</strong>

<strong>(By the Consumer Financial Protection Bureau)</strong>

<strong>(Against Colony Ridge Development and Colony Ridge BV)</strong>

205.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

206.   Colony Ridge Development and Colony Ridge BV have not furnished purchasers a printed Property Report, in advance of purchasers signing any contract or agreement, with respect to the sale of non-exempt lots.

207.   Colony Ridge Development and Colony Ridge BV therefore have unlawfully sold non-exempt lots without furnishing purchasers with a Property Report, in violation of ILSA and Regulation J. 15 U.S.C. § 1703(a)(1)(B); 12 C.F.R. § 1010.3.

<u>COUNT VI</u>

**Violation of Regulation K:**

**Unlawful Sale of Lots by Using Notes, Contracts, Deeds, and Other Documents Without an Accurate Translation Attached**

**(By the Consumer Financial Protection Bureau)**

**(Against Colony Ridge Development and Colony Ridge BV)**

208.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

209.   Colony Ridge Development and Colony Ridge BV, directly or indirectly, have advertised and marketed lots in the Terrenos Houston Subdivisions in Spanish.

210.   Colony Ridge Development and Colony Ridge BV, directly or indirectly, have conducted sales of lots in the Terrenos Houston Subdivisions in Spanish.

211.   Colony Ridge Development and Colony Ridge BV have used notes, contracts, deeds, or other documents prepared in English to sell lots in the Terrenos Houston Subdivisions, without attaching an accurate Spanish translation to the documents.

212.   Colony Ridge Development and Colony Ridge BV therefore have unlawfully sold lots in a subdivision by using notes, contracts, deeds, or other

documents prepared in a language other than that in which the sales campaign was conducted, without an accurate translation attached to the document, in violation of Regulation K. 12 C.F.R. § 1011.20(f).

## COUNT VII

**Violation of Regulation K:**

**Unlawful Sale of Lots by Representing Lots as Free from Periodic Flooding**

**(By the Consumer Financial Protection Bureau)**

**(Against Colony Ridge Development and Colony Ridge BV)**

213. The Bureau incorporates by reference and restates the allegations in the paragraphs above.

214. Colony Ridge Development and Colony Ridge BV, directly or indirectly, have displayed to prospective purchasers advertising and promotional materials that were inconsistent with information required to be disclosed in the Property Report.

215. Colony Ridge Development and Colony Ridge BV have sold or offered to sell lots in a subdivision by, directly or indirectly, representing that lots in the Terrenos Houston Subdivisions were homesites or building lots.

216. Lots in the Terrenos Houston Subdivisions have experienced periodic flooding.

217. Colony Ridge Development and Colony Ridge BV therefore have unlawfully sold lots in a subdivision by representing them as homesites or building lots, even though the lots were not free from periodic flooding, in violation of Regulation K. 12 C.F.R. § 1011.20(i)(4).

## COUNT VIII

**Violation of ILSA:**

**Obtaining Money by Untrue Statements or Omissions of Material Facts**

**(By the Consumer Financial Protection Bureau)**

**(Against Colony Ridge Development and Colony Ridge BV)**

218.    The Bureau incorporates by reference and restates the allegations in the paragraphs above.

219.    In selling and offering to sell lots in the Terrenos Houston Subdivisions, Colony Ridge Development, Colony Ridge BV, and their agents have falsely represented to purchasers and prospective purchasers that lots are all sold with the infrastructure necessary to connect water, sewer, and electrical services pre-installed. Such statements were both pertinent to each lot and untrue. In fact, Colony Ridge Development and Colony Ridge BV have sold and offered to sell lots in the Terrenos Houston Subdivisions without the infrastructure necessary to connect water, sewer, and electrical services pre-installed.

220.    The misrepresentations concerned a central characteristic of the lots, and thus were both material to consumers' understanding of the characteristics, risks, and value of the lots, including the value of the financing, and likely to mislead consumers acting reasonably under the circumstances.

221.    In selling and offering to sell lots in the Terrenos Houston Subdivisions, Colony Ridge Development and Colony Ridge BV have omitted estimates of the construction and installation costs required to connect water, sewer, and electricity services to the lots. These cost estimates were pertinent to the lot and caused other representations that Colony Ridge Development and Colony Ridge BV made in the sale documents about the cost of connecting utility services to be misleading.

222.    The omissions concerned central characteristics of the lots, and thus were both material to consumers' understanding of the characteristics, risks, and value of the lots, including of the seller financing offered and value of that

financing, and likely to mislead consumers acting reasonably under the circumstances.

223.   Colony Ridge Development and Colony Ridge BV have obtained money by means of making untrue statements of material fact or omitting material facts.

224.   Colony Ridge Development and Colony Ridge BV therefore have violated ILSA. 15 U.S.C. § 1703(a)(2)(B).

## COUNT IX

### Violation of Regulation J: Failure to Timely File Annual Reports of Activity
### (By the Consumer Financial Protection Bureau)
### (Against Colony Ridge Development and Colony Ridge BV)

225.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

226.   Colony Ridge Development and Colony Ridge BV have neither filed an Annual Report of Activity with the Director of the Bureau nor paid the corresponding fees.

227.   Colony Ridge Development and Colony Ridge BV therefore have failed to report information and pay corresponding fees to the Bureau, in violation of Regulation J. 12 C.F.R. § 1010.310.

## COUNT X

### Violation of the CFPA: Based on Violation of ECOA
### (By the Consumer Financial Protection Bureau)
### (Against All Defendants)

228.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

229.   ECOA is a federal consumer financial law. 12 U.S.C. § 5481(12)(D), 5481(14).

230.   Because Colony Ridge Development, Colony Ridge BV, Colony Ridge Land, and Loan Originator Services are "covered persons" that violated ECOA by engaging in unlawful discrimination, these Defendants also violated the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT XI

### Violation of the CFPA: Based on Violation of ILSA
### (By the Consumer Financial Protection Bureau)
### (Against Colony Ridge Development and Colony Ridge BV)

231.   The Bureau incorporates by reference and restates the allegations in the paragraphs above.

232.   ILSA is a federal consumer financial law. 12 U.S.C. § 5481(12)(R), 5481(14).

233.   Because Colony Ridge Development and Colony Ridge BV are "covered persons" that violated ILSA by offering or providing a consumer financial product or service not in conformity with federal consumer financial law, these Defendants also violated the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

Wherefore, the Bureau and the United States request that the Court:

a.     declare that Defendants' acts and practices constitute violations of ECOA, 15 U.S.C. §§ 1691-1691f; the CFPA, 12 U.S.C. §§ 5531, 5536; ILSA, 15 U.S.C. §§ 1701-1720; and the FHA, 42 U.S.C. §§ 3601-3619;

b.     permanently enjoin Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from committing future violations of ECOA, 15 U.S.C. §§ 1691-1691f, and its implementing regulation, Regulation B, 12 C.F.R. Part 1002; the CFPA, 12 U.S.C. §§ 5531, 5536; ILSA, 15 U.S.C. §§ 1701-1720, and its implementing regulations, Regulation J, 12 C.F.R. Part 1010, and Regulation K, 12 C.F.R. Part 1011; and the

FHA, 42 U.S.C. §§ 3601-3619, and its implementing regulations, 24 C.F.R. Part 100;

    c.    permanently enjoin Defendants their agents, employees, and successors, and all other persons in active concert or participation with them, from:

        i.    discriminating on account of race or national origin in any aspect of their lending business practices;

        ii.    failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would be in but for the discriminatory conduct;

        iii.    failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendants' unlawful practices, and from failing or refusing to implement policies and procedures to ensure that Defendants do not discriminate in the future;

        iv.    failing or refusing to attach accurate translations of transactional documents in selling lots;

        v.    misrepresenting the conditions of lots for sale;

        vi.    omitting the costs of connecting utilities on lots for sale; and

        vii.    failing to meet the registration and reporting requirements applicable to developers in the sale of non-exempt lots;

    d.    award additional injunctive relief;

    e.    award consumers and aggrieved persons redress;

    f.    award damages, restitution, equitable, and other monetary relief, under 42 U.S.C. § 3614(d)(1)(B); 15 U.S.C. §§ 1691c(a)(9), 1691e(h); 12 U.S.C. § 5565(a); and 15 U.S.C. §§ 1714, 1717;

g.      award civil-money penalties in an amount authorized by 12 U.S.C. §

5565(c) and 42 U.S.C. § 3614(d)(1)(C);

h.      order the rescission or reformation of contracts obtained by the

discriminatory, abusive, or deceptive practices alleged therein; and

i.      award the Bureau and the United States the costs of bringing this

action, and any other relief the Court deems just and proper.


DATED: December 20, 2023                    Respectfully submitted,


MERRICK GARLAND
Attorney General

KRISTEN CLARKE                              ERIC HALPERIN
Assistant Attorney General                  Enforcement Director
Civil Rights Division

CARRIE PAGNUCCO                             DEBORAH MORRIS
Chief                                       Deputy Enforcement Director

VARDA HUSSAIN                               REBECCAH BOWER
Acting Principal Deputy Chief               Assistant Litigation Deputy


s/ *Melissa A. Carrington*                  s/ *E. Vanessa Assae-Bille*
MELISSA A. CARRINGTON                       E. VANESSA ASSAE-BILLE
Attorney-in-Charge; *pro hac vice pending*  Attorney-in-Charge; *pro hac vice pending*
IA Bar No. 13033                            NY Bar No. 5165501

TERRENCE K. MANGAN, JR.                     ALEXIS C. CHRISTENSEN
*pro hac vice pending*                      *pro hac vice pending*
MD Bar No. 2006010006                       DC Bar No. 1723838

JIMMY S. MCBIRNEY                           ANDREA M. LOWE
*pro hac vice pending*                      *pro hac vice pending*
NY Bar No. 4798799                          DC Bar No. 187250

HANNAH C. ABELOW                            Office of Enforcement
*pro hac vice pending*                      Consumer Financial Protection Bureau
NY Bar No. 5931464                          1700 G Street, NW
                                            Washington, DC 20552
Trial Attorneys                             Tel: (202) 435-7000
Housing and Civil Enforcement Section       Fax: (202) 435-7722
Civil Rights Division                       Email: elisabeth.assae-bille@cfpb.gov
U.S. Department of Justice                          alexis.christensen@cfpb.gov
150 M Street, NE                                    andrea.lowe@cfpb.gov

Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116
Email: melissa.carrington2@usdoj.gov
        terrence.mangan2@usdoj.gov
        jimmy.s.mcbirney2@usdoj.gov
        hannah.abelow@usdoj.gov

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Civil Division
Chief

*s/ Elizabeth F. Karpati*
ELIZABETH F. KARPATI
SDTX: 20567
TX Bar No. 00794069

Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston TX 77002
Tel: (713) 567-9767
Fax: (713) 718-3303
Email: elizabeth.karpati@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*