**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and UNITED STATES OF AMERICA, | § § § § | |
| *Plaintiffs,* | § § § | |
| vs. | § § | CIVIL ACTION NO. 23-CV-4729 |
| COLONY RIDGE DEVELOPMENT, LLC, d/b/a Terrenos Houston, Terrenos Santa Fe, and Lotes y Ranchos; | § § § § § | |
| COLONY RIDGE BV, LLC; | § § § | |
| COLONY RIDGE LAND, LLC, formerly d/b/a Terrenos Houston and Lotes y Ranchos; and | § § § § | |
| LOAN ORIGINATOR SERVICES, LLC, | § § § | |
| *Defendants.* | § § | |

**DEFENDANT LOAN ORIGINATOR SERVICES' MOTION TO DISMISS**

Defendant Loan Originator Services ("LOS") moves to dismiss Plaintiffs Consumer Financial Protection Bureau ("CFPB") and the United States of America's ("United States") suit against it for failure to state a claim upon which relief can be granted, as authorized by Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

This is a discrimination case, in which Plaintiffs allege discriminatory targeting of Hispanic applicants to purchase real estate and associated allegedly predatory financing. Plaintiffs have filed a forty-plus page Complaint with one hundred twenty numbered paragraphs making factual allegations. But a small minority of the facts pleaded in support of Plaintiffs' claims actually apply to anything allegedly done by Defendant LOS (the only Defendant that resides in the Southern District of Texas). LOS did not target or in any way select loan applicants, did not interact with consumers, did not set the terms of the loans, did not close the loans, did not service the loans, and did not participate in any of the foreclosures discussed at length in the Complaint.

Instead, the sum and substance of the Plaintiffs' allegations against LOS are that it performed a ministerial service by providing software that generated loan documents for Colony Ridge,[1] which LOS then reviewed. Plaintiffs have pleaded no facts to support a claim that LOS itself did anything to target Hispanics or any other racial or ethnic group in violation of any of the statutes at issue.

Additionally, Plaintiffs have pleaded no facts to support an allegation that LOS was a creditor in the first place, as defined by the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 15 U.S.C. §§ 1691–1691f. LOS's ministerial function simply does not fit within the statutory definition.

The CFPB's derivative claim against LOS under the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5536(a)(1)(A), similarly fails. The CFPB's claim against LOS under the Act is solely premised on the alleged violation of the ECOA. Because no facts support the ECOA claim, the CFPA claim fails as well.

---

[1] The three Defendants who are not LOS, collectively, as defined in the Complaint. Doc. 1 ¶ 1.

Finally, the United States' claim based on the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, is similarly predicated on alleged discriminatory targeting of Hispanic applicants and alleged predatory seller financing. But the United States has pleaded no facts against LOS in support of these allegations either.

Accordingly, all the Plaintiffs' claims against LOS are subject to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL ALLEGATIONS AS PLEADED

As described in the Complaint, LOS is the company that "originated" the Colony Ridge loans at issue in this action. Doc. 1 ¶ 7, ¶ 65. LOS is licensed with the State of Texas to perform this service. Doc. 1 ¶ 31. Plaintiffs have not sued LOS for violating any laws or regulations that specifically apply to loan originators.[2]

The Complaint's factual allegations are contained in a section titled "Defendants' Business Practices" spanning from page 8 to page 29 of the Complaint. In keeping with LOS's limited role in the transactions at issue here, very few of those numbered paragraphs even mention LOS. The limited facts specifically alleged as to LOS are only peripherally related to the facts alleged that give rise to the causes of action asserted.

Paragraphs 32-47 of the Complaint comprise Plaintiffs' allegations of "Advertising and Marketing Targeted at Hispanic Customers." Doc. 1 at 8-11. None of those factual allegations include conduct attributed to LOS. Paragraphs 48-55 comprise Plaintiffs' allegations of "Misrepresentations About the Infrastructure Pre-Installed on the Lots." Doc. 1 at 11-13. None of

---

[2] The term "originator" is used in different ways in different statutes, and colloquially, and while the Complaint uses the term it does not define it. For purposes of this Motion, LOS will address the specific facts as to its particular conduct, as alleged. But as a general matter, the term "originator" is often used in the context of interfacing with customers (potential borrowers), which LOS does not do with respect to the loans at issue in this case.

those factual allegations include conduct attributed to LOS. Paragraphs 56-59 comprise Plaintiffs'

allegations of "Representations of the Lots as Homesites or Building Lots." Doc. 1 at 13-14. None

of those factual allegations include conduct attributed to LOS. Paragraphs 60-63 comprise

Plaintiffs' allegations of "Prize Offers to Induce Visits" Doc. 1 at 14-15. None of those factual

allegations include conduct attributed to LOS.

Paragraphs 64-67 comprise Plaintiffs' allegations of "Sales Practices and Seller-Financed

Extensions of Credit" Doc. 1 at 15. A single factual allegation in this section of the Complaint

makes reference to LOS, but in a way that confirms the limited role LOS played:

> Since at least 2016, Colony Ridge has used the mortgage company Loan Originator
> Services to originate its seller-financed loans. Under this arrangement, Colony
> Ridge Land is still recorded as the lender on filings with the Liberty County Clerk
> and services the seller-financed loans, in addition to retaining the notes and the right
> to foreclose on the properties.

Doc. 1 ¶65.

Paragraphs 68-82 comprise Plaintiffs' description of the "Property Visit" phase of

Plaintiffs' challenged conduct. Doc. 1 at 15-17. None of those factual allegations include conduct

attributed to LOS. Instead, they affirm that the Colony Ridge Defendants are the ones who make

the lot sales and set the terms of the financing offered to consumers.

Paragraphs 83-99 comprise Plaintiffs' description of the "Pre-Closing" phase of Plaintiffs'

challenged conduct. Doc. 1 at 17-19. This section of the Complaint does describe LOS's

participation in these transactions, confirming its limited role:

> Colony Ridge notaries enter the consumer's information into an origination
> software program that belongs to Loan Originator Services which, in turn, generates
> origination disclosures and documents (Pre-Closing documents), including an
> Application for Financing, an Intrastate Exemption Statement, a Pre-Development

> Disclosure Notice, a Mortgage and Loan Analysis, and a Land Purchase Agreement. These Pre-Closing documents are entirely in English.

Doc. 1 ¶ 90. But it is Colony Ridge, not LOS, who reviews these documents with the borrowers. Doc. 1 ¶ 91. Once the documents are signed, "Colony Ridge notaries then submit the Pre-Closing documents to Loan Originator Services for review." Doc. 1 ¶ 93.

Paragraphs 100-109 comprise Plaintiffs' description of the "Closing" phase of Plaintiffs' challenged conduct. Doc. 1at 19-20. None of those factual allegations include conduct attributed to LOS. Instead, they affirm that the Colony Ridge Defendants are the ones who close the loans at issue in this case.

The bulk of the factual allegations underlying the Government's claims against LOS are contained in a Section titled "Loan Originator Services' Role in Extensions of Credit" comprising Paragraphs 110-117 of the Complaint. Doc. 1 at 21-22. These factual allegations consist of the following:

- LOS had an office in a Colony Ridge entity's office, Doc. 1 ¶ 111;

- LOS provided Colony Ridge "an updated spreadsheet each week, detailing the interest rate, loan term, and resulting monthly payment" for the lots for sale by Colony Ridge, Doc. 1 ¶ 112;

- During a pre-closing, LOS received documents *from* Colony Ridge and entered information on the documents, verified fees, pricing, and the down payment; created disclosure documents, and checked consumer's identification, Doc. 1 ¶ 113;

- LOS reviewed the pre-closing documents and signed an Application for Financing and the Texas Mortgage Company Disclosure, Doc. 1 ¶ 114;

- LOS does not collect any financial documentation from the consumers during the Colony Ridge credit transactions, Doc. 1 ¶¶ 115-16; and

- "In most Colony Ridge credit transactions, the consumer does not directly engage with any Loan Originator Services representative at any point." Doc. 1 ¶ 117.

None of the remaining factual allegations in the Complaint relate to any conduct alleged as to LOS.  Not a single fact alleged in "Omissions of Total Estimated Costs of Constructing and Installing Infrastructure to Connect Utility Services on the Lots" (Doc. 1 ¶¶ 118-122) or in "Hidden Post-Sale Expenses, Foreclosures, and Property-Flipping" (Doc. 1 ¶¶ 123-135) or in "Common Enterprise" (Doc. 1 ¶¶ 136-148) or in "ILSA Registration with the Bureau" (Doc. 1 ¶¶ 149-152) has anything to do with LOS.

Additionally, in the "Legal Background" section of the Complaint, Plaintiffs state, without factual support, that LOS "regularly participates in the decision of extending credit to consumers seeking to purchase lots." Doc. 1 ¶ 159. But the Complaint's *factual* allegations make clear that it is Colony Ridge who offers the seller-financed loans to consumers, *id.* ¶ 64, in contrast to LOS's role limited originating Colony Ridge's loans. *Id.* ¶ 65.

## ARGUMENT AND AUTHORITIES

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

Here, out of the eleven claims in the Complaint, Plaintiffs have brought three statutory causes of action against LOS, all based on an alleged discriminatory intent to target Hispanic consumers: Count I, alleged violation of ECOA and Regulation B; Count II, alleged violation of the FHA; and Count X, alleged violation of the CFPA based on violation of the ECOA. Complaint,

Doc. 1 at 34, 35, 41.[3] All claims are based on the same factual allegations—allegations that, even if taken as true as to LOS's conduct, do not show a right to relief against LOS that is plausible. The Court should therefore dismiss Plaintiffs' claims against LOS.

**I.      The Government has failed to state a claim against LOS under the ECOA.**

Under the ECOA, it is "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age…" 15 U.S.C. § 1691(a)(1).

To state a claim for relief under the ECOA, a complaint must plausibly allege both that the Defendant discriminated against members of a protected class with respect to any aspect of a credit transaction, and that the Defendant is a creditor (as defined by the statute). *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir, 2017). This Complaint does not plausibly allege facts meeting either of these elements, as to LOS. Even if LOS were a "creditor," as defined, the acts of discrimination alleged in the Complaint were not acts allegedly performed by LOS. But taking a step back, LOS's role in the transactions was in fact so limited as to cause LOS to not even be a creditor in the first place, under the applicable definition.

**A.      LOS did not discriminate.**

Even if LOS were a "creditor," as defined, the discriminatory acts Plaintiffs allege in the Complaint are not acts allegedly performed by LOS. Plaintiffs claim that Defendants violated the ECOA by "targeting Hispanic applicants on the basis of race or national origin with predatory seller financing." Doc. 1 ¶ 188.  Plaintiffs assert a form of discrimination called "reverse

---

[3] Both the CFPB and the United States brought Count I against all defendants. Count II is solely brought by the United States against all defendants, and Count X is solely brought by the CFPB against all defendants.

redlining," which they describe as "the unlawful act of targeting applicants on a prohibited basis, most commonly communities of color, for predatory credit products or practices." Doc. 1 ¶ 154.

The Fifth Circuit has not issued an opinion discussing reverse redlining or holding that it is an actionable form of discrimination under the ECOA, but some district courts have, including some within the Fifth Circuit. The elements of reverse redlining are commonly stated to be:

(1)     that the borrower is a member of a protected class;

(2)     that she applied and was qualified for a loan;

(3)     that the loan was given on grossly unfavorable terms; and

(4)     that the lender either intentionally targeted her for unfair loans or currently makes loans on more favorable terms to others.

*Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 (N.D. California 2010); *Jones v. Caliber Home Loans, Inc.*, 2019 WL 3366104 *6 (M.D. Louisiana 2019).

The Complaint's targeting allegations are found in Paragraphs 32-47. As set out above, none of those allegations involve conduct attributed to LOS. LOS did not target anyone, even allegedly. On this basis alone, the Complaint does not plead a claim against LOS for reverse redlining.

The Complaint's allegations as to "predatory credit products or practices" are similarly asserted against the Colony Ridge Defendants, not LOS. *See, for example*, Doc. 1 ¶ 68 ("financing options at significantly above market interest rates"); Doc. 1 ¶ 74 ("Colony Ridge's high interest rates . . ."); Doc. 1 ¶ 75 ("Colony Ridge sales assessors engage in high-pressure tactics . . ."); Doc. 1 ¶¶ 83-92 (conduct of "Colony Ridge notaries"). By contrast, the allegations against LOS are merely that it provides a software platform which generates documents based on information provided by Colony Ridge, which documents are given to consumers by Colony Ridge for

reviewing and signing, and then given back to LOS. These allegations against LOS, if proven, would not constitute actionable discrimination.

Further, even if the terms of the loans at issue could be said to be "grossly unfavorable," LOS did not set those terms.[4]  In fact, LOS had no substantive role whatsoever in the Colony Ridge loans.

All told, the Complaint makes only the following apparent criticisms of LOS's role and conduct in these transactions:

- the documents generated by the LOS software are in English and not Spanish (Doc. 1 ¶ 90);

- LOS does not collect documentation substantiating consumers' self-reported income (Doc. 1 ¶ 115);

- LOS does not request documentation showing consumers' assets, debts, financial obligations, or other liabilities (Doc. 1 ¶ 116); and

- "In most Colony Ridge credit transactions, the consumer does not directly engage with any Loan Originator Services representative at any point." (Doc. 1 ¶ 117).

The Complaint does not go so far as to directly allege that any of these actions constitutes actionable discrimination, because they do not. The Complaint does not allege a statutory, regulatory, or common law duty on LOS's part to provide Spanish language documents for Colony

---

[4]Although LOS did not set the terms of the loans, it bears mentioning that the Complaint does not adequately support a claim that the Colony Ridge loans were "grossly unfavorable," because the only facts supporting the allegation were in comparisons of the Colony Ridge loans to "home loans" (i.e., loans made by a third party lender secured by the consumer's home), which are a completely a different product than Colony Ridge's loans that were secured by vacant, unimproved land (commonly referred to as "lot loans"), and that were seller-financed by Colony Ridge. Doc. 1 ¶¶ 11, 73.  Comparing one thing to something completely different does not support a plausible claim that the loans were "grossly unfair," and requires straining to find an inference favorable to Plaintiffs.

Ridge, or to confirm consumers' reported financial information,[5] or to directly engage with consumers.

In the Legal Background section of the Complaint, Plaintiffs make the following single specific assertion as to LOS: "Loan Originator Services regularly participates in the decision of extending credit to consumers seeking to purchase lots in the Terrenos Houston Subdivisions." Doc. 1 ¶ 159. As explained in detail above, this conclusory assertion has no grounding in the facts actually alleged in the Complaint.

Consequently, even accepting the allegations in the Complaint as true, Plaintiffs have not pleaded an actionable reverse redlining claim against LOS. LOS did not market to or target these consumers, and the Complaint does not contain any allegations regarding LOS's origination practices to others. LOS did not approve or reject the loan applications, did not close the loans, did not service the loans, and did not participate in any subsequent foreclosures. LOS did not discriminate.

**B.      LOS is not a "creditor" under the ECOA.**

The Complaint also contains no allegations that support Plaintiffs' claim that LOS is a "creditor" for purposes of the ECOA. The ECOA defines "creditor" to mean:

(1)      any person who regularly extends, renews, or continues credit;

(2)      any person who regularly arranges for the extension, renewal, or

---

[5] While home loans, i.e., loans secured by a dwelling, are subject to federal consumer financial protection requirements that require lenders to assess and verify a consumer's ability to repay the loan, loans secured by vacant –lots—the kinds of loans at issue in this –case--are not subject to such requirements.  *See* 78 Fed. Reg. 6408, 6447 (Jan. 30, 2013) ("[t]he repayment ability provisions of TILA section 129C(a) also do not apply to consumer credit transactions secured by vacant land."); 15 U.S.C. § 1639c(a); 12 C.F.R. § 1026.43(a). As neither the Congress nor the CFPB has required this kind of verification for lot loans, the allegation that verification was not done does not, even if true, support any element of reverse redlining.

> continuation of credit; or
>
> (3)    any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

15 U.S.C. § 1691a(e). Status as a "creditor" is an independent element of an ECOA claim. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir, 2017). Applying the facts (as alleged) to the statutory definition, LOS is not a "creditor" with respect to these transactions.

LOS does not extend, renew, or continue credit. The Complaint's allegations are clear that it is Colony Ridge that extends credit to the consumers purchasing lots through its self-financed loans. The one reference to LOS "extending" credit (Doc. 1 ¶ 127) is a conclusory statement not based on any factual allegations. *See Iqbal*, 556 U.S. at 679 (conclusory statements are not entitled to an assumption of truth and should be disregarded). Moreover, the statement is belied by the Plaintiffs' acknowledgement that it is Colony Ridge Land that "extended, owned, and serviced all the seller-financed mortgages that consumers used to purchase the lots" at issue. *Id.* ¶ 136.

Similarly, the Complaint does not allege that LOS "arranges for the extension, renewal, or continuation" of loans. The Complaint confirms that LOS does not directly engage with the consumers "at any point," *id.* ¶ 117. The Complaint confirms that it is Colony Ridge who enters the consumer's information into LOS's origination software program, which then generates origination disclosures and documents which Colony Ridge provides to the consumers. *Id.* ¶ 90. It is Colony Ridge, not LOS, who reviews the documents created by LOS software with the consumers. *Id.* ¶ 91. Plaintiffs unequivocally allege that the Colony Ridge entities arranged for the loans at issue. *Id.* ¶ 157. The Complaint states that "Colony Ridge Land…regularly refers applicants to Loan Originator Services," *Id.* ¶ 158, but it is not clear what this means, since the

specific factual allegations in Paragraphs 83-99 make it clear that the applicants do not actually interact with LOS or its personnel.

Finally, Colony Ridge never assigned any of the loan transactions to LOS, so LOS is not "an assignee of an original creditor." The Complaint alleges the opposite — that Colony Ridge remains the lender and services the loans. *Id.* ¶ 136.

The Complaint fails to support an allegation that LOS is a "creditor" under ECOA.

**C.    The broader "creditor" definition in the CFPB-promulgated regulation, even if valid, does not encompass the service LOS provides.**

Because the statutory definition of creditor plainly does not encompass LOS's limited role in these transactions, Plaintiffs must rely on the CFPB-promulgated Regulation B, 12 C.F.R. § 1002.2(l), which expands to some extent the definition of "creditor." Doc. 1 ¶ 156. But the Fifth Circuit has recently vacated a CFPB regulation because the CFPB could not have promulgated it without its "unconstitutional funding." *Cmty. Fin. Servs. Ass'n of Am. v. CFPB,* 51 F.4th 616, 644 (5th Cir. 2022)*, cert. granted,* 143 S. Ct. 978, 2023 WL 2227658, No. 222-448 (Feb. 27, 2023). LOS has filed a Motion to Stay this case pending a Supreme Court decision in *Community Financial*, which sets out in more detail the holding of that case. *See* Doc. 47. Unless and until the Supreme Court reverses *Community Financial*, Regulation B's definition of "creditor" should be vacated.

Even if Regulation B were not subject to vacatur, its more expanded definition of "creditor" would not reach LOS under the facts as pleaded. The definition of "creditor" on which the Plaintiffs rely involves specific activities:

> Regulation B defines a "creditor" as any person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit; or who regularly refers applicants or prospective applicants to creditors; or who selects or offers to select creditors to whom requests for credit may be made.

Doc. 1 ¶ 156 (citing 12 C.F.R. § 1002.2(l)). LOS did not "participate in a credit decision" in this case.

In the Complaint, Plaintiffs associate the specific activity described in Regulation B - participation in the challenged credit decisions - with Colony Ridge entities, not LOS:

> Colony Ridge Development and Colony Ridge BV regularly arrange for the extension of credit to consumers and, in the ordinary course of business, regularly set the terms of the credit, regularly refer applicants to Colony Ridge Land, and exclusively select Colony Ridge Land as the creditor from whom consumers can request credit to purchase lots in the Terrenos Houston Subdivisions.

*Id.* ¶ 157.

The factual detail of the allegations against Colony Ridge stand in stark contrast to the Plaintiffs' conclusory effort to implicate LOS in the activities without any factual basis:

> Loan Originator Services regularly participates in the decision of extending credit to consumers seeking to purchase lots in the Terrenos Houston Subdivisions.

*Id.* ¶ 159. The actual factual allegations in the Complaint (Paragraphs 32-152) show no facts alleged against LOS that, if proven, would support a finding that LOS participated in any credit decision at issue here.

Finally, to the extent Regulation B expands the statutory definition of "creditor," it does so without authority, because under the *Chevron* doctrine,[6] the CFPB does not deserve deference for its interpretation in Regulation B of the plain and unambiguous definition of "creditor" in the ECOA. Only Congress can write new laws, and the CFPB's attempt to write a new definition of

---

[6] See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Further, even if the court finds that the definition of "creditor" is ambiguous, the CFPB's interpretation fails to receive deference under the *Chevron* doctrine because it is unreasonable to interpret the term "assignee" to include any person that participates in a credit decision.

"creditor" beyond what is authorized by ECOA violates the Administrative Procedures Act, 5 U.S.C. § 706, and the U.S. Constitution's separation of powers.  Multiple circuit courts and at least one district court have rejected other federal agency attempts to expand ECOA's reach beyond statutory boundaries.  *See e.g., Moran Foods v. Mid-Atlantic Market Development*, 476 F.3d 436, 441 (7th Cir. 2007) ("there is nothing ambiguous about 'applicant' and no way to confuse an applicant with a guarantor."); *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 942 (8th Cir. 2014) ("because the text of the ECOA is unambiguous regarding whether a guarantor constitutes an applicant, we will not defer to the Federal Reserve's interpretation of applicant, and we conclude that a guarantor is not protected from marital-status discrimination by the ECOA."), aff'd, 136 S. Ct. 1072 (2016); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1193 (11th Cir. 2019) ("we agree with the Seventh and Eighth Circuits that the ordinary meaning of 'applicant' does not encompass a guarantor, we hold that no deference is due"); *Bureau of Consumer Fin. Prot. v. Townstone Fin., Inc*., No. 20-cv-4176, 2023 WL 1766484, at \*7 (N.D. Ill. Feb. 3, 2023), appeal pending ("contrary to the CFPB's position, the statute's expression of 'applicant,' is essential to understanding whether the CFPB can regulate with respect to 'prospective applicants.' The CFPB cannot regulate outside the bounds of the ECOA, and the ECOA clearly marks its boundary with the term 'applicant.'").

The Plaintiffs have pleaded no factual basis for an ECOA claim against LOS. Accordingly, the claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    The CFPB's claim pursuant to the CFPA fails for the same reason its ECOA claim fails.

In Count X, the CFPB seeks to impose liability against all Defendants under the CFPA, 12 U.S.C. § 5536(a)(1)(A). The CFPA extends to "covered persons" if they violate any "Federal

consumer financial law." The sole basis for the CFPB claim against LOS is the alleged violation

of the "ECOA by engaging in unlawful discrimination." Doc. 1 ¶ 230. Accordingly, Count X of

the Government's Complaint against LOS must be dismissed because it is wholly derivative of the

Government's flawed ECOA claim—a claim that does not meet the Rule 12(b)(6) standard.

**III.     The United States has failed to plead facts supporting a claim against LOS under the FHA.**

In Count II of the Complaint, the United States alleges that all Defendants, including LOS,

violated three provisions of the FHA: 42 U.S.C. §§ 3604(a) and (b) and 3605(a). But LOS is not

subject to these provisions, and Plaintiffs have alleged no facts to support such a conclusion. For

this reason, the United States' FHA claim fails to state a claim upon which relief may be granted.

Section 3604(a) of FHA makes it illegal "to refuse to sell or rent after the making of a bona

fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny,

a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

42 U.S.C. § 3604(a). Though the United States generally avers that Defendants collectively have

made unavailable or denied dwellings to persons based on race, Doc. 1 ¶ 194(b), the United States

has pleaded no facts to support the allegation against LOS. The Complaint does not state any facts

indicating that LOS funded any loans, made any credit decisions, or participated in any of Colony

Ridge's marketing strategy. There is no plausible conclusion, or even inference, from the alleged

facts that LOS denied or made unavailable any dwellings on a prohibited basis. Further, neither

does the Complaint allege, nor was LOS in the business of, selling or renting dwellings for

purposes of this provision.

Section 3604(b) of FHA makes it illegal "to discriminate against any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities

in connection therewith, because of race, color, religion, sex, familial status, or national origin."

42 U.S.C. § 3604(b). Once again, the Complaint provides no facts supporting this allegation. As described above, Colony Ridge was responsible for setting the "terms, conditions, or privileges" for the loans, and the Complaint does not allege that LOS had any role in setting them. Further, the Complaint does not allege that LOS earned any fees from consumers (its origination fee was paid by Colony Ridge) and acknowledges that LOS had essentially no contact with consumers of Colony Ridge loans. Claiming that LOS discriminated in the terms, conditions, or privileges of any of the loans at issue is entirely unsupported and conclusory based on the alleged facts.

Section 3605(a) of FHA makes it unlawful "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). "Residential real estate-related transaction" is defined by FHA to mean any of the following:

> (1)  The making or purchasing of loans or providing other financial assistance—
>
> > (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
> >
> > (B) secured by residential real estate.
>
> (2) The selling, brokering, or appraising of residential real property.

42 U.S.C. § 3605(b).

The Complaint contains no factual allegations that support a claim that LOS engaged in a real estate-related transaction, as defined under FHA. First, the United States does not allege that LOS made or purchased the loans at issue or provided any other financial assistance. Second, the United States have alleged no facts to support a claim that LOS sold, brokered, or appraised any of the property at issue. In fact, the Complaint clearly identifies Colony Ridge as the named lender of the loans at issue and the servicer of such loans, "retaining the notes and the right to foreclose

on the properties." Doc 1 ¶ 7. Accordingly, LOS is not subject to the provision of the FHA provisions asserted by the United States. Further, for the reasons described above under Section I, Plaintiffs have failed to allege any facts to state a claim that LOS has committed discrimination in the form of reverse redlining under the FHA.

## IV.    Amendment would be futile.

The decision whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F3d 214, 232 (5th Cir. 2012). Generally, a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Leave, however, can be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v. Chapman*, 969 F3d 238, 248 (5th Cir. 2020).

Here, the Plaintiffs have attempted to shoehorn LOS into statutory definitions that have no application to its limited role in these loans, presumably to establish a connection to the Southern District of Texas. But because LOS does not fit within the claims, and because the facts alleged with respect to the other Defendants demonstrate that LOS's limited clerical and ministerial activity is not subject to the cited provisions, any effort to amend would be futile.

## CONCLUSION

Plaintiffs do not allege conduct on the part of LOS that is actionable. Therefore, LOS respectfully requests that the Court dismiss the Plaintiffs' claims against LOS with prejudice, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,

Robert G. Hargrove
Texas Bar No. 24032391
Southern District No. 2684604
rghargrove@dgclaw.com
Lisa A. Paulson
Texas Bar No. 00784732
Southern District No. 22480
lapaulson@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
515 Congress Avenue, Suite 1510
Austin, Texas 78701
(512) 493-9615
(512) 493-9625 *Facsimile*

By: /s/ Robert G. Hargrove
    Robert G. Hargrove

Troy Garris
Texas Bar No. 24007226
GARRIS HORN LLP
325 N. Saint Paul St., Suite 3100
Dallas, Texas 75201
(301) 461-8952

**ATTORNEYS FOR DEFENDANT
LOAN ORIGINATOR SERVICES, LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with counsel for Plaintiffs regarding the relief sought by way of this Motion, and Plaintiffs are opposed.

By: /s/ Robert G. Hargrove
    Robert G. Hargrove

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of this document on the below-listed counsel of record, using the CM/ECF system on this, the 20th day of February, 2024.

Mellisa A. Carrington
Terrence K. Mangan, Jr.
Jimmy S. McBirney
Hannah C. Abelow
U.S. Department of Justice
150 M. Street, NE
Washington, DC 20530

Elizabeth F. Karpati
Assistant U.S. Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

**Attorneys for Plaintiff**
**United States of America**

E. Vanessa Assae-Bille
Alexis C. Christensen
Andrea M. Lowe
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

**Attorneys for Plaintiff**
**Consumer Finance Protection Bureau**

Philip H. Hilder
Q. Tate Williams
Stephanie K. McGuire
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, TX 77006

Jason Ray
Riggs & Ray, P.C.
3307 Northland Drive, Suite 215
Austin, TX 78731

Christopher D. Hilton
Stone Hilton, PLLC
1115 W. Slaughter Lane
Austin, TX 78748

**Attorneys for Defendants**
**Colony Ridge Development, LLC**
**Colony Ridge BV, LLC**
**Colony Ridge Land, LLC**

By: /s/ Robert G. Hargrove
       Robert G. Hargrove