**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

CONSUMER FINANCIAL PROTECTION BUREAU and

UNITED STATES OF AMERICA,

Plaintiffs,

v.

COLONY RIDGE DEVELOPMENT, LLC, d/b/a Terrenos Houston, Terrenos Santa Fe, and Lotes y Ranchos;

COLONY RIDGE BV, LLC;

COLONY RIDGE LAND, LLC, formerly d/b/a Terrenos Houston and Lotes y Ranchos; and

LOAN ORIGINATOR SERVICES, LLC,

Defendants.

Civil Action No. 4:23-cv-4729

Judge Alfred H. Bennett

**PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO COLONY RIDGE DEVELOPMENT, LLC, COLONY RIDGE BV, LLC, AND COLONY RIDGE LAND, LLC'S MOTION TO DISMISS**

## I. Introduction

Using a vigorous and orchestrated Spanish-language marketing campaign that includes making false promises of achieving the American Dream, Defendants Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC (collectively, Defendants) lure Hispanic consumers into purchasing land using their predatory seller-financed mortgages. By design, Defendants set up these consumers to fail, then benefit from these failed loans. As detailed in the Complaint filed by the Consumer Financial Protection Bureau (Bureau) and the United States (United States) (together, Plaintiffs), Defendants' discriminatory targeting of Hispanic consumers violates the Equal Credit Opportunity Act (ECOA) and the Fair Housing Act (FHA).

Defendants' affirmative misrepresentations and corresponding failure to warn consumers about the significant infrastructure costs they would face also violates the Consumer Financial Protection Act of 2010 (CFPA)'s prohibitions against deceptive acts or practices. Further, Colony Ridge Development and Colony Ridge BV have continuously flouted the Interstate Land Sales Full Disclosure Act (ILSA)'s registration and disclosure requirements since they began selling non-exempt lots more than a decade ago, all while engaging in unlawful sales practices under ILSA. Finally, Defendants' violations of ECOA and Colony Ridge Development and Colony Ridge BV's violations of ILSA also constitute violations of the CFPA.

Because Defendants' Motion to Dismiss, ECF 50, fails to negate the sufficiency of the pleadings and provides no valid basis for Defendants to evade liability for their unlawful conduct, the Court should deny Defendants' motion to dismiss in its entirety.

## II. Procedural Background

On December 20, 2023, Plaintiffs filed a Complaint alleging Defendants engaged in an intentional and willful pattern or practice of violating ECOA, 15 U.S.C. § 1691(a)(1), and Regulation B, 12 C.F.R. § 1002.4(a), with reckless disregard for the rights of individuals, based on their race or national origin. ECF 1 at 1; ¶¶ 187–90. Specifically, the Complaint alleges that Defendants target Hispanic consumers with a predatory loan product that is set up to fail and, indeed, results in an alarming rate of foreclosures. *Id.* ¶¶ 12–13. The United States separately alleges that this intentional and willful pattern or practice also violates the FHA, 42 U.S.C. §§ 3604(a)-(b), 3605, and its implementing regulations in 24 C.F.R. pt 100. *Id.* at 1; ¶¶ 192–96.

The Bureau also alleges that Defendants are in violation of the CFPA by virtue of having violated ECOA, and by engaging in deceptive acts or practices, 12 U.S.C. §§ 5531, 5536. *Id.* at 1; ¶¶ 198–201, 228–30. The Bureau further alleges that Defendants Colony Ridge Development and Colony Ridge BV violated provisions of ILSA and its implementing regulations, Regulations J and K, by unlawfully selling non-exempt lots without furnishing purchasers with a Property Report; unlawfully selling lots in a subdivision using notes, contracts, deeds, or other documents prepared in a language other than that in which the sales campaign was conducted

without an accurate translation attached to the document; unlawfully selling lots in a subdivision by representing them as homesites or building lots when they are not free from periodic flooding; obtaining money by making untrue statements of material fact or omitting material facts; failing to report information and pay corresponding fees; and violating the CFPA by virtue of having violated ILSA. *Id.* at 1; ¶¶ 202–27, 231–33.

On February 20, 2024, the Defendants moved to dismiss the Complaint. ECF 50.

## III. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the complaint's well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The Court must deny a motion to dismiss if plaintiffs have given "fair notice" of the claim and the grounds upon which it rests, and when the complaint's factual allegations, taken as true, state a "plausible" claim for relief. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 570. To prove "plausibility," a plaintiff need not prove "probability"—only "more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Courts may make reasonable inferences from alleged facts to meet the plausibility standard. *Id.*

## IV. Argument

Defendants' motion raises five broad categories of arguments seeking to dismiss the Complaint, all of which must fail.

*First*, ECOA and the FHA prohibit discriminatory targeting, and the Court should reject Defendants' unfounded assertions otherwise. ECF 50 at 4–5. Indeed, accepting Defendants' invitation to ignore the plain text of those statutes and decades of case law recognizing discriminatory targeting claims would leave tens of thousands of consumers already devastated by Defendants' scheme without recourse, and put many more at risk of falling prey in the future.

*Second*, Plaintiffs have pleaded plausible claims under ECOA and the FHA, and the Court should reject Defendants' contention that the Complaint fails to allege sufficient facts to the contrary. ECF 50 at 5–9, 13–18.

*Third*, Plaintiffs have sufficiently alleged that Colony Ridge Development and Colony Ridge BV are creditors under the plain statutory text of ECOA, Defendants' contrary assertions notwithstanding. ECF 50 at 12–13.[1]

*Fourth*, the United States has sufficiently alleged that Defendants' discrimination relates to "dwellings" as defined by the FHA under section 3602(b), and specifically has adequately alleged that Defendants denied or otherwise made such dwellings unavailable under section 3604(a). Here as well, Defendants' contrary assertions lack merit. ECF 50 at 16–18.

*Fifth*, the Court should await the Supreme Court's ruling regarding the constitutionality of the Bureau's funding mechanism, expected by June of this year, rather than address Defendants' argument that the Bureau must be dismissed from this case due to its funding structure. ECF 50 at 18–19.

### A. ECOA and the FHA prohibit discriminatory targeting.

ECOA expressly prohibits creditors from discriminating in any aspect of a credit transaction based on an applicant's race, national origin, and other prohibited characteristics. 15 U.S.C. § 1691(a)(1). ECF 1 ¶ 153. To state a claim for relief under ECOA, a plaintiff must plausibly allege that a creditor "discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir. 2017); *see* 15 U.S.C. § 1691e(a) (establishing private right of action for "applicants" under ECOA); *see also* section 1691e(h); 12 U.S.C. §§ 5564(a), 5481(12), (14) (together establishing Bureau and United States' authority to enforce ECOA).

[1] Defendants do not appear to dispute that Colony Ridge Land, LLC is a creditor under ECOA. *See* ECF 50 at 12–13.

Importantly, ECOA *does not* require a plaintiff to allege the denial of credit, which would be inconsistent with the plain language of the statute prohibiting discrimination "with respect to *any aspect of a credit transaction*." 15 U.S.C. § 1691(a) (emphasis added). Indeed, in *Alexander*, the Fifth Circuit held that plaintiffs had stated a claim under ECOA where they plausibly alleged that a creditor refused to consider their housing assistance income in assessing their creditworthiness, and as a result, they received credit on less favorable terms and in lesser amounts. *See Alexander*, 848 F.3d at 709. Even though the plaintiffs ultimately received credit, the court held that "[t]he alleged conduct is 'discriminat[ion] ... with respect to any aspect of a credit transaction ... because all or part of the applicant's income derives from any public assistance program,' 15 U.S.C. § 1691(a)(2), and that is all that is required to state a claim for relief." *Id.* at 707; *accord Jones v. Caliber Home Loans, Inc.*, No. CV 18-1023-SDD-EWD, 2019 WL 3366104, at *5 (M.D. La. July 25, 2019) ("the plain language of the statutes illustrate that the denial of a loan is not always the dispositive factor; rather, discrimination in the terms, conditions, or any aspect of a credit transaction is still actionable under ECOA and FHA"); *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7, 23 (D.D.C. 2000), *on reconsideration in part*, 147 F. Supp. 2d 1 (D.D.C. 2001) (granting partial motion for reconsideration in non-relevant part) (recognizing that "[b]y the plain language of the provision, protection is not limited to those applicants who were rejected"). Defendants assert otherwise by relying extensively on a non-binding California district court case that pre-dates the Fifth Circuit's *Alexander* decision, *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009). ECF 50 at 4. Because *Hafiz* is inconsistent with clear Fifth Circuit law, however, Defendants' reliance on that case is misplaced.

Similarly, multiple FHA provisions prohibit discrimination in residential lending. Section 3605 of the FHA makes it unlawful for "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . . or national origin." 42 U.S.C. § 3605(a). "Residential real estate-related transaction,"

as relevant here, means "[t]he making or purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1)(A). Section 3604(a) of the FHA makes it unlawful to "otherwise make unavailable or deny[] a dwelling to any person because of race . . . or national origin." *Id.* § 3604(a). Finally, section 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or the provision of services or facilities in connection therewith, because of race . . . or national origin." *Id.* § 3604(b). ECF 1 ¶ 161.

Defendants' assertion that the Supreme Court and Fifth Circuit have not "recognized" discriminatory targeting is misleading: those courts have simply not yet issued an opinion in a case making such allegations. ECF 50 at 5. But more than two decades of caselaw supports Plaintiffs' position that targeting a protected class with a predatory loan product violates ECOA and the FHA. In the seminal discriminatory targeting case, *Hargraves*, plaintiffs brought claims under ECOA and sections 3605(a), 3604(a), and 3604(b) of the FHA, alleging that the defendant mortgage company had targeted African-American borrowers with predatory lending practices including exorbitant interest rates, lending based on the value of the asset securing the loan rather than a borrower's ability to repay (effectively a "loan designed to fail"), repeated foreclosures, and excessive fees. 140 F. Supp. 2d at 20–21.

The *Hargraves* court found that "plaintiffs' allegations of discriminatory predatory lending . . . are sufficient to allege a violation of [ECOA]." *Id.* at 23. Likewise, the court determined that the defendants' discriminatory predatory lending, if proven at trial, would violate sections 3605, 3604(a), and 3604(b) of the FHA. *Id.* at 29 (denying defendants' motion for summary judgment as to all FHA claims, other than one plaintiff's abandoned claim as to a home equity loan). Rejecting the defendants' challenge that "permitting a cause of action based on predatory lending will discourage lenders from making loans to minorities," the court stated that "[n]on-predatory lenders will be able to show that their lending practices are legitimate, and so avoid liability." *Id.* at 21.

Numerous courts have followed suit since *Hargraves*. *See, e.g.*, *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332, 1342 (N.D. Ga. 2018) (allowing ECOA and FHA discriminatory targeting claims to go forward against corporate house flipper alleged to have targeted African-American consumers with subprime financing to purchase decrepit homes); *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300, 320 (E.D.N.Y. 2014) (Order, *Emigrant*) (allowing ECOA and FHA discriminatory targeting claims to go forward against mortgage lender alleged to have targeted African-American and Hispanic consumers with equity-stripping scheme); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 835 (N.D. Ill. 2007) (allowing ECOA and FHA discriminatory targeting claims to proceed against one mortgage lender and one broker alleged to have targeted minorities with higher cost loans); *Munoz v. Int'l Home Cap. Corp.*, No. C 03-01099 RS, 2004 WL 3086907, at *3–6 (N.D. Cal. May 4, 2004) (allowing ECOA and FHA discriminatory targeting claims to proceed against real estate agents and brokers alleged to have targeted Hispanic plaintiffs with "higher principal loan amounts and interest rates than plaintiffs had wanted or were able to repay"); *Steed v. EverHome Mortg.*, 308 F. App'x 364, 368 (11th Cir. 2009) (recognizing reverse redlining claim under FHA and citing *Hargraves* with approval, but affirming summary judgment against plaintiff for lack of evidence).

### B. The Complaint plausibly alleges discriminatory targeting under ECOA and the FHA.

To state a plausible claim for relief under ECOA, plaintiffs must allege facts sufficient to show that defendants are creditors that discriminate against aggrieved consumers in "any aspect of a credit transaction," on a prohibited basis, such as race or national origin. *See* 15 U.S.C. § 1691(a); *see also Alexander*, 848 F.3d at 705–06. "[T]o state a claim under the [Fair Housing] Act, it is enough to show that race [or other protected characteristic] was a consideration and played some role in a real estate transaction." *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986) (analyzing section 3604(a) claim); *Ford v. Am. Homes for Rent*, No. 4:20-CV-63, 2020 WL 9950831, at *5 (S.D. Tex. June 8, 2020) ("[Plaintiff] only needed to plead that 'race was a consideration and played some role in a real estate transaction[.]'" (quoting *Hanson*, 800

F.2d at 1386)) (analyzing section 3604(a) claim); *Jones*, 2019 WL 3366104, at *4 (analyzing section 3604(a)-(b), 3605(a) claims).

In discriminatory targeting cases, plaintiffs may allege discrimination by showing that defendants: (1) engaged in unfair or predatory lending practices; and (2) either intentionally targeted, or caused a disparate impact, on the basis of race, national origin, or another prohibited basis. *Hargraves*, 140 F. Supp. 2d at 20 (ECOA and FHA); *see also Steed*, 308 F. App'x. at 368 (FHA) (citing *Hargraves* with approval); *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 357 (D. Md. 2022) (ECOA); *United States ex rel. Cooper v. Auto Fare, Inc.*, No. 3:14-CV-0008-RJC, 2014 WL 2889993, at *3 (W.D.N.C. June 25, 2014) (ECOA).

Crucially, Plaintiffs "need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Twombly*, 550 U.S. at 569–70 (affirming continued vitality of *Swierkiewicz*); *see Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019) (district court errs by "inappropriately heighten[ing] the standard" when "requiring a showing of each prong of the prima facie test" or "more than the ultimate elements of a claim" at the pleading stage) (cleaned up). And, despite Defendants' assertion to the contrary,[2] once a plaintiff eventually proceeds to prove discrimination, the *McDonnell Douglas* burden-shifting standard is flexible. As the Supreme Court has made clear, "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz*, 534 U.S. at 512 (cleaned up). Thus, for discriminatory targeting claims, district courts have adjusted the prima facie standard to fit the particular context. *See, e.g.*, *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 n.3 (N.D. Cal. 2010) (explaining that the second element in Defendants' test, requiring a plaintiff to establish that she was "qualified" for the loan, makes little sense where the defendant's predatory conduct involves targeting consumers for loans they

[2] Specifically, Defendants contend that plaintiffs must allege that: (1) they are a member of a protected class; (2) they applied and were qualified for a loan; (3) the loan was given on grossly unfavorable terms; and (4) the lender either intentionally targeted them for unfair loans or currently makes loans on more favorable terms to others. ECF 50 at 6.

cannot afford);[3] *Hargraves*, 140 F.2d at 20 (construing discriminatory targeting claim to *not* require comparison to similarly situated groups because it would allow injustice "so long as it is visited exclusively on [one ethnic group]") *Munoz*, 2004 WL 3086907, at *4 (same). But that is an inquiry for a later time. As the Supreme Court has made clear, the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510.

As discussed below, Plaintiffs have sufficiently alleged that Defendants engaged in discriminatory targeting in violation of ECOA and the FHA.

**1. The Complaint plausibly alleges that Defendants' product and lending practices are predatory.**

The Complaint details how, over a three-year period, Defendants' seller-financed lots had a foreclosure rate that was *nearly fifteen times* the national mortgage loan delinquency rate around the same time. ECF 1 ¶ 11. Despite that alarming default rate, Defendants continuously engage in additional predatory practices, such as: failing to assess borrowers' ability to repay; charging interest rates far above prevailing market rates; exploiting language barriers during the sales process; using high-pressure sales tactics to push borrowers to obtain their credit product quickly; and affirmatively misrepresenting or omitting material facts relating to the lots and transactions, causing borrowers to incur substantial unanticipated expenses after closing. *Id.* ¶¶ 4, 6–8, 13, 48–59, 75, 80–81, 88–89, 91–92, 97, 101–03, 123–26. The Complaint also alleges Defendants benefit when the loans fail. *Id.* ¶ 14. While financially devastating for many consumers, these loan failures enable Defendants to flip the properties and resell them at higher prices, which translates to more down payments, fees, and mortgage payments on even larger debts for new consumers. *Id.* ¶¶ 14–15, 126–28, 131–35.

The Complaint thus sets forth the hallmark characteristics courts have found sufficient to allege predatory lending. *See, e.g.*, *Cooper*, 2014 WL 2889993, at *3 (finding the United States

[3] In any event, the Complaint adequately alleges that Defendants aggrieved consumers were "qualified" pursuant to Defendants' own minimal standards, as evidenced by their statement that "Everyone qualifies! We don't check credit," (ECF 1 ¶ 52), and Defendants did, in fact, extend credit to thousands of aggrieved consumers (*Id.* ¶ 10).

pled facts sufficient to support a discriminatory targeting claim, noting "the prevalence of disproportionately high rates of default and repossession compared to other used-car dealerships; high sale prices; large down payments; high annual percentage rates; and [the d]efendants' practice of repossessing vehicles even when customers were not in default"); *Munoz*, 2004 WL 3086907, at *2 (plaintiffs, who were primarily Spanish-speaking, alleged defendants "baited and switched" them into larger loans and higher interest rates than they wanted or could repay, made little or no effort to verify their ability to repay, failed to translate important documents into Spanish, and issued predatory loans designed to fail that inevitably triggered foreclosure proceedings); *Hargraves*, 140 F. Supp. 2d at 20–23 (alleging defendants charged exorbitant interest rates, issued loans designed to fail and profited from acquiring properties through default rather than loan payments ("equity stripping"), made repeated foreclosures, and charged excessive fees); *Matthews v. New Century Mortg. Corp.*, 185 F. Supp. 2d 874, 877–82 (S.D. Ohio 2002) (alleging defendants processed or extended loans they knew plaintiffs could not afford based on monthly incomes and mispresented the true terms of the loans); Order, *Emigrant*, 50 F. Supp. 3d 300, 307–08 (E.D.N.Y. 2014) (exorbitant interest rates "virtually ensuring default," failure to disclose true loan terms, and misrepresentations regarding loan terms).

Plaintiffs also need not establish that Defendants' conduct violated *other* federal or state lending laws to show that their product was predatory under ECOA and the FHA, Defendants' contentions notwithstanding. ECF 50 at 7–9; *see Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ) (JO), 2014 WL 12923021, at *15 (E.D.N.Y. Mar. 31, 2014) (Mag. Rep., *Emigrant*), *report and recommendation adopted in part, rejected in part*, 50 F. Supp. 3d 300 (E.D.N.Y. 2014) (rejecting argument that a positive evaluation by defendant's federal regulator precluded FHA and ECOA liability). As cases like *Emigrant* and *Hargraves* demonstrate, a predatory finding does not require a predicate violation of another consumer protection law.

Finally, Defendants' questions regarding the applicability of the bank and home loan comparisons cited in the Complaint to show that Defendants offered significantly above market interest rates, ECF 50 at 8–9, constitute a factual dispute that cannot be resolved at the pleading

stage. At this stage, the Court must accept "the well-pleaded factual allegations in the complaint as true," *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016), and Defendants' factual assertions regarding the appropriate prevailing rate comparisons and the impact of varying underwriting standards are therefore irrelevant to resolving a motion to dismiss.

Taken together, the factual allegations in the Complaint are more than sufficient to plausibly allege that Defendants' loan product and lending practices are predatory.

**2. The Complaint plausibly alleges that Defendants discriminated by targeting Hispanic consumers.**

The Complaint describes, at great length, how Defendants intentionally target Hispanic consumers with their predatory loan product—starting with its name. Rather than market their seller-financed lots under the "Colony Ridge" brand, Defendants advertise the lots under the aliases Terrenos Houston and Terrenos Santa Fe. In Spanish, "terrenos" translates to "lands" or "lots." ECF 1 ¶ 3. Consistent with this theme, each subdivision has a Spanish name. *Id.* ¶ 32. The Complaint alleges that Defendants advertise almost exclusively in Spanish, and provides examples from Defendants' websites and social media accounts; including that in October 2023, all 123 advertisements posted by the @yosoyterrenoshouston TikTok account—another instance of Spanish self-naming—were entirely in Spanish. *Id.* ¶¶ 3, 35–39. The advertisements often feature cultural markers associated with Latin America, such as regional music and the national flags of Colombia, Honduras, Mexico, and Venezuela, among others. *Id.* ¶¶ 3, 45–46. The Complaint further alleges that Defendants lure consumers with promises of camaraderie (Spanish-speaking employees calling consumers "mi gente," which translates to "my people") and hopes of achieving the American Dream, and illustrates this point with examples of Spanish-language advertisements doing just that. *Id.* ¶¶ 1, 40–42.

Courts have found similar allegations of targeted advertising (including in the community's native language), promises to "help" the targeted community, and displays of cultural markers, sufficient to allege discriminatory targeting. *Hargraves*, 140 F. Supp. 2d at 21–22 (noting "[D]efendants' solicitation of brokers who operate predominately in the black

community," "distribution of flyers and advertisements in black communities," "the decision to place their offices in black communities," and placement of photos of mortgage company's president with prominent black public figures near the building entrance); *United States v. Home Loan Auditors, LLC*, No. 16-CV-04839-RS, 2016 WL 6962881, at *1 (N.D. Cal. Nov. 29, 2016) (defendant's home loan modification "scheme targeted Hispanic homeowners" by offering marketing materials exclusively in Spanish, claiming to help secure loan modifications for the "Hispanic community," and featuring "purportedly satisfied Hispanic clients who claimed defendants reduced their debt"); *Barkley v. Olympia Mortg. Co.*, No. 04 CV 875 RJD/KAM, 2007 WL 2437810, at *11 (E.D.N.Y. Aug. 22, 2007) (finding evidence that defendants used "race-conscious outreach strategies" supported existence of a question of material fact as to whether defendants engaged in discriminatory targeting); Order, *Emigrant*, 50 F. Supp. 3d at 308–09 (selecting outlets to primarily reach Black and Latino customers was evidence of targeting).

The Complaint further supports the discriminatory targeting allegations with a statistical analysis showing the degree to which Hispanic consumers are disproportionately represented among purchasers of lots in the Terrenos Houston Subdivisions. ECF 1 ¶ 10. Between September 2017 and September 2022, Defendants recorded at least 28,482 unique transactions (*i.e.*, consumers who purchased one or more properties on the same day) in the Terrenos Houston Subdivisions. Roughly 91 percent of those transactions involved at least one Hispanic consumer, even though the Houston Metropolitan Statistical Area is only around 38 percent Hispanic. *Id.* Disparities between the racial composition of a geographic area constituting a company's service area and the demographics of its customers are relevant to establishing discriminatory targeting. *See, e.g.*, *Horne*, 304 F. Supp. 3d at 1341 (FHA and ECOA); *Roberson v. Health Career Inst. LLC*, No. 22-CV-81883-RAR, 2023 WL 4991121, at *15 (S.D. Fla. Aug. 3, 2023) (ECOA). Defendants are mistaken in their assertion that Plaintiffs must allege that similarly-situated non-Hispanic consumers were treated more favorably than the aggrieved consumers in order to prove discriminatory targeting. ECF 50 at 10. Rather, Plaintiffs can prove their case through intentional

targeting of a protected class as set forth above. *See Brook v. Sistema Universitario Ana G. Mendez, Inc*., No. 8:17-CV-171-T-30AAS, 2017 WL 1743500, at *4 (M.D. Fla. May 4, 2017) (construing ECOA and the FHA to *not* require harm to similarly situated groups because it would allow "injustice so long as it is visited exclusively on [one ethnic group]"); *Munoz*, 2004 WL 3086907, at *4 (lack of allegation "that similarly situated people obtained loans on more favorable terms does not defeat the claim in that plaintiffs may be able to show directly that [defendant] intentionally targeted them for unfair loans on the basis of their racial status"). Likewise, Plaintiffs need not *also* allege disparate impact, given that discriminatory targeting may be proven through evidence of intentional discrimination or discriminatory effect. *Hargraves*, 140 F. Supp. 2d at 20.

Indeed, Plaintiffs allege "targeting" throughout the Complaint, *see, e.g.*, ECF 1 at 1, 8; ¶¶ 10, 188, 193, and these factual allegations are more than sufficient to plausibly allege that Defendants targeted consumers on the basis of race or national origin in violation of ECOA and the FHA. Nothing more is required.

### C. Colony Ridge Development and Colony Ridge BV are creditors under ECOA.

The Complaint contains sufficient facts to show that Defendants Colony Ridge Development and Colony Ridge BV are "creditors" under the statutory definition of that term. Accordingly, Defendants' challenge to Regulation B is irrelevant.

ECOA defines a "creditor" as any person who regularly extends, renews, or continues credit, or who regularly arranges for the extension, renewal, or continuation of credit. 15 U.S.C. § 1691a(e). The Fifth Circuit has explained that "regularly arrang[ing] for the extension … of credit," 15 U.S.C. § 1691a(e), could include "provid[ing] customer credit applications to lenders." *Calderone v. Sonic Houston JLR, L.P.*, 879 F.3d 577, 579 n.1 (5th Cir. 2018) (citing *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 978 (7th Cir. 2004)).

Courts across the country have similarly reached that conclusion. *See, e.g., Brook*, 2017 WL 1743500, at *2 (Plaintiff sufficiently alleged that a school that did not itself offer loans to

students was a "creditor" when it referred loan applicants to creditors); *Gallegos v. Rizza Chevrolet, Inc.*, No. 03 C 4237, 2003 WL 22326523, at *2 (N.D. Ill. Oct. 9, 2003) (allegation that consumer negotiated vehicle purchase with car dealership and that, to complete the transaction, car dealership employee referred the consumer to another car dealership employee with financing role sufficed to allege that car dealership was "creditor" under ECOA); *Burns v. Elmhurst Auto Mall, Inc.*, No. 00 C 5732, 2001 WL 521840, at *2 (N.D. Ill. May 16, 2001) (car dealership was a creditor under ECOA because it regularly referred applicants to creditors and selected creditors to whom credit applications could be made).

The facts of *Better Homes Depot* illustrate the breadth of ECOA's creditor definition. In that case, the plaintiff alleged that a representative of the defendant, which was a corporate house flipper, met with her at the defendants' offices, asked plaintiff questions, filled out applications, and had her sign certain pages. *Phillips v. Better Homes Depot, Inc.*, No. 02-CV-1168 (ERK), 2003 WL 25867736, at *4 (E.D.N.Y. Nov. 12, 2003). At summary judgment, the district court found that the corporate house flipper regularly arranged for the extension of credit, and so qualified as a creditor under ECOA. *Id.* at *22. The same is true here. The Complaint plausibly alleges that Colony Ridge Development and Colony Ridge BV arrange for the extension of credit, in part by "regularly refer[ring] applicants to Colony Ridge Land, and exclusively select Colony Ridge Land as the creditor from whom consumers can request credit." ECF 1 ¶ 157.

Any purported separation between the three Defendants at issue in this motion is fictitious. Colony Ridge BV and Colony Ridge Development are involved in the extension of credit even after their employees submit consumers' applications for credit. Colony Ridge BV and Colony Ridge Development employees are all paid by lender Colony Ridge Land, conduct business out of the same Terrenos Houston office in New Caney, Texas, as Colony Ridge Land, which is the very office where the credit transactions are initiated and closed, and all three companies share employees. ECF 1 ¶¶ 5, 66, 68–109, 140, 142, 144. Colony Ridge Development and Colony Ridge BV are involved in the credit extension from beginning to end (with the support of co-defendant Loan Originator Services, LLC), starting with their offer to consumers

of different loan terms, including different repayment lengths and different interest rates. *Id.* ¶¶ 71–72, 93, 113, 157–59.

Colony Ridge BV and Colony Ridge Development sales staff also prepare applications for consumers that list various credit terms, including the sales price, discount, down payment, finance amount, monthly payment, date of the first payment due, name of the seller and creditor, interest rate and term, escrow and deposit amounts, and amount due at closing. *Id.* ¶¶ 78–79. Once these applications are prepared, Colony Ridge BV and Colony Ridge Development proceed to funnel all applicants to their lending arm, Colony Ridge Land, again with the participation of Loan Originator Services. *Id.* ¶ 157. During the Pre-Closing and Closing stages of the credit transaction, so-called "notarias" present consumers with purchase documents like the Land Purchase Agreement and Intrastate Exemption Statement, on behalf of Colony Ridge Development and Colony Ridge BV, and credit-related documents like the Application for Financing, a Mortgage and Loan Analysis, Promissory Note, and Closing Disclosure, on behalf of Colony Ridge Land. *Id.* ¶¶ 83–85, 90, 100. The "notarias," who are actually notaries with no legal training, orally review these transactional documents with the consumers; orally summarize the documents into Spanish for consumers with limited English proficiency; obtain consumers' signatures and initials on the documents; collect earnest money fees, option fees, and document processing fees from consumers; schedule the closing appointments; and orchestrate the closing process by presenting consumers with finalized documents to sign. *Id.* ¶¶ 91, 94–95, 104.

The Complaint thus alleges that Colony Ridge BV and Colony Ridge Development play a critical role in arranging credit. Their conduct falls squarely within ECOA's definition of "creditor," which the Fifth Circuit has recognized is not limited to those who directly provide credit. *See Calderone*, 879 F.3d at 579 n.1 ("Though [Defendant] does not directly provide credit, ECOA defines 'creditor' to include those who 'regularly arrange[ ] for the extension' of credit").

Because Plaintiffs have sufficiently alleged that Colony Ridge Development and Colony Ridge BV are creditors under the statute, Defendants' arguments regarding the scope of

Regulation B are irrelevant. Indeed, Regulation B's definition of "creditor" necessarily fits within ECOA's statutory definition of that same term, and includes, as alleged here, "a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors." 12 C.F.R. § 1002.2(l); 44 Fed. Reg. 23,813 (Apr. 23, 1979). Defendants do not argue how or why the statute "unambiguously forecloses" reliance on Regulation B's definition of "creditor." ECF 50 at 13. Their argument, instead, consists entirely of invoking irrelevant caselaw about a different provision of the regulation. Whether the definition of "applicants" includes "guarantors" or "prospective applicants" has absolutely no relevance to the point here. *Id.* at 12.

For all of these reasons, the facts in the Complaint are sufficient to plausibly allege that Colony Ridge Development and Colony Ridge BV are creditors under ECOA.

### D. The Complaint plausibly alleges that the lots are dwellings under the FHA.

The Complaint alleges ample facts demonstrating that the lots at issue are "dwellings" under the FHA, defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and *any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.*" 42 U.S.C § 3602(b) (emphasis added). The Complaint describes in detail how Defendants lured tens of thousands of Hispanic consumers into purchasing lots within "six *residential* subdivisions" to "[a]chieve the American dream"—the dream of owning one's own home—using predatory seller financing. ECF 1 ¶¶ 1–2 (emphasis added); *see also, e.g., id.* ¶¶ 41–43 (describing Defendants' messaging enticing consumers to "[f]ulfill the dream of being an owner," and "[a]chieve the dream of having *your own home* . . . and *stop paying rent*!") (emphasis added).

Defendants do not dispute this, but contend the Complaint fails to "plausibly allege that the FHA covers *all* lots at issue," ECF 50 at 16 (emphasis added)—ostensibly because it does not allege facts specific to *each individual lot* of the thousands at issue, and thus fails to "rule out non-residential or commercial uses." *Id.* at 16–17. Defendants rely on *Home Quest Mortg. LLC*

*v. Am. Fam. Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1184–87 (D. Kan. 2004) ("*Home Quest*"), which involved a single property owned by a "commercial property owner who had no intention of residing in the dwelling." *Id.* at 1185. That case stands only for the unremarkable position that the FHA does not apply where "it is undisputed that the property in issue was zoned commercial, and that plaintiffs intended to use it for a commercial purpose," *Brown v. Interbay Funding, LLC*, 417 F. Supp. 2d 573, 579 (D. Del. 2006), *aff'd*, 198 F. App'x 223 (3d Cir. 2006), and provides no support for Defendants' inverse contention that the possibility of a single commercial-use lot within several large residential subdivisions is fatal to alleging an FHA claim.

In contrast, a far more comparable scenario to the facts of this case was addressed in *H.O.P.E., Inc. v. Lake Greenfield Homeowners Ass'n.*, where the court held that vacant land in a residential community, which the plaintiffs then worked to clear with the intention of building a residence on, was a protected "dwelling" under the FHA. No. 16 CV 5422, 2017 WL 1493708, at *4–5 (N.D. Ill. Apr. 26, 2017). This same result should easily apply here.

### E. The Complaint plausibly alleges that Colony Ridge made dwellings otherwise unavailable under section 3604(a) of the FHA.

Defendants specifically challenge the United States' claim under section 3604(a), which prohibits discriminatory conduct that, in relevant part, "otherwise make[s] unavailable or den[ies]" a dwelling because of a protected characteristic. 42 U.S.C. § 3604(a). Defendants contend that the United States' "[a]llegations that defendants targeted Hispanic applicants by extending them financing to purchase property" facially contradict any plausible inference that any defendant "made unavailable or denied" anything to anyone. ECF 50 at 18 (cleaned up).

The reach of section 3604(a) is not nearly as narrow as Defendants claim. "Courts have consistently given an expansive interpretation to the Fair Housing Act[.]" *Hanson*, 800 F.2d at 1386 (claim for discriminatory appraisal cognizable under section 3604(a)). The Fifth Circuit has drawn a distinction between claims that concern the "value or habitability of homes," which are not cognizable under section 3604(a), and claims where "the availability of housing for

prospective owners or tenants is implicated," such as "'racial steering,' locking out owners of one race but not another, mortgage redlining, insurance redlining, [and] exclusionary zoning," which are cognizable. *Cox v. City of Dallas*, 430 F.3d 734, 744 (5th Cir. 2005) (rejecting homeowners' claim under section 3604(a) regarding city's alleged failure to prevent dumping).

Here, "the availability of housing for prospective owners or tenants is implicated," *id.*, because the United States alleges that Defendants targeted Hispanic consumers for loans designed to fail from outset. ECF 1 ¶ 1. Indeed, the *Hargraves* court rejected the precise argument Defendants raise here, holding that predatory targeting "can make housing unavailable by putting borrowers at risk of losing the property which secures their loans." 140 F. Supp. 2d at 20. The single case cited by Defendants in support of their argument does not hold otherwise. ECF 50 at 18. In that case, the court dismissed a reverse redlining claim that concerned alleged predatory *refinancing* on the plaintiffs' existing homes. *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 885–86 (N.D. Ohio 2001) (predatory refinancing allegations related to maintenance of a previously acquired home, rather than its availability). For these reasons, the United States has alleged a plausible claim that Colony Ridge violated section 3604(a).

### F. The Court should defer decision on Defendants' arguments about the Bureau's statutory method of funding.

Defendants raise only one argument for dismissing the claims brought by the Bureau alone (Counts III–XI): that Congress violated the Appropriations Clause when it appropriated money for the Bureau's operations. ECF 50 at 18–19; *see also* 12 U.S.C. § 5497. The Fifth Circuit so held in *Community Financial Services Association of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) (*CFSA*), but that holding is currently under review by the Supreme Court, which is expected to issue a decision by the end of June 2024. *See CFPB v. CFSA*, No. 22-448 (U.S.). The Bureau disagrees with the Fifth Circuit's holding in *CFSA* for the reasons advanced by the Solicitor General in the Supreme Court. *See* Br. of Pet., *CFSA*, 2023 WL 3385418. Rather than address this claim now, however, the Court should simply defer decision on this issue until the Supreme Court's ruling while proceeding on the other issues raised by Defendants. *See* Fed.

R. Civ. P. 12(a)(4)(A) (court may postpone disposition of issues raised in Rule 12 motion); *see also CFPB v. Fifth Third Bank, N.A.*, No. 1:21-cv-262, 2023 WL 7325956, at *1 (S.D. Ohio Sept. 26, 2023) (holding funding issue in abeyance while deciding all other issues that defendant raised in motion for judgment on pleadings). This would spare the Court from addressing Defendants' funding claims while the Fifth Circuit's decision is pending review. Nor would the Court need to resolve any other argument about Counts III–XI, as Defendants only challenge these claims based on the Bureau's funding. *See* ECF 50 at 19 (conceding that the Court could "await the Supreme Court's ruling in [*CFSA*], receive additional briefing on the decision, and rule on the dismissal of CFPB's claims at that time.").

## V. Should the Court grant the Motion to Dismiss, it should do so without prejudice, and grant Plaintiffs leave to amend.

Should the Court ultimately grant Defendants' motion, it should do so without prejudice and grant Plaintiffs leave to amend their pleading to add any further factual support the Court deems necessary to survive a Rule 12(b)(6) motion. *See Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 421–22 (5th Cir. 2013) ("Permission [to amend] should be denied only if it appears to a certainty that plaintiffs cannot state a claim showing they are entitled to relief or defendant will be unduly prejudiced.") (citing *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 182 (5th Cir. 1980)). Defendants themselves do not request dismissal with prejudice.

DATED: March 12, 2024

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

VARDA HUSSAIN
Principal Deputy Chief

s/ *Melissa A. Carrington*
MELISSA A. CARRINGTON

ERIC HALPERIN
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

REBECCAH BOWER
Assistant Litigation Deputy

s/ *E. Vanessa Assae-Bille*
E. VANESSA ASSAE-BILLE

Attorney-in-Charge *(pro hac vice)*
IA Bar No. 13033

TERRENCE K. MANGAN, JR. *(pro hac vice)*
MD Bar No. 2006010006

JIMMY S. MCBIRNEY *(pro hac vice)*
NY Bar No. 4798799

HANNAH C. ABELOW *(pro hac vice)*
NY Bar No. 5931464

Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Tel: (202) 514-4713
Fax: (202) 514-1116
Email: melissa.carrington2@usdoj.gov
terrence.mangan2@usdoj.gov
jimmy.s.mcbirney2@usdoj.gov
hannah.abelow@usdoj.gov

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Civil Division
Chief

*s/ Elizabeth F. Karpati*
ELIZABETH F. KARPATI
SDTX: 20567
TX Bar No. 00794069

Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002
Tel: (713) 567-9767
Fax: (713) 718-3303
Email: elizabeth.karpati@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

Attorney-in-Charge *(pro hac vice)*
NY Bar No. 5165501

ALEXIS C. CHRISTENSEN *(pro hac vice)*
DC Bar No. 1723838

ANDREA M. LOWE *(pro hac vice)*
DC Bar No. 187250

Office of Enforcement
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-7000
Fax: (202) 435-7722
Email: elisabeth.assae-bille@cfpb.gov
alexis.christensen@cfpb.gov
andrea.lowe@cfpb.gov

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2024, a copy of the foregoing PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO COLONY RIDGE DEVELOPMENT, LLC, COLONY RIDGE BV, LLC, AND COLONY RIDGE LAND, LLC'S MOTION TO DISMISS was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

s/ *E. Vanessa Assae-Bille*

E. VANESSA ASSAE-BILLE
1700 G Street, NW
Washington, DC 20552
Tel: (202) 435-7000
Fax: (202) 435-7722
Email: elisabeth.assae-bille@cfpb.gov