**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and UNITED STATES OF AMERICA,<br><br>*Plaintiffs,*<br><br>vs.<br><br>COLONY RIDGE DEVELOPMENT, LLC, d/b/a Terrenos Houston, Terrenos Santa Fe, and Lotes y Ranchos; COLONY RIDGE BV, LLC; COLONY RIDGE LAND, LLC, formerly d/b/a Terrenos Houston and Lotes y Ranchos; and LOAN ORIGINATOR SERVICES, LLC,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 23-cv-4729 |

**DEFENDANT LOAN ORIGINATOR SERVICES, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Loan Originator Services, LLC ("LOS") has moved to dismiss Plaintiffs' suit against it for failure to state a claim (Doc. 49). LOS makes the following Reply[1] to the Response filed by Plaintiffs (Doc. 55) and would respectfully show:

Plaintiffs' Response to LOS's Motion to Dismiss ascribes limited conduct to LOS (the creation of paperwork), but not the same conduct as that on which Plaintiffs' discrimination claim is based (the engagement in allegedly unfair or predatory lending practices allegedly targeted at Hispanics). Plaintiffs do not dispute the core of LOS's dismissal argument: "LOS did not target or in any way select loan applicants, did not interact with consumers, did not set the terms of the

[1] This Reply, which exceeds the Court's page limits for a reply, is filed subject to LOS's Unopposed Motion for Leave to Exceed Page Limits. Doc. 57. Should the Court deny that Motion, LOS will promptly file a five-page version of this Reply.

loans, did not close the loans, did not service the loans, and did not participate in any of the foreclosures discussed at length in the Complaint." Doc. 49 at 2. Instead, Plaintiffs argue that LOS's extremely limited, ministerial role in these transactions is enough for LOS to be indirectly or vicariously liable for its co-Defendants' alleged discrimination. Doc. 55 at 7-8 (citing 24 CFR § 100.7 and 12 CFR § 1002.2(l)). This new argument is not found in the Complaint; Plaintiffs assert it for the first time in their Response to the LOS Motion to Dismiss. Moreover, those regulations do not apply to the limited role LOS played, as discussed below.

## ARGUMENT AND AUTHORITIES

### A. Plaintiffs' response admits LOS's conduct is not the allegedly discriminatory conduct.

As restated in the Response, "the Complaint alleges that Defendants target Hispanic consumers with a predatory loan product that sets them up to fail and, indeed, results in an alarming rate of foreclosures." Doc. 55 at 2. Because LOS did not target or in any way select loan applicants, did not interact with consumers, did not set the terms of the loans, did not close the loans, did not service the loans, and did not participate in any of the foreclosures discussed at length in the Complaint, this is not an allegation that LOS did anything wrong.

Nonetheless, Plaintiffs argue that LOS "participates in Defendants' predatory seller financing practices" by not assessing consumers' ability to repay these loans, because LOS does not collect "verified information regarding consumers' income and assets, or about their debts and liabilities." Doc. 55 at 3. Failing to assess ability to repay is not illegal or predatory; the CFPB's own rules do not require verification of borrowers' ability to repay for lot loans.[2]

---

[2] The CFPB rule that requires analysis of a borrower's ability to repay the loan and verification of income is limited in scope to loans "secured by a dwelling." *See* 12 C.F.R. § 1026.43(a). To make an "apples-to-apples" comparison, when LOS assists the Colony Ridge Defendants with such a home loan at one of these developments, it of course <u>does</u> collect this kind of verified financial

The Response nakedly asserts that "LOS's participation in the credit extension process is essential to the Colony Ridge Defendants' business," (Doc. 55 at 2) but does not substantiate this claim.[3] Instead, the Response describes the LOS function as "generating pre-closing documents, entering consumer information into documents, reviewing transactional documents, and signing key documents like the Application for Financing and Texas Mortgage Company Disclosures." Doc. 55 at 2-3; *see also* 8-9, 11, 15, 16. Setting aside Plaintiffs' quibbling with LOS's description of these actions as "ministerial," this conduct actually ascribed to LOS is plainly not the conduct that Plaintiffs have pleaded resulted in "an alarming rate of foreclosures." Because the actions of LOS, as pleaded in the Complaint, are not the actions that constitute the alleged discrimination, the Complaint fails to state a claim against LOS, under either the FHA or the ECOA.

**B. Plaintiffs' response does not support their claim that LOS is an ECOA "creditor".**

The conduct actually ascribed to LOS is also not adequate to state a claim that LOS is a "creditor" under the ECOA. Per the statute, "The term "creditor" means any person who regularly extends, renews, or continues credit; [or] any person who regularly arranges for the extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(e) (truncated to quote only the prongs at issue). Thus, to state a claim against LOS, Plaintiffs need to claim that LOS extended or arranged for credit. The Complaint alleges no facts to support a claim that LOS is extending credit.

ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). LOS is not extending any such right to consumers. LOS is not

---

information from potential borrowers. Not surprisingly, Plaintiffs have not made home loans at Colony Ridge part of this case.

[3] Being "essential to the business" of a creditor is not a legal standard applicable to any claim in this case. Plaintiffs' argument, taken to its logical conclusion, would extend FHA and ECOA liability to the Colony Ridge Defendants' internet service provider or photocopier repair service.

granting a debt or the right to defer payments to any consumers, and the Complaint alleges no such activity.[4] *C.f., Burnside v. Washtenaw Mortg. Co*., Case No. C-1-01-359, 2002 U.S. Dist. LEXIS 13325, at *11-12 (S.D. Ohio July 15, 2002) (holding that mortgage broker who merely generated the federally required disclosures provided to the consumer for the lender of the loan did not meet similar definition of "creditor" in Truth in Lending Act).

In addition, the Complaint alleges no facts to support an argument that LOS was "arranging" the credit transactions. The CFPB's own Regulation Z, 12 C.F.R. Part 1026, which implements the Truth in Lending Act, defines in its official staff interpretations what "arranging a credit transaction" means. Although this is a different statute, the CFPB is defining the same term, and both statutes deal with residential mortgage loans. The CFPB stated in its official interpretations that "arranging a credit transaction" includes

> [*I]nitially contacting* and orienting the consumer to a particular loan originator's or creditor's origination process or particular credit terms that are or may be available to that consumer selected based on the consumer's financial characteristics, assisting the consumer to apply for credit, taking an application, offering particular credit terms to the consumer selected based on the consumer's financial characteristics, negotiating credit terms, or otherwise obtaining or making an extension of credit.

12 C.F.R. Part 1026, supp. I, comment 36(a)-1.i.*2* (emphasis added).[5] The Complaint does not

---

[4] Further, the CFPB's Regulation B defines "extend credit" to mean "the granting of credit in any form…," and lists several exemplar forms of credit. 12 C.F.R. § 1002.2(q). The Complaint does not allege any facts to support a determination that LOS is granting credit in general or any of the forms listed in the regulation.

[5] The CFPB's current interpretation of the term "arrange" in Regulation Z is similar to the original Regulation B's definition of the phrase of "arranges for the extension…of credit" in ECOA's definition of "creditor." In the original rule, the Board defined "arrange for the extension of credit" to mean "to provide or offer to provide credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit participates in the decision to extend credit to an applicant." 40 Fed. Reg. 49298, 49036 (Oct. 22, 1975). Both interpretations require substantial contact with the consumer, which LOS does not have. The original regulatory definition of "creditor" also mirrored the statutory definition. *Id.* But when the Board first proposed the regulatory definition of "creditor" that includes any person who

allege that LOS did any of those things. In fact, the Complaint acknowledges that LOS has no contact with the consumers of Colony Ridge's loans.[6]

None of the cases cited by Plaintiffs hold that a company with as limited a role as LOS extends or arranges for credit. The Response cites *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158, (1981), for the proposition that an entity that did not assist in the negotiations could be a creditor under the Truth in Lending Act. But the Response ignores the fact that the court found that the defendant, Ford Motor Credit, "actually extended the credit," in part, because the "loans were contingent upon [Ford's] approval of the credit worthiness of the buyer," and the loans were "simultaneously" assigned to Ford upon closing. Here, LOS is not extending the credit, has no role in approving the consumer's credit worthiness, and is not assigned the Colony Ridge loans.

*United States v. Home Loan Auditors, LLC*, No. 16-cv-04839-RS, 2016 WL 6962881 (N.D. Cal. Nov. 29, 2016) is similarly unavailing and actually supports LOS. In that case, the court denied a motion to dismiss against an individual sales representative of a home loan audit company. But the court acknowledged that if the only allegation in the complaint were that the individual defendant's "only duties included processing home-loan related documents…" that "it

---

participates in a credit decision, it stated that it intended to merely "combine" its "arrange" definition and its original "creditor" definition. See 41 Fed. Reg. 29870, 29871 (July 20, 1976) ("The Board proposes to combine in this [creditor] definition the definitions of 'arrange for the extension of credit'…and 'creditor.'"), *finalized by* 42 Fed. Reg. 1242 (Jan. 6, 1977). The Board did not intend to broaden the scope of "creditor" beyond the statutory term, nor did it say it understood that Congress intended such a broader scope. Unfortunately, the language of the regulation goes beyond Congress' intent, and even the Board's original intent for the term.

[6] *See* Complaint, Doc. 1 at ¶ 8 ("Colony Ridge directs consumers towards its predatory loan product by only presenting consumers with its in-house options, creating the impression that its mortgages are the exclusive means of financing lots in the Terrenos Houston Subdivisions. Colony Ridge then closes on its own loans with effectively no oversight from the mortgage originator, with no title company or outside attorneys present, while retaining all servicing rights.") and ¶ 117 ("In most Colony Ridge credit transactions, the consumer does not directly engage with any [LOS] representative at any point.").

would not support a plausible claim under ECOA or the Fair Housing Act." *Id.* at *5. The individual defendant in *Home Loan Auditors* was also a part owner of one of the other defendants that actually made the home loan modifications at issue in the case. LOS has no such relationship.

The Response also cites to two cases that involve mortgage brokers, *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885 (N.D. Ill. 2009), and *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007). Mortgage brokers, however, are subject to ECOA, as they conduct the initial communication with consumers, take their applications, and connect them with various mortgage lender options.

Thus, the cases that the Response cites do not support its position that LOS's ministerial activity makes it a "creditor" under ECOA.

**C. The Response does not provide applicable support for alleged FHA violations.**

The Response argues that LOS is subject to 42 U.S.C. §§ 3604(a) and (b) and 3605(a) of FHA. But the cases on which it relies are again distinguishable from LOS's limited activities. First, *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000), dealt with whether an actual mortgage lender that funded the loans at issue could be found to have made housing unavailable under § 3604(a). The court found that the lender's "predatory practices alleged can make housing unavailable by putting borrowers at risk of losing the property which secures their loans." *Id.* at 20. Plaintiffs here have not alleged that LOS committed any of the predatory practices alleged against Colony Ridge, or that were alleged in *Hargraves*.

*Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007) does not address the breadth of these FHA provisions and merely "holds that plaintiffs may establish the fourth prong of their prima facie case with evidence of intentional targeting." *Id.* at *47.

The Response cites *Ga. State Conference of the NAACP v. City of LaGrange*, 940 F.3d 627 (11th Cir. 2019), as support for the proposition that § 3604(b) applies to a third-party service provider "regardless of whether it has direct contact with consumers." But *Ga. State Conf.* dealt with an entirely different issue: whether the language of § 3604(b) that applied to "the provision of services or facilities in connection" with the "sale or rental of a dwelling" also applied to such services that were provided after the acquisition of the dwelling. *Ga. State Conf.*, 940 at 632. ("because there is no temporally limiting language, the plain language of § 3604(b) may…encompass the claim of a current owner or renter…."). The Response cites *Eva v. Midwest Nat'l Mortg. Banc, Inc.*, 143 F. Supp. 2d 862, 889 (N.D. Ohio 2001), claiming that § 3605 can apply to persons not acting as mortgage lenders, but the case actually involved irrelevant language in § 3605 (the phrase "providing other financial assistance for…maintaining a dwelling" within the definition of "residential real estate-related transaction") and whether a provider of a particular mortgage payment service fell under that language. *Eva*, 143 F. Supp. 2d at 889.

In contrast, other courts have rejected claims that a mortgage company that did not make the loan at issue is subject to these provisions of FHA. For example, in a past reverse redlining case, *United States v. Advocate Law Grps. Of Fla., P.A*, the U.S. Attorney General alleged that a law firm violated §§ 3604(a) and (b) and 3605 because it "offer[ed] to assist homeowners with negotiating loan modifications" with their lenders and targeted Hispanic homeowners for "unfair and predatory loan modifications and foreclosure rescue services.'" *United States v. Advocate Law Grps. Of Fla., P.A*, 413 F. Supp. 3d 1225, 1227, 1232 (M.D. Fla. 2019). The court held that the law firm was not subject to § 3604(a), in part, because "the lenders—not Defendants—'ultimately held the power to agree to the modification or to foreclose,'" the law firm "maintained no power

over the [consumers]," and that "no facts are alleged supporting an inference that Defendants have the ability to 'make housing unavailable.'"[7] *Id.* at 1231-2. The same facts control here.

In addition, in *Levey v. CitiMortgage, Inc.*, the plaintiffs alleged that assignees of loans had violated § 3604(b), but the court rejected that argument stating, "[Plaintiff] Hyles has not claimed that CitiMortgage ever made him a loan." *Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *5-6 (N.D. Ill. Aug. 10, 2009). And a court rejected a claim that a title insurance company was subject to § 3605's prohibition, stating that, "any claim under this section of the FHA also fails because there is no indication that Title Company engaged in 'residential real estate-related' transactions as that term is defined." *Fillyaw v. Cmty. Nat'l Bank & Tr.*, No. 3:22-CV-1112-N (BH), 2023 WL 6797540, at *9 (N.D. Tex. Aug. 22, 2023).

While the Government argues that LOS is engaged in the making of loans because it is licensed by the state of Texas as a residential mortgage loan originator, that argument makes no logical sense. The Government has not alleged that LOS has made (*i.e.*, funded) or purchased any loans, only that it generated documents for Colony Ridge. Just because LOS has a license to engage in activity that actually would constitute the making of loans, or the extension of credit, does not mean that it is doing it here. Per the Complaint, it is not.

**D. The Response asserts new quasi-vicarious liability arguments.**

Tacitly acknowledging that they have no direct discrimination claim against LOS based on LOS's limited role, Plaintiffs advance a new theory in their Response, one that resembles vicarious liability: "Plaintiffs meet their burden at this stage under ECOA or the FHA by pleading sufficient facts to plausibly allege that LOS enables, gives force to, or participates in a course of conduct that

---

[7] The court also held that such activity was not covered under §§ 3604(b) and 3605. *See United States v. Advocate Law Grps. of Fla., P.A*, 413 F. Supp. 3d at 1233-36.

it knows, or should know, is discriminatory." Doc. 55 at 6. Plaintiffs' case against LOS is therefore indirect or vicarious. As legal support for this new theory, Plaintiffs cite to "the implementing regulations for ECOA and the FHA." Doc. 55 at 7. But these regulations do not apply to these facts, at least in the manner urged by Plaintiffs.

The applicable FHA regulation allows for a person to be directly liable for the discriminatory conduct of someone else, but it only applies when the person "had the power to correct it." 24 C.F.R. § 100.7(a)(iii). Here, LOS had no power over the Colony Ridge Defendants' conduct, nor does the Complaint allege as much.

The ECOA regulation cited by Plaintiffs actually operates as a shield against liability, not as the expansion urged by Plaintiffs in the Response: "A person is not a creditor regarding any violation of the Act or this part committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction." 12 C.F.R. § 1002.2(l). Since Plaintiffs have not pleaded this theory in the Complaint, including it in the Response should not stave off dismissal. But on the merits, it simply does not apply here, because the Colony Ridge Defendants' conduct is not violative of ECOA, or at least certainly has not been found to be so.[8]

Plaintiffs have not pleaded an actionable discrimination case against any Defendant; moreover, the allegations against LOS are far too attenuated to survive dismissal, because of the

---

[8] Only a single case cited in the Response imposes liability under this provision from Regulation B, *Beard v. Dominion Homes*. In that case, the vicariously liable creditor was the post-closing assignee of loans, had known that the loans would not be FHA eligible prior to closing, and had also known that the closing creditor had told the borrowers that the loans would be FHA eligible, and was alleged to have made a fraudulent misrepresentation about the specific terms of the home loans on which the Plaintiffs relied. *Beard v. Dominion Homes Fin. Servs., Inc.*, No. 2:06-cv-00137, 2007 WL 2137944 (S.D. Ohio, 2007). Under these facts, in which the assignee-creditor had participated in the ECOA violation, the Court found that the expanded definition of creditor applied.

limited role LOS played in these transactions. Plaintiffs' attempt to make LOS liable for the conduct of the other Defendants is similarly unavailing because it has not been pleaded in the Complaint and also because there is no support for such vicarious liability in the statutes or regulations. Plaintiffs have acknowledged and confirmed LOS's limited role in its Response, and thus, their claims against LOS should be dismissed with prejudice.

Respectfully Submitted,

Robert G. Hargrove
Texas Bar No. 24032391
Southern District No. 2684604
rghargrove@dgclaw.com
Lisa A. Paulson
Texas Bar No. 00784732
Southern District No. 22480
lapaulson@dgclaw.com
DAVIS, GERALD & CREMER, P.C.
515 Congress Avenue, Suite 1510
Austin, Texas 78701
(512) 493-9615
(512) 493-9625 *Facsimile*

By: /s/ Robert G. Hargrove
Robert G. Hargrove

Troy Garris
Texas Bar No. 24007226
GARRIS HORN LLP
325 N. Saint Paul St., Suite 3100
Dallas, Texas 75201
(301) 461-8952

**ATTORNEYS FOR DEFENDANT**
**LOAN ORIGINATOR SERVICES, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of this document on the below-listed counsel of record, using the CM/ECF system on this, the 19th day of March, 2024.

Mellisa A. Carrington
Terrence K. Mangan, Jr.
Jimmy S. McBirney
Hannah C. Abelow
U.S. Department of Justice
150 M. Street, NE
Washington, DC 20530

Elizabeth F. Karpati
Assistant U.S. Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

**Attorneys for Plaintiff**
**United States of America**

E. Vanessa Assae-Bille
Alexis C. Christensen
Andrea M. Lowe
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

**Attorneys for Plaintiff**
**Consumer Finance Protection Bureau**

Philip H. Hilder
Q. Tate Williams
Stephanie K. McGuire
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, TX 77006

Jason Ray
Riggs & Ray, P.C.
3307 Northland Drive, Suite 215
Austin, TX 78731

Christopher D. Hilton
Stone Hilton, PLLC
1115 W. Slaughter Lane
Austin, TX 78748

**Attorneys for Defendants**
**Colony Ridge Development, LLC**
**Colony Ridge BV, LLC**
**Colony Ridge Land, LLC**

By: /s/ Robert G. Hargrove
Robert G. Hargrove