United States District Court
Southern District of Texas
**ENTERED**
September 13, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CONSUMER FINANCIAL PROTECTION §
BUREAU, *et al.*, §
　§
　　Plaintiffs, §
　§
VS. § CIVIL ACTION NO. 4:23-CV-04729
　§
COLONY RIDGE DEVELOPMENT, LLC, §
*et al.*, §
　§
　　Defendants. §

# ORDER

Before the Court are Plaintiffs' Complaint (Doc. #1) and two motions: Defendant Loan Originator Services, LLC's ("LOS") Motion to Dismiss (Doc. #49), Plaintiffs' Response (Doc. #55), and LOS' Reply (Doc. #58); and Defendants Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC's (collectively, "Colony Ridge") Motion to Dismiss (Doc. #50), Plaintiffs' Response (Doc. #56), and Colony Ridge's Reply (Doc. #59). On August 9, 2024, the Court heard oral arguments on the Motions before it. Having considered the parties' written and oral arguments, and the applicable legal authorities, the Court grants LOS' Motion to Dismiss (Doc. #49) and denies Colony Ridge's Motion to Dismiss (Doc. #50) in part.

**I.    Background**

Plaintiffs Consumer Financial Protection Bureau (the "CFPB") and the United States of America (the "Government") (collectively, "Plaintiffs") allege that Defendants Colony Ridge and LOS (collectively, "Defendants") unjustly targeted Hispanic consumers with predatory financing to induce them to purchase land in one of Colony Ridge's residential subdivisions. Doc. #1 at 1–

2. According to Plaintiffs, Colony Ridge is a land development company that has developed over 40,000 lots across six residential subdivisions in Liberty County, Texas (the "Subdivisions").[1] *Id.* at 2. Plaintiffs allege that Colony Ridge heavily markets and advertises its lots towards Hispanic consumers. *Id.* at 8. Plaintiffs note that Colony Ridge markets and advertises the Subdivisions in Spanish on websites and popular social media platforms, such as TikTok and Instagram. *Id.* at 8–10. Colony Ridge's advertisements convince consumers that they can attain "the American Dream" by purchasing property in one of the Subdivisions, using slogans such as "logra el sueño Americano aquí" and "cumple el sueño de tener tu propio hogar," which translate to "achieve the American dream here" and "achieve the dream of having your own home," respectively. *Id.* at 10. In the Colony Ridge office, located in New Caney, Texas, there are flags from several Latin American countries prominently displayed. Photographs of the flags have also been used in advertisements. *Id.* at 11. Further, Plaintiffs allege that Colony Ridge's advertisements materially misrepresent the infrastructure of the lots, boasting that the lots "are sold with the infrastructure to connect water, sewer, and electrical services pre-installed." Yet, many of the lots in the Subdivisions do not have the existing infrastructure to connect utilities. *Id.* at 11–12. Finally, Plaintiffs note that some of the advertisements addressed the financing offered by Colony Ridge, stating (in an English translation), "Easy [f]inancing–[d]irect financing, low down payment, and easy payments. Everyone qualifies, we don't check credit!" *Id.* at 12.

Plaintiffs contend that once Hispanic consumers are lured in by Colony Ridge's

---

[1] Plaintiffs note that Colony Ridge operates as a common enterprise, where Colony Ridge Land ("CRL") extends, owns, and services all of the seller-financed mortgages that consumers use to purchase lots in the Subdivisions from either Colony Ridge Development ("CRD") or Colony Ridge BV ("CRBV"). The three companies are all controlled by at least one common executive, they share employees (who all conduct business from the same office), and they jointly advertise and market the Subdivisions. Doc. #1 at 25–28.

advertisements, they are then induced into purchasing a lot by Colony Ridge's "high-pressure sales tactics." *Id.* at 15. In 2011, Colony Ridge began offering seller-financed loans, which Plaintiffs assert are predatory. During property visits, consumers are offered loan repayments between five and twenty years for fixed interest rates of 10.9%, 11.9%, or 12.9%, depending on the down payment amount. *Id.* at 16. The Colony Ridge interest rates are significantly higher than prevailing rates, which averaged between 2.35% and 4.05% between 2017 and 2021, and are not based on an individualized assessment of a consumer's actual likelihood of repaying the loan. *Id.* Once a consumer agrees to purchase a property, a Colony Ridge employee collects a deposit and gathers information from the consumer, including his or her name, address, identification numbers, and self-reported gross monthly income. Colony Ridge's employees do not request any documentation substantiating the consumer's self-reported gross monthly income or any documentation regarding the consumer's debts, financial obligations, or other liabilities. *Id.* at 17. Consumers are never asked to disclose this information. The "worksheet" or "application" that consumers fill out is entirely in English. The worksheet also includes information on the sales price, any applicable discounts, the name of the seller and creditor, the interest rate and term, escrow information, and the amount due at closing. *Id.* Afterwards, a Colony Ridge notary "enters the consumer's information into an origination software program that belongs to [Defendant LOS] which, in turn, generates origination disclosures and documents (Pre-Closing documents)." The pre-closing documents are in English, but the Colony Ridge notary reviews the documents in Spanish with the consumer, if necessary. *Id.* at 18. According to Plaintiffs, the notary does not give an exact translation of the documents, which results in inadequate explanations of the terms and conditions of the loans. *Id.* A consumer then pays the earnest money fee and a nonrefundable option fee to a Colony Ridge employee. *Id.* at 19.

3

Upon returning for closing, a Colony Ridge notary is present, and consumers are given closing documents that are in English. Consumers are not provided with a written Spanish translation of any of the closing documents. *Id.* Plaintiffs allege that when consumers ask questions, their questions are not answered, and the Colony Ridge notary tells them that their only alternative is to abandon the transaction and lose their initial deposit. *Id.* Once the closing is complete, Colony Ridge records the deed of trust and warranty deed with a vendor's lien with the Liberty County clerk.

Plaintiffs contend that LOS plays a role in extending credit to consumers. According to Plaintiffs, LOS entered an agreement with CRL in August 2015 where LOS agrees to "originate loans for [CRL] in exchange for a flat fee of $100.00 per origination for undeveloped residential lots and 1[%] of any home loan—but no less than $800.00—for lots that include a dwelling." *Id.* at 21. During the pre-closing phase of the transaction, LOS receives documents from Colony Ridge's notary with the consumer's information and then enters the consumer's information into other documents. LOS also verifies the fees, pricing, and down payment amount, creates certain disclosures documents, and checks the consumer's identification. *Id.* A LOS employee also signs some of the pre-closing documents. *Id.* At no point does LOS request any documentation from consumers regarding their assets, debts, or financial obligations. *Id.* at 21–22. During the transaction, consumers do not directly engage with LOS' employees at any point. *Id.* at 22. However, Plaintiffs note that LOS' managing member, Gayle Campbell, had an office within the Colony Ridge office until at least 2022. *Id.* at 21. Most importantly, although LOS originates the loan documents, it is CRL that is ultimately "recorded as the lender on the filings with the Liberty County [c]lerk and services the seller-financed loans, in addition to retaining the notes and the right to foreclose on the properties." *Id.* at 15. Plaintiffs also assert that from 2014 to 2022, LOS

provided Colony Ridge with a weekly spreadsheet that detailed the interest rates, loan terms, and resulting monthly payments for each lot that was on sale in the Subdivisions. *Id.* at 21.

Plaintiffs assert that Defendants' conduct results in discriminatory targeting of Hispanic consumers who face predatory financing. After consumers close on a property in one of the Subdivisions, they generally experience "financial strain from the significant hidden expenses," such as preparing the land for a dwelling by mitigating the effects of flooding (allegedly, the Subdivisions have experienced "significant flooding" that consumers are not told about beforehand) and installing the infrastructure necessary to connect water, sewer, and electrical services to the property. *Id.* at 23. Moreover, due to the high interest rates and Defendants' failure to first assess what consumers can realistically afford, Plaintiffs aver that consumers struggle to repay their mortgages, which results in defaults and loss of the land before consumers can build or install a dwelling. *Id.* at 24. Further, during the foreclosure process, CRL repurchases the properties for the outstanding loan price and as is, which results in CRD or CRBV reimbursing itself for the defaulted amount and pocketing the value of any improvements on the land. Then, Colony Ridge can relist the property on the market, usually at a higher price. *Id.* at 24–25. Plaintiffs assert that Colony Ridge "accounted for more than 92[%] of all foreclosures recorded in Liberty County between 2017 and 2022." *Id.* at 4.

On December 20, 2023, Plaintiffs sued Defendants in this Court. Collectively, Plaintiffs assert that Defendants' conduct violated the Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. § 1691(a)(1), and Regulation B, 12 C.F.R. § 1002.4 (Count I). The Government alleges that Defendants violated the Fair Housing Act (the "FHA"), 42 U.S.C. §§ 3604, 3605 (Count II). And the CFPB brings nine claims against Colony Ridge for violations of the Consumer Financial Protection Act (the "CFPA"), Interstate Land Sales Full Disclosure Act, Regulation J, and

Regulation K (Counts III–XI). The CFPB also claims that LOS violated the CFPA based on its alleged violation of the ECOA (Count X). Defendants separately moved to dismiss Plaintiffs' claims. LOS seeks to dismiss Counts I, II, and X, the only claims against it. Doc. #49. Colony Ridge seeks to dismiss all eleven claims. Doc. #50.

## II. Legal Standard: Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The pleading standard is set forth in Federal Rule of Civil Procedure 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plausibility exists when the complaint includes factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show more than a "sheer possibility that the defendant has acted unlawfully," and pleading facts that are "'merely consistent with' a defendant's liability" will not suffice. *Id.*; *see Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**III.     Analysis**

   **a.     LOS' Motion to Dismiss**

LOS contends that Plaintiffs' ECOA, FHA, and CFPA claims fail because the Complaint does not plausibly allege that LOS discriminated against Hispanic consumers. Doc. #49. The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any credit transaction on the basis of race." 15 U.S.C. § 1691(a)(1). To assert an ECOA claim, the plaintiff must plausibly allege that the defendant discriminated against him or her with respect to any aspect of the credit transaction on the basis of the plaintiff's membership in a protected class. *Jones v. Caliber Home Loans, Inc.*, No. 18-1023-SDD-EWD, 2019 WL 3366104, at *4 (M.D. La. July 25, 2019). Plaintiffs' CFPA claim is explicitly based on a violation of the ECOA. Doc. #1 at 41. The FHA makes it unlawful to discriminate in the renting or selling of a dwelling. *See* 42 U.S.C. §§ 3604, 3605. Generally, courts give an expansive interpretation to discrimination under the FHA—a showing "that race was a consideration and played some role" is enough. *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986). "Under the FHA or the ECOA, discrimination based on race can be 'demonstrated by either "a showing of a significant discriminatory effect" or "proof of a discriminatory intent," that is disparate impact or discriminatory treatment.'" *Jones*, 2019 WL 3366104, at *4 (quoting *L&F Homes & Dev., L.L.C. v. City of Gulfport*, 538 F. App'x 395, 400 (5th Cir. 2013)). "A subcategory of these is the practice of 'redlining' and 'reverse-redlining.'" *Id.*

LOS asserts that the discriminatory acts that Plaintiffs allege in the Complaint are not attributed to LOS. Doc. #49 at 7. For instance, Plaintiffs claim that Defendants engaged in "reverse redlining" when they targeted Hispanic applicants with predatory financing. *Id.* at 7–8 (citing Doc. #1 ¶¶ 154, 188). Reverse redlining is the practice of extending credit on unfair terms

7

to specific geographic areas based on residents' income, race, or ethnicity. *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000). Neither the United States Supreme Court nor the Fifth Circuit have issued an opinion discussing reverse redlining as a form of discrimination under the FHA or the ECOA, but some district courts have. *See, e.g., id.*; *Jones*, 2019 WL 3366104, at *4. Assuming the Court recognizes reverse redlining as a form of discrimination, then LOS argues that all of Plaintiffs' allegations regarding targeting or predatory financing are only attributed to Colony Ridge. Doc. #49 at 8. LOS notes that the only allegations against it are that it "provides a software platform [that] generates documents based on information provided by Colony Ridge, which documents are given to consumers by Colony Ridge for review and signing, and then given back to LOS." *Id.* at 8–9. As such, the alleged actions do not constitute actionable discrimination.

Plaintiffs aver that "the Complaint pleads more than sufficient facts to make out a violation of [the] ECOA and the FHA (and the CFPA based on the violation of ECOA) against LOS for directly enabling, giving force to, and participating in a scheme to discriminate against Hispanic consumers." Doc. #55 at 8. Plaintiffs argue that LOS provided crucial contributions to the scheme, such as originating the loan documents (in English), reviewing and signing off on such documents (namely consumers' applications for financing) without confirming consumers' ability to pay, providing the closing documents and disclosures (in English), and regularly supplying sales data to Colony Ridge. *Id.* Further, Plaintiffs contend that LOS knew or should have known about the discriminatory course of conduct that it participated in because its managing member, Gayle Campbell, maintained an office in the Colony Ridge office for a period of time, and LOS originated tens of thousands of loan documents for Colony Ridge.

At the outset, the Court acknowledges that it will follow the guidance of *Jones* and

*Hargraves* by recognizing reverse redlining as a subcategory of conduct that, if plausibly alleged, can satisfy the discrimination requirement for an ECOA or FHA claim. As the Court sees it, the ECOA and the FHA seek to eliminate discrimination in credit transactions and real estate transactions, respectively, and it would be contrary to the aims of these Acts to allow creditors or parties to real estate transactions to intentionally target specific racial or ethnic groups with predatory financing.

As such, the Court must now determine if the allegations in the Complaint plausibly allege that LOS intentionally targeted Hispanic applicants with predatory seller financing. They do not. Plaintiffs emphasize that Colony Ridge, not LOS, advertised and marketed the Subdivisions to Hispanic consumers, Colony Ridge made misrepresentations about the infrastructure on the lots, and Colony Ridge offered seller-financed loans to consumers and determined the fixed interest rate for the loan depending on the downpayment amount. During the closing process, only Colony Ridge's employees interact with consumers, and it is Colony Ridge's employees who use "high-pressure tactics" to convince the consumers to close on the property quickly. Thus, the allegedly discriminatory conduct that amounts to reverse redlining is almost entirely attributed to Colony Ridge. Taking Plaintiffs' allegations against LOS as true, the only reasonable inferences that the Court can glean are that LOS' loan origination software was used by Colony Ridge to prepare closing-related documents, the documents were printed in English, and a LOS employee reviewed the documents and signed off on them without verifying consumers' financial obligations. Without more, it is difficult for the Court to view such conduct as discriminatory targeting of Hispanic applicants with predatory financing. Perhaps if Plaintiffs' allegations suggested that LOS played a more direct role in the advertising and marketing of the Subdivisions, had some part in deciding the interest rate and loan terms for the consumers, or directly interacted with the

consumers to close the transactions in question, then the Court could agree with Plaintiff's assertion that LOS participated in a discriminatory scheme. It would even help to know if LOS' conduct for non-Hispanic applicants somehow differed from the conduct alleged here. But without additional facts linking LOS' conduct to the alleged discrimination at issue here, the Court finds that Plaintiffs have not plausibly alleged that LOS engaged in reverse redlining. As such, LOS' Motion to Dismiss (Doc. #49) is granted. However, the Court will grant Plaintiffs leave to amend their Complaint to address the deficiencies raised herein.

### b. Colony Ridge Defendants' Motion to Dismiss

#### 1. ECOA Claim

As the Court explained in its analysis of LOS' Motion to Dismiss, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any credit transaction on the basis of race." 15 U.S.C. § 1691(a)(1). To assert an ECOA claim, the plaintiff must plausibly allege that "(1) [Plaintiff is] an 'applicant'; (2) [Defendant is] a 'creditor'; and (3) [Defendant] discriminated against [Plaintiff] with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." *Jones*, 2019 WL 3366104, at *4 (alterations in original). Colony Ridge challenges whether Plaintiffs plausibly allege sufficient facts to satisfy the second and third elements of the ECOA claim. Doc. #50 at 4–13. Because the Court just addressed the discrimination element of an ECOA claim in the preceding section, *supra* Section III(a), it will begin its analysis there.

##### A. Discrimination

As a preliminary matter, Colony Ridge takes issue with Plaintiffs' reliance on reverse redlining as a theory of discrimination, noting that neither the Supreme Court nor the Fifth Circuit have recognized it and urging the Court to decline to do so as well. Doc. #50 at 4–5. As the Court

10

explained *supra* Section III(a), it will recognize reverse redlining as a sufficient theory of discrimination for an ECOA claim.

Colony Ridge then argues that even applying the reverse redlining theory, Plaintiffs' allegations fail to meet all the elements. *Id.* at 5–6. "A reverse redlining claimant must allege: (1) that [he] is a member of a protected class; (2) that [he] applied and was qualified for a loan; (3) that the loan was given on grossly unfavorable terms; and (4) that the lender either intentionally targeted [him] for unfair loans or currently makes loans on more favorable terms to others." *Jones*, 2019 WL 3366104, at *6 (first two alterations in original). Specifically, Colony Ridge contends that Plaintiffs fail to satisfy the second, third, and fourth elements. The Court disagrees. In the Complaint, Plaintiffs detail the process consumers undergo when they visit the Colony Ridge office to apply for and receive the seller-financed loans that are offered. Doc. #1 at 16–19. The Complaint even suggests that Colony Ridge's practice of freely qualifying consumers for the loans without verifying their ability to pay or other financial obligations is a form of targeting and predatory in nature. *Id.* This satisfies the second element. As to the third element, the Complaint alleges that Colony Ridge's loans were grossly unfavorable because the repayment lengths were between five and twenty years for fixed interest rates of 10.9%, 11.9%, or 12.9%, which are significantly higher than prevailing rates. The Complaint also stresses that Colony Ridge's process lacks any individualized assessment of consumer's actual likelihood of repaying the loan, which suggests that the loans' terms are grossly unfavorable. And finally, the fourth element requires either a showing of intentional targeting *or* making loans on more favorable terms to others. The Complaint sufficiently alleges that Colony Ridge intentionally targeted Hispanic consumers for the Colony Ridge loans by advertising the Subdivisions in Spanish on websites and social media platforms, displaying several Latin American flags at its office, and asserting that consumers could

11

achieve "the American dream" if they purchased land there. The Complaint also notes that Colony Ridge specifically advertised that it would not check consumers' credit and everyone would qualify for a loan. These allegations, taken as true, easily satisfy the elements of a reverse redlining claim. As such, Plaintiffs plausibly allege that Colony Ridge discriminated against Hispanic consumers, as required for an ECOA claim.

### B. Creditor

Colony Ridge also seeks to dismiss Plaintiffs' ECOA claim on the grounds that Plaintiffs did not allege that CRD and CRBV are "creditors" as defined in the ECOA. Doc. #50 at 12–13. "The term 'creditor' means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Colony Ridge asserts that Plaintiffs' allegations focus on CRD and CRBV's "land-development activities," which do not involve any of the creditor requirements. Doc. #50 at 12. While it is true that the Complaint explicitly highlights CRL's role as the mortgage lender on the county filings and the servicer of the seller-financed loans, there are sufficient facts that also qualify CRD and CRBV as creditors. *See* Doc. #1 at 15. In *Calderone v. Sonic Houston JLR, L.P.*, the Fifth Circuit noted that although the defendant did not directly provide credit, it was still a creditor because it provided customer credit applications to lenders, which fits within an interpretation of "regularly arranges for the extension" of credit as defined in the ECOA. 879 F.3d 577, 579 n.1 (5th Cir. 2018).

Applying the Fifth Circuit's interpretation here, CRD and CRBV also qualify as creditors because they provide customer credit applications to CRL, a lender. Plaintiffs assert that Colony Ridge's employees, who are jointly shared between CRL, CRD, and CRBV, collect identification

information from consumers in a worksheet. Then Colony Ridge notaries assist with entering the consumer's information into LOS' origination software, which generates the closing documents. And finally, Colony Ridge's employees assist during closing the finalize the transaction. CRL is the only lender that is used for these transactions. These allegations, taken as true, plausible allege that CRD and CRBV "regularly arrange[] for the extension . . . of credit," as defined in the ECOA, because they provide consumers' credit applications to CRL to secure a seller-financed loan to purchase property in the Subdivisions. As such, Plaintiffs have sufficiently alleged plausible facts to assert an ECOA claim. Accordingly, Colony Ridge's Motion to Dismiss is denied as to this claim.

### 2. FHA Claims

Colony Ridge seeks to dismiss the Government's FHA claims on three grounds. First, Colony Ridge asserts that the FHA claims must be dismissed because they fail for the same reasons that the ECOA claim fails. Namely, Colony Ridge raises similar arguments regarding reverse redlining not being recognized and even if it were, Plaintiff's allegations are insufficient to satisfy all of the elements. Doc. #50 at 14–15. Considering the Court has already denied Colony Ridge's Motion to Dismiss as to the ECOA claim, it will not rehash the same analysis for the FHA claims. The allegations in the Complaint, as discussed *supra* Section III(b)(1)(A), plausibly allege a violation of the FHA.

### A. "Dwellings"

Second, Colony Ridge asserts that the Government has not plausibly alleged that the FHA covers the specific lots at issue in this case. Colony Ridge notes that the FHA only applies to "dwellings," and the Government summarily alleges that the lots in the Subdivisions are "dwellings" within the FHA's definition without excluding those lots used for non-residential or

13

commercial purposes. Doc. #50 at 15–16. "'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b). As such, Colony Ridge's argument is unavailing. The FHA clearly applies to vacant land, as the definition of "dwellings" states. The Complaint unequivocally alleges that Colony Ridge markets, advertises, and sells vacant lots in *residential* subdivisions to Hispanic consumers who are subjected to predatory seller financing. To the extent that Colony Ridge sells other vacant lots for non-residential or commercial purposes, the Government's allegations clearly do not encompass those lots. As such, the FHA is applicable here, and Colony Ridge's argument fails.

### B. Section 3604(a)

Finally, Colony Ridge argues that the Government fails to state a claim under Section 3604(a) of the FHA. Doc. #50 at 17–18. The Government asserts its FHA claims pursuant to Sections 3604(a) and 3605(a). Doc. #1 at 35. Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . or national origin." 42 U.S.C. § 3604(a). The Government contends that Colony Ridge made unavailable or denied dwellings to people because of their race and national origin. Doc. #1 at 35. Colony Ridge avers that there are no facts alleged that plausibly show that it made unavailable or denied dwellings based on race or national origin. Doc. #50 at 17. Indeed, Colony Ridge argues that the Complaint is riddled with allegations that Colony Ridge "targeted" Hispanic applicants "by *extending* them financing to purchase property," which "facially contradicts" that Colony Ridge could have also made unavailable or denied dwellings. *Id.* at 18 (emphasis in original). The

Government asserts that through its targeting and predatory financing, Colony Ridge denied or made dwellings unavailable to Hispanic applicants because the loans were designed to fail from the outset. Doc. #56 at 18.

The Court is not persuaded by the Government's interpretation of Section 3604(a). The plain language of Section 3604(a) governs refusals, denials, and otherwise making a dwelling unavailable. That's not the case here. Colony Ridge offers Hispanic consumers the opportunity to purchase land, which is conduct that facially contradicts Section 3604(a). The Government relies on *Hargraves*, where that court summarily concludes that the predatory practices asserted in that case "can make housing unavailable by putting borrowers at risk of losing the property which secures their loans." 140 F. Supp. 2d at 20. But this Court declines to follow *Hargraves*' broad interpretation of Section 3604(a). As such, the Government's FHA claim pursuant to Section 3604(a) fails, and Colony Ridge's Motion to Dismiss (Doc. #50) is granted as to this claim.

### 3. Dismissal of CFPB Claims Pursuant to the Fifth Circuit's Ruling

Colony Ridge asserts that Counts III through IX, all of which are asserted only by the CFPB, must be dismissed because of a recent Fifth Circuit ruling. Doc. #50 at 18–19. In *Community Financial Services Association of America, Ltd. v. CFPB*, the Fifth Circuit held that the CFPB's self-funding structure was unconstitutional, which raised questions regarding the CFPB's authority to enforce and promulgate rules. 51 F.4th 616, 641–43 (5th Cir. 2022). However, in May 2024, the Supreme Court reversed the Fifth Circuit, finding that CFPB's funding structure is constitutional. *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 424–41 (2024). As such, Colony Ridge's arguments regarding dismissing Counts III through IX are mooted by the Supreme Court's ruling. Accordingly, Colony Ridge's Motion to Dismiss is denied as to these claims.

## IV. Conclusion

In conclusion, Plaintiffs fail to plausibly allege that Defendant LOS discriminated against Hispanic consumers. As such, Defendant LOS' Motion to Dismiss (Doc. #49) is hereby GRANTED. However, Plaintiffs may amend their Complaint within thirty days of the entry of this Order to address the deficiencies raised herein regarding the allegations against LOS.

Colony Ridge's Motion to Dismiss (Doc. #50) is GRANTED as to the Government's FHA claim under Section 3604(a) and DENIED as to all other claims for the foregoing reasons.

It is so ORDERED.

__SEP 1 3 2024__
Date

_____
The Honorable Alfred H. Bennett
United States District Judge