UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Case No. 4:23-cv-4729 |
| COLONY RIDGE DEVELOPMENT, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

**COLONY RIDGE DEFENDANTS' OPPOSED MOTION TO CERTIFY
ORDER FOR INTERLOCUTORY APPEAL**

This is the first case that the Department of Justice has brought under its Combating Redlining Initiative that seeks to hold a defendant liable for *reverse* redlining.[1] The novelty of the government's legal theory is borne out by the sparse case law it has cited in this Court. As the Court noted—and as the government rightly conceded—claims for reverse redlining under the Equal Credit Opportunity Act (ECOA) and the Fair Housing Act (FHA) have simply never been tested, let alone recognized, by the Supreme Court or the Fifth Circuit. Because of its outsized impact on the course of discovery and trial, the difficult question of whether reverse redlining is cognizable under the ECOA and the FHA warrants immediate appellate review. Colony Ridge therefore respectfully requests that the Court amend its September 13 order on Defendants' motion to dismiss and certify that the order is appropriate for permissive interlocutory appeal under 28

---

[1] *See* Press Release, Justice Department and Consumer Financial Protection Bureau sue Texas-based developer and lender Colony Ridge for bait-and-switch land sales and predatory financing (Dec. 20, 2023), *available at* https://www.justice.gov/usao-sdtx/pr/justice-department-and-consumer-financial-protection-bureau-sue-texas-based-developer.

1

U.S.C. § 1292(b). To promote judicial economy and prevent expensive and duplicative discovery, Colony Ridge also requests that the Court stay proceedings pending appeal.

## BACKGROUND

This suit is being jointly pursued by the Consumer Financial Protection Bureau (CFPB) and the United States. Three counts in the eleven-count complaint are pertinent to this motion. *First*, the CFPB and the United States allege that Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC (collectively, Colony Ridge) violated ECOA, 15 U.S.C. § 1691(a)(1), by targeting Hispanic consumers with a predatory loan product that results in high foreclosure rates.[2] ECF No. 1 ¶¶ 12–13 (Count I). *Second*, the CFPB contends that this violation of the ECOA is also a violation of the Consumer Financial Protection Act. *Id.* ¶¶ 228-30 (Count X). *Third*, the United States alleges that this conduct also violates the FHA, 42 U.S.C. §§ 3604(a)-(b), 3605, and its implementing regulations. *Id.* ¶¶ 192–96 (Count II).

Colony Ridge sought dismissal of these counts. ECF No. 50. As Colony Ridge explained, reverse redlining—or what the government describes as the "discriminatory targeting" of loans—is an extra-statutory legal theory that is unmoored from the language of the ECOA and the FHA. *Id.* at 4-5, 14. In its order, the Court acknowledged that "[n]either the United States Supreme Court nor the Fifth Circuit have issued an opinion discussing reverse redlining as a form of discrimination under the FHA or the ECOA," but followed two out-of-state district courts in "recognizing reverse redlining as a subcategory of conduct that, if plausibly alleged, can satisfy the discrimination requirement for an ECOA or FHA claim." ECF No. 93 at 8-9 (citing *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) and *Jones v. Caliber Home Loans, Inc.*, No. CV 18-1023-

---

[2] For the reasons Colony Ridge explained in its motion to dismiss, and which Colony Ridge will develop more fulsomely in discovery if necessary, these allegations are meritless.

SDD-EWD, 2019 WL 3366104 (M.D. La. July 25, 2019)). The Court then concluded that the government had alleged sufficient facts to survive Colony Ridge's motion to dismiss. *Id.* at 10-13.

## ARGUMENT AND AUTHORITIES

District courts may approve the interlocutory appeal of an order not otherwise appealable when (1) the order involves a "controlling question of law," (2) there is a "substantial ground for difference of opinion" concerning the legal question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).[3] The decision to permit an interlocutory appeal under § 1292(b) falls comfortably within the district court's discretion. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995); 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3929 (3d ed. 2024) (highlighting that § 1292(b) "is not limited by its language to 'exceptional' cases," but rather is characterized by its flexibility).

**I.     The order meets § 1292(b)'s standards.**

**A.     The order involves a controlling question of law.**

As an initial matter, the Court considered, and resolved, a controlling question of law. "In determining if an issue is a controlling question of law, the Court asks whether the issue has 'potential to have some impact on the course of the litigation.'" *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020) (quoting *United States v. La. Generating LLC*, No. 09-100, 2012 WL 4588437, at *1 (M.D. La. Oct. 2, 2012)). "There is no doubt that a question is 'controlling' if its incorrect disposition would

---

[3] If the court's original order does not contain these findings, § 1292(b) and the Federal Rules of Appellate Procedure call for a district court to "amend its order, either on its own or in response to a party's motion, to include the required permission or statement." Fed. R. App. P. 5(a)(3); *e.g.*, *Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 251 (5th Cir. 2006) (advising parties seeking review of a partial summary judgment order to "move the district court to amend its order to include the 28 U.S.C. § 1292(b) certification language").

3

require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings." 16 WRIGHT ET AL., FEDERAL PRAC. & PROC. § 3930.

The government's ECOA and FHA claims rise and fall on the concept that "targeted predatory lending" is proscribed discriminatory behavior. *See, e.g.*, ECF No. 1 ¶ 154. This is so because the government does not allege that Colony Ridge offers different loan terms to consumers based on protected characteristics. Indeed, the government admits that "Colony Ridge sales assessors offer consumers a fixed interest rate of 10.9 percent, 11.9 percent, or 12.9 percent, *depending on the down payment*." *Id.* ¶ 72 (emphasis added). Thus, if the government is wrong that Colony Ridge's "targeting [of] applicants" is unlawful absent a showing that Colony Ridge offered different *terms* to those applicants, any judgment in its favor on the complaint's ECOA and FHA claims will require reversal. *See* 16 WRIGHT ET AL., FEDERAL PRAC. & PROC. § 3930, *supra*. And in the absence of an immediate appeal, requiring Colony Ridge to litigate the government's sweeping pattern-or-practice allegations of discriminatory conduct will consume a significant investment of party and (most likely) judicial resources. *E.g.*, *United States v. Cochran*, 39 F. Supp. 3d 719, 732 (E.D.N.C. 2014) (describing the complicated evidentiary analysis required for pattern-or-practice claims brought under the FHA). The Court's order thus more than meets Section 1292's requirement that contested issue bear "some impact" on the course of the litigation. *La. State Conf.*, 495 F. Supp. 3d at 413.

**B.     There are substantial grounds for difference of opinion.**

To certify an interlocutory appeal, the Court must also find a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In making that determination, the Court must "examine the controlling law to determine to what extent it is unclear." *La. State Conf.*, 495 F.

4

Supp. 3d at 415. This factor is traditionally met "if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted).

That is just so here. A "reverse redlining" theory blames a potential defendant for *extending*, rather than denying, credit to a protected class of land buyers. *See* ECF No. 93 at 11 (stating that a reverse redlining claimant must demonstrate "that the lender either intentionally targeted [him] for unfair loans or currently makes loans on more favorable terms to others") (internal quotation marks omitted) (quoting *Jones*, 2019 WL 3366104, at *6). Neither the Supreme Court nor the Fifth Circuit has ever recognized such a claim. Although several district courts have done so, those courts did not engage in the rigorous textual analysis compelled by Supreme Court precedent. *E.g.*, *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020). Indeed, in dismissing the United States' claim under 42 U.S.C. § 3604(a), the Court properly rejected *Hargraves*' "summar[y]," broad and atextual reading of that provision. ECF No. 93 at 15. Those same problems, however, infected *Hargraves*' interpretation of the FHA's neighboring provisions, in which the court concluded with no statutory analysis that "[r]edlining violates the FHA." *Hargraves*, 140 F. Supp. 2d at 20. This is especially concerning given that the government touted *Hargraves* as the "seminal" case recognizing reverse redlining. ECF No. 56 at 6.

*Hargraves* and its progeny are incorrect. ECOA prohibits creditors from "discriminat[ing]" in "any aspect of a credit transaction," 15 U.S.C. § 1691(a)(1), and as relevant here, the FHA prohibits covered persons from "discriminat[ing]" "in the terms, conditions, or privileges of sale or rental of a dwelling" and in "making available" a residential real estate-related transaction, 42 U.S.C. §§ 3604(b), 3605. Courts "normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 654 (2020). The Supreme Court has reiterated twice in recent cases, including just this past term,

5

that "discrimination" means "differential treatment." *Murray v. UBS Securities, LLC*, 601 U.S. 23, 34 (2024); *Babb v. Wilkie*, 589 U. S. 399, 405 (2020); *see also Bostock*, 590 U.S. at 657 (noting that in 1964, "discriminate" "meant then roughly what it means today: 'To make a difference in treatment or favor (of one as compared with others).'" (quoting Webster's New International Dictionary 745 (2d ed. 1954))). The government has offered no argument that another definition should apply here.

There are substantial grounds for differing opinions as to whether "predatory targeting" constitutes "differential treatment" within the meaning of either statute. After all, the government has not alleged that Colony Ridge offered different terms in any credit transaction because of a consumer's protected characteristics. 15 U.S.C. § 1691(a)(1). Nor has the government alleged that Colony Ridge has discriminated in "making available" its lots for sale. 42 U.S.C. §§ 3604(b), 3605. To the contrary, the government's theory appears to be that Colony Ridge has made its lots *too* readily available.

Taking its lead from *Hargraves* and *Jones*, the government has largely focused on the allegedly "predatory" terms of the transactions. *E.g.*, ECF No. 56 at 12-13. But nothing in either statute prohibits what the government considers to be "predatory" terms, and the implications of the government's arguments are staggering. Under the government's view, an entity can face ruinous liability merely by marketing what the government perceives as a "bad" or "predatory" product in another language or to a specific subset of consumers. Congress avoided that anomalous outcome by requiring the government to show actual differential *treatment*—not just marketing. The sale of credit or housing on equal terms to all comers does not suffice. *E.g.*, *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009) (finding that the ECOA "was implemented to ensure that applicants have an equal opportunity to obtain credit" and

6

rejecting claim that "approval for extra credit" was discriminatory). Were it otherwise, a nontraditional community-based lender that serves communities of color and that was created to address a market failure could likewise find itself sued for "predatory targeting." Accordingly, once it has an opportunity to squarely address the issue, the Fifth Circuit is likely to disagree that advertising the exact same product more heavily to certain groups over others constitutes differential treatment under the ECOA or the FHA. At a minimum, Colony Ridge has established a "substantial ground for difference of opinion" on the question of whether the ECOA and the FHA encompass reverse redlining claims.

      C.      **An immediate appeal would materially advance the litigation.**

Finally, allowing an appeal at this stage would materially advance this litigation. The requirement that an appeal under § 1292(b) push the litigation forward is closely related to the requirement that the underlying order present a controlling question of law. *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (a "controlling question of law . . . means a question of law the resolution of which could materially advance the ultimate termination of the litigation"); 16 WRIGHT ET AL., FED. PRAC. & PROC. § 3930 (explaining that the two elements are "closely tied"). Put another way, an "immediate appeal materially advances the termination of litigation if it would eliminate the need for trial, simplify the issues for trial, or reduce the burden of discovery." *David v. Signal Int'l*, LLC, 37 F. Supp. 3d 836, 839 (E.D. La. 2014). To that end, other courts in this Division have certified issues for interlocutory appeal when "these issues affect the claims and scope of discovery in this case." Order Certifying Interlocutory Appeal and Staying Proceedings, *Van Overdam v. Texas A&M Univ.*, No. 4:18-cv-02011 (S.D. Tex.), ECF No. 119 at 2.

This will be a much more streamlined case if the government's discrimination claims are excised from discovery and trial, *see supra* Part I.A, which is exactly what § 1292(b) was designed

7

for: As the leading federal courts treatise has noted, § 1292 has been deployed "to narrow 'big' cases, in which it is expected that prolonged pretrial and protracted trial efforts will follow the disputed ruling." 16 WRIGHT ET AL., FED. PRAC. & PROC. § 3929, *supra* (citing, *inter alia*, *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996)). In that manner, an appeal of the order will "minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Coates v. Brazoria County*, 919 F. Supp. 2d 863, 866 (S.D. Tex. 2013) (cleaned up). Colony Ridge has therefore met its burden on the third and final factor governing permissive interlocutory appeal.

## II.     Proceedings should be stayed pending appeal.

Section 1292(b) permits district courts to stay proceedings pending interlocutory appeal. 28 U.S.C. § 1292(b); *see, e.g.*, *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 n.2 (5th Cir. 2005) (reviewing order certified pursuant to § 1292(b) in which district court stayed proceedings); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 530 n.1 (5th Cir. 1992) (same). A stay of all proceedings is warranted here. *E.g.*, Order, *Van Overdam*, *supra*. Based on the discovery that the parties have exchanged to date, this case is likely to involve a significant number of depositions of third-party witnesses. It would behoove all sides for those depositions to occur with complete knowledge of the viability of the legal theories underlying the government's claims. Moreover, this is a case of enormous size and significance. Piecemeal discovery is likely to exacerbate the burden on litigants, third-party witnesses, and the Court. Although the government no doubt wants to proceed to trial as quickly as possible, the government is using this matter as a test case for a legal theory that has barely percolated in the federal court system. The government cannot cry foul that its reliance on a largely unvetted legal theory may result in delay while the federal courts carefully resolve the merits of that theory.

**PRAYER**

Colony Ridge requests that the Court stay proceedings and enter an amended order on Defendants' motion to dismiss that certifies the order for interlocutory appeal under 28 U.S.C. § 1292.

Dated: September 27, 2024.              Respectfully submitted.

Jason Ray
Texas Bar No. 24000511
**RIGGS & RAY, P.C.**
3307 Northland Dr., Ste 215
Austin, Texas 78731
(512) 457-9806 (Telephone)
(512) 457-9866 (Fax)
jray@r-alaw.com

Philip H. Hilder
Texas Bar No. 09620050
Q. Tate Williams
Texas Bar No.24013760
Stephanie K. McGuire
Texas Bar No. 11100520
**HILDER & ASSOCIATES, P.C.**
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

*/s/ Judd E. Stone II*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350

9

Austin, TX 78701
(737) 465-3897-telephone
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

***Attorneys for Defendants Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC***

## CERTIFICATE OF CONFERENCE

    I hereby certify that counsel for Colony Ridge Defendants conferred with counsel for Plaintiffs regarding this motion, and Plaintiffs are opposed to the relief requested herein.

*/s/ Michael R. Abrams*
Michael R. Abrams

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of this document on the below-listed counsel of record, using the CM/ECF system on the 27th day of September, 2024.

Melissa A. Carrington
Terrence K. Mangan, Jr.
Jimmy S. McBirney
Hannah C. Abelow
**U.S. Department of Justice**
150 M. Street, NE
Washington, DC 20530

Elizabeth F. Karpati
Assistant U.S. Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002
*Attorneys for Plaintiff*
*United States of America*

E. Vanessa Assae-Bille
Alexis C. Christensen
Andrea M. Lowe
**Consumer Financial Protection Bureau**
1700 G Street, NW
Washington, DC 20552
*Attorneys for Plaintiff*
*Consumer Finance Protection Bureau*

Robert G. Hargrove
Lisa A. Paulson
**DAVIS, GERALD & CREMER, P.C.**
515 Congress Avenue, Suite 1510
Austin, Texas 78701
*Attorneys for Defendant*
*Loan Originator Services, LLC*

　　　　　　　　　　　　　　　　　　　　　　*/s/ Michael R. Abrams*
　　　　　　　　　　　　　　　　　　　　　　Michael R. Abrams