# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and | ) ) ) | |
| UNITED STATES OF AMERICA,<br>Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 4:23-cv-4729<br>Hon. Judge Alfred H. Bennett |
| COLONY RIDGE DEVELOPMENT, LLC, d/b/a Terrenos Houston, Terrenos Santa Fe, and Lotes y Ranchos; | ) ) ) ) | |
| COLONY RIDGE BV, LLC; and | ) ) | |
| COLONY RIDGE LAND, LLC, formerly d/b/a Terrenos Houston and Lotes y Ranchos,<br>Defendants. | ) ) ) ) | |

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS,<br>Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 4:24-cv-00941<br>Hon. Judge Keith P. Ellison |
| COLONY RIDGE, INC.; COLONY RIDGE DEVELOPMENT, LLC; COLONY RIDGE BV, LLC; COLONY RIDGE LAND, LLC; T-REX MANAGEMENT, INC.; JOHN HARRIS; HOUSTON EL NORTE PROPERTY OWNERS ASSOCIATION, INC.; and CH&P MANAGEMENT LLC,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) | |

1

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA, THE STATE OF TEXAS, COLONY RIDGE INC., COLONY RIDGE DEVELOPMENT, LLC, COLONY RIDGE BV, LLC, COLONY RIDGE LAND, LLC, T-REX MANAGEMENT, INC., JOHN HARRIS, HOUSTON EL NORTE PROPERTY OWNERS ASSOCIATION, INC. AND CH&P MANAGEMENT LLC**

### I.    INTRODUCTION

1. The United States of America ("United States"), the State of Texas ("State" or "Texas"), and Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, Colony Ridge, Inc., T-Rex Management, Inc., John Harris, Houston El Norte Property Owners Association, Inc., and CH&P Management LLC ("Defendants") (collectively, "the Parties") enter into this settlement agreement ("Agreement") through their authorized representatives.

### II.    RECITALS AND DEFINITIONS

2. "Colony Ridge" means Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, and Colony Ridge, Inc., including doing business as Terrenos Houston, Lotes y Ranchos, Terrenos Santa Fe, and any other name by which they may be known, and their successors and assigns, individually, collectively, or in any combination.

3. This Agreement fully resolves the United States' claims in its Complaint, *United States, et al. v. Colony Ridge Development, LLC, et al.*, Case No. 4:23-cv-4729 (S.D. Tex. Dec. 20, 2023), alleging that Colony Ridge intentionally discriminated against Hispanic consumers by targeting them for predatory financing and land sales, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619. Additionally, this Agreement fully resolves the State of Texas's claims in its Amended Complaint, *State of Texas v. Colony Ridge Development, LLC et al.*, Case No. 4:24-cv-00941 (S.D. Tex. March 14, 2024), alleging that Colony Ridge engaged in false,

misleading, and deceptive sales, marketing, and lending practices, in violation of the Texas

Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41–17.63; Tex. Bus.

& Com. Code § 27.01, Fraud in Real Estate Transactions; the Consumer Financial Protection

Act of 2010 ("CFPA"), 12 U.S.C. §§ 5552(a), 5536; and the Interstate Land Sales Full

Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701-1720. Together, the aforementioned lawsuits are

referenced herein as the "Complaints."

4. Subject to Paragraphs 52-54, and as described in Paragraph 3 above, the Parties enter

into this Agreement to voluntarily resolve (1) all of the claims alleged by the United States and

the State of Texas in the Complaints or that could have been alleged by the United States under

the FHA or ECOA ("Covered Claims"), including any administrative liability or enforcement

right; and (2) all of the claims alleged by Texas in its Amended Complaint or that could have

been alleged by Texas under the Texas Deceptive Trade Practices Act, § 27.01 of the Texas

Business and Commerce Code, the CFPA, or ILSA, including any administrative liability of

enforcement right. The Parties agree that this Agreement's goals include serving the public

interest and remedying the alleged harm.

5. Defendants expressly deny any wrongdoing as alleged by the United States or the

State of Texas in the Complaints or that could have been alleged. Colony Ridge additionally

represents that this Agreement and the development of additional General Infrastructure

Improvement in Paragraph 23 is being agreed to by Colony Ridge solely for the purpose of

facilitating a settlement of the litigation brought by the United States and the State of Texas, and

shall not be construed to constitute an admission of liability for alleged damages, if any, caused

by alleged flooding or inundation, and shall not be used as evidence of responsibility for or

knowledge of any alleged consequential damages that may result from rainfall, flooding, other

weather events, or any other Act of God or force majeure or for any purpose or for any other allegation of wrongdoing. Moreover, Colony Ridge expressly denies any responsibility for or contribution to any such alleged damages.

6. This Agreement's "Effective Date" is the date of the signature of the last signatory to this Agreement.

## III.  STATEMENT OF CONSIDERATION

7. In consideration of, and consistent with, the terms of this Agreement, the United States and the State of Texas agree to jointly move with Colony Ridge to dismiss with prejudice the United States' and the State of Texas's claims against Colony Ridge, as set forth in Paragraph 49. The Parties agree and acknowledge that this consideration is adequate and sufficient.

## IV.  TERMS AND CONDITIONS

### A.  Moratorium on Development

8. Effective immediately and for a period of three (3) years from the Effective Date, Colony Ridge and its affiliated business entities (any entity over which Defendants or any investor, member, or shareholder of any Defendant entity individually, or collectively, own a controlling share) will not seek final approval of any new residential plats for direct-to-consumer sales.[1] Subject to Colony Ridge's compliance with the preceding sentence, after the expiration of

---

[1] With the exception of: 1) Santa Fe Villages and Santa Fe Sec. 19A and 2) any plat amendments or replats to previously approved plats that are reasonably necessary to accomplish the infrastructure improvements and law enforcement facility contemplated by this Agreement, as long as those amendments or replats do not result in any additional residential lots above what was originally platted. "Santa Fe Section 19A" means 500.65 ac. in Liberty County, Texas owned by Colony Ridge Development, LLC and described in the Final Plat prepared by Carey A. Johnson PLS No. 6524 (Texas Professional Surveying, LLC) filed with Liberty County on or about September 19,

twenty-four (24) months from the Effective Date, Colony Ridge may seek final approval of new residential plats as long those plats, or restrictive covenants filed contemporaneously with the plats, require dwelling construction/manufactured home installation prior to being sold to the end consumer. Furthermore, for three (3) years from the Effective Date, Colony Ridge is barred from submitting any new subdivision for platting in which the lots will contain no deed restrictions for lot usage. For avoidance of doubt, for three (3) years from the Effective Date, Colony Ridge will ensure deed restrictions in newly platted subdivisions: 1) require compliance with all county permitting and construction requirements, and 2) require any new dwelling be approved by the governing Architectural Control Committee, which will require appropriate exterior construction materials (including full skirting for manufactured homes or pier-and-beam dwellings) and a general pleasing appearance consistent with surrounding houses.

**B.  ILSA and Texas Property Code Compliance**

9. In consumer transactions, Colony Ridge will utilize ILSA's intrastate land sales exemption under 15 U.S. Code § 1702(b)(7), and accordingly for sales subject to ILSA, will require purchasers to present an unexpired Texas-issued driver's license, a Texas-issued identification card, a limited-term Texas-issued driver's license issued after January 1, 2025 or an unexpired passport and valid visa issued or renewed after January 1, 2025.

---

2024, based on the Preliminary Plat approved by Liberty County on or about May, 14, 2024 (Agenda Nos. 19 & 20). "Santa Fe Villages" means 173.065 ac. in Liberty County, Texas owned by Colony Ridge Development, LLC and described in the Master Plan prepared by Hardey Group, LLC (John Hardey RPLS) filed with Liberty County along with Preliminary Plat for Santa Fe Village Sec. 1 on or about October 24, 2022 and depicted on the Final Plat for Santa Fe Village Sec. 1 as "Future Development" recorded under File No. 2023023374 in the Public Records of Liberty County, Texas.

10. Colony Ridge will work with law enforcement to confirm that buyers are not on a published terrorism watch list and are not known members of a transnational criminal organization.

11. Colony Ridge will take reasonable steps, including, but not limited to, requiring purchasers to present identification as set forth above in Paragraph 9 and requiring purchasers to execute a written declaration, to confirm that purchasers do not have a prohibited relationship with any "designated country" as defined by Texas Property Code § 5.251 and are fully compliant with Texas Property Code § 5.253.

### C.  Prohibition Against Discrimination

12. Colony Ridge, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with it who have actual notice of this Agreement, assignees, and successors in interest shall not, in violation of ECOA, Regulation B, or the FHA, discriminate against any applicant on the basis of race and national origin (a) in any aspect of a credit transaction; (b) in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions; and (c) in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings.

### D.  Hire Compliance Specialist

13. Colony Ridge shall hire an independent, qualified Compliance Specialist(s) to oversee and facilitate Colony Ridge's compliance with this Agreement. The Compliance Specialist(s) shall oversee, and have background in, the obligations under Section IV, Parts C, E, F, G, J, and K. Within thirty (30) days of this Agreement's Effective Date, Colony Ridge will submit to the United States and Texas, for the United States' and Texas's non-objection, the

qualifications of the Compliance Specialist(s) and a statement of work for the performance of their duties. Colony Ridge will bear all costs associated with the Compliance Specialist(s).

**E.  Increasing Housing Affordability and Availability**

14. **Underwriting Standards**: Within three (3) months of the Effective Date, Colony Ridge shall present to the United States, for the United States' non-objection, written Underwriting Standards reflecting Colony Ridge's reasonable and good faith determination regarding borrowers' ability to repay their Colony Ridge lot loans according to their terms. Upon receipt of the United States' non-objection, Colony Ridge must apply the Underwriting Standards to each future lot loan. The Underwriting Standards must, at minimum, consider borrowers' income, assets, and debt and at least one of the following: (1) the ratio of total monthly debt obligations to monthly income (taking the proposed new monthly loan payment into account); or (2) the monthly income the borrowers will have after paying total monthly obligations (taking the proposed new monthly loan payment into account).

15. **Buyer Notification Regarding Default Avoidance Plan and Recission**: Within three (3) months of the Effective Date, Colony Ridge shall present to the United States, for the United States' non-objection, a written, proposed notification to buyers seeking a Colony Ridge lot loan that describes the financing arrangement of a Colony Ridge lot loan and the existence of the Default Avoidance Plan set out in Paragraph 16, including the borrower's rescission option set out in Paragraph 16(d). The buyer shall not be required to sign the notification described in this Paragraph.

16. **Default Avoidance Plan**: Within three (3) months of the Effective Date, Colony Ridge shall present to the United States, for the United States' non-objection, a written, proposed Default Avoidance Plan to help Qualified Borrowers avoid defaulting on their Colony

Ridge lot loan(s) and to meaningfully reduce the overall default rate. At minimum, the Default Avoidance Plan must:

    a. Include an individualized assessment by Colony Ridge of any residential borrower facing foreclosure, with the goal of determining whether the borrower is a "Qualified Borrower" eligible for relief. "Qualified Borrower" must include any borrower who receives a notice of foreclosure and: (i) has made 12 consecutive, full, on-time payments in the last 5 years (or since last forbearance); (ii) has made more than $10,000 in improvements to the property in the past 18 months; (iii) has installed all utility taps in the past 12 months; or (iv) has otherwise demonstrated a legitimate interest in improving the lot;

    b. Set forth details about the individualized assessment including: (i) when and how Colony Ridge will initiate the assessment; (ii) how Colony Ridge will determine whether the borrower is a Qualified Borrower; (iii) how Colony Ridge will determine which options are available to the Qualified Borrower; and (iv) how the assessment process and outcomes will be documented. Documentation of each individualized assessment must be kept and provided to the United States upon request, and Colony Ridge must include a summary of the assessment process and outcomes in its annual compliance report. Colony Ridge reserves the right to not engage in an individualized assessment for a borrower who receives more than four separate notices of foreclosure in a ten-year period, so long as the notices are documented and made available to the United States for review upon request;

    c. Set forth the types of relief available to Qualified Borrowers, which must include but is not limited to: (i) zero-percent forbearance periods; (ii) short-term, interest-free loans

to borrowers for unpaid taxes, POA dues, or other similar qualifying debts; (iii) no-cost
or low-cost refinancing options; and (iv) no-cost methods for borrowers to transfer notes
to outside buyers, minus any reasonable legal fees;

d. Include the opportunity for all future Colony Ridge borrowers to effectively rescind
the purchase by the latest due date of the second payment after closing on a Colony
Ridge lot loan ("Recission Option"). If exercised, the Recission Option must come at no
additional cost to borrowers and borrowers must receive a refund of all money paid to
Colony Ridge prior to recission, minus any costs incurred by Colony Ridge to remediate
damage done to a lot by a borrower, such as waste disposal or mining, if any occurred.
Colony Ridge may not challenge a borrower's determination to rescind or impose
negative credit report consequences based on a borrower's rescission. Colony Ridge
must make a good faith effort to notify all borrowers of the Recission Option, by phone,
writing, email, or other reasonable means, 30 days prior to the option's expiration.

17. **Addressing Harm to Credit:** Within three (3) months of the Effective Date, Colony
Ridge shall present to the United States and the State of Texas, for the United States' and
Texas's non-objection, a written proposal to address harms to borrowers' credit because of
reports made by Colony Ridge (including, but not limited to, removing all negative credit
reports and references regarding borrowers' repayments of their Colony Ridge loans) for all
borrowers who have defaulted on a Colony Ridge lot loan.

18. **Foreclosure Policy:** Within three (3) months of the Effective Date, Colony Ridge
shall present to the United States and Texas, for the United States' and the State of Texas's non-
objection, a written, proposed Foreclosure Policy to meaningfully reduce the number and
frequency of foreclosures and deeds in lieu of foreclosures, subject to and incorporating the

following provisions:

    a. Colony Ridge may not foreclose on a borrower or accept from a borrower a deed in lieu of foreclosure or General Warranty Deed without having first completed a good-faith evaluation of the borrower for relief under the Default Avoidance Plan, described in Paragraph 16.

    b. Colony Ridge must provide borrowers at least forty-five (45) days' written notice prior to initiating a foreclosure.

### F. **Addressing Representations to Consumers**

19. **Advertisements**: Colony Ridge shall ensure that all advertisements—including those made by Colony Ridge and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Agreement—truthfully and accurately describe the properties for sale and applicable loan terms, including, but not limited to, any statements regarding loan terms, utility connections, flooding, wetlands, if any, and readiness for use.

20. Colony Ridge will not advertise to the general public that all properties for sale are "move in ready" or currently have "all city services" unless such properties have immediate access to all utility services through the payment of applicable tap fees. Colony Ridge will add appropriate limiting language or disclaimers to these advertisements. Colony Ridge will advertise using only images of actual property owned by a Colony Ridge entity. Colony Ridge advertisements using "for sale by owner" will disclose and clearly indicate the name of the entity that owns the property.

21. **Pre-Sale Disclosures**: In addition to any other disclosures that Colony Ridge provides to consumers, before entering into a transaction with or collecting a fee from a

borrower, Colony Ridge shall accurately, clearly, conspicuously, and succinctly disclose information about each property. Consistent with this obligation, and within three (3) months of the Effective Date, Colony Ridge shall present proposed written disclosures to the United States and Texas, for the United States' and Texas's non-objection, subject to the following:

    a. **Utilities**: Colony Ridge will provide a disclosure stating whether utilities are readily accessible, and good faith estimates of costs associated with the installation of said utilities (including any tap fees) for residential purposes. If utilities are not already available on the property, Colony Ridge will restate that there may be delays or costs greater than any estimate they may have received, and that Colony Ridge cannot promise any particular utility service or service availability date;

    b. **Flooding:** Colony Ridge will agree all plats will receive pre-development drainage and flood control approval by the appropriate Federal, State, and local authorities, if required by those authorities. Colony Ridge will provide a disclosure stating whether the property is in the 100-year flood plain, whether the customer is purchasing raw land, whether the customer needs to grade their own lot, and those criteria outlined in 12 C.F.R. § 1010.115(b)-(e), if applicable. Colony Ridge will restate the buyer's ongoing responsibility for leveling, grading, or otherwise filling the lot to provide proper drainage to the culvert drainage system and to comply with county permitting requirements, when applicable;

    c. **Available Date**: Colony Ridge will ensure that upon purchase, all borrowers will be permitted to take immediate possession of the property and occupy the property as permitted by state and local law, and the applicable deed restrictions. Colony Ridge will provide a good faith estimate of the date on which it is anticipated the purchaser will be

permitted to begin the residential permitting process for the property, including, if possible, an estimate of how long the residential permitting process will take; and

d. **True Total Cost of Property**: Colony Ridge will disclose the total price the borrowers will pay for the property, including interest and closing costs and the cost of any required fees (such as taxes, POA fees, etc.), but not voluntary or discretionary development costs (such as construction costs, etc.).

22. **Transparency**: Colony Ridge shall ensure that it accurately, clearly, conspicuously, succinctly, and timely provides borrowers information about their loans and lots, including on a regular basis (i.e. monthly statements), upon request, and through any online or mobile application if ever implemented. Colony Ridge shall additionally ensure that borrowers have user-friendly methods to apply additional money to principal balances.

### G. <u>Infrastructure Improvements</u>

23. Within three (3) months of the Effective Date, Colony Ridge will prepare, and present, for the United States' and Texas' non-objection a General Infrastructure Improvement Plan. Upon the United States' and Texas's non-objection, Colony Ridge will promptly begin implementation of the General Infrastructure Improvement Plan. The General Infrastructure Improvement Plan will allocate forty-eight (48) million dollars to infrastructure improvements within the Colony Ridge development and will prioritize existing repair needs ahead of any new development. The General Infrastructure Improvement Plan should aim to reduce and prevent flooding, improve roads, provide for proper management of sewage and other waste, and invest in other projects designed to improve the habitability and public safety of Terrenos Houston Subdivisions for the benefit of their residents, as set out below.

a. **Drainage and Flood Control Plan:** Of the forty-eight (48) million dollars, Colony

Ridge shall commit to investing eighteen (18) million dollars for improvements and maintenance to reduce and prevent flooding, including drainage, stormwater, and related infrastructure at land that Colony Ridge Development, LLC or Colony Ridge BV, LLC have offered to sell and sold in Texas, using the names "Bella Vista," "Camino Real," "Grand San Jacinto," "Montebello," "Rancho San Vincente," and "Santa Fe" (the "Terrenos Houston Subdivisions").

    i. For purposes of flooding infrastructure improvements, Colony Ridge's shall propose a Drainage and Flood Control Plan to include: (i) the retention of an independent, qualified Texas-based hydrologic and hydraulic civil engineering firm ("Engineering Firm") to evaluate and recommend a plan, which Colony Ridge will submit to the United States for its non-objection; (ii) a scope of work that requires the Engineering Firm to reassess the drainage and flood control plans and as-built conditions of the six Terrenos Houston Subdivisions; (iii) recommendations for a capital improvement plan for establishing a 10-year storm drainage system and a 100-year storm flood control system based on applicable federal, state, and/or local rainfall data standards, such as Atlas 14 rainfall data for each of the six Terrenos Houston Subdivisions; and (iv) proposals for regular (i.e. at least twice annually) inspections of Colony Ridge's progress—including at least one inspection each year after a storm event—and, based on those inspections, recommend any needed upkeep or maintenance through amendments or supplements to the Plan. Colony Ridge shall submit the Engineering Firm's inspection reports within thirty (30) days of each inspection.

    ii. The Drainage and Flood Control Plan shall, at minimum, meet the engineering

standards required by applicable Federal law or authorities, if any, and Liberty County ordinances or authorities on the date that the initial platting was approved.

iii. To the extent the improvements under the Drainage and Flood Control Plan does not require the expenditure of all eighteen (18) million dollars, Colony Ridge shall propose to the United States, for the United States' non-objection, a plan to expend the remaining amount as part of additional projects included in the General Infrastructure Improvement Plan.

b. **Other General Infrastructure Improvements:** In addition to, and distinct from, the improvements described in Paragraph 23(a), above, Colony Ridge will submit to the State of Texas for its non-objection a General Infrastructure Improvement Plan. The General Infrastructure Improvement Plan will allocate a total aggregate amount of thirty (30) million dollars to future infrastructure improvements within the Colony Ridge development and will prioritize existing repair needs ahead of any new development. The General Infrastructure Improvement Plan shall set forth a timeline for its completion, which shall be no longer than ten (10) years from its inception. With regard to new development in Colony Ridge, the General Infrastructure Improvement Plan will prioritize creation of new roads, reducing and preventing flooding, and providing for proper management of potable water delivery systems and associated support infrastructure, sewage and associated support infrastructure, and other waste management. Expenditure of funds pursuant to this Paragraph shall not be made to improve roads or other infrastructure within the responsibility or duty of Liberty County, Texas, or any other Federal, State or local government entity.

24. Nothing contained in Section IV, Part G shall excuse, waive, or limit Colony Ridge from complying with Federal, State, or local laws, or from engaging with other Federal, State, or local authorities or agencies, regarding developing or building any required additional drainage, stormwater, or related infrastructure described in this Section.

25. The terms of Section IV, Part G shall remain in effect until the entire $48 million fund is depleted and Colony Ridge submits a final report documenting the complete infrastructure investment to the United States and Texas for their non-objection.

**H.  Increased Law Enforcement Presence**

26. Defendants will expend an aggregate amount of twenty million dollars ($20 million), inclusive of costs to enter into and/or come into compliance with local, state, and federal agreements, to increase law enforcement presence and effectiveness within the Terrenos Houston Subdivisions. These funds will be expended to carry out law enforcement activities, which may include: (1) general local law enforcement, including, primarily, funding additional delegated immigration enforcement authority from the federal government to the Liberty County Sheriff's Office and Liberty County Constable offices; (2) construction of a Texas Department of Public Safety and/or County Constable sub-station on-site within the Terrenos Houston Subdivisions, (3) funding for at least two additional full-time law enforcement officers to patrol the development, who shall be funded and allocated consistent with the existing Law Enforcement Services Agreement between the POA and Liberty County executed on August 8, 2023; and (4) purchase law enforcement equipment, gear, and vehicles for items and services associated with the property owners of Colony Ridge, and at the discretion of the Liberty County Constable and Liberty County Sheriff's Office. These funds will be expended in no more than ten (10) years

and notwithstanding the construction of a law enforcement facility referenced in section (2) above, no more than $2 million per year will be required to be expended under this provision.

27. The terms of Section IV, Part H shall survive until all funds provided for herein are expended. Expenditure of these funds is contingent upon the execution of mutually acceptable agreements with one or more law local law enforcement agencies as authorized by law and selected by Defendants. Any funds that are not expended within ten (10) years will be re-dedicated to infrastructure projects to increase public safety.

**I.   Houston El Norte Property Owners Association**

28. Defendant Houston El Norte Property Owners Association, Inc. will generate and provide a yearly financial report to all property owners regarding dues collected and paid, as well as any outstanding balances. The report will provide a comprehensive report of expenditures by the association and a report illustrating how property owners' dues were expended.

**J.   Training, Nondiscrimination Policy, and Complaint Procedure**

29. **Notice to Relevant Staff and Officials**: Within thirty (30) days of the Effective Date, Colony Ridge shall provide copies of the Complaints and Agreement to all employees and persons involved in lending, sales, underwriting, marketing, fair lending compliance, and who have management responsibility over such employees and persons; senior management with fair lending, sales, underwriting, fair lending compliance, and marketing oversight; and members of any Boards of Directors (collectively, "Relevant Staff and Officials").

30. **Training:** Colony Ridge shall ensure that Relevant Staff and Officials are adequately trained on their obligations under this Agreement, consistent with the following:

a. Within three (3) months of the Effective Date, Colony Ridge shall present to the United States, for the United States' non-objection, the qualifications of a fair lending trainer and

a proposed fair lending training curriculum covering Colony Ridge's obligations under the FHA, ECOA, Regulation B, the allegations in the Complaint, and this Agreement ("fair lending training(s)").

b. Within ninety (90) days of the United States' non-objection in Paragraph 28(a), and each year throughout this Agreement's term, Colony Ridge shall provide live and interactive training to anyone who is, or has become in the past year, a Relevant Staff or Official. Annual trainings shall cover (1) the fair lending training(s) and (2) policies, standards, and obligations in Paragraphs 12-22.

c. Colony Ridge will bear all costs associated with the trainings in this Paragraph.

d. Colony Ridge will implement a system for each individual to acknowledge that they completed the fair lending training(s).

e. Colony Ridge will provide any individual who becomes a Relevant Staff or Official a copy of the Complaint and this Agreement, and the fair lending training(s), as discussed above, within thirty (30) days of beginning the covered position.

31. **Nondiscrimination Policy and Complaint Procedure:** Within three (3) months of the Effective Date, Colony Ridge shall present to the United States, for the United States' non-objection, a written Nondiscrimination Policy and Complaint Procedure ("NPCP") consistent with the following:

a. The NPCP shall cover the protections of the FHA and ECOA, including prohibitions against discrimination in lending and residential land sales.

b. The NPCP shall include a formal complaint procedure for reporting alleged discrimination, with instructions on how to contact the Compliance Specialist(s) by telephone and email, and shall require a written response to each complaint within two

(2) weeks.

c. The NPCP shall require that all advertisements, disclosures, and materials subject to or required by this Agreement in Section IV, Parts C, E, F, J, and K are provided to consumers in English and Spanish.

d. Within thirty (30) days of the NPCP's implementation, Colony Ridge shall provide the NPCP to each current property owner in the Terrenos Houston Subdivisions and each Relevant Staff and Official.

e. Colony Ridge shall distribute the NPCP to all new purchasers at the time of purchase for the duration of this Agreement.

**K.** <u>**Reporting and Recordkeeping**</u>

32. Beginning one (1) year after the Effective Date, Colony Ridge will submit annual reports to the United States and the State of Texas on its compliance with this Agreement's terms, with the final report submitted to the United States and the State of Texas at least sixty (60) days prior to this Agreement's expiration.

33. In addition to the submission of any other plans, reports, or accountings specified in this Agreement, the annual reports will provide a complete account of Colony Ridge's and the Compliance Specialist(s)'s material actions to comply with each requirement of this Agreement, and the Compliance Specialist(s)'s assessment of the extent to which each obligation was met and each plan was implemented, from the preceding year. If Colony Ridge falls short of its goals in the preceding year for any obligation or plan under this Agreement, the Compliance Specialist(s) will provide an explanation of why Colony Ridge fell short and will make recommendations to achieve the goals set forth in this Agreement.

34. At minimum, and in addition to the contents in Paragraph 33, the annual reports will

include the following information from the preceding year:

a. A declaration by the Compliance Specialist(s) describing whether Colony Ridge met its advertising obligations under Paragraphs 19-20;

b. Exemplar copies of Colony Ridge's pre-sale disclosures, as required by Paragraph 21, information and online or mobile applications, as required by Paragraph 22; and acknowledgements, as required by Paragraph 31(d) and (e);

c. Quantitative records sufficient to show Colony Ridge's compliance with Paragraphs 12-22;

d. Detailed expenditures for each improvement under the General Infrastructure Improvement Plan and the Drainage and Flood Control Plan under Paragraph 23, including a description of the improvement, the amount spent on the improvement, the timing of the improvement, whether the improvement was made consistent with the timetable and within the anticipated cost (and if not, an explanation of the difference); and

e. Any complaints of alleged housing or lending discrimination, including a copy of the complaint, associated documents, and written response received under the NPCP detailed in Paragraph 31.

35. All material sent to the United States and the State of Texas under this Agreement shall be transmitted by email to the Department of Justice and Texas Office of the Attorney General attorneys assigned to this matter, or by other means agreed upon by the Parties. The United States and Texas will notify Colony Ridge in writing if the recipient list changes.

36. The United States and the State of Texas will submit all non-objections described in this Agreement to Colony Ridge via email to legal counsel for Colony Ridge, or by other means

agreed upon by the Parties. Colony Ridge will notify the United States and the State of Texas in writing if the recipient list changes.

37. Colony Ridge will retain all records related to its obligations under, and activities to carry out, this Agreement, including compliance with Paragraph 9. Colony Ridge shall respond to the United States' and the State of Texas's reasonable inquiries for information related to Colony Ridge's compliance with this Agreement, including providing records to the United States and/or Texas for review and copy upon request.

**L.  Law Enforcement Support and Sales**

38. Within three (3) months of this Agreement's Effective Date, Colony Ridge will create and present for the United States's and Texas's non-objection, a discount program designed to meaningfully encourage peace officer residency within the Terrenos Houston Subdivisions. For purposes of this Paragraph, "peace officer" shall have the meaning defined in Section 1.07(36) of the Texas Penal Code.

**V.  DURATION AND MODIFICATION**

39. This Agreement shall remain in effect for three (3) years from the Effective Date, except as specifically provided elsewhere in the Agreement. The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

40. Any time limits for performance imposed by this Agreement may be extended by mutual written agreement of the Parties. If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to this Agreement.

41. If, at any point, the United States and the State of Texas determine that Colony Ridge has substantially complied with this Agreement, including by fulfilling this Agreement's terms and exhibiting a sincere and demonstrated commitment to future remediation, the United States and the State of Texas may jointly terminate this Agreement prior to its expiration date.

## VI.    **IMPLEMENTATION AND ENFORCEMENT**

42. To the extent any Paragraph requires Colony Ridge to submit a proposal to the United States and/or the State of Texas for non-objection, the respective parties shall have thirty (30) days to review and communicate any objections. If the United States or the State of Texas objects, Colony Ridge shall have fifteen (15) days from such notification to provide a revised submission. This process will continue until both the United States and the State of Texas provide their approval, at which point Colony Ridge shall have thirty (30) days to implement its obligation, unless a different time period is specified in the obligation's controlling Paragraph or by agreement of the Parties.

43. For all other reasons, if the United States or the State of Texas provides its objection, the Parties will have thirty (30) days to confer and resolve their differences. The Parties may mutually agree to additional time to confer, if necessary.

44. The Parties to this Agreement shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to initiating Court action. However, if the United States or Texas believe that Colony Ridge, whether willful or otherwise, fails to perform in a timely manner any act required by this Agreement or acts in violation of any provision of this Agreement, the United States or Texas shall notify Colony Ridge in writing of their concerns. Colony Ridge shall have fifteen (15) days from the date of the United States' or Texas's notification to cure the breach.

45. If the Parties are unable to reach a resolution within fifteen (15) days, the Parties agree that upon any such claim of a breach as made by the United States or Texas, the United States or Texas may move to restore the present Civil Actions to the active docket of this Court for purposes of resolution of any such claim of breach, or may file a separate action for breach of this Agreement, or any provision thereof, in the United States District Court for the Southern District of Texas. This Court shall serve as the exclusive jurisdiction and venue for any dispute concerning this Agreement. The Parties consent to and agree not to contest the jurisdiction of this Court. The Parties further acknowledge that venue in this Court is appropriate and agree not to raise any challenge on this basis.

46. In the event the United States or the State of Texas reinstate their Civil Actions as contemplated by Paragraph 45 above, or in any lawsuit to remedy a breach of this Agreement, the United States or the State of Texas may seek any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts and an award of damages, costs, and reasonable attorney's fees that may have been occasioned by Colony Ridge's violation or failure to perform. If such an action is filed, Colony Ridge expressly agrees not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, statute of limitations, estoppel, laches, or similar defenses.

47. The United States and Texas may take reasonable steps to monitor Colony Ridge's compliance with this Agreement, ECOA, and the FHA. Colony Ridge agrees to cooperate with the United States and Texas in any review of compliance with this Agreement.

48. Failure by the United States or Texas to enforce any provision of this Agreement shall not waive the United States' or Texas's right or ability to enforce any other provision of this Agreement.

49. Within seven (7) days of the Effective Date, the Parties shall file a joint motion under Fed. R. Civ. P. 41(a)(2) in each of the respective matters, with a copy of this Agreement attached, seeking the Court's approval of this Agreement subject to Paragraphs 46 and 47.

## VII.    <u>SCOPE</u>

50. This Agreement shall be binding on Colony Ridge, including all officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with them who have actual notice of this Agreement. In the event Colony Ridge seeks to transfer or assign all or part of its operations, and the successor or assignee intends on carrying on the same or similar use, as a condition of sale, Colony Ridge shall obtain the written agreement of the successor or assignee to any obligations remaining under this Agreement for its remaining term to the extent compliance with such obligations would be transferred or assigned.

51. Colony Ridge will notify the United States and the State of Texas of any development that may materially affect compliance obligations arising under this Agreement, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company to Colony Ridge; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Agreement; the filing of any bankruptcy or insolvency proceeding by or against Colony Ridge; or a change in Colony Ridge's name or main office address. Colony Ridge will provide this notice as soon as practicable, but in any case, at least thirty (30) days before the occurrence of such event or, if applicable, the full execution of a definitive written agreement with respect to such event.

52. Nothing in this Agreement shall excuse Colony Ridge's compliance with any currently or subsequently effective provision of law, or order of a regulator with authority over Colony Ridge, that imposes additional obligations on Colony Ridge.

53. Notwithstanding Paragraphs 7 and 49 of this Agreement, or any other term of this Agreement, the following claims of the United States and the State of Texas are specifically reserved:

a. Any criminal liability;

b. Any liability arising under Title 26, U.S. Code (Internal Revenue Code) and any State Tax or Revenue Law;

c. Any environmental matters, including regulatory matters, agency enforcement actions, criminal actions, or civil actions within the jurisdiction of the U.S. Environmental Protection Agency, FEMA, U.S. Army Corps of Engineers, or other federal agency;

d. Except as explicitly stated in this Agreement, any administrative liability or enforcement right;

e. Any liability to the United States (or its agencies) or the State of Texas for any claims other than Covered Claims;

f. Any liability based upon obligations created by this Agreement;

g. Any liability for failure to deliver goods or services due; and

h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Claims.

54. Defendants waive and shall not assert any defenses they may have to any federal criminal prosecution or federal administrative action relating to the Covered Claims that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such federal criminal prosecution or federal administrative action.

55. Defendants fully and finally release the United States and the State of Texas, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States and the State of Texas, their agencies, officers, agents, employees, and servants, related to the Covered Claims and the United States' and the State of Texas's investigations and prosecution thereof.

56.     This Agreement is for the sole benefit of the Parties and nothing herein, express or implied, shall confer any right or benefit, legal or equitable, or remedy of any nature, upon any person other than the Parties.

57.     Nothing in this Agreement is intended to or shall be construed to preclude the assertion of any legal theory claim or defense in any other action.

## VIII.   <u>EXECUTION AND OTHER TERMS</u>

58. Except as provided in Paragraph 46, all Parties shall be responsible for their own attorney's fees, expenses, and costs associated with this action.

59. The captions and headings of this Agreement are for convenience or reference only and in no way define, limit, or describe the scope or intent of this Agreement.

60. This Agreement constitutes the complete agreement between the Parties. No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

61. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion. The Parties agree that each Party and its representatives have acted consistent with the duty of good faith and fair dealing.

62. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

63. This Agreement is governed by and shall be interpreted under the laws of the United States and Texas. For purposes of construing or interpreting this Agreement, it shall be deemed to have been drafted by all Parties and shall not be construed or interpreted against any Party for that reason in any subsequent dispute.

64. Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by any other party, which includes the duties and obligations of the Compliance Specialist(s) and Engineering Firm outlined in this Agreement, the performance of one Party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by any other party.

65. This Agreement is a public document. The Parties agree and consent to the United States' and the State of Texas's disclosure of this Agreement and information concerning this Agreement to the public subject to any applicable privacy laws.

66. If this Agreement or any of its terms are challenged in a court other than the United States District Court for the Southern District of Texas, the Parties agree that they will seek removal or transfer to the Southern District of Texas.

67. Should any provision of this Agreement be declared or determined by any court to

be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The Parties agree that they will not, individually or in combination with another, seek to have any court declare or determine that any provision of this Agreement is illegal or invalid. No Party shall be liable for failing to comply with the terms of this Agreement if it would be impossible to do so.

68. This Agreement may be modified only with the written consent of the Parties. Any modification must be in writing and signed by the Parties through their authorized representatives.

**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division

**CARRIE PAGNUCCO**
Chief

*/s/ Varda Hussain*

**VARDA HUSSAIN**
Principal Deputy Chief

Attorney-in-Charge (pro hac vice)
VA Bar No. 70132
Housing and Civil Enforcement Section
Civil Rights Division,
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Tel: (202) 532-5036
Fax: (202) 514-1116
Email: varda.hussain@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**THE UNITED STATES OF AMERICA**

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**JOHNATHAN STONE**
Chief, Consumer Protection Division

*/s/ Rob Farquharson*
ROBERT FARQUHARSON, *Attorney-in-Charge*
TX Bar No.: 24100550
S.D. Tex. Bar No.: 3634988
Email: rob.farquharson@oag.texas.gov
JOSELYN R. MATHEWS
TX Bar No.: 24129108
Email: joselyn.mathews@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
12221 Merit Drive, Suite 650
Dallas, TX 75251
Tel: 214-969-7639/Fax: 214-969-7615

DANIEL ZWART
TX Bar No.: 24070906
Email: daniel.zwart@oag.texas.gov
KAYLIE BUETTNER
TX Bar No.: 24109082
Email: kaylie.buettner@oag.texas.gov
MEREDITH SPILLANE
TX Bar No.: 24131685
Email: meredith.spillane@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
808 Travis Street, Suite 1520
Houston, Texas 77002
Tele: 713-223-5886/Fax: 713-223-5821

CLARA CARLETON
TX Bar No.: 24136077
Email: clara.carleton@oag.texas.gov
SCOTT FROMAN
TX Bar No.: 24122079
Email: scott.froman@oag.texas.gov
MATTHEW CHILDREY
TX Bar No.: 24138100
Email: matt.childrey@oag.texas.gov
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Tele: 512-463-2185/Fax: 512-473-8301

**ATTORNEYS FOR PLAINTIFF
THE STATE OF TEXAS**

TX Bar No.: 24129108
Email: joselyn.mathews@oag.texas.gov
NORMAN R. CAHN
TX Bar No.: 24125161
Email: norman.cahn@oag.texas.gov
CLARA CARLETON
TX Bar No.: 24136077
Email: clara.carleton@oag.texas.gov
SCOTT FROMAN
TX Bar No.: 24122079
Email: scott.froman@oag.texas.gov
MATTHEW CHILDREY
TX Bar No.: 24138100
Email: matt.childrey@oag.texas.gov
DANIEL ZWART
TX Bar No.: 24070906
Email: daniel.zwart@oag.texas.gov
KAYLIE BUETTNER
TX Bar No.: 24109082
Email: kaylie.buettner@oag.texas.gov
MEREDITH SPILLANE
TX Bar No.: 24131685
Email: meredith.spillane@oag.texas.gov
Assistant Attorneys General
Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Tele: 512-463-2185/Fax: 512-473-8301

**For Colony Ridge Inc., Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, T-Rex Management, LLC, and John Harris:**

John Harris

**For CH&P Management LLC and Houston El Norte Property Owners' Association, Inc.:**

Ryan Crihfield

Dated: February 9, 2026

29