

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

**U.S. Department of Justice**
Civil Rights Division
Housing and Civil Enforcement Section

| | |
|---|---|
| *U.S. Mail:* | *950 Pennsylvania Avenue, NW - 4CON* |
| | *Washington, DC  20530* |
| *Overnight:* | *150 M Street, NE* |
| | *Washington, DC  20002* |
| *Telephone:* | *(202) 514-4713* |
| *Facsimile:* | *(202) 514-1116* |

March 5, 2026

Via CM/ECF

The Honorable Alfred H. Bennett
United States District Judge
Southern District of Texas
Bob Casey United States Courthouse
515 Rusk, Room 8624
Houston, Texas 770021

>    Re:   *United States, et al*. v. *Colony Ridge Development, LLC, et al.*,
>          Case No. 4:23-cv-4729
>
>          *State of Texas* v. *Colony Ridge Development, LLC, et al.,*
>          Case No. 4:24-cv-00941

Dear Judge Bennett:

   The United States and the State of Texas, Plaintiffs in the above-captioned cases, write to address arguments submitted by Amici in their Memorandum in Opposition (ECF. No. 160-2) ("Memorandum") to Plaintiffs' Joint Motion for Dismissal (ECF No. 149). Amici's Motion (ECF No. 160) and Memorandum, filed without conferring with any party in compliance with Local Rule 7.1(D)(1), raise no meritorious arguments to disturb the robust Settlement Agreement (ECF No. 149-A) resolving these cases.

## 1. Under Rule 41(a)(2), the Court's Inquiry Focuses on Prejudice to Parties

   On February 10, 2026, the United States, the State of Texas and Colony Ridge Development, LLC, Colony Ridge BV, LLC, Colony Ridge Land, LLC, Colony Ridge, Inc., T-Rex Management, Inc., John Harris, Houston El Norte Property Owners Association, Inc., and CH&P Management LLC ("Defendants") (collectively, "the Parties") moved jointly under Rule 41(a)(2) to dismiss the above-captioned cases with prejudice in light of reaching a resolution to resolve all of Plaintiffs' claims.

   Rule 41(a)(2) is the proper procedure when parties are asking the court to retain jurisdiction for purposes of enforcing a settlement agreement. *Miller* v. *Clark Sharp & Reynolds LLC*, No. 4:23-cv-00904-O, 2024 U.S. Dist. LEXIS 148160, *3-4 (N.D. Tex. Mar. 5, 2024) (citing to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994)). Under Rule 41(a)(2) dismissals, the court's inquiry focuses on whether dismissal would prejudice any party to the case. *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir. 1990). Therefore,

in the context of a joint motion when a settlement has been reached and the plaintiffs agree to dismiss with prejudice, there is no prejudice for the court to weigh.

The Parties moved under Rule 41(a)(2) seeking retention of jurisdiction in light of the substantial relief bargained for in the Settlement Agreement. The agreement is precedential for Plaintiffs. It obligates Defendants to implement wide-ranging and substantial reforms relating to its lending, sales, marketing and disclosure practices. It also obligates them to invest $48 million dollars into infrastructure improvements, including addressing the devastating flooding that Plaintiffs identified as especially detrimental to the ability of residents in Colony Ridge developments to accrue equity and utilize the value invested in their homes. While most provisions are for a three-year term, some span ten years and all require extensive reporting for compliance purposes. *See* ECF No. 149-A, ¶¶ 23, 26, 32-37. Given the importance of the relief sought, it would be far more efficient—and ultimately beneficial for Colony Ridge residents—if Plaintiffs are able to seek recourse through the Court for any noncompliance rather than institute a new civil action.

We are not aware of any decision in the Fifth Circuit where a Rule 41(a)(2) dismissal motion triggers a substantive review of settlement terms under either the rule's limited scope of review or under a consent decree standard. Amici cite to a single, inapposite case, *Pedeira v. Sunrise Children's Servs., Inc*., 802 F.3d 865 (6th Cir. 2015), in support of their position. In that case, the Sixth Circuit found that a settlement agreement entered into by the parties was more akin to a consent decree for two reasons: the district court's order granting a Rule 41(a)(2) motion (1) retained jurisdiction to enforce the settlement *and* (2) incorporated the terms of the settlement in its dismissal order. *Id*. at 871. The Sixth Circuit specifically noted that a dismissal order "that does not incorporate the parties' terms" does not give judicial imprimatur to the settlement's terms.[1] *Id.* Here, the proposed order accompanying the Parties' Rule 41(a)(2) motion does not request that the court incorporate the terms of the settlement agreement—it properly frames the court's role as retaining jurisdiction to enforce the terms. ECF No. 149-2.

Amici's effort to shape the resolution by asking this Court to deny the Parties' joint motion is misplaced. The Settlement Agreement, signed by all Parties, has already taken effect. All that remains is for the Court to decide whether to retain jurisdiction to enforce its terms. If Amici wished to participate in the details of litigating or resolving these cases, they could have filed a timely motion to intervene under Rule 24. Following a long and comprehensive investigation, the United States filed its case in December 2023 and engaged in intensive motions practice and discovery.[2] Beginning in May 2025, the United States filed successive

---

[1] *See also Pedeira*, 802 F.3d at 873 (J. Black, dissenting) ("The simple retention of jurisdiction should not *ipso facto* transform a settlement agreement into a consent decree — if it did, virtually all private settlement agreements would be consent decrees, subject to review for fairness, reasonableness, and consistency with the public interest. Here, the settlement agreement provided for monitoring by the state and, with respect to Sunrise, by Plaintiffs' counsel—not by the state nor by the district court. This is not "continued judicial policing" indicative of a consent decree.")

[2] Indeed, the majority of Amici's memorandum is simply a recitation of Plaintiffs' successful investigatory and litigation efforts in this case.

motions to stay its case so that the parties could focus on mediation and subsequent settlement negotiations. Each one of these motions was publicly filed and placed Amici on notice of the procedural posture of the United States' case. Indeed, as early as December 2025, the United States filed a Joint Status Report informing this Court that it had reached a settlement in principle and filed another report in January 2026 informing this Court that the Parties were working to achieve a global settlement resolving both cases. The Parties have spent nearly a year negotiating the terms of the Settlement Agreement, the terms of which were carefully crafted and informed by experts and fact discovery.

At any point since December 2023, Amici could have moved to intervene on behalf of aggrieved persons and presumably been a party with a right to shape any resolution. Instead of doing so, they chose to file a memorandum days before a hearing asking the Court to deny the Parties' joint motion. Amici second-guess the Parties' settlement and attempt to enlist the Court in striking settlement provisions that Amici do not like. This is not authorized by case law or the Federal Rules of Civil Procedure.

### 2. The Settlement Agreement Promotes Compliance with Federal Civil Rights and State Consumer Protection Laws

Even if the Court were to review the Settlement Agreement as a Consent Decree, the Fifth Circuit has made clear that consent decrees carry a presumption of validity that is overcome only if the terms are unreasonable, illegal, unconstitutional or against public policy. *See United States v. Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980), vacated in part, 664 F.2d 435, 438-39 (5th Cir. 1981) (*en banc*).[3] None of those factors are present here and indeed, the provisions promote compliance with federal civil rights laws and state consumer protection laws. The Settlement Agreement not only contains appropriate relief to address Colony Ridge's alleged practices, but it also helps to ensure that the development is safe for all its residents.

Amici's argument that the relief obtained by the United States and Texas negatively affects aggrieved persons is misplaced and inaccurate. The Settlement Agreement provides robust and meaningful protections for residents and directly remediates the predatory practices alleged in the United States' and Texas's complaints. Specifically, the agreement requires Defendants to:

- develop underwriting standards to reflect a reasonable and good faith determination that borrowers have the ability to repay lot loans under the terms provided (ECF No. 149-1, ¶ 14),
- develop a default avoidance policy and a foreclosure policy to meaningfully reduce the number of borrowers defaulting on loans and the frequency of foreclosures, while also providing a right of recission to borrowers (ECF No. 149-1, ¶¶ 15-16),

---

[3] On remand, the Fifth Circuit added that courts should review consent decrees for fairness and whether the terms violate the Constitution, statutes, or jurisprudence. *See City of Miami*, 664 F.2d at 441. Amici assert that this case also obligates this Court to be satisfied that a consent decree does not unreasonably affect third parties and urges the Court to adopt this standard here. ECF No. 160-2 at 12. But unlike *City of Miami*, all Parties in these matters are signatories to the Settlement Agreement and there are no third parties.

- address harm to borrowers' credit, including removing all negative credit reports and references regarding borrowers' repayments of their Colony Ridge loans, for borrowers who have defaulted on a lot loan (ECF No. 149-1, ¶ 17),
- advertise truthfully and accurately concerning its properties for sale and the applicable loan terms (ECF No. 149-1, ¶¶ 19-20),
- ensure that pre-sale disclosures are accurate and transparent about the accessibility of utilities, whether the property is in a flood plain, and the total price to be paid by borrowers, inclusive of fees and costs (ECF No. 149-1, ¶ 21),
- provide accurate and regular, on-going information to borrowers about their lots and loans (ECF No. 149-1, ¶ 22),
- invest $48 million in infrastructure improvements (including $18 million set aside to reduce and prevent flooding) and $20 million in local law enforcement to ensure Colony Ridge remains a community that is habitable, safe, and where residents can reap all the benefits of homeownership (ECF No. 149-1, ¶¶ 23-25), and
- commit to robust reporting on efforts to implement the relief in the Settlement Agreement to ensure sustained compliance (ECF No. 149-1, ¶¶ 32-37).

Amici wholly discount the magnitude of the above relief because the settlement does not include direct financial relief for consumers. But as Amici concede, the "Government has discretion over how it chooses to litigate and settle cases." ECF No. 160-2 at 18. When describing the Attorney General's enforcement authority, the Fair Housing Act itself describes a range of relief that "may" be awarded, including monetary damages, but does not mandate any particular relief to cure a violation of the Act. 42 U.S.C. § 3614(d); *see* 15 U.S.C. § 1691e(h) (similarly permitting the Attorney General to bring a civil action under the Equal Credit Opportunity Act "for such relief as may be appropriate, including actual and punitive damages and injunctive relief"). The decision to seek relief under Sections 3614 and 1691e in connection with a particular complaint is committed to the sound prosecutorial discretion of the Attorney General. *Cf. Voth v. Holder*, 373 Fed. App'x 78 (D.C. Cir. 2010) (*per curiam*).

The Fair Housing Act recognizes that aggrieved persons may have interests unique from the United States and thus permits aggrieved persons to file timely motions to intervene in matters initiated by the Attorney General. 42 U.S.C. § 3614(e). No such motion has been filed here and would be untimely at this juncture. However, aggrieved persons may still vindicate their rights under the Act by filing a complaint with the U.S. Department of Housing and Urban Development (a process that does not require complainants to obtain their own private counsel), 42 U.S.C. § 3610; or by filing a private enforcement action, 42 U.S.C. § 3613. This settlement does not preclude individuals from pursuing either of those options.

Amici focus much of their brief on the settlement term that requires Defendants to invest $20 million in law enforcement over the next ten years. Amici mistakenly refer to this provision as "funding immigration enforcement" when it clearly commits funds to carry out a broad array of law enforcement activities. This provision "may include," but is not limited to, funding a new police sub-station, police equipment, additional law enforcement officers, or "additional delegated immigration enforcement authority from the federal government to the Liberty County Sheriff's Office and Liberty Counsel Constable offices." ECF No. 149-A, ¶ 26. This term is intended to increase investment by Defendants towards local law enforcement within all of Liberty County. Colony Ridge currently contracts with local law enforcement and has been since

4

2016. *See, e.g.*, https://engage.goenumerate.com/site/4520/dyndocuments.php?group=150118. This settlement provision memorializes Defendants' continuing commitment to ensuring adequate public safety in its development. To the extent Amici are concerned about hypothetical uses of these funds, they have not presented any actual, ripe issue for the Court's consideration.

The fact that neither the United States' nor Texas's complaints discussed law enforcement is not determinative as to whether this relief is appropriate for settlement purposes. Indeed, while litigating any case, plaintiffs should seek to discover additional facts that cast light on the violations, their causes, and appropriate remedies. Similarly, during this litigation, Plaintiffs heard numerous complaints from witnesses and received other information from law enforcement partners that identified the need for an additional investment in public safety. This settlement provision addresses those facts and ensures that Defendants deliver on their promise to residents to provide a community with services necessary to support its population. That necessarily includes adequate law enforcement.[4]

Litigating and resolving these matters has been resource-intensive for Plaintiffs and we are pleased to have reached such a wide-ranging and precedential resolution after nearly a year of settlement negotiations. We moved appropriately under Rule 41(a)(2) to seek retention of jurisdiction of the Court for the reasons stated above and believe efficient resolution of any noncompliance would benefit the residents of Colony Ridge. At the same time, the Parties are confident in the relief and resolution provisions of the Settlement Agreement and would, in the alternative, stipulate to a dismissal under Rule 41(a)(1)(A)(ii) so that Plaintiffs can focus taxpayer dollars and their resources on monitoring implementation of the robust relief that was bargained for.

Plaintiffs look forward to answering the Court's questions about the settlement terms at the March 6, 2026 hearing.

Sincerely,

/s/ Rob Farquharson

Rob Farquharson
Deputy Chief
Consumer Protection Division
Office of the Attorney General of Texas
Attorney for Plaintiff State of Texas

/s/ Varda Hussain

Varda Hussain
Principal Deputy Chief
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
Attorney for Plaintiff United States of America

---

[4] Amici urge this Court to exercise broad powers to review the Settlement Agreement but then assert the Court has no authority to consider claims brought by the State of Texas. (ECF No. 160-2 at 3, fn. 1). But of course the Court can take judicial notice of a public filing. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, I filed the foregoing with the CM/ECF system, which sent electronic notice to all counsel of record.

*s/ Varda Hussain*
Varda Hussain

*Counsel for Plaintiff United States of America*
