I Object and Motion to be Heard

Wed, Apr 8 at 7:16 PM

IN THE UNITED STATES DISTRICT COURT

United States Courts
Southern District of Texas
F I L E D

FOR THE EASTERN DISTRICT OF TEXAS

APR 0 9 2026

Nathan Ochsner, Clerk of Court

Case No.: 4:23-cv-04729

CONSUMER FINANCIAL PROTECTION BUREAU

V.

COLONY RIDGE DEVELOPMENT

TO THE HONORABLE JUDGE ALFRED H. BENNET:

Dear Honorable Judge Alfred H Bennet,

I respectfully submit this objection and supporting exhibits regarding the Colony Ridge development, Liberty County MMD1, and related entities. My objection is based on documented patterns of negligence, mismanagement, and conflicts of interest that directly affect the constituents, the environment, and public safety.

Key Points of My Objection:

1. Financial Self-Interest and Conflicts of Interest:

   o Liberty County MMD1 awarded contracts totaling approximately $22.4 million to Liberty Paving LLC, a company closely tied to the family behind Colony Ridge.

   o Originally, William Henry "Trey" Harris III, brother of John Harris (owner of Colony Ridge), served on the MMD1 board. Due to personal legal issues, he was later removed, but the financial connections and influence remain.

   o These contracts represent a clear conflict of interest, directing public funds into family-controlled businesses without accountability.

2. Regulatory Violations:

   o Liberty Paving LLC has performed work without TCEQ permits, including SWIT permits.

   o A TCEQ report documents over 200 violations, affecting water, air, and environmental safety.

- Roads built under these contracts fail within a year, showing poor workmanship and disregard for public funds.

3. Failure to Implement MMD Responsibilities:

- The MMD was legislated to provide law enforcement, fire safety, and security, yet these services remain unfulfilled.

- Constituents pay multiple layers of taxes (County, MMD, POA/HOA), yet promised services are not delivered.

4. Pattern of Misrepresentation and Negligence:

- Multiple audits (2023 and 2025) show funds increasing without clear accountability.

- Errors, falsifications, and cut corners are consistent across all reports, rather than isolated incidents.

5. Impact on the Community:

- Mismanagement directly affects our drinking water, bathing water, irrigation, and overall safety.

- Despite assurances from the CFPB, DOJ, and state officials, restitution is not apparent while millions are handed to developers with ties to the MMD leadership.

Conclusion:

This objection is not based on isolated mistakes but on a pattern of systemic failures, self-dealing, and neglect of public responsibilities. I respectfully request that the Court hear this motion and consider the attached exhibits, which provide documented evidence supporting these claims. The goal is to ensure accountability and protection for the Consumers / Victims as promised under the Biden Administration.  And yes… We Were Targeted.

Per Scot Campbell email who is also Gayle Campbell's (Loan Originator Services) father stated in a mass email. "Because this is an attack on our industry. It is not only HARRIS they are after. The right wing of the party wants to stop all development of this nature. The left wants to knock us out of the market because we make money on the poor. For completely different reasons those are the entities we have been fighting.

We will not be able to sell our developments if each of our buyers have to have a SS# and we have to qualify each buyer as to the buyer's ability to repay. It will kill our industry and will make our future resale of foreclosed lots worth a lot less than because we will all be fighting over a few qualified buyers that will be able to qualify"

I have submitted this email in several Exhibits. Also as Exhibit J in this Objection

Thank you,

Maria Acevedo

346-336-1545

Exhibit A – MMD1 Overview and Legislative Intent (24 pages)

- Proof that John Harris, president of Colony Ridge and MMD1, has held his position since 2017.

- Shows that key functions of the MMD per the House Bill (law enforcement, safety, fire, security) have not been implemented.

- Demonstrates over-taxing of constituents and overreach beyond the five-acre limit.

Exhibit B – Correspondence Regarding Errors (Email)

- Your email documenting errors in the MMD creation and formatting, including wrong legal descriptions.
- Shows that MMD leadership knew the documents were incorrect but moved forward anyway.

Exhibit C – 2023 Annual Audit (9 pages)

- Illustrates financial flows, how money is being spent, and potential mismanagement.

Exhibit D – 2025 Annual Audit (31 pages)

- More recent financial record showing trends in spending and raises questions about allocation of funds.

Exhibit E – MMD1 Agendas (15 pages)

- Highlights how the board tables decisions, delays constable or law enforcement issues, and demonstrates operational dysfunction.

Exhibit F – Conflict of Interest Documentation (7 pages)

- Shows financial conflicts and self-dealing, including Liberty Paving contracts with ties to Colony Ridge family.
- Includes cases of operating without permits.

Exhibit G – Story on Paving Company Ties (4 pages)

- Media or investigative reports showing close ties between Liberty Paving and Colony Ridge/John Harris.

Exhibit H – Ownership Records for Liberty County Paving

- Details who owns Liberty County Paving, emphasizing potential conflicts.

Exhibit I – TCEQ Violations for Liberty County Paving (5 pages)

Exhibit J - Scot Ruskin Campbell TLDA email  (1 page)

Chapter 643

H.B. No. 4341

AN ACT

relating to the creation of the Liberty County Municipal Management District No. 1; providing authority to issue bonds; providing authority to impose assessments, fees, or taxes.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subtitle C, Title 4, Special District Local Laws Code, is amended by adding Chapter 3795 to read as follows:

CHAPTER 3795. LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 3795.001. DEFINITIONS. In this chapter:

(1) "Board" means the district's board of directors.

(2) "City" means the City of Plum Grove, Texas.

(3) "Commission" means the Texas Commission on Environmental Quality.

(4) "County" means Liberty County.

(5) "Director" means a board member.

(6) "District" means the Liberty County Municipal Management District No. 1.

Sec. 3795.002. CREATION AND NATURE OF DISTRICT. The district is a special district created under Sections 52 and 52-a, Article III, and Section 59, Article XVI, Texas Constitution.

Sec. 3795.003. PURPOSE; LEGISLATIVE FINDINGS. (a) The creation of the district is essential to accomplish the purposes of Sections 52 and 52-a, Article III, and Section 59, Article XVI,

1

Exhibit A    1 - 0424

H.B. No. 4341

Texas Constitution, and other public purposes stated in this chapter. By creating the district and in authorizing the city and other political subdivisions to contract with the district, the legislature has established a program to accomplish the public purposes set out in Section 52-a, Article III, Texas Constitution.

(b) The creation of the district is necessary to promote, develop, encourage, and maintain employment, commerce, transportation, housing, tourism, recreation, the arts, entertainment, economic development, safety, and the public welfare in the district.

(c) This chapter and the creation of the district may not be interpreted to relieve the city or the county from providing the level of services provided as of the effective date of the Act enacting this chapter to the area in the district. The district is created to supplement and not to supplant city or county services provided in the district.

Sec. 3795.004. FINDINGS OF BENEFIT AND PUBLIC PURPOSE. (a) The district is created to serve a public use and benefit.

(b) All land and other property included in the district will benefit from the improvements and services to be provided by the district under powers conferred by Sections 52 and 52-a, Article III, and Section 59, Article XVI, Texas Constitution, and other powers granted under this chapter.

(c) The district is created to accomplish the purposes of a municipal management district as provided by general law and Sections 52 and 52-a, Article III, and Section 59, Article XVI, Texas Constitution.

②

Exhibit A    2- of 24

H.B. No. 4341

(d)  The creation of the district is in the public interest and is essential to further the public purposes of:

(1)  developing and diversifying the economy of the state;

(2)  eliminating unemployment and underemployment; and

(3)  developing or expanding transportation and commerce.

(e)  The district will:

(1)  promote the health, safety, and general welfare of residents, employers, potential employees, employees, visitors, and consumers in the district, and of the public;

(2)  provide needed funding for the district to preserve, maintain, and enhance the economic health and vitality of the district territory as a community and business center; and

(3)  promote the health, safety, welfare, and enjoyment of the public by providing pedestrian ways and by landscaping and developing certain areas in the district, which are necessary for the restoration, preservation, and enhancement of scenic beauty.

(f)  Pedestrian ways along or across a street, whether at grade or above or below the surface, and street lighting, street landscaping, parking, and street art objects are parts of and necessary components of a street and are considered to be a street or road improvement.

(g)  The district will not act as the agent or instrumentality of any private interest even though the district will benefit many private interests as well as the public.

Sec. 3795.005.  INITIAL DISTRICT TERRITORY.  (a)  The

3

Exhibit A - 3 - of 24

H.B. No. 4341

district is initially composed of the territory described by Section 2 of the Act enacting this chapter.

(b)  The boundaries and field notes contained in Section 2 of the Act enacting this chapter form a closure.  A mistake in the field notes or in copying the field notes in the legislative process does not affect the district's:

(1)  organization, existence, or validity;

(2)  right to contract;

(3)  authority to borrow money or issue bonds or other obligations described by Section 3795.205 or to pay the principal and interest of the bonds or other obligations;

(4)  right to impose or collect an assessment or collect other revenue; or

(5)  legality or operation.

Sec. 3795.006.  APPLICABILITY   OF   MUNICIPAL   MANAGEMENT DISTRICT LAW.  Except as provided by this chapter, Chapter 375, Local Government Code, applies to the district.

Sec. 3795.007.  CONSTRUCTION OF CHAPTER.  This chapter shall be liberally construed in conformity with the findings and purposes stated in this chapter.

SUBCHAPTER B.  BOARD OF DIRECTORS

Sec. 3795.051.  GOVERNING BODY; TERMS.  (a)  The district is governed by a board of five voting directors who must be qualified under Section 375.063, Local Government Code.

(b)  The directors serve staggered terms of four years with two or three directors' terms expiring June 1 of each odd-numbered year.

4

Exhibit A 4- of 24

H.B. No. 4341

Sec. 3795.052. APPOINTMENT OF DIRECTORS. The commission shall appoint directors from persons recommended by the board.

Sec. 3795.053. VACANCY. If a vacancy occurs on the board, the remaining directors shall appoint a director for the remainder of the unexpired term.

Sec. 3795.054. COMPENSATION; EXPENSES. (a) The district may compensate each director in an amount not to exceed $50 for each board meeting. The total amount of compensation a director may receive each year may not exceed $2,000.

(b) A director is entitled to reimbursement for necessary and reasonable expenses incurred in carrying out the duties and responsibilities of the board.

Sec. 3795.055. INITIAL DIRECTORS. (a) The initial board consists of:

(1) two directors appointed by the Cleveland Independent School District;

(2) two directors appointed by the county commissioners court; and

(3) one director appointed by the person who owns the largest portion of the assessed value of the real property in the district.

(b) The terms of the initial directors expire June 1, 2019.

(c) Of the directors who replace an initial director, the terms of three directors must expire June 1, 2021, and the terms of two directors must expire June 1, 2023.

(d) Section 3795.052 does not apply to initial directors under this section.

5

Exhibit A 5 of 24

H.B. No. 4341

(e) This section expires September 1, 2023.

SUBCHAPTER C. POWERS AND DUTIES

Sec. 3795.101. GENERAL POWERS AND DUTIES. The district has the powers and duties necessary to accomplish the purposes for which the district is created.

Sec. 3795.102. IMPROVEMENT PROJECTS AND SERVICES. The district may provide, design, construct, acquire, improve, relocate, operate, maintain, or finance an improvement project or service authorized under this chapter or Chapter 375, Local Government Code, using any money available to the district, or contract with a governmental or private entity to provide, design, construct, acquire, improve, relocate, operate, maintain, or finance an improvement project or service authorized under this chapter or Chapter 375, Local Government Code.

Sec. 3795.103. ECONOMIC DEVELOPMENT. (a) The district may engage in activities that accomplish the economic development purposes of the district.

(b) The district may establish and provide for the administration of one or more programs to promote state or local economic development and to stimulate business and commercial activity in the district, including programs to:

(1) make loans and grants of public money; and

(2) provide district personnel and services.

(c) The district may create economic development programs and exercise the economic development powers provided to municipalities by:

(1) Chapter 380, Local Government Code; and

6

Exhibit A 6-04 24

H.B. No. 4341

(2)  Subchapter A, Chapter 1509, Government Code.

Sec. 3795.104.  FIREFIGHTING SERVICES.  Notwithstanding Section 49.351(a), Water Code, the district may, as authorized by Section 59(f), Article XVI, Texas Constitution, and Section 49.351, Water Code:

(1)  establish, operate, and maintain a fire department;

(2)  contract with another political subdivision for the joint operation of a fire department; or

(3)  contract with any other person to perform firefighting services in the district and may issue bonds and impose taxes to pay for the department and the activities.

Sec. 3795.105.  FEES AND CHARGES.  (a)  The district may adopt and enforce all necessary charges, mandatory fees, or rentals, in addition to taxes, for providing or making available any district facility or service, including firefighting activities provided under Section 3795.104.

(b)  To enforce payment of an unpaid fee or charge due to the district, on the request of the district, a retail public utility, as defined by Section 13.002, Water Code, providing water or sewer service to a customer in the district shall terminate the service.

Sec. 3795.106.  NO EMINENT DOMAIN POWER.  The district may not exercise the power of eminent domain.

SUBCHAPTER D.  GENERAL FINANCIAL PROVISIONS

Sec. 3795.151.  DISBURSEMENTS AND TRANSFERS OF MONEY.  The board by resolution shall establish the number of signatures and the procedure required for a disbursement or transfer of the

7

Exhibit A 7- of 24

H.B. No. 4341

district's money.

Sec. 3795.152. MONEY USED FOR IMPROVEMENTS OR SERVICES. The district may acquire, construct, finance, operate, or maintain an improvement project or service authorized under this chapter or Chapter 375, Local Government Code, using any money available to the district.

Sec. 3795.153. PETITION REQUIRED FOR FINANCING SERVICES AND IMPROVEMENTS WITH ASSESSMENTS. (a) The board may not finance a service or improvement project with assessments under this chapter unless a written petition requesting that service or improvement has been filed with the board.

(b) A petition filed under Subsection (a) must be signed by the owners of a majority of the assessed value of real property in the district subject to assessment according to the most recent certified tax appraisal roll for the county.

Sec. 3795.154. METHOD OF NOTICE OF HEARING. The district may mail the notice required by Section 375.115(c), Local Government Code, by certified or first class United States mail. The board shall determine the method of mailing notice.

Sec. 3795.155. ASSESSMENTS; LIENS FOR ASSESSMENTS. (a) The board by resolution may impose and collect an assessment for any purpose authorized by this chapter in all or any part of the district.

(b) An assessment, a reassessment, or an assessment resulting from an addition to or correction of the assessment roll by the district, penalties and interest on an assessment or reassessment, an expense of collection, and reasonable attorney's

8

Exhibit A 8-0t 24

H.B. No. 4341

fees incurred by the district:

(1) are a first and prior lien against the property assessed;

(2) are superior to any other lien or claim other than a lien or claim for county, school district, or municipal ad valorem taxes; and

(3) are the personal liability of and a charge against the owners of the property even if the owners are not named in the assessment proceedings.

(c) The lien is effective from the date of the board's resolution imposing the assessment until the date the assessment is paid. The board may enforce the lien in the same manner that the board may enforce an ad valorem tax lien against real property.

(d) The board may make a correction to or deletion from the assessment roll that does not increase the amount of assessment of any parcel of land without providing notice and holding a hearing in the manner required for additional assessments.

SUBCHAPTER E. TAXES AND BONDS

Sec. 3795.201. ELECTIONS REGARDING TAXES AND BONDS. (a) The district may issue, without an election, bonds, notes, and other obligations secured by revenue other than ad valorem taxes.

(b) The district must hold an election in the manner provided by Subchapter L, Chapter 375, Local Government Code, to obtain voter approval before the district may impose an ad valorem tax or issue bonds payable from ad valorem taxes.

(c) The district may not issue bonds payable from ad valorem taxes to finance a road project unless the issuance is approved by a

9

Exhibit A    9-0+24

H.B. No. 4341

vote of a two-thirds majority of the district voters voting at an election held for that purpose.

Sec. 3795.202.  AGREEMENT REQUIRED FOR BONDS.  Before the district may issue bonds, the district must enter into an agreement with a developer of land in the district, the Cleveland Independent School District, and Liberty County for the transfer of land for use as the sites of facilities for the school district and for emergency services.

Sec. 3795.203.  OPERATION AND MAINTENANCE TAX.  (a)  If authorized by a majority of the district voters voting at an election held in accordance with Section 3795.201, the district may impose an operation and maintenance tax on taxable property in the district in accordance with Section 49.107, Water Code, for operation and maintenance purposes, including for:

(1)  maintaining and operating the district;

(2)  planning, constructing, acquiring, maintaining, repairing, and operating all improvement projects, including land, plants, works, facilities, improvements, appliances, and equipment of the district; or

(3)  paying costs of services, engineering and legal fees, and organization and administrative expenses.

(b)  The board shall determine the tax rate.  The rate may not exceed the rate approved at the election.

Sec. 3795.204.  SALES AND USE TAX.  (a)  The district may impose a sales and use tax if authorized by a majority of the voters of the district voting at an election called for that purpose. Revenue from the tax may be used for any purpose for which ad

10

Exhibit A     10-01 24

H.B. No. 4341

valorem tax revenue of the district may be used.

(b)  The district may not adopt a sales and use tax if as a result of the adoption of the tax the combined rate of all sales and use taxes imposed by the district and other political subdivisions of this state having territory in the district would exceed two percent at any location in the district.

(c)  If the voters of the district approve the adoption of a sales and use tax at an election held on the same election date on which another political subdivision adopts a sales and use tax or approves an increase in the rate of its sales and use tax and as a result the combined rate of all sales and use taxes imposed by the district and other political subdivisions of this state having territory in the district would exceed two percent at any location in the district, the election to adopt a sales and use tax under this chapter has no effect.

(d)  Chapter 321, Tax Code, applies to the imposition, computation, administration, enforcement, and collection of the sales and use tax imposed by this section except to the extent it is inconsistent with this chapter.

Sec. 3795.205.  AUTHORITY TO BORROW MONEY AND TO ISSUE BONDS AND OTHER OBLIGATIONS.  (a)  The district may borrow money on terms determined by the board.

(b)  The district may issue bonds, notes, or other obligations payable wholly or partly from ad valorem taxes, assessments, impact fees, revenue, contract payments, grants, or other district money, or any combination of those sources of money, to pay for any authorized district purpose.

11

Exhibit A   11-of-24

H.B. No. 4341

Sec. 3795.206. TAXES FOR BONDS. At the time the district issues bonds payable wholly or partly from ad valorem taxes, the board shall provide for the annual imposition of a continuing direct annual ad valorem tax, without limit as to rate or amount, for each year that all or part of the bonds are outstanding as required and in the manner provided by Sections 54.601 and 54.602, Water Code.

Sec. 3795.207. BONDS FOR ROAD PROJECTS. At the time of issuance, the total principal amount of bonds or other obligations issued or incurred to finance road projects and payable from ad valorem taxes may not exceed one-fourth of the assessed value of the real property in the district.

SUBCHAPTER Z. SPECIAL BOND PROVISIONS

Sec. 3795.901. APPLICABILITY. This subchapter applies only to bonds payable wholly or partly from revenue derived from assessments on real property in the district.

Sec. 3795.902. CONFLICT OF LAWS. In the event of a conflict between this subchapter and any other law, this subchapter prevails.

Sec. 3795.903. WRITTEN AGREEMENT REGARDING SPECIAL APPRAISALS. Before the district may issue bonds, the district and any person to whom the board intends that proceeds of the bonds be distributed, including a developer of or owner of land in the district and any entity acting as a lender to a developer of or owner of land in the district for the purpose of a project relating to the district, must enter into a written agreement that:

(1) waives for the term of the agreement the right to a

12

Exhibit A 12-01-24

H.B. No. 4341

special appraisal with respect to taxation by the district under Subchapters B, C, D, E, F, and H, Chapter 23, Tax Code; and

(2) remains in effect for 30 years and is binding on the parties, on entities related to or affiliated with the parties, and on their successors and assignees.

Sec. 3795.904. REQUIREMENTS FOR ADVERTISING BOND ISSUE. The district may not advertise for an issuance of bonds until the completion of at least 25 percent of the projected value of the improvements, including houses and other buildings, that are liable for district assessments and necessary to support the district bonds.

Sec. 3795.905. REQUIREMENTS FOR BOND ISSUE. The district may not issue bonds until:

(1) the district submits to the commission:

(A) an engineer's report describing the project for which the bonds will provide funding, including data, profiles, maps, plans, and specifications related to the project; and

(B) a cash flow analysis to determine the projected rate of assessment, which includes the following assumptions:

(i) each ending balance for debt service in the analysis is not less than 25 percent of the following year's debt service requirement;

(ii) interest income is only shown on the ending balance for debt service for the first two years; and

(iii) the projected rate of assessment is level or decreasing for the life of the bonds issued by the

13

Exhibit A    13-of 24

H.B. No. 4341

district;

(2) the completion of at least 75 percent of the projected value of the improvements, including houses and other buildings, that are liable for district assessments and necessary to support the district bonds; and

(3) the district has obtained an independent market study from a firm recognized in the area of real estate market analysis supporting the development projects for the real property that is liable for district assessments and necessary to support the district bonds.

Sec. 3795.906. REQUIREMENTS FOR COLLECTION OF REVENUE TO PAY BONDS. The district may not collect an assessment to be used for the payment of bonds until:

(1) the completion of at least 95 percent of the underground water, wastewater, and drainage facilities financed from bond proceeds that are necessary to serve the projected build-out, as certified by the district's engineer;

(2) the district or other appropriate party has secured the groundwater, surface water, and water discharge permits that are necessary to secure capacity to support the projected build-out;

(3) the completion of at least 95 percent of lift station, water plant, and sewage treatment plant capacity sufficient to serve the connections constructed in the project for a period of not less than 18 months, as certified by the district's engineer; and

(4) the completion of at least 95 percent of the

14

Exhibit A    14-of 24

H.B. No. 4341

streets and roads that are necessary to provide access to the areas served by utilities and financed by the proceeds of bonds issued by the district, as certified by the district's engineer and constructed in accordance with city or county standards.

SECTION 2. The Liberty County Municipal Management District No. 1 initially includes all territory contained in the following area:

BEING a 5.030 acre tract situated in the Ann Holshousen Survey, Abstract No. 208, Liberty County, Texas, being a portion of that called 552.454 acre tract described in instrument to Colony Ridge Development, LLC, recorded under Clerk's File Number 2011006320 of the Official Public Records of Liberty County, Texas (O.P.R.L.C.T.), said 5.030 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8 inch iron rod found for the southeast corner of the Sallas 4.15 acre tract, for the northeast corner of the herein described 5.030 acre tract;

THENCE South 02°39'02" East, with the west line of Montebello, Section One, as shown on the map or plat thereof, recorded under Clerk's File Number 2011-013088, O.P.R.L.C.T., at a distance of 10.63 feet, pass a 1/2 inch iron rod found for reference, at a distance of 22.82 feet, pass a 5/8 inch iron rod found for reference, in all, a total distance of 266.08 feet to a 5/8 inch iron rod found for the northeast corner of a called 13.2864 acre tract described in instrument recorded under Clerk's File Number 2006-002427, O.P.R.L.C.T., and the southeast corner of the herein described 5.030 acre tract;

15

*[handwritten margin notes: "Wrong Details On Meter & Bound"; "David Cole Survey A-161"; "Not A-208"; "Exhibit A    15 of 24"]*

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

## FISCAL NOTE, 85TH LEGISLATIVE REGULAR SESSION

**May 15, 2017**

**TO:** Honorable Jim Murphy, Chair, House Committee on Special Purpose Districts

**FROM:** Ursula Parks, Director, Legislative Budget Board

**IN RE:** **HB4341** by Bailes ( Relating to the creation of the Liberty County Municipal Management District No. 1; providing authority to issue bonds; providing authority to impose assessments, fees, or taxes.), **Committee Report 1st House, Substituted**

No fiscal implication to the State is anticipated.

The bill would amend the Special District Local Laws Code establishing the Liberty County Municipal Management District No. 1. The district would have authority to engage in economic development activities. The district would have authority to issue bonds and other obligations, without an election. The district would have authority to impose an operation and maintenance tax and a sales and use tax.

The bill would take effect immediately if the bill receives a two-thirds vote in each house; otherwise, the bill would take effect September 1, 2017.

**Local Government Impact**

No significant fiscal implication to units of local government is anticipated.

**Source Agencies:**
**LBB Staff:** UP, JGA, GG, BM

Exhibit A  16 - of 24

**LEGISLATIVE BUDGET BOARD**
Austin, Texas

**FISCAL NOTE, 85TH LEGISLATIVE REGULAR SESSION**

**May 5, 2017**

**TO:** Honorable Jim Murphy, Chair, House Committee on Special Purpose Districts

**FROM:** Ursula Parks, Director, Legislative Budget Board

**IN RE:** **HB4341** by Bailes (Relating to the creation of the Liberty County Municipal Management District No. 1; providing authority to issue bonds; providing authority to impose assessments, fees, or taxes.), **As Introduced**

| No fiscal implication to the State is anticipated. |
| --- |

The bill would amend the Special District Local Laws Code establishing the Liberty County Municipal Management District No. 1. The district would have authority to engage in economic development activities. The district would have authority to issue bonds and other obligations, without an election. The district would have authority to impose an operation and maintenance tax and a sales and use tax.

The bill would take effect immediately if the bill receives a two-thirds vote in each house; otherwise, the bill would take effect September 1, 2017.

**Local Government Impact**

No significant fiscal implication to units of local government is anticipated.

**Source Agencies:**
**LBB Staff:** UP, JGA, GG, BM

Exhibit A 17-of 24

## LEGISLATIVE BUDGET BOARD
### Austin, Texas

### WATER DEVELOPMENT POLICY IMPACT STATEMENT

### 85TH LEGISLATIVE REGULAR SESSION

### May 15, 2017

**TO:** Honorable Jim Murphy, Chair, House Committee on Special Purpose Districts

**FROM:** Ursula Parks, Director, Legislative Budget Board

**IN RE: HB4341** by Bailes ( Relating to the creation of the Liberty County Municipal Management District No. 1; providing authority to issue bonds; providing authority to impose assessments, fees, or taxes.), **Committee Report 1st House, Substituted**

The Legislative Budget Board, in cooperation with the Texas Water Development Board (TWDB) and the Texas Commission on Environmental Quality (TCEQ), has determined that:

The bill creates Liberty County Municipal Management District No. 1 (the District) with the powers and duties of a standard municipal management district under Local Government Code Chapter 375.

Population - The very specific description of the proposed boundaries does not allow staff to develop precise population estimates. Based on the Original Texas Land Surveys mentioned in HB 4341, staff is unable to determine a population estimate.

 Population growth in the specific area since the 2010 census is unknown. The 2010 population estimate for areas of Liberty County served by small systems or private wells (County-Other) is 35,397. The Liberty County-Other population projections approved for the 2017 State Water Plan projects the population to grow to 36,449 in 2020, 37,531 in 2030 and 38,560 in 2040.

Location - The Proposed district's initial boundaries are described with a combination of Original Texas Land Surveys, Liberty County Real Property Records and metes and bounds. Due to the complexity of these boundaries for the various sub areas of the district, staff is able to determine only the general location of the proposed district.

 The proposed district's area is approximately 5 acres in western Liberty County, located in or just east of the City of Plum Grove. The proposed district does not appear to overlap any existing Certificate of Convenience and Necessity (CCN) boundaries. *Not Correct*

Comments on Powers/Duties Different from Similar Types of Districts: The House Committee substitute removes the names of the initial directors and replaces them with the requirement that the initial board consist of two directors appointed by the Cleveland Independent School District; two directors appointed by the county commissioner's court; and one director appointed by the person who owns the largest portion of the assessed value of the real property in the District. The District must enter into an agreement with the developer of land in the District, the Cleveland Independent School District, and Liberty County for the transfer of land for facilities for the



*Existing CCN#*
*Qualwest*
*A - 208*
*Utilites*
*Investment*

*Exhibit A 18-of 24*

school district and for emergency services before issuing bonds. The House Committee substitute clarifies that before the District may issue bonds, the District and any person whom the board intends the proceeds of the bond to be distributed must enter into a written agreement.

The District is to be governed by a board of five voting directors that are appointed by the TCEQ from persons recommended by the board; the District may engage in activities that accomplish the economic development purposes of the District; the District may, as authorized by Section 59(f), Article XVI, Texas Constitution, and Section 49.351, Water Code: establish, operate, and maintain a fire department; contract with another political subdivision for the joint operation of a fire department; or contract with any other person to perform firefighting services in the District and may issue bonds and impose taxes to pay for the department and the activities; the District may adopt and enforce all necessary charges, mandatory fees, or rentals, in addition to taxes, for providing or making available any District facility or service, including firefighting activities; the District may not exercise the power of eminent domain; the board by resolution may impose and collect an assessment for any purpose authorized by this chapter in all or any part of the District; the bill specifies that at the time of issuance, the total principal amount of bonds or other obligations issued or incurred to finance road projects and payable from ad valorem taxes may not exceed one-fourth of the assessed value of real property in the District; a District may not advertise for an issuance of bonds from revenue derived from assessments on real property in the District until the completion of at least 25 percent of the projected value of the improvements, including houses and other buildings, that are liable for District assessments and necessary to support the District bonds; the District may not issue bonds from revenue derived from assessments on real property until: the District submits to the TCEQ an engineer's report describing the project for which the bonds will provide funding, including data, profiles, maps, plans, and specifications related to the project and a cash flow analysis to determine the projected rate of assessment; the completion of at least 75 percent of the projected value of the improvements, including houses and other buildings, that are liable for District assessments and necessary to support the District bonds; and the District has obtained an independent market study from a firm recognized in the area of real estate market analysis supporting the development projects for the real property that is liable for District assessments and necessary to support the District bonds; the District may not collect an assessment to be used for the payment of bonds until: the completion of at least 95 percent of the underground water, wastewater, and drainage facilities financed from bond proceeds that are necessary to serve the projected build-out, as certified by the District's engineer; the District or other appropriate party has secured the groundwater, surface water, and water discharge permits that are necessary to secure capacity to support the projected build-out; the completion of at least 95 percent of lift station, water plant, and sewage treatment plant capacity sufficient to serve the connections constructed in the project for a period of not less than 18 months, as certified by the District's engineer; and the completion of at least 95 percent of the streets and roads that are necessary to provide access to the areas served by utilities and financed by the proceeds of bonds issued by the District, as certified by the District's engineer and constructed in accordance with municipal or county standards.

 Overlapping Services: TCEQ does not have mapping information for water and/or wastewater providers because this function was transferred from the TCEQ to the Public Utility Commission on September 1, 2014. As a result, TCEQ is unaware of possible overlapping service providers.

 TCEQ's Supervision: As with general law districts, the TCEQ will have general supervisory authority, including bond review authority and review of financial reports.

 Water Use - HB 4341 specifies that the district has powers related to firefighting services "as authorized by Section 59(f), Article XVI, Texas Constitution, and Section 49.351, Water Code".

Exhibit A 19- of 24

Within Liberty County, 35 percent of the total water use was groundwater (Gulf Coast Aquifer) in 2014. Ninety five percent of all the groundwater pumping was for municipal use.

**Source Agencies:**    582 Commission on Environmental Quality, 580 Water Development Board

**LBB Staff:** UP, SZ

Exhibit A    20 - of 24

**LEGISLATIVE BUDGET BOARD**
**Austin, Texas**

**WATER DEVELOPMENT POLICY IMPACT STATEMENT**

**85TH LEGISLATIVE REGULAR SESSION**

**May 5, 2017**

**TO:** Honorable Jim Murphy, Chair, House Committee on Special Purpose Districts

**FROM:** Ursula Parks, Director, Legislative Budget Board

**IN RE:** **HB4341** by Bailes (Relating to the creation of the Liberty County Municipal Management District No. 1; providing authority to issue bonds; providing authority to impose assessments, fees, or taxes.), **As Introduced**

The Legislative Budget Board, in cooperation with the Texas Water Development Board (TWDB) and the Texas Commission on Environmental Quality (TCEQ), has determined that:

The bill creates Liberty County Municipal Management District No. 1 (the District) with the powers and duties of a standard municipal management district under Local Government Code Chapter 375.

Population - The very specific description of the proposed boundaries does not allow staff to develop precise population estimates. Based on the Original Texas Land Surveys mentioned in HB 4341, staff is unable to determine a population estimate.

Population growth in the specific area since the 2010 census is unknown. The 2010 population estimate for areas of Liberty County served by small systems or private wells (County-Other) is 35,397. The Liberty County-Other population projections approved for the 2017 State Water Plan projects the population to grow to 36,449 in 2020, 37,531 in 2030 and 38,560 in 2040.

Location - The Proposed district's initial boundaries are described with a combination of Original Texas Land Surveys, Liberty County Real Property Records and metes and bounds. Due to the complexity of these boundaries for the various sub areas of the district, staff is able to determine only the general location of the proposed district.

The proposed district's area is approximately 5 acres in western Liberty County, located in or just east of the City of Plum Grove. The proposed district does not appear to overlap any existing Certificate of Convenience and Necessity (CCN) boundaries.

Comments on Powers/Duties Different from Similar Types of Districts: The District is to be governed by a board of five voting directors that are appointed by the TCEQ from persons recommended by the board; the District may engage in activities that accomplish the economic development purposes of the District; the District may, as authorized by Section 59(f), Article XVI, Texas Constitution, and Section 49.351, Water Code: establish, operate, and maintain a fire department; contract with another political subdivision for the joint operation of a fire department; or contract with any other person to perform firefighting services in the District and

Page 1 of 2

Exhibit A 21-of 24

may issue bonds and impose taxes to pay for the department and the activities; the District may adopt and enforce all necessary charges, mandatory fees, or rentals, in addition to taxes, for providing or making available any District facility or service, including firefighting activities; the District may not exercise the power of eminent domain; the board by resolution may impose and collect an assessment for any purpose authorized by this chapter in all or any part of the District; the bill specifies that at the time of issuance, the total principal amount of bonds or other obligations issued or incurred to finance road projects and payable from ad valorem taxes may not exceed one-fourth of the assessed value of real property in the District; a District may not advertise for an issuance of bonds from revenue derived from assessments on real property in the District until the completion of at least 25 percent of the projected value of the improvements, including houses and other buildings, that are liable for District assessments and necessary to support the District bonds; the District may not issue bonds from revenue derived from assessments on real property until: the District submits to the TCEQ an engineer's report describing the project for which the bonds will provide funding, including data, profiles, maps, plans, and specifications related to the project and a cash flow analysis to determine the projected rate of assessment; the completion of at least 75 percent of the projected value of the improvements, including houses and other buildings, that are liable for District assessments and necessary to support the District bonds; and the District has obtained an independent market study from a firm recognized in the area of real estate market analysis supporting the development projects for the real property that is liable for District assessments and necessary to support the District bonds; the District may not collect an assessment to be used for the payment of bonds until: the completion of at least 95 percent of the underground water, wastewater, and drainage facilities financed from bond proceeds that are necessary to serve the projected build-out, as certified by the District's engineer; the District or other appropriate party has secured the groundwater, surface water, and water discharge permits that are necessary to secure capacity to support the projected build-out; the completion of at least 95 percent of lift station, water plant, and sewage treatment plant capacity sufficient to serve the connections constructed in the project for a period of not less than 18 months, as certified by the District's engineer; and the completion of at least 95 percent of the streets and roads that are necessary to provide access to the areas served by utilities and financed by the proceeds of bonds issued by the District, as certified by the District's engineer and constructed in accordance with municipal or county standards.

Overlapping Services: TCEQ does not have mapping information for water and/or wastewater providers because this function was transferred from the TCEQ to the Public Utility Commission on September 1, 2014. As a result, TCEQ is unaware of possible overlapping service providers.

TCEQ's Supervision: As with general law districts, the TCEQ will have general supervisory authority, including bond review authority and review of financial reports.

Water Use - HB 4341 specifies that the district has powers related to firefighting services "as authorized by Section 59(f), Article XVI, Texas Constitution, and Section 49.351, Water Code".

Within Liberty County, 35 percent of the total water use was groundwater (Gulf Coast Aquifer) in 2014. Ninety five percent of all the groundwater pumping was for municipal use.

**Source Agencies:**     582 Commission on Environmental Quality, 580 Water Development Board

**LBB Staff:** UP, SZ

Exhibit A    22-of-24



**HOUSTON COMMUNITY
NEWSPAPERS
& MEDIA GROUP**

A Division of the Houston Chronicle

## AFFIDAVIT OF PUBLICATION

## STATE OF TEXAS
## COUNTY OF LIBERTY

Personally appeared before the undersigned, a Notary Public within and for said County and State. Jennifer Breitenbach, Representative for Brenda Miller-Ferguson, General Manager and Publisher of the Cleveland/Eastex Advocate and Dayton News a newspaper of general circulation in the County of Liberty, State of Texas. Who being duly sworn, states under oath that the report of Legal Notices, a true copy of which is hereto annexed was published in said newspapers in its issue(s) of the

_____ 22 day of ___February_____, 2017

_____ day of _____, 2017

_____ day of _____, 2017

_____ day of _____, 2017

Publisher's Representative

Sworn to and subscribed before me this _____ 22 _____ day of __February_____, 2017.

_____
Notary Public

My commission expires on (stamp) _____

Exhibit A  28 of 24
23

★★ Z1 | Cleveland Advocate · Eastex Advocate · Dayton News | Wednesday, February 22, 2017 | 7A



**WANTED TO BUY**

**WANTED**
WE BUY
**GOLD & GUNS!!**
FRONTIER PAWN & GUN

BELTWAY PAWN & GUN

**WANTED TO BUY**

Tractor's w/Loader
Brush Hogs,
ANY running make or model.
281-734-2781

**Planning your garage sale?**
Advertise it!
southeasttexas.com

**CEMETERY LOTS**

Palms Memorial Park Cemetery
2 Plots - $1,590 for Both.
Less than what Cemetery Charges!
832-414-7997

**FSBO 5 CEMETERY PLOTS in Rosewood**
Memorial Park/Humble $2K ea.
Sect. XL, Spaces 1-6
2 plot min. $3,4953. ea
If purchased from Rosewood
512-336-1440 or email
dietolokagan@yahoo.com

**Give it**
Looking for a pet as a gift?
Find it in our classifieds

855-722-3900

southeasttexas.com

**LEGAL NOTICES**

**LEGAL NOTICE**

Notice is hereby given in accordance with the terms of the provisions of the Texas Alcoholic Beverage Code THAT: Springhill Business Inc. d/b/a/ Fuel Maxx #39 HAS FILED APPLICATION FOR A: Wine and Beer Retailer's Off-Premise Permit SAID BUSINESS TO BE CONDUCTED AT: 9645 US Highway 90 West, Dayton, Liberty County, TX 77535 OWNER: Mahendi N. Makwejia, Pres, Rahim N. Makwejia, Sec.
DN 2/22, 3/1/17

**NOTICE OF INTENT TO INTRODUCE A BILL**

Pursuant to the Constitution and laws of the State of Texas, notice is hereby given of the intention to apply to the 85th Legislature of the State of Texas at its regular session in Austin, Texas for the introduction of a bill, the substance of the contemplated law being as follows:

An act relating to the creation, administration powers, duties, operation, and financing of Liberty County Municipal Management District No. 1

The Act proposes to create a special district to be known as Liberty County Municipal Management District No. 1, being approximately 4,619 acres of land in Liberty County, Texas, more particularly described as follows:

Approximately 4,619 acres of land in Liberty County located north of Liberty County Municipal Utility District No. 6; partially located in the subdivisions of Bella Vista, Rancho San Vicente, Camino Real, and Grand San Jacinto, bifurcated by Pam Grove Road (Farm to Market Road 1010); bounded partially on the southeast by Luce Bayou; and bounded partially on the west by San Jacinto River.

All interested persons will, therefore, take notice of the matters and facts set out in the foregoing statement of the substance of the contemplated laws as required by the Constitution and laws of the State of Texas.
DN 2/22/17

**LEGAL NOTICES**

**NOTICE TO BIDDERS**

Sealed bids in duplicate, directed to Newport MUD, will be received until 4:00 pm Tuesday March 21, 2017 at 16703 Golf Club Drive, Crosby, Texas 77532, and then publicly opened and read aloud. Bids received after that time will not be accepted. The Bidder shall furnish all labor, materials, and equipment and perform all work for the construction of the following project:

**Water Meter Replacement Project**

The project includes the replacement of approximately 3,322 water meters (3/4" and 1") with new 3/4" and 1" automatic-read water meters in Newport MUD.

Bid documents may be obtained from www.CivcastUSA.com. Bidders must register on this website in order to view and/or download specifications, plans, and bid documents for this project. There is NO charge to view or download documents.

A non-mandatory pre-bid conference will be held on Tuesday March 14, 2017 at 2:00 pm at the Newport MUD Surface Water Treatment Plant, located on 16703 Golf Club Drive, Crosby, Texas 77532.

Each bidder is required to submit a cashier's or certified check issued by a bank satisfactory to Newport MUD, or bid bond from a reliable surety company, payable without recourse, to the order of Newport MUD, in an amount of not less than 5% of the total amount of the bid submitted as a guarantee that the bidder will enter into a contract and execute all necessary bonds within 10 days after notice of award of the contract to him.

The successful Bidder must furnish PERFORMANCE and PAYMENT BONDS on the forms furnished with the PROPOSAL, in the amount of 100% of the total contract price.

Upon consideration of the proposals the Board of Directors plans to award a Contract; however, Newport MUD reserves the right to reject any and all bids, to waive any and all irregularities and technicalities, and to accept any bid which it deems advantageous to it. Each bidder agrees to waive any claim it has or may have against the Owner, the Engineer, and their respective employees, arising out of or in connection with the administration, evaluation, or recommendation of any bid.

**Employment** YourHoustonJobs.com

**MEDICAL**

IN JUST 10 WEEKS LEARN THE SKILLS TO BE A DENTAL ASSISTANT
SATURDAY CLASSES ONLY!
TUITION - $3,795

**TRANSPORTATION / LOGISTICS**

Confidential
Houston, TX 77002
Call: 281-440-8285 (9AM)
No Prof/Resp Not Specified
More yrs exp: Not Specified
Part-Time
Delivery. Daytime. Weekdays. RETIREES WELCOME!

Exhibit A   24 of 24

'10611 Grant Road, Houston, Texas 77070
Telephone: (281) 897-8848 | Fax: (281) 897-8850



**BOARD
CERTIFIED**®
Texas Board of Legal Specialization

RESIDENTIAL REAL ESTATE LAW

**From:** Trey Harris <tharris0@yahoo.com>
**Sent:** Tuesday, September 1, 2020 4:22 AM
**To:** Brent Lane <brent@beardlane.com>
**Subject:** Fw: MMD # 1

----- Forwarded Message -----
**From:** Maria Acevedo <mmacevedo72@gmail.com>
**To:** tharris0@yahoo.com <tharris0@yahoo.com>
**Sent:** Monday, August 31, 2020, 11:06:46 PM CDT
**Subject:** Fwd: MMD # 1

Trey Harris maybe you can help me understand how you got the mmd 1. Who created the field notes for the mmd1. The survey company knows that A208 is not correct. Also the subdivisions used for the mmd1 were already was under Quadvest ccn# and provided water to these lots. Who will be able to give me an answer? Will it be Brent Lane? I also been looking in to Timbervest Partners III and Oneok Inc. I also have a lot of questions. Please call me to discuss further.

Anti Slapp

María Acevedo
346-225-9076

---------- Forwarded message ---------
From: **Maria Acevedo** <mmacevedo72@gmail.com>
Date: Mon, Aug 31, 2020 at 11:44 AM
Subject: Fwd: MMD # 1
To: Matthew Poston <matthew.poston@co.liberty.tx.us>, Mayor LeeAnne Walker <mayorwalker.plumgrovecity@gmail.com>, Jay Knight <jay.knight@co.liberty.tx.us>, David Douglas <david.douglas@co.liberty.tx.us>

GOOD MORNING,

WHO APPROVED THE CAMINO REAL SECTION 1-4 PLATTS FOR COLONY RIDGE. PLEASE SEE THE ATTACHED DOCUMENTS. I AM A BIT CONFUSED. I HAVE BEEN RESEARCHING MY PROPERTY TO GO BACK AND SEE HOW THE PROPERTY WAS PLATTED. I CAN NOT FIND WHAT MEETS AND BOUNDS PERTAIN TO MY PROPERTY CAMINO REAL SECTION 2 . I HAVE 2 DIFFERENT SURVEYOR COMPANIES WORKING ON THIS. I DO NOT KNOW WHY TEXAS PROFESSIONAL SURVEYS AND LANDPLAN WILL NOT GIVE ME THE PUBLIC INFORMATION I AM REQUESTING. I HAVE NOTICE THAT THE FIELD NOTES THAT WERE USED FOR THE DEVELOPER MMD # 1 SHOWS ANN HOLSHOUSEN A208 5.03 ACRES. THIS IS NOT CORRECT. THIS DESCRIPTION BELONGS TO THE DAVID COLE SURVEY. WE CAN NOT FIND WHERE COLONY RIDGE DEVELOPED & PLATTED CAMINO REAL SECTION 1-4 IN THE ANN HOL A 208 MEETS AND BOUNDS. WE DO FIND ALOT OF GAS EASEMENTS. WHO WOULD BE ABLE TO HELP ME ON THIS.

ON PAGE 15 OF THE MMD # 1



Exhibit B ² page 1-of-2

* FIELD NOTE DESCRIPTION FOR 5.030 ACRES ANN HOLSHOUSEN ABST # 208 552.454 THIS IS NOT CORRECT. THE SURVEY DESCRIPTION SHOULD OF BE FOR DAVID COLE MEETS AND BOUNDS CLERK FILE # 2011006320. DOC ATTACHED BELOW.

* MONTEBELLO SECTION 1 CLERK OF COURT # 2011013088 PLATT RECORDED AND IT IS IN DAVID COLE SURVEY NOT ANN HOLSHOUSEN (MONTEBELLO PLATT ATTACHED)

* THIS IS ONLY SUBDIVISION THAT IS IN THE ANN HOLSHOUSEN A-208 SURVEY MEETS AND BOUNDS IS CAMINO REAL SECTION 1-4 (ANN HOLSHOUSEN A-208)

* THESE 3 OTHER SUBDIVISION ARE IN DIFFERENT MEETS AND BOUNDS.
GRAND SAN JACINTO (R.A. HANKS SURVEY A-224)
BELLA VISTA (J.HUMPHRIES A-212)
RANCHO SAN VICENTE (E.B. JACKSON A-297 & J.HUMPHRIES A-212)

* WE NOTICE A LOT OF MISTAKE ON THESE DOCUMENTS. I DO NOT UNDERSTAND WHY THEY USED THESE PROPERTIES FOR THE MMD#1. PER THE WATER BOARD SOMEBODY STATED NO WATER SOURCE ONSITE AND / OR OVERLAPPING OF CCN#. ALL OF THESE PROPERTIES ARE EXISTING CUSTOMERS WITH QUADVEST UTILITIES FOR MANY YEARS. I DON'T UNDERSTAND HOW A STATE REGISTERED SURVEYOR COULD DO THIS. I ALSO MY ENGINEERS AND SURVEYORS RESEARCHING THE WARRANTY DEED BETWEEN TIMBERVEST PARTNERS III TEXAS LLC. AND COLONY RIDGE DEVELOPMENT LLC.

ANTI-SLAPP
MARIA ACEVEDO
346-225-9076



\* A lot of misinformation of HB 4341

\* Wrong legal description on HB 4341

\*

Exhibit B    page 2-of-2

LIBERTY COUNTY MUNICIPAL

MANAGEMENT DISTRICT NO. 1

LIBERTY COUNTY, TEXAS

ANNUAL AUDIT REPORT

JUNE 30, 2023

Exhibit C      1-of-9

21

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### EXPENDITURES

### FOR THE YEAR ENDED JUNE 30, 2023

|  | General Fund | Debt Service Fund | Capital Projects Fund | Totals (Memorandum Only) |
|---|---|---|---|---|
| **CURRENT** | | | | |
| | | | | |
| Professional fees: | | | | |
| Auditing | $ 4,450 | $ | $ | $ 4,450 |
| Legal | 104,304 | | | 104,304 |
| Engineering | 5,368 | | | 5,368 |
| | 114,122 | 0 | 0 | 114,122 |
| | | | | |
| Contracted services: | | | | |
| Bookkeeping | 4,548 | | | 4,548 |
| Tax assessor-collector | 6,622 | | | 6,622 |
| Appraisal district | 48,052 | | | 48,052 |
| | 59,222 | 0 | 0 | 59,222 |
| | | | | |
| Security service | 83,710 | 0 | 0 | 83,710 |
| | | | | |
| Administrative expenditures: | | | | |
| Director's fees | 1,250 | | | 1,250 |
| Insurance | 11,570 | | | 11,570 |
| Other | 2,968 | | | 2,968 |
| | 15,788 | 0 | 0 | 15,788 |
| | | | | |
| **TOTAL EXPENDITURES** | $ 272,842 | $ 0 | $ 0 | $ 272,842 |

Exhibit C        2-of-9

See accompanying independent auditor's report.

22

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## ANALYSIS OF CHANGES IN DEPOSITS
## ALL GOVERNMENTAL FUND TYPES

## FOR THE YEAR ENDED JUNE 30, 2023

|  | General Fund | Debt Service Fund | Capital Projects Fund | Totals (Memorandum Only) |
|---|---|---|---|---|
| **SOURCES OF DEPOSITS** |  |  |  |  |
| Cash receipts from revenues | $ 3,435,860 | $        0 | $        0 | $ 3,435,860 |
| TOTAL DEPOSITS | 3,435,860 | 0 | 0 | 3,435,860 |
| **APPLICATIONS OF DEPOSITS** |  |  |  |  |
| Cash disbursements for: Current expenditures | 307,267 |  |  | 307,267 |
| TOTAL DEPOSITS APPLIED | 307,267 | 0 | 0 | 307,267 |
| INCREASE (DECREASE) IN DEPOSITS | 3,128,593 | 0 | 0 | 3,128,593 |
| DEPOSITS BALANCES, BEGINNING OF YEAR | 3,536,969 | 0 | 0 | 3,536,969 |
| DEPOSITS BALANCES, END OF YEAR | $ 6,665,562 | $        0 | $        0 | $ 6,665,562 |

Exhibit C     3- 0f-9

See accompanying independent auditor's report.

23

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### SCHEDULE OF TEMPORARY INVESTMENTS

### JUNE 30, 2023

| | Interest Rate | Maturity Date | Year End Balance | Accrued Interest Receivable |
|---|---|---|---|---|
| **GENERAL FUND** | | | | |
| TexPool | | | | |
| No. 7982000001 | Market | On demand | $  5,674,016 | $            0 |

Exhibit C   4-of-9

See accompanying independent auditor's report.

24

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## TAXES LEVIED AND RECEIVABLE

## FOR THE YEAR ENDED JUNE 30, 2023

|  | Maintenance Taxes |
|---|---|
| RECEIVABLE, BEGINNING OF YEAR | $      100,201 |
| Additions and corrections to prior year taxes | 12,224 |
| Adjusted receivable, beginning of year | 112,425 |
| 2022 ADJUSTED TAX ROLL | 3,609,488 |
| Total to be accounted for | 3,721,913 |
| Tax collections:  Current tax year | (3,322,963) |
| Prior tax years | (91,162) |
| RECEIVABLE, END OF YEAR | $      307,788 |
| RECEIVABLE, BY TAX YEAR |  |
| 2019 | $            115 |
| 2020 | 1,965 |
| 2021 | 19,182 |
| 2022 | 286,526 |
| RECEIVABLE, END OF YEAR | $      307,788 |

Exhibit C 5-of-9

See accompanying independent auditor's report.

25

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### TAXES LEVIED AND RECEIVABLE (Continued)

### FOR THE YEAR ENDED JUNE 30, 2023

| ADJUSTED PROPERTY VALUATIONS AS OF JANUARY 1 OF TAX YEAR | 2022 | 2021 | 2020 | 2019** |
|---|---|---|---|---|
| Land | $ 922,936,560 | $ 533,761,602 | $ 302,358,789 | $ 105,109,080 |
| Improvements | 171,076,670 | 70,057,640 | 34,375,480 | 1,005,010 |
| Personal property | 4,870,260 | 989,580 | 2,848,590 | 312,020 |
| Less exemptions | (67,649,829) | (31,031,048) | (22,808,159) | (2,539,104) |
| TOTAL PROPERTY VALUATIONS | $1,031,233,661 | $ 573,777,774 | $ 316,774,700 | $ 103,887,006 |
| | | | | |
| TAX RATES PER $100 VALUATION* | $ 0.35000 | $ 0.35000 | $ 0.35000 | $ 0.35000 |
| | | | | |
| TAX ROLLS | $ 3,609,488 | $ 2,001,717 | $ 1,107,997 | $ 363,778 |
| | | | | |
| PERCENT OF TAXES COLLECTED TO TAXES LEVIED | 92.1 % | 99.0 % | 99.8 % | 99.9 % |

*Maximum tax rate approved by voters on May 5, 2018:  $1.00

**The District first levied taxes for tax year 2019.

Exhibit   C      6 - of- 9

See accompanying independent auditor's report.

Case 4:23-cv-04729   Document 192   Filed 04/09/26 in TXSD   Page 36 of 107

Exhibit C 7-04-9

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## COMPARATIVE STATEMENTS OF REVENUES AND EXPENDITURES, GENERAL FUND

### FOR YEARS ENDED JUNE 30

| | AMOUNT | | | | | PERCENT OF TOTAL REVENUES | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2023 | 2022 | 2021 | 2020 | 2019* | 2023 | 2022 | 2021 | 2020 | 2019 |
| **REVENUES** | | | | | | | | | | |
| Property taxes | $ 3,414,125 | $ 1,921,732 | $ 1,090,970 | $ 362,121 | $ | 84.9 % | 85.7 % | 84.4 % | 75.8 % | % |
| Penalty and interest | 125,517 | 68,145 | 35,821 | 8,391 | | 3.1 | 3.0 | 2.8 | 1.8 | |
| Sales and Use Taxes | 324,847 | 252,737 | 166,115 | 107,154 | 4,408 | 8.1 | 11.3 | 12.8 | 22.4 | 100.0 |
| Interest on deposits and other revenues | 155,304 | 765 | 71 | 46 | | 3.9 | 0.0 | 0.0 | 0.0 | |
| TOTAL REVENUES | 4,019,793 | 2,243,379 | 1,292,977 | 477,712 | 4,408 | 100.0 | 100.0 | 100.0 | 100.0 | N/A |
| **EXPENDITURES** | | | | | | | | | | |
| Service operations: | | | | | | | | | | |
| Professional fees | 114,122 | 50,299 | 59,509 | 45,450 | 27,877 | 2.8 | 2.1 | 4.5 | 9.5 | 632.4 |
| Contracted services | 59,222 | 33,100 | 15,782 | 26,227 | 2,088 | 1.5 | 1.5 | 1.2 | 5.5 | 47.4 |
| Repairs and maintenance | 0 | 55,427 | 2,622 | 17,075 | | 0.0 | 2.5 | 0.2 | 3.6 | 0.0 |
| Security service | 83,710 | 58,403 | 26,569 | | | 2.1 | 2.6 | 2.1 | 0.0 | 0.0 |
| Administrative expenditures | 15,788 | 10,375 | 15,078 | 8,780 | 3,819 | 0.4 | 0.5 | 1.2 | 1.8 | 86.6 |
| Capital outlay | 0 | 96,338 | | | | 0.0 | 4.3 | 0.0 | 0.0 | 0.0 |
| TOTAL EXPENDITURES | 272,842 | 303,942 | 119,560 | 97,532 | 33,784 | 6.8 | 13.5 | 9.2 | 20.4 | 766.4 |
| EXCESS REVENUES (EXPENDITURES) | $ 3,746,951 | $ 1,939,437 | $ 1,173,417 | $ 380,180 | $ (29,376) | 93.2 % | 86.5 % | 90.8 % | 79.6 % | (766.4 % |
| TOTAL ACTIVE RETAIL WATER CONNECTIONS | N/A | N/A | N/A | N/A | N/A | | | | | |
| TOTAL ACTIVE RETAIL WASTEWATER CONNECTIONS | N/A | N/A | N/A | N/A | N/A | | | | | |

*District was funded primarily by developer advances for fiscal years 2019 and prior.

See accompanying independent auditor's report.

26

27

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### BOARD MEMBERS, KEY PERSONNEL AND CONSULTANTS

### JUNE 30, 2023

**Complete District Mailing Address:**   Liberty County Municipal Management District No. 1
c/o Coats Rose, P.C.
9 Greenway Plaza, Suite 1000
Houston, Texas  77046

**District Business Telephone No.:**   713-651-0111

Submission date of the most recent District Registration Form: July 17, 2023

Limit on Fees of Office that a Director may receive during a fiscal year:  $7,200

### BOARD MEMBERS

| Name and Address | Term of Office (Elected/ Appointed) | Fees of Office Paid | Expense Reimb. | Title at Year End |
|---|---|---|---|---|
| William Harris, III c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/21- 6/01/25 | $   150 | $   274 | President |
| Heath J. Marek c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/23- 6/01/27 | 250 | 193 | Vice President |
| Savannah Crihfield c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/21- 6/01/25 | 250 | 0 | Secretary |
| Clifton C. Cadle c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/21- 6/01/25 | 300 | 423 | Assistant Secretary |
| Damaris Watson c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/23- 6/01/27 | 300 | 76 | Assistant Secretary |

Exhibit  C   8 - 0f - 9

See accompanying independent auditor's report.

28

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### BOARD MEMBERS, KEY PERSONNEL AND CONSULTANTS (Continued)

### JUNE 30, 2023

### CONSULTANTS

| Name and Address | Date Hired | Fees and Expense Reimbursements | Title at Year End |
|---|---|---|---|
| Coats Rose, P.C.<br>9 Greenway Plaza, Suite 1000<br>Houston, Texas 77046 | 12/18/17 | $ 97,325 | Attorney |
| Linebarger, Heard, Goggan, Blair, Graham, Pena & Sampson, L.L.P.<br>P.O. Box 3064<br>Houston, Texas 77002 | 5/10/18 | 6,979 | Delinquent Tax Attorney |
| L & S District Services, LLC<br>P.O. Box 170<br>Tomball, Texas 77377 | 12/18/17 | 4,548 | Bookkeeper |
| Debra Loggins<br>P.O. Box 170<br>Tomball, Texas 77377 | 12/18/17 | 0 | Investment Officer |
| Texas Professional Engineering<br>3032 N. Frazier Street<br>Conroe, Texas 77303 | 7/25/22 | 5,368 | Engineer |
| Liberty County Tax Assessor Collector<br>P.O. Box 10288<br>Liberty, Texas 77575 | 5/10/18 | 6,622 | Tax Assessor-Collector |
| Liberty County Central Appraisal District<br>P.O. Box 10016<br>Liberty, Texas 77575 | Legislative Action | 48,052 | Central Appraisal District |
| Mark C. Eyring, CPA, PLLC<br>12702 Century Drive, Suite C2<br>Stafford, Texas 77477 | 5/28/20 | 4,450 | Independent Auditor |

Exhibit C    9-0f-9

See accompanying independent auditor's report.

 **LIBERTY COUNTY MUNICIPAL**

**MANAGEMENT DISTRICT NO. 1**

**LIBERTY COUNTY, TEXAS**

**ANNUAL AUDIT REPORT**

**JUNE 30, 2025**

Exhibit  D    1  of 31

# CONTENTS

INDEPENDENT AUDITOR'S REPORT

1-3

MANAGEMENT'S DISCUSSION AND ANALYSIS

4-8

BASIC FINANCIAL STATEMENTS

STATEMENT OF NET POSITION AND GOVERNMENTAL FUNDS BALANCE SHEET

9

STATEMENT OF ACTIVITIES AND GOVERNMENTAL FUND REVENUES,
EXPENDITURES, AND CHANGES IN FUND BALANCES

10

NOTES TO THE FINANCIAL STATEMENTS

11-18

SUPPLEMENTARY INFORMATION

SCHEDULE OF REVENUES, EXPENDITURES, AND CHANGES IN
FUND BALANCE, BUDGET AND ACTUAL, GENERAL FUND

19

SCHEDULE OF TEXAS SUPPLEMENTARY INFORMATION
REQUIRED BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

20

SCHEDULE OF SERVICES AND RATES

21

EXPENDITURES FOR THE YEAR ENDED JUNE 30, 2025

22

ANALYSIS OF CHANGES IN DEPOSITS, ALL GOVERNMENTAL FUND TYPES

23

SCHEDULE OF TEMPORARY INVESTMENTS

24

TAXES LEVIED AND RECEIVABLE

25-26

COMPARATIVE STATEMENTS OF REVENUES AND EXPENDITURES,
GENERAL FUND

27

BOARD MEMBERS, KEY PERSONNEL AND CONSULTANTS

28-29

Exhibit D          2-of-31

1

# Mark C. Eyring, CPA, PLLC

12702 Century Drive • Suite C2 • Stafford, Texas 77477 • 281-277-9595 • Mark@EyringCPA.com

November 10, 2025

## INDEPENDENT AUDITOR'S REPORT

Board of Directors
Liberty County Municipal
    Management District No. 1
Liberty County, Texas

**Opinions**

I have audited the accompanying financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the Liberty County Municipal Management District No. 1 as of and for the year ended June 30, 2025, and the related notes to the financial statements, which collectively comprise Liberty County Municipal Management District No. 1's basic financial statements as listed in the table of contents.

In my opinion, the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the Liberty County Municipal Management District No. 1, as of June 30, 2025, and the respective changes in financial position and, where applicable, cash flows there of for the year then ended in accordance with accounting principles generally accepted in the United States of America.

**Basis for Opinions**

I conducted my audit in accordance with auditing standards generally accepted in the United States of America. My responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of my report. I am required to be independent of Liberty County Municipal Management District No. 1, and to meet my other ethical responsibilities, in accordance with the relevant ethical requirements relating to my audit. I believe that the audit evidence I have obtained is sufficient and appropriate to provide a basis for my audit opinions.

**Responsibilities of Management for the Financial Statements**

Management is responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about Liberty County Municipal Management District No. 1's ability to continue as a going concern for twelve months beyond the financial statement date, including any currently known information that may raise substantial doubt shortly thereafter.

Exhibit D    3 - of 31

MEMBER AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

INDEPENDENT AUDITOR'S REPORT (Continued)

**Auditor's Responsibilities for the Audit of the Financial Statements**

My objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes my opinions. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the financial statements.

In performing an audit in accordance with generally accepted auditing standards, I exercise professional judgment and maintain professional skepticism throughout the audit. I identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements. I obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of Liberty County Municipal Management District No. 1's internal control. Accordingly, no such opinion is expressed. I evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements. I conclude whether, in my judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Liberty County Municipal Management District No. 1's ability to continue as a going concern for a reasonable period of time.

I am required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that I identified during the audit.

**Required Supplementary Information**

Accounting principles generally accepted in the United States of America require that the management's discussion and analysis and budgetary comparison information be presented to supplement the basic financial statements. Such information is the responsibility of management and, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board, who considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic, or historical context. I have applied certain limited procedures to the required supplementary information in accordance with auditing standards generally accepted in the United States of America, which consisted of inquiries of management about the methods of preparing the information and comparing the information for consistency with management's responses to our inquiries, the basic financial statements, and other knowledge I obtained during my audit of the basic financial statements. I do not express an opinion or provide any assurance on the information because the limited procedures do not provide me with sufficient evidence to express an opinion or provide any assurance.

Exhibit D    4 - 07 - 31

INDEPENDENT AUDITOR'S REPORT (Continued)

**Supplementary Information**

My audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise Liberty County Municipal Management District No. 1's basic financial statements. The supplementary information on Pages 20 to 29 is presented for purposes of additional analysis and is not a required part of the financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. Except for the portion marked "unaudited," the information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In my opinion, the information is fairly stated in all material respects in relation to the financial statements as a whole. The supplementary information marked "unaudited" has not been subjected to the auditing procedures applied in the audit of the basic financial statements and, accordingly, I do not express an opinion or provide any assurance on it. The accompanying supplementary information includes financial data excerpted from prior year financial statements which were audited by my firm.



Exhibit D        J - of 31

**Management's Discussion and Analysis**

**Using this Annual Report**

Within this section of the Liberty County Municipal Management District No. 1 (the "District") annual report, the District's Board of Directors provides narrative discussion and analysis of the financial activities of the District for the fiscal year ended June 30, 2025.

The annual report consists of a series of financial statements plus additional supplemental information to the financial statements as required by its state oversight agency, the Texas Commission on Environmental Quality. In accordance with required reporting standards, the District reports its financial activities as a special-purpose government. Special-purpose governments are governmental entities which engage in a single governmental program. In the District's case, the single governmental program is to promote economic development. The financial statements of special-purpose governments combine two types of financial statements into one statement. These two types of financial statements are the government-wide financial statements and the fund financial statements. The fund financial statements are presented on the left side of the statements, a column for adjustments is to the right of the fund financial statements, and the government-wide financial statements are presented to the right side of the adjustments column. The following sections describe the measurement focus of the two types of statements and the significant differences in the information they provide.

*Government-Wide Financial Statements*

The focus of government-wide financial statements is on the overall financial position and activities of the District. The District's government-wide financial statements include the statement of net position and statement of activities, which are prepared using accounting principles that are similar to commercial enterprises. The purpose of the statement of net position is to attempt to report all of the assets and liabilities owned by the District. The District reports all of its assets when it acquires or begins to maintain the assets and reports all of its liabilities when they are incurred.

The difference between the District's total assets and total liabilities is labeled as *net position* and this difference is similar to the total owners' equity presented by a commercial enterprise.

The purpose of the statement of activities is to present the revenues and expenses of the District. Again, the items presented on the statement of activities are measured in a manner similar to the approach used by a commercial enterprise in that revenues are recognized when earned or established criteria are satisfied and expenses are reported when incurred by the District. Thus, revenues are reported even when they may not be collected for several months or years after the end of the accounting period and expenses are recorded even though they may not have used cash during the current period.

Although the statement of activities looks different from a commercial enterprise's income statement, the financial statement is different only in format, not substance. Whereas the bottom line in a commercial enterprise is its net income, the District reports an amount described as *change in net position*, essentially the same thing.

*Fund Financial Statements*

Unlike government-wide financial statements, the focus of fund financial statements is directed to specific activities of the District rather than the District as a whole. Except for the General Fund, a specific fund is established to satisfy managerial control over resources or to satisfy finance-related legal requirements established by external parties or governmental statutes or regulations.

Governmental fund financial statements consist of a balance sheet and statement of revenues, expenditures and change in fund balances and are prepared on an accounting basis that is significantly different from that used to prepare the government-wide financial statements.

Exhibit D    6 - 0f 31

In general, these financial statements have a short-term emphasis and, for the most part, measure and account for cash and other assets that can easily be converted into cash. For example, amounts reported on the balance sheet include items such as cash and receivables collectible within a very short period of time, but do not include capital assets such as land and water and sewer systems. Fund liabilities include amounts that are to be paid within a very short period after the end of the fiscal year. The difference between a fund's total assets and total liabilities is labeled the fund balance, and generally indicates the amount that can be used to finance the next fiscal year's' activities. Likewise, the operating statement for governmental funds reports only those revenues and expenditures that were collected in cash or paid with cash, respectively, during the current period or very shortly after the end of the fiscal year.

Because the focus of the government-wide and fund financial statements are different, there are significant differences between the totals presented in these financial statements. For this reason, there is an analysis in Note 3 of the notes to the financial statements that reconciles the total fund balances to the amount of net position presented in the governmental activities column on the statement of net position. Also, there is an analysis in Note 3 of the notes to the financial statements that reconciles the total change in fund balances for all governmental funds to the change in net position as reported in the governmental activities column in the statement of activities.

## Financial Analysis of the District as a Whole

Financial Analysis of the District as a Whole begins with an understanding of how financial resources flow through the District's funds. Resources in the Capital Projects Fund are derived principally from proceeds of the sale of bonds and expenditures from this fund are subject to the Rules of the Texas Commission on Environmental Quality. Resources in the Debt Service Fund are derived principally from the collection of property taxes and are used for the payment of tax collection costs and bond principal and interest. Resources in the General Fund are derived principally from property taxes and billings for water and sewer services and are used to operate and maintain the system and to pay costs of administration of the District.

Management has financial objectives for each of the District's funds. The financial objective for the Capital Projects Fund is to spend the funds as necessary in accordance with the Rules of the Texas Commission on Environmental Quality. The financial objective for the Debt Service Fund is to levy the taxes necessary to pay the fiscal year debt service requirements plus the cost of levying and collecting taxes, leaving the appropriate fund balance as recommended by the District's financial advisor. The financial objective for the General Fund is to keep the fund's expenditures as low as possible while ensuring that revenues are adequate to cover expenditures and maintaining the fund balance that Management believes is prudent. Management believes that these financial objectives were met during the fiscal year.

Management believes that the required method of accounting for certain elements of the government-wide financial statements makes the government-wide financial statements as a whole not useful for financial analysis. In the government-wide financial statements, certain non-cash costs of long-term debt are capitalized and amortized over the life of the related debt. Management believes that this required method of accounting is not useful for financial analysis of the District and prefers to consider the required cash flows of the debt as reported in the fund statements and the notes to the financial statements. In the government-wide financial statements, property tax revenues are required to be recorded in the fiscal year for which the taxes are levied, regardless of the year of collection. Management believes that the cash basis method of accounting for property taxes in the funds provides more useful financial information.

Exhibit D    7 of 31

6

The following required summaries of the District's overall financial position and operations for the past two years are based on the information included in the government-wide financial statements. For the reasons described in the preceding paragraph, a separate analysis of the summaries is not presented.

<u>Summary of Net Position</u>

|  | 2025 | 2024 | Change |
|---|---|---|---|
| Current and other assets | $ 17,683,668 | $ 12,429,864 | $ 5,253,804 |
| Capital assets | 16,378,411 | 15,516,614 | 861,797 |
| Total assets | 34,062,079 | 27,946,478 | 6,115,601 |
| Long-term liabilities | 16,379,341 | 15,512,727 | 866,614 |
| Other liabilities | 485,604 | 69,903 | 415,701 |
| Total liabilities | 16,864,945 | 15,582,630 | 1,282,315 |
| Net position: | | | |
| Invested in capital assets, net of related debt | 77,070 | 81,887 | (4,817) |
| Unrestricted | 17,120,064 | 12,281,961 | 4,838,103 |
| Total net position | $ 17,197,134 | $ 12,363,848 | $ 4,833,286 |

<u>Summary of Changes in Net Position</u>

|  | 2025 | 2024 | Change |
|---|---|---|---|
| Revenues: | | | |
| Property taxes, including related penalty and interest | $ 5,660,758 | $ 4,585,029 | $ 1,075,729 |
| Other revenues | 1,218,926 | 897,532 | 321,394 |
| Total revenues | 6,879,684 | 5,482,561 | 1,397,123 |
| Expenses: | | | |
| Service operations | 2,046,398 | 697,820 | 1,348,578 |
| Debt service | 0 | 0 | 0 |
| Total expenses | 2,046,398 | 697,820 | 1,348,578 |
| Change in net position | 4,833,286 | 4,784,741 | 48,545 |
| Net position, beginning of year | 12,363,848 | 7,579,107 | 4,784,741 |
| Net position, end of year | $ 17,197,134 | $ 12,363,848 | $ 4,833,286 |

## Financial Analysis of the District's Funds

The District's General Fund balance as of the end of the fiscal year ended June 30, 2025, was $16,546,784. The General Fund balance increased by $4,595,842, in accordance with the District's financial plan.

*General Fund Budgetary Highlights*

The District's budget is primarily a planning tool. Accordingly, actual results varied from the budgeted amounts. A comparison of actual to budgeted amounts is presented on Page 19 of this report. The budgetary fund balance as of June 30, 2025 was expected to be $15,780,612 and the actual end of year fund balance was $16,546,784.

Exhibit D  8 -of 31

**Capital Asset and Debt Administration**

*Capital Assets*

Capital assets held by the District at the end of the current and previous fiscal years are summarized as follows:

| | Capital Assets (Net of Accumulated Depreciation) | | |
| --- | --- | --- | --- |
| | 2025 | 2024 | Change |
| Construction in progress | $ 16,301,341 | $ 15,434,727 | $ 866,614 |
| Park and recreational facilities | 77,070 | 81,887 | (4,817) |
| Totals | $ 16,378,411 | $ 15,516,614 | $ 861,797 |

Changes to capital assets during the fiscal year ended June 30, 2025, are summarized as follows:

| | |
| --- | --- |
| Additions: | |
| Roads and improvements constructed by developer | $ 866,614 |
| Decreases: | |
| Depreciation | (4,817) |
| Net change to capital assets | $ 861,797 |

*Debt*

The District has not issued bonds.

At June 30, 2025, the District had $21,915,000 of bonds authorized but unissued for the purposes of acquiring, constructing and improving a water, sanitary sewer and drainage system within the District and $37,935,000 for road purposes authorized but unissued

As further described in Note 5 of the notes to the financial statements, a developer within the District has advanced funds to the District to cover initial operating deficits. As of June 30, 2025, the cumulative amount of developer advances for this purpose was $78,000.

As further described in Note 5 of the notes to the financial statements, a developer within the District is constructing certain facilities on behalf of the District under the terms of contracts with the District. The District has agreed to purchase these facilities from the proceeds of future bond issues subject to the approval of the Texas Commission on Environmental Quality. At June 30, 2025, the estimated amount due to developers was $16,301,341.

## RELEVANT FACTORS

*Property Tax Base*

The District's tax base increased approximately $298,600,000 for the 2024 tax year (approximately 24%), due to the addition of new property to the tax base and the increase in the average assessed valuations on existing property.

Exhibit D   9 - of 31





### Relationship to the City of Plum Grove

Under existing Texas law, since the District lies partially within the extraterritorial jurisdiction of the City of Plum Grove (the "City"), the District must conform to a City ordinance consenting to the creation of the District. In addition, the District may be annexed by the City of Plum Grove. If the District is annexed, the City will assume the District's assets and obligations (including the bonded indebtedness) and dissolve the District within ninety (90) days.

The District is not aware of any plans regarding annexation or a strategic partnership with the City.

\* This is not Correct \*

\* Colony Ridge Deannexed All their property from the City of Plum Grove.

\* City of Plum Grove Sued Colony Ridge the Case has been SEALED!

\* We do not pay any taxes to the City of Plum Grove.

Exhibit D    10 - of - 31

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## STATEMENT OF NET POSITION AND GOVERNMENTAL FUNDS BALANCE SHEET

### JUNE 30, 2025

| | General | Debt Service | Capital Projects | Total | Adjustments (Note 3) | Statement of Net Position |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Cash, including interest-bearing accounts, Note 7 | $ 868,396 | $ | $ | $ 868,396 | $ | $ 868,396 |
| Temporary investments, at cost, Note 7 | 16,093,330 | | | 16,093,330 | | 16,093,330 |
| Receivables: | | | | | | |
| Property taxes | 651,280 | | | 651,280 | | 651,280 |
| Sales and Use Taxes, Note 9 | 60,750 | | | 60,750 | | 60,750 |
| Other | 9,912 | | | | | |
| Capital assets, net of accumulated depreciation, Note 4: | | | | | | |
| Capital assets not being depreciated | | | | 0 | 16,301,341 | 16,301,341 |
| Depreciable capital assets | | | | 0 | 77,070 | 77,070 |
| **Total assets** | $17,683,668 | $ 0 | $ 0 | $ 17,683,668 | 16,378,411 | 34,062,079 |
| **LIABILITIES** | | | | | | |
| Accounts payable | $ 485,604 | $ | $ | $ 485,604 | | 485,604 |
| Long-term liabilities, Note 5: | | | | | | |
| Due in more than one year | | | | 0 | 16,379,341 | 16,379,341 |
| **Total liabilities** | 485,604 | 0 | 0 | 485,604 | 16,379,341 | 16,864,945 |
| **DEFERRED INFLOWS OF RESOURCES** | | | | | | |
| Property tax revenues | 651,280 | 0 | 0 | 651,280 | (651,280) | 0 |
| **FUND BALANCES / NET POSITION** | | | | | | |
| Fund balances: | | | | | | |
| Unassigned | 16,546,784 | | | 16,546,784 | (16,546,784) | 0 |
| **Total fund balances** | 16,546,784 | 0 | 0 | 16,546,784 | (16,546,784) | 0 |
| Total liabilities, deferred inflows, and fund balances | $17,683,668 | $ 0 | $ 0 | $ 17,683,668 | | |
| Net position: | | | | | | |
| Invested in capital assets, net of related debt, Note 4 | | | | | 77,070 | 77,070 |
| Unrestricted, Note 5 | | | | | 17,120,064 | 17,120,064 |
| **Total net position** | | | | | $ 17,197,134 | $ 17,197,134 |

Exhibit D    11- of. 31

The accompanying notes are an integral part of the financial statements.

10

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## STATEMENT OF ACTIVITIES AND GOVERNMENTAL FUNDS REVENUES, EXPENDITURES, AND CHANGES IN FUND BALANCES

### FOR THE YEAR ENDED JUNE 30, 2025

| | General Fund | Debt Service Fund | Capital Projects Fund | Total | Adjustments (Note 3) | Statement of Activities |
|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | |
| Property taxes | $ 5,196,422 | $ | $ | $ 5,196,422 | $ 242,261 | $ 5,438,683 |
| Penalty and interest | 222,075 | | | 222,075 | | 222,075 |
| Sales and Use Taxes, Note 9 | 568,297 | | | 568,297 | | 568,297 |
| Interest on deposits and investments | 617,736 | | | 617,736 | | 617,736 |
| Other | 32,893 | | | 32,893 | | 32,893 |
| Total revenues | 6,637,423 | 0 | 0 | 6,637,423 | 242,261 | 6,879,684 |
| **EXPENDITURES / EXPENSES** | | | | | | |
| Service operations: | | | | | | |
| Professional fees | 101,651 | | | 101,651 | | 101,651 |
| Contracted services | 136,206 | | | 136,206 | | 136,206 |
| Repairs and maintenance | 849,016 | | | 849,016 | | 849,016 |
| Security service | 939,451 | | | 939,451 | | 939,451 |
| Administrative expenditures | 15,257 | | | 15,257 | | 15,257 |
| Depreciation | | | | 0 | 4,817 | 4,817 |
| Capital outlay / non-capital outlay | | | | 0 | | 0 |
| Total expenditures / expenses | 2,041,581 | 0 | 0 | 2,041,581 | 4,817 | 2,046,398 |
| Excess (deficiency) of revenues over expenditures | 4,595,842 | 0 | 0 | 4,595,842 | 237,444 | 4,833,286 |
| Net change in fund balances / net position | 4,595,842 | 0 | 0 | 4,595,842 | 237,444 | 4,833,286 |
| Beginning of year | 11,950,942 | 0 | 0 | 11,950,942 | 412,906 | 12,363,848 |
| End of year | $ 16,546,784 | $ 0 | $ 0 | $ 16,546,784 | $ 650,350 | $ 17,197,134 |

Exhibit D 12 - of 31

The accompanying notes are an integral part of the financial statements.

11

## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### NOTES TO THE FINANCIAL STATEMENTS

### JUNE 30, 2025



### NOTE 1:  REPORTING ENTITY

Liberty County Municipal Management District No. 1 (the "District") was created pursuant to House Bill 4341, Acts of the 85th Legislature of the State of Texas, Regular Session, 2017, Chapter 3795, Special District Local Laws Code, as amended under the authority of Sections 52 and 52-a, Article III, and Section 59, Article XVI, of the Texas Constitution and operates pursuant to Chapter 375, Texas Local Government Code. The District is located within Liberty County, Texas. The District is a political subdivision of the State of Texas, governed by an appointed five member Board of Directors. The Board of Directors held its first meeting on December 17, 2018. The District is subject to the continuing supervision of the TCEQ with respect to water, wastewater and drainage. The District is empowered, among other things, to provide for water, wastewater, drainage, road and recreational facilities.



In evaluating how to define the District for financial reporting purposes, the Board of Directors of the District has considered all potential component units. The decision to include a potential component unit in the reporting entity was made by applying the criteria established by the Governmental Accounting Standards Board. The basic, but not the only, criterion for including a potential component unit within the reporting entity is the governing body's ability to exercise oversight responsibility. The most significant manifestation of this ability is financial interdependency. Other manifestations of the ability to exercise oversight responsibility include, but are not limited to, the selection of governing authority, the designation of management, the ability to significantly influence operations and accountability for fiscal matters. The other criterion used to evaluate potential component units for inclusion or exclusion from the reporting entity is the existence of special financing relationships, regardless of whether the District is able to exercise oversight responsibilities. Based upon the application of these criteria, there were no other entities which were included as a component unit in the District's financial statements.

Exhibit 10    13-of 31

<u>NOTES TO THE FINANCIAL STATEMENTS (Continued)</u>

## NOTE 2:  SIGNIFICANT ACCOUNTING POLICIES

The District's financial statements are prepared in accordance with generally accepted accounting principles ("GAAP"). The Governmental Accounting Standards Board (the "GASB") is responsible for establishing GAAP for state and local governments through its pronouncements (Statements and Interpretations). Governments are also required to follow the pronouncements of the Financial Accounting Standards Board issued through November 30, 1989 (when applicable), that do not conflict with or contradict GASB pronouncements. The more significant accounting policies established in GAAP and used by the District are discussed below.

<u>Basic Financial Statements</u>

The District's basic financial statements include both government-wide (reporting the District as a whole) and governmental fund financial statements (reporting the District's funds).  Because the District is a single-program government as defined by the GASB, the District has combined the government-wide statements and the fund financial statements using a columnar format that reconciles individual line items of fund financial data to government-wide data in a separate column on the face of the financial statements.  An additional reconciliation between the fund and the government-wide financial data is presented in Note 3.

The government-wide financial statements (i.e., the statement of net position and the statement of activities) report information on all of the nonfiduciary activities of the District.  The effect of interfund activity has been removed from these statements.  The District's net position are reported in three parts – invested in capital assets, net of related debt; restricted net position; and unrestricted net position.  The government-wide statement of activities reports the components of the changes in net position during the reporting period.

The financial transactions of the District are reported in individual funds in the fund financial statements. Each fund is accounted for in a separate set of self-balancing accounts that comprises its assets, liabilities, fund balances, revenues and expenditures and changes in fund balances.  The District's fund balances are reported as nonspendable, restricted, committed, assigned or unassigned. Nonspendable fund balances are either not in spendable form or are contractually required to remain intact.  Restricted fund balances include amounts that can only be used for the specific purposes stipulated by constitutional provisions, external resource providers or enabling legislation.  Committed fund balances include amounts that can only be used for the specific purposes determined by formal action of the District's Board of Directors.  Assigned fund balances are intended for a specific purpose but do not meet the criteria to be classified as restricted or committed. Unassigned fund balance is the residual classification for the District's General Fund and includes all spendable amounts not contained in the other classifications.  The transactions of the District are accounted for in the following funds:

General Fund -- To account for all revenues and expenditures not required to be accounted for in other funds.

Debt Service Fund -- To account for the accumulation of financial resources for, and the payment of, bond principal and interest, paid principally from property taxes levied by the District.

Capital Projects Fund -- To account for financial resources designated to construct or acquire capital assets.  Such resources are derived principally from proceeds of the sale of bonds.

Exhibit D  14 of 31

### NOTES TO THE FINANCIAL STATEMENTS (Continued)

#### Basis of Accounting

The government-wide statements are reported using the economic resources measurement focus and the accrual basis of accounting which recognizes all long-term assets and receivables as well as long-term debt and obligations. Revenues are recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of related cash flows. Ad valorem property taxes are recognized as revenues in the fiscal year for which they have been levied and related penalties and interest are recognized in the fiscal year in which they are imposed. An allowance for uncollectibles is estimated for delinquent property taxes and reported separately in the financial statements.

Governmental fund financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenues are recognized as soon as they are both measurable and available. Revenues are considered to be available if they are collectible within the current period or soon enough thereafter to pay liabilities of the current period. Expenditures generally are recorded when a liability is incurred except for principal and interest on bonds payable which are recorded only when payment is due.

#### Interfund Activity

Activity between funds that is representative of lending/borrowing arrangements outstanding at the end of the fiscal year is reported as interfund receivables or payables, as appropriate, as are all other outstanding balances between funds. Operating transfers between funds represent legally authorized transfers from the fund receiving resources to the fund through which the resources are to be expended.

#### Receivables

Service accounts receivable as reported are considered collectible. The District uses the direct write off method for uncollectible service accounts. Unbilled water and sewer revenues are not material and are not recorded at year end. The District considers service accounts revenues to be available if they are to be collected within 60 days after the end of the fiscal year.

In the fund financial statements, ad valorem taxes and penalties and interest are reported as revenues in the fiscal year in which they become available to finance expenditures of the fiscal year for which they have been levied. Property taxes which have been levied and are not yet collected (or have been collected in advance of the fiscal year for which they have been levied) are recorded as deferred revenues. Property taxes collected after the end of the fiscal year are not included in revenues.

#### Capital Assets

Capital assets, which include property, plant, equipment, and immovable public domain or "infrastructure" assets are reported in the government-wide financial statements. Capital assets are defined by the District as assets with an initial individual cost of more than $5,000 (including installation costs, if any, and associated professional fees) and an estimated useful life in excess of two years. Such assets are recorded at historical cost or estimated historical cost if purchased or constructed by the District. Donated capital assets are recorded at historical cost. Additions, improvements and other capital outlays that significantly extend the useful life of an asset or increase the value of an asset are capitalized. Costs incurred for repairs and maintenance are expensed as incurred.

#### Long-term Liabilities

Long-term debt and other long-term obligations are reported in the government-wide financial statements. Bond premiums and discounts, are deferred and amortized over the life of the bonds. Bonds payable are reported net of the applicable premium or discount. If bonds are refunded and the carrying amount of the new debt is different than the net carrying amount of the old debt, the difference is netted against the new debt and amortized using the effective interest method over the shorter of the remaining life of the refunded debt or the life of the new debt issued.

Exhibit D 15-04-31

## NOTES TO THE FINANCIAL STATEMENTS (Continued)

In the fund financial statements, ad valorem taxes and penalties and interest are reported as revenues in the fiscal year in which they become available to finance expenditures of the fiscal year for which they have been levied. Property taxes which have been levied and are not yet collected (or have been collected in advance of the fiscal year for which they have been levied) are recorded as deferred inflow of resources. Property taxes collected after the end of the fiscal year are not included in revenues.

### NOTE 3: RECONCILIATION OF FUND TO GOVERNMENT-WIDE FINANCIAL STATEMENTS

Reconciliation of year end fund balances to net position:

| | | |
|---|---|---|
| Total fund balances, end of year | | $ 16,546,784 |
| Capital assets used in governmental activities are not financial resources and, therefore, are not reported in the funds | | |
| Total capital assets, net | | 16,378,411 |
| Some long-term liabilities, including bonds payable, are not due and payable in the current period and therefore are not reported in the funds: | | |
| Due to developer for advances | $ (78,000) | |
| Due to developers for construction | (16,301,341) | (16,379,341) |
| Some receivables that do not provide current financial resources are not reported as receivables in the funds: | | |
| Uncollected property taxes | | 651,280 |
| Net position, end of year | | $ 17,197,134 |

Reconciliation of net change in fund balances to change in net position:

| | |
|---|---|
| Total net change in fund balances | $ 4,595,842 |
| The funds report capital outlays as expenditures. However, in the statement of activities the cost of those assets is allocated over their estimated useful lives and reported as depreciation expense: | |
| Depreciation | (4,817) |
| Some revenues reported in the statement of activities do not provide current financial resources and therefore are not reported as revenues in the funds: | |
| Uncollected property taxes | 242,261 |
| Change in net position | $ 4,833,286 |

Exhibit D 16-of-31

15

## NOTES TO THE FINANCIAL STATEMENTS (Continued)



### NOTE 4:  CAPITAL ASSETS

Capital asset activity for the fiscal year ended June 30, 2025, was as follows:

| | Beginning Balance | Increases | Decreases | Ending Balance |
|---|---|---|---|---|
| Capital assets not being depreciated: | | | | |
| Construction in progress | $ 15,434,727 | $ 866,614 | $ | $ 16,301,341 |
| Depreciable capital assets: | | | | |
| Park and recreational facilities | 96,338 | | | 96,338 |
| Less accumulated depreciation for: | | | | |
| Park and recreational facilities | (14,451) | (4,817) | | (19,268) |
| Total depreciable capital assets, net | 81,887 | (4,817) | 0 | 77,070 |
| Total capital assets, net | $ 15,516,614 | $ 861,797 | $ 0 | $ 16,378,411 |
| Changes to capital assets: | | | | |
| Increase in developer construction | | $ 866,614 | $ | |
| Depreciation expense for the fiscal year | | (4,817) | | |
| Net increases / decreases to capital assets | | $ 861,797 | $ 0 | |

### NOTE 5:  LONG-TERM LIABILITIES AND CONTINGENT LIABILITIES

Long-term liability activity for the fiscal year ended June 30, 2025 was as follows:

| | Beginning Balance | Additions | Reductions | Ending Balance | Due within One Year |
|---|---|---|---|---|---|
| Due to developer for construction (see below) | $ 15,434,727 | $ 866,614 | $ | $ 16,301,341 | ----------- |
| Due to developer for operating advances (see below) | 78,000 | 0 | 0 | 78,000 | ----------- |
| Total long-term liabilities | $ 15,512,727 | $ 866,614 | $ 0 | $ 16,379,341 | ----------- |

| | |
|---|---|
| Bonds voted | $ 21,915,000 |
| Bonds voted and not issued | 21,915,000 |
| Road bonds voted | 37,935,000 |
| Road bonds voted and not issued | 37,935,000 |
| Refunding bonds voted | One and one-half times the amount of unlimited tax bonds previously issued |



### Developer Construction Commitments, Liabilities and Advances

The developer within the District has advanced funds to the District to cover initial operating deficits.  At June 30, 2025, the cumulative amount of unreimbursed developer advances was $78,000.  These amounts have been recorded in the government-wide financial statements and in the schedules in Note 5.  This amount has been recorded as a decrease in "Unrestricted net position" in the government-wide financial statements. Without this decrease, "Unrestricted net position" would have a balance of $17,198,064.

Exhibit D   17-0+31

NOTES TO THE FINANCIAL STATEMENTS (Continued)

The developer within the District has constructed certain facilities within the District's boundaries. The District has agreed to reimburse the developer for these construction and related engineering costs plus interest not to exceed the interest rate of the applicable District bond issue. These amounts are to be reimbursed from the proceeds of future bond issues to the extent approved by the Texas Commission on Environmental Quality. The District engineer stated that unreimbursed cost of the construction in progress at June 30, 2025, was $16,301,341. This amount has been recorded in the government-wide financial statements and in the schedules in Notes 4 and 5.

NOTE 6: PROPERTY TAXES

The Liberty County Appraisal District has the responsibility for appraising property for all taxing units within the county as of January 1 of each year, subject to review and change by the county Appraisal Review Board. The appraisal roll, as approved by the Appraisal Review Board, must be used by the District in establishing its tax roll and tax rate. The District's taxes are usually levied in the fall, are due when billed and become delinquent after January 31 of the following year or 30 days after the date billed, whichever is later. On January 1 of each year, a statutory tax lien attaches to property to secure the payment of all taxes, penalties and interest ultimately imposed for the year on the property.

At an election held May 5, 2018, the voters within the District authorized a maintenance tax not to exceed $1.00 per $100 valuation on all property subject to taxation within the District. This maintenance tax is being used by the General Fund to pay expenditures of operating the District. The voters also authorized a road maintenance tax not to exceed $1.00 per $100 valuation on all property subject to taxation within the District. This road maintenance tax is to be used for the operation and maintenance of a road system and related storm drainage system within the District.

On October 14, 2024, the District levied the following ad valorem taxes for the 2024 tax year on the adjusted taxable valuation of $1,554,245,321:

|  | Rate | Amount |
|---|---|---|
| Maintenance | $ 0.3500 | $ 5,439,902 |

A reconciliation of the tax levy to property tax revenues on the Statement of Activities is as follows:

| | |
|---|---|
| 2024 tax year total property tax levy | $ 5,439,902 |
| Appraisal district adjustments to prior year taxes | (1,219) |
| Statement of Activities property tax revenues | $ 5,438,683 |

NOTE 7: DEPOSITS

The District complied with the requirements of the Public Funds Investment Act during the current fiscal year including the preparation of quarterly investment reports required by the Act.

Exhibit D   18 - 04 - 31

<u>NOTES TO THE FINANCIAL STATEMENTS (Continued)</u>

State statutes authorize the District to invest and reinvest in direct or indirect obligations of the United States, the State of Texas, any county, city, school district, or other political subdivision of the state, or in local government investment pools authorized under the Public Funds Investment Act. Funds of the District may be placed in certificates of deposit of state or national banks or savings and loan associations within the state provided that they are secured in the manner provided for the security of the funds under the laws of the State of Texas. In accordance with the District's investment policies, during the current year the District's funds were invested in interest bearing accounts at authorized financial institutions and in TexPool, a local government investment pool sponsored by the State Comptroller. TexPool is rated AAAm by Standard & Poor's.

In accordance with state statutes and the District's investment policies, the District requires that insurance or security be provided by depositories for all funds held by them. At the balance sheet date, the District's deposits were covered by federal insurance.

At the balance sheet date the carrying value and market value of the investments in TexPool was $16,093,330.

NOTE 8: RISK MANAGEMENT

The District is exposed to various risks of loss related to: torts; theft of, damage to, and destruction of assets; errors and omissions; personal injuries and natural disasters. Significant losses are covered by insurance as described below. There were no significant reductions in insurance coverage from the prior fiscal year. There have been no settlements which have exceeded the insurance coverage for each of the past three fiscal years.

On June 30, 2025, the District had property and boiler and machinery coverage of $1,408,723, comprehensive general liability coverage with a per occurrence limit of $1,000,000 and $3,000,000 general aggregate and consultant's crime coverage of $10,000.

NOTE 9: SALES AND USE TAXES

At an election held May 5, 2018, the voters within the District authorized the District to assess, levy and collect a two percent Sales and Use Tax within the District. Subsequently, at an election held November 6, 2018, the voters within the District authorized the District to assess, levy and collect a one and one-half percent Sales and Use Tax within the District. The sales and use tax is being used by the General Fund to pay expenditures of operating the District. The District accrued Sales and Use Tax revenues of $568,297 for the fiscal year ended June 30, 2025, of which $60,750 was receivable at that date.

NOTE 10: AGREEMENTS WITH PROPERTY OWNERS ASSOCIATION

Maintenance Agreement

The District and the Houston El Norte Property Owners Association, Inc. (the "POA") entered into a Maintenance Agreement dated July 13, 2020, as amended January 9, 2023 and April 14, 2025, for the maintenance of common areas within the District. The POA, at its sole cost and expense, is responsible for mowing and general maintenance of the common areas. By mutual agreement between the District and the POA, maintenance responsibilities may be transferred to the District, in whole or in part, at any point during the term of the agreement. The District's maintenance costs related to the agreement with the POA were $849,016 for the fiscal year ended June 30, 2025.

Exhibit O 19-04-31

<u>NOTES TO THE FINANCIAL STATEMENTS (Continued)</u>



<u>Law Enforcement Services</u>

Liberty County and the POA entered into an Amended Agreement for Law Enforcement Services, dated August 8, 2023, whereby the County agreed to provide supplemental law enforcement services within the boundaries of the District, the POA and Liberty County Municipal Utility District No. 1 (the "MUD"). The District, POA and MUD entered into a Cost Sharing Agreement for Law Enforcement Services. The costs for law enforcement services are split as follows: the District - 67%, the POA - 28% and the MUD - 5%. The District's security services related to the agreement with the POA were $780,905 for the fiscal year ended June 30, 2025.



The District also received supplemental law enforcement services directly from Liberty County at a cost of $158,546 for the year ended June 30, 2025.

Exhibit 10   20 -of- 31

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

SCHEDULE OF REVENUES, EXPENDITURES, AND CHANGES
IN FUND BALANCE, BUDGET AND ACTUAL, GENERAL FUND

FOR THE YEAR ENDED JUNE 30, 2025

| | Budgeted Amounts | | | Variance with Final Budget Positive |
|---|---|---|---|---|
| | Original | Final | Actual | (Negative) |
| REVENUES | | | | |
| Property taxes | $ 5,020,000 | $ 5,020,000 | $ 5,196,422 | $ 176,422 |
| Penalty and interest | 0 | 0 | 222,075 | 222,075 |
| Sales and Use Taxes | 457,000 | 457,000 | 568,297 | 111,297 |
| Interest on deposits and investments | 422,000 | 422,000 | 617,736 | 195,736 |
| Other | 10,800 | 10,800 | 32,893 | 22,093 |
| TOTAL REVENUES | 5,909,800 | 5,909,800 | 6,637,423 | 727,623 |
| EXPENDITURES | | | | |
| Service operations: | | | | |
| Professional fees | 77,500 | 77,500 | 101,651 | 24,151 |
| Contracted services | 90,000 | 90,000 | 136,206 | 46,206 |
| Repairs and maintenance | 950,000 | 950,000 | 849,016 | (100,984) |
| Security service | 920,500 | 920,500 | 939,451 | 18,951 |
| Administrative expenditures | 17,130 | 17,130 | 15,257 | (1,873) |
| Capital outlay | 25,000 | 25,000 | 0 | (25,000) |
| TOTAL EXPENDITURES | 2,080,130 | 2,080,130 | 2,041,581 | (38,549) |
| EXCESS REVENUES (EXPENDITURES) | 3,829,670 | 3,829,670 | 4,595,842 | 766,172 |
| FUND BALANCE, BEGINNING OF YEAR | 11,950,942 | 11,950,942 | 11,950,942 | 0 |
| FUND BALANCE, END OF YEAR | $ 15,780,612 | $ 15,780,612 | $ 16,546,784 | $ 766,172 |

Exhibit D  21 - of 31

The accompanying notes are an integral part of the financial statements.

20

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

SCHEDULE OF TEXAS SUPPLEMENTARY INFORMATION
REQUIRED BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

JUNE 30, 2025

(Schedules included are checked or explanatory notes provided for omitted schedules.)

[X]    TSI-1.    Services and Rates

[X]    TSI-2.    General Fund Expenditures

[X]    TSI-3.    Temporary Investments

[X]    TSI-4.    Taxes Levied and Receivable

[ ]    TSI-5.    Long-Term Debt Service Requirements by Years
                 Not Applicable.  None at June 30, 2025.

[ ]    TSI-6.    Changes in Long-Term Bonded Debt
                 Not Applicable.  None at June 30, 2025.

[X]    TSI-7.    Comparative Schedule of Revenues and Expenditures -
                 General Fund and Debt Service Fund - Five Year
                 Not Applicable for Debt Service Fund.

[X]    TSI-8.    Board Members, Key Personnel and Consultants

Exhibit D    22-of 31

21

**LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1**

**SCHEDULE OF SERVICES AND RATES**

**JUNE 30, 2025**

1.  Services Provided by the District during the Fiscal Year:

    \_\_ Retail Water                    \_\_ Wholesale Water              _X_ Drainage
    \_\_ Retail Wastewater           \_\_ Wholesale Wastewater      \_\_ Irrigation
    _X_ Parks/Recreation            \_\_ Fire Protection                 _X_ Security
    \_\_ Solid Waste/Garbage        \_\_ Flood Control                   _X_ Roads
    \_\_ Participates in joint venture, regional system and/or wastewater service
        (other than emergency interconnect)
    \_\_ Other

2.  Retail Service Providers

    a.  Retail Rates for a 5/8" meter (or equivalent):

        Not applicable.

    b.  Water and Wastewater Retail Connections:

        Not applicable.

3.  Total Water Consumption during the Fiscal Year (rounded to thousands):

    Not applicable.

4.  Standby Fees (authorized only under TWC Section 49.231):

    Does the District have Debt Service standby fees?  Yes \_\_  No _X_

    If yes, date of the most recent Commission Order: _____

    Does the District have Operation and Maintenance standby fees?  Yes \_\_  No _X_

    If yes, date of the most recent Commission Order: _____

Exhibit O          23- of 31

See accompanying independent auditor's report.

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

EXPENDITURES

FOR THE YEAR ENDED JUNE 30, 2025

| | General Fund | Debt Service Fund | Capital Projects Fund | Totals (Memorandum Only) |
|---|---|---|---|---|
| **CURRENT** | | | | |
| Professional fees: | | | | |
| Auditing | $ 8,500 | $ | $ | $ 8,500 |
| Legal | 93,151 | | | 93,151 |
| | 101,651 | 0 | 0 | 101,651 |
| Contracted services: | | | | |
| Bookkeeping | 14,984 | | | 14,984 |
| Tax assessor-collector | 9,211 | | | 9,211 |
| Appraisal district | 112,011 | | | 112,011 |
| | 136,206 | 0 | 0 | 136,206 |
| Repairs and maintenance | 849,016 | 0 | 0 | 849,016 |
| Security service | 939,451 | 0 | 0 | 939,451 |
| Administrative expenditures: | | | | |
| Director's fees | 1,600 | | | 1,600 |
| Insurance | 11,965 | | | 11,965 |
| Other | 1,692 | | | 1,692 |
| | 15,257 | 0 | 0 | 15,257 |
| TOTAL EXPENDITURES | $ 2,041,581 | $ 0 | $ 0 | $ 2,041,581 |

Exhibit 10  24-of-31

See accompanying independent auditor's report.

23

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

ANALYSIS OF CHANGES IN DEPOSITS
ALL GOVERNMENTAL FUND TYPES

FOR THE YEAR ENDED JUNE 30, 2025

| | General Fund | Debt Service Fund | Capital Projects Fund | Totals (Memorandum Only) |
|---|---|---|---|---|
| SOURCES OF DEPOSITS AND TEMPORARY INVESTMENTS | | | | |
| Cash receipts from revenues | $ 6,607,575 | $ | $ | $ 6,607,575 |
| TOTAL DEPOSITS AND TEMPORARY INVESTMENTS PROVIDED | 6,607,575 | 0 | 0 | 6,607,575 |
| APPLICATIONS OF DEPOSITS AND TEMPORARY INVESTMENTS | | | | |
| Cash disbursements for: Current expenditures | 1,625,880 | | | 1,625,880 |
| TOTAL DEPOSITS AND TEMPORARY INVESTMENTS APPLIED | 1,625,880 | 0 | 0 | 1,625,880 |
| INCREASE (DECREASE) IN DEPOSITS AND TEMPORARY INVESTMENTS | 4,981,695 | 0 | 0 | 4,981,695 |
| DEPOSITS AND TEMPORARY INVESTMENTS BALANCES, BEGINNING OF YEAR | 11,980,031 | 0 | 0 | 11,980,031 |
| DEPOSITS AND TEMPORARY INVESTMENTS BALANCES, END OF YEAR | $16,961,726 | $ 0 | $ 0 | $16,961,726 |

Exhibit D 25 of 31

See accompanying independent auditor's report.

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

SCHEDULE OF TEMPORARY INVESTMENTS

JUNE 30, 2025

| | Interest Rate | Maturity Date | Year End Balance | Accrued Interest Receivable |
|---|---|---|---|---|
| **GENERAL FUND** | | | | |
| TexPool | | | | |
| No. 7982000001 | Market | On demand | $ 16,093,330 | $ 0 |

Exhibit D 24 - of 31

See accompanying independent auditor's report.

### LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

### TAXES LEVIED AND RECEIVABLE

### FOR THE YEAR ENDED JUNE 30, 2025

|  | Maintenance Taxes |
|---|---|
| RECEIVABLE, BEGINNING OF YEAR | $ 409,019 |
| Additions and corrections to prior year taxes | (1,219) |
| Adjusted receivable, beginning of year | 407,800 |
| 2024 ADJUSTED TAX ROLL | 5,439,902 |
| Total to be accounted for | 5,847,702 |
| Tax collections:  Current tax year | (4,875,837) |
| Prior tax years | (320,585) |
| RECEIVABLE, END OF YEAR | $ 651,280 |
| RECEIVABLE, BY TAX YEAR |  |
| 2019 | $ 115 |
| 2020 | 1,661 |
| 2021 | 7,140 |
| 2022 | 20,796 |
| 2023 | 57,503 |
| 2024 | 564,065 |
| RECEIVABLE, END OF YEAR | $ 651,280 |

Exhibit D 27 of 31

See accompanying independent auditor's report.

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

TAXES LEVIED AND RECEIVABLE (Continued)

FOR THE YEAR ENDED JUNE 30, 2025

| ADJUSTED PROPERTY VALUATIONS AS OF JANUARY 1 OF TAX YEAR | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|
| Land | $1,170,426,873 | $1,020,867,430 | $ 922,920,260 | $ 533,761,602 |
| Improvements | 471,150,131 | 337,499,392 | 171,502,890 | 70,057,640 |
| Personal property | 8,843,730 | 6,250,580 | 4,870,260 | 989,580 |
| Less exemptions | (96,175,413) | (109,019,173) | (68,604,542) | (31,031,048) |
| TOTAL PROPERTY VALUATIONS | $1,554,245,321 | $1,255,598,229 | $1,030,688,868 | $ 573,777,774 |
| TAX RATES PER $100 VALUATION* | $ 0.35000 | $ 0.35000 | $ 0.35000 | $ 0.35000 |
| TAX ROLLS | $ 5,439,902 | $ 4,394,679 | $ 3,609,488 | $ 2,001,717 |
| PERCENT OF TAXES COLLECTED TO TAXES LEVIED | 89.6 % | 98.7 % | 99.4 % | 99.6 % |

*Maximum tax rate approved by voters on May 5, 2018:  $1.00

Exhibit D  28 - of 31

See accompanying independent auditor's report.

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## COMPARATIVE STATEMENTS OF REVENUES AND EXPENDITURES, GENERAL FUND

### FOR YEARS ENDED JUNE 30

| | AMOUNT | | | | | PERCENT OF TOTAL REVENUES | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2025 | 2024 | 2023 | 2022 | 2021 | 2025 | 2024 | 2023 | 2022 | 2021 |
| **REVENUES** | | | | | | | | | | |
| Property taxes | $ 5,196,422 | $ 4,297,560 | $ 3,414,125 | $ 1,921,732 | $ 1,090,970 | 78.3 % | 79.9 % | 84.9 % | 85.7 % | 84.4 % |
| Penalty and interest | 222,075 | 186,238 | 125,517 | 68,145 | 35,821 | 3.3 | 3.5 | 3.1 | 3.0 | 2.8 |
| Sales and Use Taxes | 568,297 | 468,036 | 324,847 | 252,737 | 166,115 | 8.6 | 8.7 | 8.1 | 11.3 | 12.8 |
| Interest on deposits and other revenues | 650,629 | 429,496 | 155,304 | 765 | 71 | 9.8 | 7.9 | 3.9 | 0.0 | 0.0 |
| TOTAL REVENUES | 6,637,423 | 5,381,330 | 4,019,793 | 2,243,379 | 1,292,977 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 |
| **EXPENDITURES** | | | | | | | | | | |
| Service operations: | | | | | | | | | | |
| Professional fees | 101,651 | 73,949 | 114,122 | 50,299 | 59,509 | 1.5 | 1.4 | 2.8 | 2.1 | 4.5 |
| Contracted services | 136,206 | 96,072 | 59,222 | 33,100 | 15,782 | 2.1 | 1.8 | 1.5 | 1.5 | 1.2 |
| Repairs and maintenance | 849,016 | 0 | 0 | 55,427 | 2,622 | 12.8 | 0.0 | 0.0 | 2.5 | 0.2 |
| Security service | 939,451 | 377,495 | 83,710 | 58,403 | 26,569 | 14.2 | 7.0 | 2.1 | 2.6 | 2.1 |
| Administrative expenditures | 15,257 | 13,872 | 15,788 | 10,375 | 15,078 | 0.2 | 0.3 | 0.4 | 0.5 | 1.2 |
| Capital outlay | 0 | 131,615 | 0 | 96,338 | | 0.0 | 2.4 | 0.0 | 4.3 | 0.0 |
| TOTAL EXPENDITURES | 2,041,581 | 693,003 | 272,842 | 303,942 | 119,560 | 30.8 | 12.9 | 6.8 | 13.5 | 9.2 |
| EXCESS REVENUES (EXPENDITURES) | $ 4,595,842 | $ 4,688,327 | $ 3,746,951 | $ 1,939,437 | $ 1,173,417 | 69.2 % | 87.1 % | 93.2 % | 86.5 % | 90.8 % |
| TOTAL ACTIVE RETAIL WATER CONNECTIONS | N/A | N/A | N/A | N/A | N/A | | | | | |
| TOTAL ACTIVE RETAIL WASTEWATER CONNECTIONS | N/A | N/A | N/A | N/A | N/A | | | | | |

See accompanying independent auditor's report.

27

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

BOARD MEMBERS, KEY PERSONNEL AND CONSULTANTS

JUNE 30, 2025

Complete District Mailing Address:    Liberty County Municipal Management District No. 1
c/o Coats Rose, P.C.
9 Greenway Plaza, Suite 1000
Houston, Texas  77046

District Business Telephone No.:    713-651-0111

Submission date of the most recent District Registration Form: June 3, 2025

Limit on Fees of Office that a Director may receive during a fiscal year:  $7,200

BOARD MEMBERS

| Name and Address | Term of Office (Elected/ Appointed) | Fees of Office Paid | Expense Reimb. | Title at Year End | |
|---|---|---|---|---|---|
| John Harris c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/25- 6/01/29 | $ 300 | $ 0 | President | Owner of Colony Ridge |
| Heath J. Marek c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/23- 6/01/27 | 350 | 282 | Vice President | Partner of Colony Ridge |
| Savannah Crihfield c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/25- 6/01/29 | 300 | 0 | Secretary | Also Chief Managmnt Niece of John Harris |
| Clifton C. Cadle c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/25- 6/01/29 | 350 | 535 | Assistant Secretary | Supervisor - Construction Colony Ridge |
| Damaris Watson c/o Coats Rose, P.C. 9 Greenway Plaza, Suite 1000 Houston, Texas  77046 | Appointed 6/01/23- 6/01/27 | 300 | 82 | Assistant Secretary | Drg Harris Assiant. |

Exhibit D 30 - of 31

See accompanying independent auditor's report.

# LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

## BOARD MEMBERS, KEY PERSONNEL AND CONSULTANTS (Continued)

### JUNE 30, 2025

### CONSULTANTS

| Name and Address | Date Hired | Fees and Expense Reimbursements | Title at Year End |
|---|---|---|---|
| Coats Rose, P.C. *Formatted the MMD#1 MUD#1* 9 Greenway Plaza, Suite 1000 Houston, Texas 77046 | 12/18/17 | $ 56,793 | Attorney |
| Linebarger, Heard, Goggan, Blair, Graham, Pena & Sampson, L.L.P. P.O. Box 3064 Houston, Texas 77002 | 5/10/18 | 36,218 | Delinquent Tax Attorney |
| L & S District Services, LLC P.O. Box 170 Tomball, Texas 77377 | 12/18/17 | 14,984 | Bookkeeper |
| Debra Loggins P.O. Box 170 Tomball, Texas 77377 | 12/18/17 | 0 | Investment Officer |
| Liberty County Tax Assessor Collector P.O. Box 10288 Liberty, Texas 77575 | 5/10/18 | 9,211 | Tax Assessor-Collector |
| Liberty County Central Appraisal District P.O. Box 10016 Liberty, Texas 77575 | Legislative Action | 112,011 | Central Appraisal District |
| Mark C. Eyring, CPA, PLLC 12702 Century Drive, Suite C2 Stafford, Texas 77477 | 5/28/20 | 8,500 | Independent Auditor |

Exhibit D 31 - of 31

See accompanying independent auditor's report.

MINUTES OF MEETING
OF THE
BOARD OF DIRECTORS

May 12, 2025

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF LIBERTY | § |
| LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1 | § |

The Board of Directors (the "Board") of Liberty County Municipal Management District No. 1 (the "District") met in regular session, open to the public, at 12:00 p.m. on Monday, May 12, 2025, at 1680 County Road 3549, Cleveland, Texas 77327, a designated meeting place inside the boundaries of the District; whereupon, roll was called of the members of the Board of Directors, to-wit:

| | | | |
|---|---|---|---|
| ✗ | John Harris | - | President |
| ✗ | Heath J. Marek | - | Vice President |
| ✗ | Savannah Crihfield | - | Secretary |
| ✗ | Damaris Watson | - | Assistant Secretary |
| ✗ | Clifton C. Cadle | - | Assistant Secretary |

All members of the Board of Directors were present, thus constituting a quorum.

Also present at the meeting were: Ryan Crihfield, Cory Anderson, Darcy Moreira, Jared Anderson, and Ernesto Garcia; Debra Loggins of L&S District Services, the District's Bookkeeper; and Laken Kilgore, attorney, of Coats Rose, P.C. ("Coats Rose"), legal counsel for the District ("Attorney").

Whereupon, the meeting was called to order at 12:00 p.m. A copy of the notice of the meeting is attached hereto as Exhibit "A".

015537.000001\4919-1475-2338.v1

Exhibit E    1 -of 15

### HEAR FROM THE PUBLIC

No public comments were presented.

### APPROVE MINUTES OF MEETING

Proposed minutes of the meeting of the Board held on April 14, 2025, previously distributed to the Board, were considered for approval. Upon a motion duly made by Director Harris, seconded by Director Cadle, the Board voted unanimously to approve such minutes as presented.



### HEAR LIBERTY COUNTY CONSTABLE'S REPORT

The Board recognized Ms. Kilgore who presented the Liberty County Constable's Report on behalf of Liberty County Constable Office Precinct 6, copies of which is attached hereto as Exhibit "B." No action was taken.

### HEAR BOOKKEEPER'S REPORT

The Board recognized Ms. Loggins, who reviewed the Bookkeeper's Report and the bills listed therein, a copy of which is attached hereto as Exhibit "C."

Review Investment Report

Ms. Loggins next reviewed the investment report, a copy of which is included in the Bookkeeper's Report.

Adopt budget for fiscal year ending June 30, 2026

Ms. Loggins next presented the fiscal year ending June 30, 2026 budget for the Board's review and consideration, a copy of which is included in the Bookkeeper's Report.

After discussion, upon a motion duly made by Director Harris, seconded by Director Cadle, the Board voted unanimously to (i) approve the Bookkeeper's report and the payment of the District's bills as presented and (ii) adopt the fiscal year end June 30, 2026 budget.

2

015537.000001\4919-1475-2338.v1

Exhibit E  2-of 15

## ENGAGE AUDITOR TO PREPARE AUDIT FOR FISCAL YEAR ENDING JUNE 30, 2025

Consideration was given to engage the District's Auditor to prepare the fiscal year ending June 30, 2025 Audit.

After consideration, upon a motion duly made by Director Harris, seconded by Director Crihfield, the Board voted unanimously to engage the District's Auditor to prepare the fiscal year ending June 30, 2025 audit. A copy of the engagement letter is attached hereto as Exhibit "D."

## HEAR DEVELOPER'S REPORT

The Board recognized Mr. Cadle, who reviewed with the Board the status of development within the District. The Board noted that no action was needed in conjunction with the Developer's Report.



## RECEIVE REQUEST FROM LIBERTY COUNTY UTILITIES, LLC FOR PERMISSION TO DISCHARGE TREATED WASTEWATER INTO DISTRICT OWNED FACILITIES

Ms. Kilgore presented requests from Liberty County Utilities, LLC ("Liberty Utilities") for permission to discharge treated wastewater into the following District owned facilities: i) a drainage ditch which runs between County Road 5914-12 and County Road 5914-10; and ii) a detention pond located on the east side of Santa Fe Section 15. A copies of the requests are attached hereto as Exhibits "E" and "F." Liberty Utilities is applying to the Texas Commission on Environmental Quality for a TPDES permit for said discharge. *This Area has rules on Developmt. Orange Branch / Army Corp Engineer.*

Ms. Kilgore further presented a letter from the design engineer for the District owned facilities noting the addition of the discharge into the District's stormwater network is negligible and the District has the capacity to take on such flow. A copy of said letter is attached hereto as Exhibit "G."

After consideration, upon a motion duly made by Director Crihfield, seconded by Director Cadle, Directors Crihfield, Watson and Cadle voted to authorize Liberty Utilities to discharge treated

3

*Exhibit E 3 - of - 15*

wastewater into the District owned facilities, subject to the terms of those Letter Agreements between Liberty Utilities and the District. Copies of the Letter Agreements are attached hereto as Exhibits "H" and "I." It is noted that Directors Marek and Harris abstained from voting.

## HEAR ATTORNEY'S REPORT

The Board recognized Ms. Kilgore who presented the Attorney's Report. No report was presented.

There being no further business to come before the Board, upon a motion duly made and seconded, the meeting was adjourned.

*[signature page follows]*

4

Exhibit E 4 - of 15

PASSED, APPROVED AND ADOPTED, this 8th day of July, 2025.

(DISTRICT SEAL)



_____
Secretary, Board of Directors

015537.000001\4919-1475-2338.v1

Exhibit E    5-of 15

# AGENDA
## LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

Notice is hereby given pursuant to V.T.C.A. Government Code, Chapter 551, that the Board of Directors of Liberty County Municipal Management District No. 1 will meet in **regular** session, open to the public, at **12:00 p.m., on Monday, January 12, 2026,** at 1680 Road 3549, Cleveland, Texas 77327, a designated meeting location inside the District. At the meeting the following items will be considered and acted on:

1. Hear from the public.
2. Consider approving minutes of November 10, 2025, Board of Directors Meetings.
3. Accept resignation from Director.
4. Appoint Director and reconstitute Board of Directors.
5. Accept Oath of Office, Statement of Appointed Officer and any other documents as needed.
6. Amend District Registration Form reflecting new Board.
7. Receive Liberty County Constable's Report and consider taking any necessary action.
8. Adopt Resolution Regarding 2026 Tax Exemptions.
9. Receive Bookkeeper's Report and consider taking any action requested by Bookkeeper, including:
    a) Payment of Bills submitted to the District; and
    b) Review investment report.
10. Authorize engagement of District Engineer.
11. Hear Development Report and consider taking any action required, including:
    a) Discuss potential road construction projects;
    b) Authorize the design of road construction projects and/or District facilities;
    c) Approve plans and specifications for construction of roads and/or District facilities;
    d) Authorize advertisement for bids for road and/or District projects;
    e) Approve and ratify pay estimates/change orders for District construction projects;
    f) Authorize and/or ratify construction contracts and related items; and
    g) Approve and/or ratify proposals for maintenance of District facilities.
12. Hear report from Attorney and consider taking any action requested by Attorney.

Pursuant to V.T.C.A., Government Code, Chapter 551, the Board of Directors may convene in closed session to receive advice of legal counsel, discuss matters relating to pending or contemplated litigation, personnel matters, real estate transactions, gifts and donations, security devices and/or economic development negotiations. The dial-in number is (877) 746-4263 and the participant code is 2198104#. Persons with disabilities who plan to attend this meeting and would like to request auxiliary aids or services are requested to contact the District's attorney at (713) 651-0111 at least three business days prior to the meeting so that appropriate arrangements can be made.

EXECUTED this 6th day of January, 2026.

Liberty County Municipal Management District No. 1

By: _____
Laken Jenkins Kilgore
Coats Rose, P.C.
Attorneys for the District

(SEAL)

015537.000001\4907-6774-1062.v1

Exhibit E

6 of 15

## AGENDA
### LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1

Notice is hereby given pursuant to V.T.C.A. Government Code, Chapter 551, that the Board of Directors of Liberty County Municipal Management District No. 1 will meet in **regular** session, open to the public, at **12:00 p.m., on Monday, March 9, 2026,** at 1680 Road 3549, Cleveland, Texas 77327, a designated meeting location inside the District. At the meeting the following items will be considered and acted on:

1. Hear from the public.
2. Consider approving minutes of November 10, 2025 and January 12, 2026, Board of Directors Meetings.
3. Receive Liberty County Constable's Report and consider taking any necessary action.
4. Receive Bookkeeper's Report and consider taking any action requested by Bookkeeper, including:
   a) Payment of Bills submitted to the District;
   b) Review investment report; and
   c) Review draft budget.
5. Hear Development Report and consider taking any action required, including:
   a) Discuss potential road construction projects;
   b) Authorize the design of road construction projects and/or District facilities;
   c) Approve plans and specifications for construction of roads and/or District facilities;
   d) Authorize advertisement for bids for road and/or District projects;
   e) Approve and ratify pay estimates/change orders for District construction projects;
   f) Authorize and/or ratify construction contracts and related items; and
   g) Approve and/or ratify proposals for maintenance of District facilities.
6. Hear report from Attorney and consider taking any action requested by Attorney, including:
   a) Consider approving proposal for Soccer Field Netting;
   b) Discuss easement requests and consider taking any action thereon;
   c) Discuss Roundabout Street Light Installation purchase request and consider taking any action thereon;
   d) Discuss economic incentive programs and consider taking action thereon;
   e) Consider amendments to the agreements with POA regarding insurance; and
   f) Authorize District agents to take all necessary actions to amend insurance coverage.

Pursuant to V.T.C.A., Government Code, Chapter 551, the Board of Directors may convene in closed session to receive advice of legal counsel, discuss matters relating to pending or contemplated litigation, personnel matters, real estate transactions, gifts and donations, security devices and/or economic development negotiations. The dial-in number is (877) 746-4263 and the participant code is 2198104#. Persons with disabilities who plan to attend this meeting and would like to request auxiliary aids or services are requested to contact the District's attorney at (713) 651-0111 at least three business days prior to the meeting so that appropriate arrangements can be made.

EXECUTED this 3rd day of March, 2026.

Liberty County Municipal Management District No. 1

By: _____
Emily Forswall
Coats Rose, P.C
Attorneys for the District

(SEAL)

015537.000001\4916-1443-6243.v1

Exhibit    E    7 - of  15

Liberty County MMD No.1

| | Actuals for 05/12/2025 | Budget for 06/30/2026 | Proposed Budget for 06/30/2027 |
|---|---|---|---|
| **Income** | | | |
| | | | |
| Sales Tax Revenue | $ 385,838.38 | $ 548,500.00 | $ 775,000.00 |
| Maintenance Tax | 1,627,179.14 | 5,020,000.00 | 5,000,000.00 |
| Rental - GTE Mobilnet | 6,300.00 | 10,800.00 | 10,800.00 |
| Interest Income | 340,443.69 | 400,000.00 | 680,000.00 |
| | | | |
| Total Income | $ 2,359,761.21 | $ 5,979,300.00 | $ 6,465,800.00 |
| | | | |
| **Expense** | | | |
| | | | |
| Director Fees | 932.72 | 2,000.00 | 2,000.00 |
| Payroll Tax Expense | 87.99 | 160.00 | 160.00 |
| Legal Fees | 37,696.19 | 60,000.00 | 60,000.00 |
| Audit Fees | 8,500.00 | 10,000.00 | 10,000.00 |
| Engineering Fees | 0.00 | 10,000.00 | 10,000.00 |
| Bookkeeping Fees | 9,174.65 | 18,000.00 | 18,000.00 |
| Legal Notices | 0.00 | 1,000.00 | 1,000.00 |
| Security Services - LC Treasurer | 99,248.37 | 200,500.00 | 200,725.00 |
| Security - POA | 500,899.96 | 730,000.00 | 868,000.00 |
| Landscaping / drainage areas | 544,367.30 | 950,000.00 | 950,000.00 |
| Insurance | 13,423.00 | 12,000.00 | 13,500.00 |
| Travel Expenses | 676.80 | 1,200.00 | 1,200.00 |
| Other Expenses | 1,603.19 | 1,000.00 | 2,400.00 |
| Tax Assessor-Collector Fees | 67,971.50 | 120,000.00 | 138,000.00 |
| | | | |
| **Capital Outlay** | | | |
| | | | |
| Capital Outlay - Facilities | $ 975,899.78 | $ 25,000.00 | $ 25,000.00 |
| | | | |
| Total Expense | $ 2,260,481.45 | $ 2,140,860.00 | $ 2,299,985.00 |
| | | | |
| Net Gain | $ 99,279.76 | $ 3,838,440.00 | $ 4,165,815.00 |

Maintenance tax -   Rate:  $.35

Exhibit E 8 - of 15

Taxpayer Impact Statement  Liberty mmD

|  | Current Budget Fiscal Year Ending 12/2025** | Proposed Budget Fiscal Year Ending 12/2026** | No-New-Revenue Tax Rate Budget*** |
|---|---|---|---|
| Estimated District Operations and Maintenance Tax Bill on Average Homestead* | 536.30 | 576.37 | 536.30 |

The District levies taxes in accordance with the Texas Water Code. The District's current operations and maintenance tax rate is equal $_____ per $100 of assessed value. Average homestead values are determined by the county appraisal district. All estimates above are prepared utilizing the average resident homestead value as of the time that the District's most recent Truth in Taxation worksheet as prepared in accordance with the Texas Water Code.

*Average tax bill estimates for the current and proposed budgets reflect those taxes necessary to fund the operation and maintenance x revenues stated in the applicable budget.

**This column estimates the operations and maintenance taxes to be paid on the average homestead if the proposed budget generates ie same amount of operations and maintenance tax revenues as the current budget.

Exhibit E  9-of 15

MINUTES OF MEETING
OF THE
BOARD OF DIRECTORS

September 8, 2025

| | | |
|---|---|---|
| STATE OF TEXAS | | § |
| COUNTY OF LIBERTY | | § |
| LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1 | | § |

The Board of Directors (the "Board") of Liberty County Municipal Management District No. 1 (the "District") met in regular session, open to the public, at 12:00 p.m. on Monday, September 8, 2025, at 1680 County Road 3549, Cleveland, Texas 77327, a designated meeting place inside the boundaries of the District; whereupon, roll was called of the members of the Board of Directors, to-wit:

| | | |
|---|---|---|
| John Harris | - | President |
| Heath J. Marek | - | Vice President |
| Savannah Crihfield | - | Secretary |
| Damaris Watson | - | Assistant Secretary |
| Clifton C. Cadle | - | Assistant Secretary |

All members of the Board of Directors were present, thus constituting a quorum.

Also present at the meeting were: Cynthia Silva, Zack Harkness, Randall Walter and John Hardey; Ryan Crihfield, Darcy Moreira, Jared Anderson, Cory Anderson, and Ernesto Garcia; Debra Loggins of L&S District Services, the District's Bookkeeper; and Emily Forswall, attorney, of Coats Rose, P.C. ("Coats Rose"), legal counsel for the District ("Attorney").

Whereupon, the meeting was called to order at 12:00 p.m. A copy of the notice of the meeting is attached hereto as Exhibit "A".

**HEAR FROM THE PUBLIC**

No public comments were presented.

1

015537.000001\4915-1033-5083.v1

Exhibit E    10 - of 15

## APPROVE MINUTES OF MEETING

Proposed minutes of the meeting of the Board held on July 8, 2025, previously distributed to the Board, were considered for approval. Upon a motion duly made by Director Crihfield, seconded by Director Cadle, the Board voted unanimously to approve such minutes as presented.



## REVIEW UNDEVELOPED WATER DISTRICT VOTER APPROVAL TAX RATE WORKSHEET

Ms. Forswall presented for the Board's review a 2025 Water District Voter-Approval Tax Rate Worksheet for Low Tax Rate and Developing Districts, a copy of which is attached hereto as Exhibit "B". Ms. Forswall reminded the Board that the District is considered a developing District as defined by Section 49.23602 of the Texas Water Code, which dictates how its voter approval rate is calculated. She reminded the Board that the adopted tax rate for 2024 was $0.35 per $100 of assessed valuation for maintenance and operation purposes.



## APPROVE RESOLUTION ON DEVELOPMENT STATUS OF THE DISTRICT UNDER TEXAS WATER CODE, SECTION 49.23602

Ms. Forswall presented a Resolution Declaring Development Status of District for 2025 Tax Year (the "Resolution"), a copy of which is attached hereto as Exhibit "C". She advised the Board that the development status of a district dictates how its voter approval rate is calculated. The voter approval rate will be published with the Notice of Tax Hearing. Ms. Forswall explained that the District is not a "developed district" as defined by Section 49.23602 of the Texas Water Code as it has not financed, completed, or issued bonds to pay for all land, work improvements, facilities, plants, equipment, and appliances necessary to serve at least 95 percent of the projected build-out of the District. Ms. Forswall recommended the District proceed with adopting the 2025 tax rate as a "developing" district pursuant to Texas Water Code, Section 49.23603.

015537.000001\4915-1033-5083.v1



Upon a motion brought by Director Harris, seconded by Director Marek, the Board voted unanimously to approve the Resolution.

## CONSIDER CALLING HEARING ON 2025 TAX RATE AND AUTHORIZE PUBLICATION OF NOTICE OF SAME

Ms. Forswall discussed the recommendations concerning the District's tax rate. Ms. Forswall next explained the procedures that the District must follow prior to adopting a tax rate for 2025.

Upon a motion brought by Director Harris, seconded by Director Marek, the Board voted unanimously to call a public hearing and authorize publication of notice of the District's tax rate hearing to be held on October 9, 2025 at 12:00 p.m. at 1680 Road 3549, Cleveland, Texas 77327 and information on the District's proposed tax rate of $0.35 per $100 of assessed value.



## HEAR LIBERTY COUNTY CONSTABLE'S REPORT

The Board recognized Ms. Forswall who presented the Liberty County Constable's Report on behalf of Liberty County Constable Office Precinct 6, copies of which is attached hereto as Exhibit "D." No action was taken.

## HEAR BOOKKEEPER'S REPORT

The Board recognized Ms. Loggins, who reviewed the Bookkeeper's Report and the bills listed therein, a copy of which is attached hereto as Exhibit "E."

### Review Investment Report

Ms. Loggins next reviewed the investment report, a copy of which is included in the Bookkeeper's Report.

After discussion, upon a motion duly made by Director Harris, seconded by Director Marek, the Board voted unanimously to approve the Bookkeeper's report and the payment of the District's bills as presented.

3

015537.000001\4915-1033-5083.v1

Exhibit E  12 - of 15

## HEAR DEVELOPER'S REPORT

The Board recognized Mr. Hardey, who reviewed with the Board the status of development within the District.

Consideration was given to approve the following: (i) Section 19A time extension request and (ii) San Marcos Change Order, copies of which are attached hereto as Exhibit "F."

After discussion and the question being put to the Board, upon a motion by Director Cadle, seconded by Director Crihfield, the Board voted unanimously to approve (i) the Section 19A time extension request and (ii) the San Marcos Change Order. Noted that Director Harris and Director Marek abstained from voting.

Consideration was given to approve the hydroseeding proposal for San Marcos Drive, a copy of which is included in Exhibit "F."

After discussion and the question being put to the Board, upon a motion by Director Cadle and seconded by Director Crihfield, the Board voted unanimously to approve the hydroseeding proposal for San Marcos Drive.

## HEAR ATTORNEY'S REPORT

The Board recognized Ms. Forswall who presented the Attorney's Report.

Approve Engagement Letter with Beard & Lane to handle condemnation of easements within District

Consideration was given to approve an Engagement Letter with Beard & Lane to handle the District's response to condemnation proceedings and other requests related to pipeline easements within District.

After discussion, upon a motion duly made by Director Harris, seconded by Director Cadle, the Board voted unanimously to approve the Engagement Letter with Beard & Lane to handle condemnation of easements within the District.

4

015537.000001\4915-1033-5083.v1

*[handwritten: Attorney Lane is John & William Harris Cousin.]*

*[handwritten: Exhibit E 13-of 15]*

<u>Discuss HOA leasing District Administration Building and consider amending necessary</u> <u>agreements</u>

This action was deferred.

## EXECUTIVE SESSION

Ms. Forswall called the closed meeting to order at 1:04 p.m. for an attorney-client privileged consultation, as authorized by Sections 551.071(i)(a) of the Texas Government Code. The closed session adjourned at 1:08 p.m. and the Board returned to open session.

There being no further business to come before the Board, upon a motion duly made and seconded, the meeting was adjourned.

*[signature page follows]*

5

015537.000001\4915-1033-5083.v1

Exhibit E 14-of 15

PASSED, APPROVED AND ADOPTED, this 9th day of October, 2025.

_____
Secretary, Board of Directors

(DISTRICT SEAL)



015537.000001\4915-1033-5083.v1

Exhibit E  15-of 15

# Reduce Flooding - NOW!

**Days since Harvey**

| 3135 | ① |

---

# Conflict-of-Interest Ridden Colony Ridge Caught Operating without Permit, Polluting

11/20/25 – Maria Acevedo, a construction expert and environmental activist, observed a Colony Ridge cement contractor, Liberty Paving, operating without a permit. She also documented sediment runoff from the site that violated Texas Commission on Environmental Quality Best Management Practices (BMPs).

The lack of BMPs was polluting the surrounding area, which drains into the San Jacinto East Fork and has required tens of millions of dollars in dredging since the development of Colony Ridge began.

Acevedo reported the alleged violations to the TCEQ, which conducted its own investigation and issued a Notice of Enforcement.

Liberty Paving LLC, the contractor, has done more than $13 million worth of business for Liberty County Municipal Management District #1. Amazingly, the President of MMD #1 owns the paving contractor.

This letter from Attorney General Ken Paxton to members of Congress details a litany of other abuses and ethically ambiguous practices at Colony Ridge in Liberty County. Loopholes in Texas law big enough to drive cement trucks through enable them.

## TCEQ Finds No Site Signage or Stormwater Pollution Prevention Plan

When TCEQ investigated Acevedo's complaint, it was not raining, so investigators could not confirm the allegations of runoff that Acevedo's photos showed. However,

Exhibit F   1 - of 7

TCEQ discovered that Liberty Paving *was* operating without coverage under the Construction General Permit, required site signage, and a mandatory Stormwater Pollution Prevention Plan (SWPPP). Neither was the company employing best management practices.

As a result, TCEQ issued a Notice of Enforcement Letter. TCEQ's report [https://reduceflooding.com/wp-content/uploads/2025/11/TCEQ-CR-Report.pdf] says that Liberty Paving knew of its responsibilities because of permits issued at other sites outside Colony Ridge, but failed to comply inside Colony Ridge.

What exactly does TCEQ mean when it issues a notice of enforcement for "failure to obtain coverage under the Construction General Permit"? According to ChatGPT, the permit regulates:

- Stormwater runoff from construction activities
- Erosion controls
- Sediment controls
- Pollution prevention practices

Because the site began construction without filing the required notice of intent:

- Any stormwater discharges were unauthorized
- Discharged pollutants, such as sediment, were illegal.
- The operator is out of compliance with the Clean Water Act and Texas Pollution Discharge Elimination System rules
- Even if erosion controls were physically present, failure to obtain the permit still constitutes a violation.

Exhibit F   2 -of 7



*Sediment escaping through improperly installed silt fence. Photo by Maria Acevedo.*

## Conflict of Interest?

John Harris, the Colony Ridge developer, lists himself as the president of T-Rex Management, Inc., the general partner of Liberty Paving, LLC [https://reduceflooding.com/wp-content/uploads/2025/11/Liberty-2023-PIR.pdf] . But Harris is also the current president of Liberty County MMD #1 [https://libertymmd.com/meetings/] .

Minutes of MMD #1 show that in 2023, Harris' brother was president of the MMD when it approved $13 million in payments [https://reduceflooding.com/wp-content/uploads/2025/11/Paving-Payments.pdf] to Liberty Paving.

In most states this would be a clear conflict of interest. But Texas allows it if the parties recuse themselves from voting on the contract/payment and disclose their conflicts of interest.

Exhibit F  3 - of 7

Mr. Harris was evidently present for one vote on paving payments, but absent for another. The minutes do not reflect whether he disclosed the conflict of interest.

That's pretty academic, however, when four MMD board members have ties to the developer or Harris' family.

One former state legislator who is an expert on MMDs told me that even if a board member recuses himself, other members of the board know how to vote through winks and nods, i.e., things that don't get recorded in minutes. He raised some interesting questions. Are bids sealed? Are bids opened in public with all bidders present? And should the vote to accept a bid count if the board member who refrains from voting is necessary to make a quorum?

According to ChatGPT, Texas stands out nationally due to MMDs being allowed to:

- Reimburse developers via taxpayer-backed bonds
- Have developer-controlled boards
- Contract with developer-owned companies
- Reimburse developers for on-site infrastructure, including:
  - Roads
  - Water/sewer
  - Drainage
  - Detention ponds
  - Grading & clearing
  - Engineering costs

Most states allow reimbursement only for:

- True regional infrastructure, or
- Public facilities beyond subdivision boundaries.

Nor do other states allow developers to:

- Form districts they control
- Levy taxes on future residents
- Reimburse themselves for subdivision improvements.

Exhibit F    4 - of 7

However, it's standard practice in Texas for:

- A developer to form a MMD or Municipal Utility District

- The developer (or allied consultants) to serve on the board

- The board to hire the developer's own companies for construction, engineering, landscaping, or management

- Taxpayers or landowners to repay the MMD or MUD through bonds or assessments.

Such practices are widely criticized as ethical conflicts of interest, even if they are not legal conflicts. They enable self-dealing and private gain from public-like financing powers. **Yet it's all technically legal if conflicts are disclosed and abstentions handled properly.**

However, the Liberty County Attorney, Matthew Poston [https://www.co.liberty.tx.us/page/liberty.county.attorney] told *Houston Landing* [https://houstonlanding.org/colony-ridge-awards-22-5m-in-contracts-to-subsidiary/?utm_source=chatgpt.com] …

# "The scandal isn't what is illegal. The scandal is what is legal."

Matthew Poston, Liberty County Attorney

Exhibit F 5 - of - 7



*Colony Ridge Expansion in 2022.*

## Paxton Writes Scathing Colony Ridge Letter to Legislators

In Texas, the Attorney General does not normally police MMD self-dealing. However, two years ago, when illegal immigrant and consumer fraud scandals rocked Colony Ridge creating national headlines, Attorney General Ken Paxton wrote a scathing letter to members of Congress [https://reduceflooding.com/wp-content/uploads/2025/11/Colony-Ridge-Letter-to-TX-GOP-Congressional-Delegation-10.19.23.pdf] about his offices' findings.

Among other things, Paxton's four-page letter details how:

- Colony Ridge practices seem to contradict the intent of Texas lawmakers when they established MMDs
- Minimal down-payment, high-interest loans with little identity verification lure non-citizens across the border
- Fast growth and high crime create burdens on law enforcement, school districts, and neighboring areas
- MMD #1 violates the intent of lawmakers
- How MMD #1 bypasses bank scrutiny of its high risk activities contrary to the public interest

Exhibit F 6 - 04 - 7

- Unelected, unaccountable leaders are creating unsustainable growth of a "city" by catering to illegal aliens

- How Colony Ridge is swamping taxpayers in the Cleveland ISD which caused it to more than triple in size

- The people of Texas "never assented to the creation of a sprawling unincorporated, ungoverned zone."

And Paxton didn't even address Colony Ridge flooding!



*For everyone who wants to own an Island Home. New Year's Day of 2021.*

## For More On Colony Ridge

Consult this post – History of Heartbreak: A Colony Ridge Chronicle. [https://reduceflooding.com/2023/09/20/history-of-heartbreak-a-colony-ridge-chronicle/] It contains links to more than 75 previous posts with hundreds of photos taken on the ground and in the air. Scanning through them will make you wonder whether Paxton was too kind!

A development that didn't exist 15 years ago is now 50% bigger than Manhattan … with hardly any flood control, fire hydrants, or police presence.

*Posted by Bob Rehak on 11/20/25*

Exhibit F 7 - of 7

# Colony Ridge Board Awards $16 Million to Company with Close Ties

**The paving company is closely connected to Colony Ridge board members, developers, and their families.**



By Emily Medeiros | December 15, 2023

2 min read

The developers of the controversial illegal alien housing development, Colony Ridge, have awarded more than $16 million in taxpayer dollars to a paving company with close ties to board members.

A recent investigation by ***The Daily Wire*** shows that the paving company, Liberty Paving LLC, likely has a direct connection to the managing board members, developers, and their family members.

One of the developers of Colony Ridge, William "Trey" Harris, and others connected to the development site serve on a local

Exhibit G Page 1 of 4

government board created on behalf of the development. The board has the power to tax residents and allocate taxpayer funds to address the community's needs.

According to documents reviewed by ***The Daily Wire***, the board unanimously voted to grant multi-million dollar contracts to Liberty Paving LLC.

The paving company has direct ties to Trey Harris' brother, John Harris, who co-owns the development. John is also the director and president of T-Rex Management, which manages Liberty Paving.

Liberty Paving can also be linked to Savannah Crihfield—the secretary of the management board—who also voted to award the company with the contract. Crihfield is the President of CH&P Management, which is listed as Liberty Paving's **registered agent**. CH&P, as a registered agent, can be compensated in return for receiving official documentation such as tax notices and court papers. Both CH&P Management and T-Rex Management share the same business address.

Furthermore, Liberty Paving publicly lists one of Colony Ridge's utility board members, Patrick Thiel, as their executive. The utility board can also allocate tax revenues.

Thiel previously worked as the principal for the construction company R&T Ellis, which has worked on Colony Ridge and is owned by Republican State Rep. **Ernest Bailes'** cousin.

Exhibit 6 Page 2 - of 4

Ties to Bailes go further, as the Colony Ridge Management Board, formally known as Liberty County Municipal Management District No. 1, was created in 2017. Bailes authored legislation during Texas' 85th legislative session creating the district. The resolution, **House Bill 4341**, would later be passed through the Texas House and the Texas Senate and would go into effect immediately, without Gov. Greg Abbott's signature.

Bailes also is financially connected to the illegal alien community. His campaign received **$1,800** from William Harris —who has also **given hundreds of thousands of dollars to Abbott**. Bailes has also received **$9,000 from Entergy Corporation Political Action Committee** (PAC), an energy company that services the six subdivisions that comprise Colony Ridge. Furthermore, the PAC for Coats Rose—the law firm that provides legal services to the management board—has also given **$7,500 to Bailes**.

*Texas Scorecard* has **reported** on the effects Colony Ridge has had on local resources, including on its school district. The number of students within the district doubled from 6,584 students to more than 12,400, leading the district to build six new schools to accommodate the growing population.

The development has also garnered attention from the Texas GOP, where members **unanimously voted for a resolution** calling for legislation to be added to a special session call to

Exhibit G 3 -of 4

prevent further illegal alien settlements from being developed in Texas.

Although Colony Ridge was added to a special session call, the only legislation to arise was **Senate Bill 3**, which provides $1.5 billion for the maintenance, operation, and construction of border barrier infrastructure. It also sets aside $40 million for the Texas Department of Public Safety to use for policing the Colony Ridge development.

It has been sent to Abbott and is awaiting his signature.

---

*No ads. No paywalls. No government grants. No corporate masters.*

Just real news for real Texans.

**Support *Texas Scorecard* to keep it that way!**

**Emily Medeiros**

Emily graduated from the University of Oklahoma majoring in Journalism. She is excited to use her research and writing skills to report on important issues around Texas.

Exhibit G  4 - of 4

# opencorporates

The Open Database Of The Corporate World

Company name or number    [ Search ]

◉ Companies  ○ Officers

- Log in/Sign up

# Liberty Paving, LLC

Company Number
    0803857990
Status
    In Existence
Incorporation Date
    Please log in to see this data
Company Type
    Domestic Limited Liability Company (LLC)
Jurisdiction
    Texas (US)
Registered Address
- 1712 N FRAZIER ST STE 215
- CONROE
- 77301-1380
- TX
- USA

Alternative Names
- Liberty Paving, LLC (trading name, 2020-12-14 - )

Agent Name
    CH&P MANAGEMENT LLC
Agent Address
    1712 N. Frazier Street, Suite 215, Conroe, TX, 77301, USA
Directors / Officers
    2 officers available, please log in to see this data



## Recent filings for Liberty Paving, LLC

31 Dec 2023
Public Information Report (PIR)

5 Sep 2023
Change of Registered Agent/Office

3      2022
P\_  \_Information Report (PIR)



Brooke T. Paup, *Chairwoman*
Catarina R. Gonzales, *Commissioner*
Tonya R. Miller, *Commissioner*
Kelly Keel, *Executive Director*



# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

October 21, 2025

Ms. Maria Acevedo
Via Email

Re:    Investigation Request at:
       Soil Stabilization Plant SN 1097 located at Northeast of Intersection CR 3470 and Road
       5023, Cleveland, TX 77327

       Regulated Entity No.: 11184335, Investigation No.: 2085086, Incident No.: 444291

Dear Ms. Acevedo:

The Texas Commission on Environmental Quality (TCEQ) Houston Region Office has completed
a final investigation in response to your concern regarding the off-site sediment accumulation
and lack of best management practices at the above-referenced facility. Enclosed is a copy of
the investigation report.

To access a copy of our complaint policies and procedures or to track your complaint using
Complaint Tracking Number 444291 you may refer to our website:
https://www.tceq.texas.gov/compliance/complaints.

We appreciate your concern in bringing this matter to our attention. If we can be of further
assistance, please contact Mr. Austin Cloyd in the Houston Region Office at 713-767-3662.

Sincerely,

*Kyle Linville*

Kyle Linville
Water Section Team Leader
Houston Region 12 Office

KL/AC/kg

Enclosure:    Copy of Investigation Report

Exhibit I   1 - of 5

TCEQ Region 12 • 5425 Polk St., Ste. H • Houston, Texas 77023-1452 • 713-767-3500 • Fax 713-767-3520

Austin Headquarters: 512-239-1000 • tceq.texas.gov • How is our customer service? tceq.texas.gov/customersurvey
printed on recycled paper

# Texas Commission on Environmental Quality
## Investigation Report

The TCEQ is committed to accessibility. If you need assistance in accessing this document, please contact oce@tceq.texas.gov

## Customer: Liberty Paving, LLC
## Customer Number: CN605865310
### Regulated Entity Name: SOIL STABILIZATION PLANT SN 1097
### Regulated Entity Number: RN111845335

**Investigation  # 2085086**

**Investigator:AUSTIN CLOYD**

**Supervisor: KYLE LINVILLE Approved Date:** 10-17-2025

**Conducted:**    08/08/2025 -- 08/08/2025

**Program:**    STORMWATER

**Incident Numbers**
Incident 444,291

Site Classification CONSTRUCTION GENERAL PERMIT FOR STORMWATER

**No Industry Code Assigned**

**Investigation Type :**Site Assessment

**Location :** NORTHEAST OF INTERSECTION CR 3470 AND ROAD 5023

**Additional ID**    WQNP111845335

**Address: ; City , State  Zip**

**Local Unit :** REGION 12 - HOUSTON

**Activity Type:**        SWCMPL - SW Complaint

**Principal(s):**

| Role | RESPONDENT |
|---|---|
| Name | LIBERTY PAVING LLC |

**Contact(s):**

| Role | REGULATED ENTITY CONTACT | Name | Patrick  Thiel |
|---|---|---|---|
| Title | GENERAL CONTRACTOR | | |

Phone Number for Work is (972) 837-0490

End of record for this contac

| Role | REGULATED ENTITY MAIL CONTACT | Name | Patrick  Thiel |
|---|---|---|---|
| Title | GENERAL CONTRACTOR | | |

Phone Number for Work is (972) 837-0490

End of record for this contac

**Other Staff Member(s):**

| Role | QA Reviewer | Name | MAYA SOOJHAI |
|---|---|---|---|
| Role | Supervisor | Name | KYLE LINVILLE |

Exhibit I  2 - 04  J

**Associated Check List**

**Checklist Name**    WQ COMPLAINT INVESTIGATION
**Unit Name**    INVESTIGATION
**Checklist Name**    WATER EQUIPMENT
**Unit Name**    EQUIPMENT

## Investigation Comments:

INTRODUCTION
On July 28, 2025, the Texas Commission on Environmental Quality (TCEQ) Houston Region 12 Office received a complaint (Incident No. 444291) alleging off site sediment accumulation and a lack of best management practices. The alleged complaint is located near the intersection of CR 5023 and CR 5021, Cleveland, Liberty County, Texas 77327. A Stormwater (SW) complaint investigation was conducted to determine compliance with applicable regulations.

An investigation was conducted near the intersection of CR 5023 and CR 5021, Cleveland, Texas 77327 on August 8, 2025, by Mr. Austin Cloyd, Environmental Investigator with the TCEQ Houston Region 12 Office. The investigation was conducted as a result of a complaint; therefore, no notification of the investigation was given.

TCEQ Exit Interview Forms was sent on August 12, 2025, and Revised TCEQ Exit Interview Forms were sent on August 13, 2025 and October 1, 2025, to Mr. Patrick Thiel, General Contractor with Liberty Paving LLC via email (Attachment 1: Exit Interviews ). Based on the findings of the investigation, a  Notice of Enforcement (NOE) letter was issued. A letter with a copy of the investigation report was sent to the complainant.

BACKGROUND
The TCEQ has received no prior SW complaints regarding the aforementioned location in the last five years.

GENERAL FACILITY AND PROCESS INFORMATION
The construction site for road repaving disturbs approximately 1.0 acre of land in total and is located along San Marcos St. (CR 5000), Cleveland, Liberty County, Texas 77327 (Attachment 2: Vicinity Map). The San Marcos St. (CR 5000) road construction site is considered a small construction site per TCEQ regulations. The site is operated by Liberty Paving LLC. At the time of the investigation Liberty Paving LLC was operating without coverage under the Construction General Permit (CGP). A review of the TCEQ Central Registry shows that Liberty Paving LLC has previously obtained coverage under the CGP at other sites (Attachment 3: Previous Permit Coverage) . This alleged issue will be further discussed in the Summary of Investigation Findings of this Report.

Stormwater on this site flows to the East Fork San Jacinto River Segment 1003. The site was not discharging stormwater  at the time of the investigation.

COMPLAINT INVESTIGATION DESCRIPTION
On August 8, 2025 the investigator arrived at the complaint location. Photos were taken of areas with cleared vegetation that would be the base for the new road construction. During the investigation no site signage or Stormwater Pollution Prevention Plan(SWPPP) was observed. Additionally, at the time of the investigation no Best Management Practices were present to minimize off-site sediment pollution.  An attempt to make contact with the contractors was made, however none were present at the site at the time of the investigation  (Attachment 4: Investigation Photographs ).

ADDITIONAL INFORMATION

On August 25, 2025, the Regulated Entity submitted documentation indicating a small site notice had been posted , and on August 28, 2025 that a SWPPP was developed. Additionally, on September 8, 2025, documentation was submitted to the TCEQ Region 12 Office indicating that the site had installed hydro mulch to reach final stabilization which appeared to resolve  the outstanding alleged violation (Attachment 5: Submitted Compliance).

CONCLUSION
The allegation of a lack of best management practices was confirmed. As a result of the investigation, one alleged violation was issued for failure to obtain coverage under the Construction General Permit (CGP)

Exhibit I   3 - of 5

SUMMARY OF INVESTIGATION FINDINGS

**NOE Date: 10/17/2025**

### ALLEGED VIOLATION(S) NOTED AND RESOLVED
### ASSOCIATED TO A NOTICE OF ENFORCEMENT

**Track Number:** 932436      **Resolution Status Date:** 10/6/2025

**Violation Start Date:** Unknown      **Violation End Date:** 8/28/2025

Citations include TAC or T. A. C. which stands for Texas Administrative Code

**Citation 30 TAC Chapter 281.25(a)(4)**

**Citation 40 CFR Chapter 122.26(c)**

No or N. O. stands for Number and Pg or P. G. stands for page.
Req or R. E. Q. stands for requirements

**ID NUMBER WQNP111845335, Part I. Section A**

**Alleged Violation:**

**Investigation number: 2085086**      **Comment Date: 10/2/2025**

Failure to obtain coverage under the Construction General Permit (CGP) TXR150000. Specifically, construction activity was noted at the Soil Stabilization Plant SN 1097 located at northeast of intersection C3470 and Road 5023. According to Enforcement Initiation Criteria (EIC) A2.a, formal enforcement is warranted if a responsible party (RP) is operating without proper authorization and the responsible party had the same required authorization at another regulated entity, or for which documentation exists that demonstrate that the RP has knowledge that the authorization is required.

**Recommended Corrective Action:** Submit to the TCEQ Region 12 Houston Office a Small Site Notice and a Stormwater Pollution Prevention Plan (SWP3) and documentation indicating that best management practices (BMPs) have been put in place.

**Resolution:** On August 25, 2025, the Regulated Entity submitted documentation indicating a small site notice had been posted , and on August 28, 2025 that a SWPPP was developed. Additionally, on September 8, 2025, documentation was submitted to the TCEQ Region 12 Office indicating that the site had installed hydro mulch to reach final stabilization which appeared to resolve the outstanding alleged violation.

Checklist for different types of attachments

## Attachments: (in order of final report submittal)

  **X** Enforcement Action Request (EAR)             ___Maps, Plans, Sketches

  **X** Letter to Facility (specify type) : __**NOE**__     ___Photographs

Investigation Report                                 ___Correspondence from the facility

___Sample Analysis Results                 **X** Other (specify) :

___Manifests                                    See List of Attachments

___Notice of Registration

**List of Attached files**
2085086 Attachments.pdf

Exhibit I 4 - of 5

# Executive Director's Agenda

## Signed Enforcement Orders

### Report Type: Current Month

Case 4:23-cv-04729    Document 192    Filed 04/09/26 in TXSD    Page 101 of 107

**Monthly Total for 03/2026: 91**

Daily Total for 3/10/2026: 43

| Respondent Name | Docket Number | Permit/ID Nos. | County | Date Signed | Effective Date |
|---|---|---|---|---|---|
| CORRAL PRIME LLC | 2025-1434-PST-E | 35437 | COMAL | 03/10/2026 | 03/10/2026 |
| EQUISTAR CHEMICALS LP | 2025-1468-AIR-E | 2129 | CHAMBERS | 03/10/2026 | 03/10/2026 |
| LIBERTY PAVING LLC | 2025-1662-WQ-E | WQNP11184533 | LIBERTY | 03/10/2026 | 03/10/2026 |
| BRAZOS RIVER SAND AND GRAVEL LLC | 2025-1680-WR-E | BWM112241617 | HOOD | 03/10/2026 | 03/10/2026 |
| SWITCH LTD | 2025-1737-EAQ-E | 11004541 | WILLIAMSON | 03/10/2026 | 03/10/2026 |
| MARLIN, VANESSA M | 2025-1896-WOC-E | | BRAZORIA | 03/10/2026 | 03/10/2026 |
| MARQUART, KEITH | 2025-1895-WOC-E | R13112288303 | KENDALL | 03/10/2026 | 03/10/2026 |
| CARLOS, JOSE A | 2025-1894-WOC-E | WW0007401 WW0038319 | KENDALL | 03/10/2026 | 03/10/2026 |

**Grand Total Signed Enforcement Orders: 91**

For further information on any of these signed orders, please https://www.tceq.texas.gov/goto/cid or the see either the TCEQ Commissioners' Integrated Database at Issued Orders page at https://www.tceq.texas.gov/goto/IssuedOrders. Both Alternatively, you may contact the Enforcement Division at (512) 239-2545.

MINUTES OF MEETING
OF THE
BOARD OF DIRECTORS

March 27, 2023

STATE OF TEXAS                                                                              §

COUNTY OF LIBERTY                                                                     §

LIBERTY COUNTY MUNICIPAL MANAGEMENT DISTRICT NO. 1              §

The Board of Directors (the "Board") of Liberty County Municipal Management District No. 1 (the "District") met in regular session, open to the public, at 12:00 p.m. on Monday, March 27, 2023 at 1680 Road 3549, Cleveland, Texas 77327, a designated meeting place inside the boundaries of the District and via telephonic conference; whereupon, roll was called of the members of the Board of Directors, to-wit:

|  |  |  |
|---|---|---|
| William Harris, III | - | President |
| Heath J. Marek | - | Vice President |
| Savannah Crihfield | - | Secretary |
| Damaris Watson | - | Assistant Secretary |
| Clifton C. Cadle | - | Assistant Secretary |

All members of the Board of Directors were present, except Director Harris, thus constituting a quorum.

Also present at the meeting were Diego Espinosa of Engineering Texas, the District's Engineer; Cory Anderson, Patrick Thiel, Ryan Crihfield, Cory Anderson, Ernesto Garcia and Donald Burton; Lauren Clark of L&S District Services, the District's Bookkeeper; and Laken Jenkins Kilgore, attorney, and Monica Britton, paralegal, of Coats Rose, P.C. ("Coats Rose"), legal counsel for the District ("Attorney").

Whereupon, the meeting was called to order at 12:00 p.m. A copy of the notice of the meeting is attached hereto as Exhibit "A".

1

015537.000001\4888-8270-7553.v1

Exhibit J    1 -of 5

## HEAR FROM THE PUBLIC

No members of the public were present.

## APPROVE MINUTES OF MEETING

Proposed minutes of the meeting of the Board held on January 9, 2023, previously distributed to the Board, were considered for approval. Upon a motion duly made by Director Marek, seconded by Director Cadle, the Board voted unanimously to approve such minutes as presented.

## HEAR LIBERTY COUNTY CONSTABLE'S REPORT

The Board recognized Ms Kilgore who presented the Liberty County Constable's Report on behalf of Liberty County Constable Precinct 6 for the month of February.  A copy of the report is attached hereto as Exhibit "B".  No action was taken.

## HEAR BOOKKEEPER'S REPORT

The Board recognized Ms. Clark, who reviewed the Bookkeeper's Report and the bills listed therein, a copy of which is attached hereto as Exhibit "C".

### Review Investment Report

Ms. Clark next reviewed the investment report, a copy of which is included in the Bookkeeper's Report.

After consideration, upon a motion duly made by Director Marek, seconded by Director Crihfield, the Board voted unanimously to approve the Bookkeeper's report and the payment of the District's bills as presented.

## HEAR DEVELOPER'S REPORT

The Board recognized Mr. Cadle, who reviewed with the Board the status of development within the District.  The Board noted that no action was needed in conjunction with the Developer's Report.

2

015537.000001\4888-8270-7553.v1

Exhibit J    2 - of 5

## HEAR ENGINEER'S REPORT

The Board recognized Mr. Espinosa who presented the Engineer's Report, a copy of which is attached hereto as Exhibit "D". Mr. Espinosa requested that the Board authorize and approve the following:



- Authorize design of Santa Fe Section 18;
- Approve Pay Estimate Nos. 2-5 for Paving and Drainage Facilities for Santa Fe Section 14 by Liberty Paving, LLC in the amounts of $1,089,354.51, $1,491,944.62, $1,192,710.89, and $1,212,436.83, respectively.
- Authorize awarding contract for Construction of Paving Facilities in Santa Fe Section 15 to low bidder, Liberty Paving, LLC in the amount of $6,158,231.60.

Upon a motion by Director Cadle, seconded by Director Crihfield, the Board voted unanimously to approve the Engineering Report and the action items listed therein.

## HEAR ATTORNEY'S REPORT

The Board recognized Ms. Jenkins Kilgore who presented the Attorney's Report.

### Accept Petition for Addition of Land Into the District

Ms. Kilgore next presented a Petition for the Addition of Land from Colony Ridge Development, LLC and the District (the "Petition") in conjunction with the annexation of 255.886 acres of land, a copy of which is attached hereto as Exhibit "E".

### Order Adding Land and Redefining Boundaries

Ms. Kilgore submitted to the Board for review and approval an Order Adding Land Redefining Boundaries of the District (the "Order") in connection with the annexation of the 255.886 acres of land owned by Colony Ridge Development, LLC and the District, a copy of which is attached hereto as Exhibit "F". Ms. Kilgore noted after the inclusion of the annexation, the redefined boundaries of the District will total approximately 14,249 acres.

015537.000001\4888-8270-7553.v1



Exhibit J 3 - of 5

Approve Amended Notice to Sellers and Purchasers

The Board next considered approving an Amended Notice to Sellers and Purchasers of Real Estate Situated in the District (the "Notice"), a copy of which is attached hereto as Exhibit "G". Ms. Kilgore stated that the Notice needs to be updated to reflect the addition of 255.886 acres into the boundaries of the District. Ms. Kilgore continued that the Notice will be filed in the Liberty County Real Property Records and with the Texas Commission on Environmental Quality (the "TCEQ").

After consideration, upon a motion by Director Marek, seconded by Director Cadle, the Board voted unanimously to (i) accept the Petition, (ii) adopt the Order and (iii) approve the Notice and authorize the District's attorney to file the Notice in the Liberty County Real Property Record and with the TCEQ.

Discuss possible streetlights at major intersections, roundabouts, and bus stops and consider taking action thereon

The Board next discussed adding possible streetlights at major intersections, roundabouts, and bus stops. After discussion, the Board deferred action.

Approve Special Warranty Deeds under Section 49.226, Texas Water Code

Ms. Kilgore presented a Special Warranty Deed for the Board's review and consideration, copies of which are attached hereto as Exhibit "H". Ms. Kilgore requested the Board authorize conveyance of Reserves G1, 11 and K1, Block Twelve (12) of Santa Fe Section Two (2) to Colony Ridge Development, LLC under Section 49.226, Texas Water Code for roadway purposes.

Upon a motion by Director Marek, seconded by Director Cadle, the Board voted unanimously to approve the Special Warranty Deed under Section 49.226, Texas Water Code.

There being no further business to come before the Board, upon a motion duly made and seconded, the meeting was adjourned.

4

015537.000001\4888-8270-7553.v1

Exhibit J 4 - of 5

PASSED, APPROVED AND ADOPTED, this 8th day of May, 2023.

(DISTRICT SEAL)

Secretary, Board of Directors



015537.000001\4888-8270-7553.v1

Exhibit J. 5-of 5

message

Scot Campbell <srcproperties@hotmail.com>                                                                    Tue, Sep 19, 2023
To: Krys Weyand <kweyand@scprgv.com>
Cc: Jennifer Rice <txlanddev@gmail.com>, Heather Oaks <heather@vettednotes.com>, Jack McClelland <jack@jmloanservicing.com>, John Mays
jmays@cayetanodevelopment.com>, john womack <john@jawomack.com>, Kacee Jackson <kaceej@360company.biz>, "kyleruppert@aol.com" <kyleruppert@aol.com
Kyndel Bennett <kbennett@cayetanodevelopment.com>, Mira Boyda <mira@pohlpartners.com>, Patricia Baugh <pcbaugh85@gmail.com>, "Russell Spillers (via Googl
Drive)" <russellspillers@gmail.com>, Tillmin G Welch <tgenewelch@gmail.com>, "bighorncapitalservicing@gmail.com" <bighorncapitalservicing@gmail.com>, Nellie
Woodward <nellie@vistahc.com>, "chuck rice Jr." <crice@chuckricegroup.com>

From: Scot Campbell <srcproperties@hotmail.com>
Subject: Re: Article of interest

Because this is an attack on our industry. It is not only Harris they are after. The right wing of the party wants to stop all development of this nature. The left wants to knock us out of the market because we make money on the poor. For completely different reasons those are the entities we have been fighting. We will not be able to sell our developments if each of our buyers have to have a SS# and we have to qualify each buyer as to the buyer's ability to repay. It will kill our industry and will make our future resale of foreclosed lots worth a lot less than because we will all be fighting over a few qualified buyers that will be able to qualify.

This is not new. This has been the direction even the SML has thought was correct. The right does not like our subdivisions because they believe our subdivisions are a blight on the communities, raise taxes, do not look like the folks that live in their neighborhoods, cannot speak English etc. The left think it is evil to make money on poor people, charge higher interest, we allow substandard housing because we don't have restriction and they really believe that since they cannot afford a brick home, they should live in government housing. I have heard them say that they had rather them live under an overpass than in our subdivisions even though there is not enough money in the government to provide housing nationwide and would raise taxes a lot more. Never mind that these are the folks that do the work we cannot find local residence to do and that they go from a drag on the community to taxpayers and it was President Biden that opened the flood gates and allowed millions in without identification and no jobs. We don't want our Texas cities to look like New York with homeless on the streets. Our industry does much to help the homeless problem is a good option to government housing.

If no one responds to the lies in this article and what was on Fox news this morning it becomes a fact in all their minds.

THIS IS WHY WE HAVE TO REPOND.