United States District Court
Southern District of Texas
**ENTERED**
April 28, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:23-CV-04729 |
| COLONY RIDGE DEVELOPMENT, LLC, *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is the Joint Motion for Dismissal, in which the parties seek dismissal of this case with prejudice and request that the Court retain jurisdiction to enforce the terms of their Settlement Agreement. Doc. #149. The Court held a hearing on April 10, 2026, where it expressed serious concerns about retaining jurisdiction to enforce the parties' Settlement Agreement. Following the April 10th hearing, the parties filed a Joint Stipulation of Dismissal, dismissing this action with prejudice and withdrawing their request for continuing jurisdiction. Doc. #193.

Under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the parties' Joint Stipulation of Dismissal is effective upon filing. *See SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461, 462 (5th Cir.2010). This case is therefore dismissed with prejudice, and the parties' request for the Court to retain jurisdiction is now moot. However, the Court notes here the concerns it expressed at the April 10th hearing.

The Complaint alleged that Defendants Colony Ridge Development, LLC, Colony Ridge BV, LLC, and Colony Ridge Land, LLC (collectively, "Colony Ridge") violated the Equal Credit

Opportunity Act ("ECOA") and the Fair Housing Act ("FHA") by deliberately targeting Hispanic consumers with predatory financing and other unlawful practices. Doc. #1. By way of statutory background, Congress enacted the FHA in 1968 at a moment of national urgency, in the immediate aftermath of Dr. Martin Luther King, Jr.'s assassination, to address "the denial of housing opportunities on the basis of race, color, religion, or national origin." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 530, 135 S. Ct. 2507, 2516, 192 L. Ed. 2d 514 (2015) (internal quotations and citation omitted). The FHA was a direct response to pervasive and systemic discrimination, both open and covert, that had long prevented minority families from accessing better housing and moving to integrated communities. *Id.* at 529. A commission established by President Lyndon B. Johnson confirmed the depth of this crisis, finding that discriminatory practices were driving the country "toward two societies, one black, one white—separate and unequal." *Id.* (internal quotations and citation omitted). That finding incisively captured the conditions that Congress confronted in enacting the FHA and reflected the urgent need for federal intervention to dismantle the entrenched patterns of segregation in this country. *See id.* at 530. The ECOA reflects the same judgment in the credit context. The ECOA was enacted in 1974 to prohibit discrimination in credit transactions. *Tex. Bankers Ass'n v. Consumer Fin. Prot. Bureau*, No. 7:23-CV-144, 2024 WL 3939598, at *1 (S.D. Tex. Aug. 26, 2024). Both the ECOA and FHA are remedial statutes, enacted to eliminate discrimination and to ensure equal access to credit and housing. *See* 15 U.S.C. § 1691(a)(1); 42 U.S.C. § 3601.

Here, the Complaint alleged that Colony Ridge targeted Hispanic consumers, steered them into high-cost loans without regard for their ability to repay, and set in motion a cycle of default and foreclosure that stripped borrowers of money and property. Doc. #1 at 4–5. The Complaint sought actual damages for consumers allegedly injured by Colony Ridge's conduct. *Id.* at 43. At

2

the motion-to-dismiss stage, the Court concluded that these allegations plausibly stated a violation of both the ECOA and the FHA  Doc. #93.

Measured against these allegations and the relief requested, the Settlement Agreement presented at the April 10th hearing bears little relationship to the claims asserted in the Complaint. *See* Doc. #149, Ex. 1.  Rather than compensating the borrowers allegedly harmed, the Settlement Agreement allocates $48 million for infrastructure improvements and $20 million to "increase law enforcement presence and effectiveness." *Id.* at 13, 16.  The law enforcement funds are expressly intended, at least in part, to support "immigration enforcement." *Id.* at 16.  The Court finds that these settlement terms do not remedy the misconduct alleged in the Complaint.  More to the point, the Complaint did not seek funding for infrastructure improvements, and it did not allege failures in policing or immigration enforcement. *See* Doc. #1.  Remedies should be tailored to the injury and address the wrongs alleged.  Here, the Settlement Agreement addresses issues not pled and provides relief not sought.  As such, retaining jurisdiction over this Settlement Agreement would require the Court to supervise obligations untethered to the violations alleged in the Complaint.

More troubling still, the Settlement Agreement risks exacerbating harm to the very consumers the Complaint purported to protect.  The Court is mindful of the population at the center of this case.  The Complaint alleged that Colony Ridge targeted Hispanic borrowers through Spanish-language marketing—promising, "[l]ogra el sueño Americano aquí!!" ("Achieve the American dream here!!")  Doc. #1 at 2.  As noted in the amicus brief, increased immigration enforcement may further marginalize Hispanic consumers and subject them to surveillance and law enforcement actions they did not seek nor benefit from.  Doc. #160, Ex. 2 at 16.  Moreover, a resolution that wholly fails to provide any compensation to the victims described in the Complaint

3

while imposing measures that may intimidate or further burden them cannot be squared with the remedial purposes of the ECOA or the FHA.

The same concern extends to the proposed infrastructure improvements. To the extent that the Settlement Agreement channels resources into improvements that may increase the value or desirability of the development at issue, those benefits do not directly flow to the consumers identified as victims in the Complaint. They accrue largely to the Colony Ridge Defendants. This is especially true for borrowers who have already been foreclosed upon and displaced from their homes, who stand to gain nothing from such improvements. The Settlement Agreement also does not address borrowers who remain in the development but are locked into insidiously high interest rates because of the alleged unscrupulous lending practices of Colony Ridge. [1,2]

And even where the Settlement Agreement gestures toward credit repair or default avoidance, it stops short of certain and definite relief. The Settlement Agreement merely requires Colony Ridge to prepare written "proposals" to reduce the number and frequency of foreclosures. Doc. #149, Ex. 1 at 8–11. Whether any meaningful assistance will follow depends on subsequent contingencies not fixed within the Settlement Agreement itself. A promise to propose is not remediation, and a plan to formulate relief is not relief delivered. What is left is a remedy without teeth and commitment without consequence. The Court finds it difficult to reconcile the Department of Justice's endorsement of this Settlement Agreement with the statutory purposes of the FHA and ECOA, which the Department of Justice is entrusted to enforce. Statutes enacted to

---

[1] The Complaint alleged that consumers were offered fixed interest rates of 10.9%, 11.9%, or 12.9%, which were significantly higher than prevailing rates, which averaged between 2.35% and 4.05%. Doc. #1 at 16.

[2] At this stage, the record contains allegations, not evidence. However, the size of the $68 million settlement speaks for itself and reflects Colony Ridge's recognition of potential exposure arising from the conduct alleged.

4

remedy discrimination and unequal access to credit and housing are not advanced by relief that bypasses the injured, defers the remedy, and redirects the benefit.

As the Court expressed during the April 10th hearing, the parties remain free to resolve this case on whatever terms they choose and to secure their agreement as a matter of private contract. However, the Court declines to retain jurisdiction and put its imprimatur on a Settlement Agreement that does not meaningfully resolve the claims presented. Accordingly, pursuant to the Joint Stipulation of Dismissal (Doc. #193), this action is DISMISSED WITH PREJUDICE. The Joint Motion for Dismissal (Doc. #149) is DENIED as MOOT. All other pending motions are DENIED as MOOT. The Clerk is DIRECTED to close this case.

It is so ORDERED.

APR 2 8 2026
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge